**APPENDIX**
**<u>EXHIBIT A</u>**
**Statutes and Rules**

# Statutes and Rules

11 U.S.C. § 502..................................................................... SR2

11 U.S.C. § 503..................................................................... SR9

11 U.S.C. § 507.................................................................... SR14

11 U.S.C. § 1101.................................................................. SR23

11 U.S.C. § 1125.................................................................. SR25

11 U.S.C. § 1127.................................................................. SR29

11 U.S.C. § 1144.................................................................. SR32

28 U.S.C. § 158................................................................... SR34

Fed. R. Bankr. P. 2002......................................................... SR38

Fed. R. Bankr. P. 2019......................................................... SR48

Fed. R. Bankr. P. 3001......................................................... SR52

Fed. R. Bankr. P. 7023......................................................... SR57

Fed. R. Bankr. P. 8001......................................................... SR59

Fed. R. Bankr. P. 8002......................................................... SR63

Fed. R. Bankr. P. 8003......................................................... SR67

Fed. R. Bankr. P. 8006......................................................... SR70

Fed. R. Bankr. P. 8010......................................................... SR73

Fed. R. Bankr. P. 9006......................................................... SR75

Fed. R. Bankr. P. 9008......................................................... SR81

Fed. R. Bankr. P. 9010......................................................... SR83

Fed. R. Bankr. P. 9014......................................................... SR85

Fed. R. Civ. P. 23 ............................................................... SR88

Fed. R. Evid. 801 ............................................................... SR103

## 11 U.S.C. § 502

Subsection (e) gives governmental units (including tax authorities) at least six months following the date for the first meeting of creditors in a chapter 7 or chapter 13 case within which to file proof of claims.

AMENDMENTS

2005—Subsec. (e). Pub. L. 109–8 added subsec. (e).

1984—Subsec. (d). Pub. L. 98–353 inserted "502(e)(2),".

EFFECTIVE DATE OF 2005 AMENDMENT

Amendment by Pub. L. 109–8 effective 180 days after Apr. 20, 2005, and not applicable with respect to cases commenced under this title before such effective date, except as otherwise provided, see section 1501 of this title. Pub. L. 109–8, set out as a note under section 101 of this title.

EFFECTIVE DATE OF 1984 AMENDMENT

Amendment by Pub. L. 98–353 effective with respect to cases filed 90 days after July 10, 1984, see section 552(a) of Pub. L. 98–353, set out as a note under section 101 of this title.

CHILD SUPPORT CREDITORS OR THEIR
REPRESENTATIVES; APPEARANCE BEFORE COURT

Pub. L. 103–394, title III, § 304(g), Oct. 22, 1994, 108 Stat. 4134, provided that: "Child support creditors or their representatives shall be permitted to appear and intervene without charge, and without meeting any special local court rule requirement for attorney appearances, in any bankruptcy case or proceeding in any bankruptcy court or district court of the United States if such creditors or representatives file a form in such court that contains information detailing the child support debt, its status, and other characteristics."

## § 502. Allowance of claims or interests

(a) A claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest, including a creditor of a general partner in a partnership that is a debtor in a case under chapter 7 of this title, objects.

(b) Except as provided in subsections (e)(2), (f), (g), (h) and (i) of this section, if such objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount, except to the extent that—

(1) such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured;

(2) such claim is for unmatured interest;

(3) if such claim is for a tax assessed against property of the estate, such claim exceeds the value of the interest of the estate in such property;

(4) if such claim is for services of an insider or attorney of the debtor, such claim exceeds the reasonable value of such services;

(5) such claim is for a debt that is unmatured on the date of the filing of the petition and that is excepted from discharge under section 523(a)(5) of this title;

(6) if such claim is the claim of a lessor for damages resulting from the termination of a lease of real property, such claim exceeds—

(A) the rent reserved by such lease, without acceleration, for the greater of one year, or 15 percent, not to exceed three years, of the remaining term of such lease, following the earlier of—

(i) the date of the filing of the petition; and

(ii) the date on which such lessor repossessed, or the lessee surrendered, the leased property; plus

(B) any unpaid rent due under such lease, without acceleration, on the earlier of such dates;

(7) if such claim is the claim of an employee for damages resulting from the termination of an employment contract, such claim exceeds—

(A) the compensation provided by such contract, without acceleration, for one year following the earlier of—

(i) the date of the filing of the petition; or

(ii) the date on which the employer directed the employee to terminate, or such employee terminated, performance under such contract; plus

(B) any unpaid compensation due under such contract, without acceleration, on the earlier of such dates;

(8) such claim results from a reduction, due to late payment, in the amount of an otherwise applicable credit available to the debtor in connection with an employment tax on wages, salaries, or commissions earned from the debtor; or

(9) proof of such claim is not timely filed, except to the extent tardily filed as permitted under paragraph (1), (2), or (3) of section 726(a) of this title or under the Federal Rules of Bankruptcy Procedure, except that a claim of a governmental unit shall be timely filed if it is filed before 180 days after the date of the order for relief or such later time as the Federal Rules of Bankruptcy Procedure may provide, and except that in a case under chapter 13, a claim of a governmental unit for a tax with respect to a return filed under section 1308 shall be timely if the claim is filed on or before the date that is 60 days after the date on which such return was filed as required.

(c) There shall be estimated for purpose of allowance under this section—

(1) any contingent or unliquidated claim, the fixing or liquidation of which, as the case may be, would unduly delay the administration of the case; or

(2) any right to payment arising from a right to an equitable remedy for breach of performance.

(d) Notwithstanding subsections (a) and (b) of this section, the court shall disallow any claim of any entity from which property is recoverable under section 542, 543, 550, or 553 of this title or that is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of this title, unless such entity or transferee has paid the amount, or turned over any such property, for which such entity or transferee is liable under section 522(i), 542, 543, 550, or 553 of this title.

(e)(1) Notwithstanding subsections (a), (b), and (c) of this section and paragraph (2) of this subsection, the court shall disallow any claim for reimbursement or contribution of an entity that

is liable with the debtor on or has secured the claim of a creditor, to the extent that—

(A) such creditor's claim against the estate is disallowed;

(B) such claim for reimbursement or contribution is contingent as of the time of allowance or disallowance of such claim for reimbursement or contribution; or

(C) such entity asserts a right of subrogation to the rights of such creditor under section 509 of this title.

(2) A claim for reimbursement or contribution of such an entity that becomes fixed after the commencement of the case shall be determined, and shall be allowed under subsection (a), (b), or (c) of this section, or disallowed under subsection (d) of this section, the same as if such claim had become fixed before the date of the filing of the petition.

(f) In an involuntary case, a claim arising in the ordinary course of the debtor's business or financial affairs after the commencement of the case but before the earlier of the appointment of a trustee and the order for relief shall be determined as of the date such claim arises, and shall be allowed under subsection (a), (b), or (c) of this section or disallowed under subsection (d) or (e) of this section, the same as if such claim had arisen before the date of the filing of the petition.

(g)(1) A claim arising from the rejection, under section 365 of this title or under a plan under chapter 9, 11, 12, or 13 of this title, of an executory contract or unexpired lease of the debtor that has not been assumed shall be determined, and shall be allowed under subsection (a), (b), or (c) of this section or disallowed under subsection (d) or (e) of this section, the same as if such claim had arisen before the date of the filing of the petition.

(2) A claim for damages calculated in accordance with section 562 shall be allowed under subsection (a), (b), or (c), or disallowed under subsection (d) or (e), as if such claim had arisen before the date of the filing of the petition.

(h) A claim arising from the recovery of property under section 522, 550, or 553 of this title shall be determined, and shall be allowed under subsection (a), (b), or (c) of this section, or disallowed under subsection (d) or (e) of this section, the same as if such claim had arisen before the date of the filing of the petition.

(i) A claim that does not arise until after the commencement of the case for a tax entitled to priority under section 507(a)(8) of this title shall be determined, and shall be allowed under subsection (a), (b), or (c) of this section, or disallowed under subsection (d) or (e) of this section, the same as if such claim had arisen before the date of the filing of the petition.

(j) A claim that has been allowed or disallowed may be reconsidered for cause. A reconsidered claim may be allowed or disallowed according to the equities of the case. Reconsideration of a claim under this subsection does not affect the validity of any payment or transfer to the estate made to a holder of an allowed claim on account of such allowed claim that is not reconsidered, but if a reconsidered claim is allowed and is of the same class as such holder's claim, such holder may not receive any additional payment

or transfer from the estate on account of such holder's allowed claim until the holder of such reconsidered and allowed claim receives payment on account of such claim proportionate in value to that already received by such other holder. This subsection does not alter or modify the trustee's right to recover from a creditor any excess payment or transfer made to such creditor.

(k)(1) The court, on the motion of the debtor and after a hearing, may reduce a claim filed under this section based in whole on an unsecured consumer debt by not more than 20 percent of the claim, if—

(A) the claim was filed by a creditor who unreasonably refused to negotiate a reasonable alternative repayment schedule proposed on behalf of the debtor by an approved nonprofit budget and credit counseling agency described in section 111;

(B) the offer of the debtor under subparagraph (A)—

(i) was made at least 60 days before the date of the filing of the petition; and

(ii) provided for payment of at least 60 percent of the amount of the debt over a period not to exceed the repayment period of the loan, or a reasonable extension thereof; and

(C) no part of the debt under the alternative repayment schedule is nondischargeable.

(2) The debtor shall have the burden of proving, by clear and convincing evidence, that—

(A) the creditor unreasonably refused to consider the debtor's proposal; and

(B) the proposed alternative repayment schedule was made prior to expiration of the 60-day period specified in paragraph (1)(B)(i).

(Pub. L. 95–598, Nov. 6, 1978, 92 Stat. 2579; Pub. L. 98–353, title III, § 445, July 10, 1984, 98 Stat. 373; Pub. L. 99–554, title II, §§ 257(j), 283(f), Oct. 27, 1986, 100 Stat. 3115, 3117; Pub. L. 103–394, title II, § 213(a), title III, § 304(h)(1), Oct. 22, 1994, 108 Stat. 4125, 4134; Pub. L. 109–8, title II, § 201(a), title VII, § 716(d), title IX, § 910(b), Apr. 20, 2005, 119 Stat. 42, 130, 184.)

HISTORICAL AND REVISION NOTES

LEGISLATIVE STATEMENTS

The House amendment adopts a compromise position in section 502(a) between H.R. 8200, as passed by the House, and the Senate amendment. Section 502(a) has been modified to make clear that a party in interest includes a creditor of a partner in a partnership that is a debtor under chapter 7. Since the trustee of the partnership is given an absolute claim against the estate of each general partner under section 723(c), creditors of the partner must have standing to object to claims against the partnership at the partnership level because no opportunity will be afforded at the partner's level for such objection.

The House amendment contains a provision in section 502(b)(1) that requires disallowance of a claim to the extent that such claim is unenforceable against the debtor and unenforceable against property of the debtor. This is intended to result in the disallowance of any claim for deficiency by an undersecured creditor on a non-recourse loan or under a State antideficiency law, special provision for which is made in section 1111, since neither the debtor personally, nor the property of the debtor is liable for such a deficiency. Similarly claims for usurious interest or which could be barred by an agreement between the creditor and the debtor would be disallowed.

Section 502(b)(7)(A) represents a compromise between the House bill and the Senate amendment. The House amendment takes the provision in H.R. 8200 as passed by the House of Representatives but increases the percentage from 10 to 15 percent.

As used in section 502(b)(7), the phrase "lease of real property" applies only to a "true" or "bona fide" lease and does not apply to financing leases of real property or interests therein, or to leases of such property which are intended as security.

Historically, the limitation on allowable claims of lessors of real property was based on two considerations. First, the amount of the lessor's damages on breach of a real estate lease was considered contingent and difficult to prove. Partly for this reason, claims of a lessor of real estate were not provable prior to the 1934 amendments, to the Bankruptcy Act [former title 11]. Second, in a true lease of real property, the lessor retains all risks and benefits as to the value of the real estate at the termination of the lease. Historically, it was, therefore, considered equitable to limit the claims of real estate lessor.

However, these considerations are not present in "lease financing" transactions where, in substance, the "lease" involves a sale of the real estate and the rental payments are in substance the payment of principal and interest on a secured loan or sale. In a financing lease the lessor is essentially a secured or unsecured creditor (depending upon whether his interest is perfected or not) of the debtor, and the lessor's claim should not be subject to the 502(b)(7) limitation. Financing "leases" are in substance installment sales or loans. The "lessors" are essentially sellers or lenders and should be treated as such for purposes of the bankruptcy law.

Whether a "lease" is true or bona fide lease or, in the alternative a financing "lease" or a lease intended as security, depends upon the circumstances of each case. The distinction between a true lease and a financing transaction is based upon the economic substance of the transaction and not, for example, upon the locus of title, the form of the transaction or the fact that the transaction is denominated as a "lease." The fact that the lessee, upon compliance with the terms of the lease, becomes or has the option to become the owner of the leased property for no additional consideration or for nominal consideration indicates that the transaction is a financing lease or lease intended as security. In such cases, the lessor has no substantial interest in the leased property at the expiration of the lease term. In addition, the fact that the lessee assumes and discharges substantially all the risks and obligations ordinarily attributed to the outright ownership of the property is more indicative of a financing transaction than of a true lease. The rental payments in such cases are in substance payments of principal and interest either on a loan secured by the leased real property or on the purchase of the leased real property. See, e.g., Financial Accounting Standards Board Statement No. 13 and SEC Reg. S–X, 17 C.F.R. sec. 210.3–16(q) (1977); cf. First National Bank of Chicago v. Irving Trust Co., 74 F.2d 263 (2nd Cir. 1934); and Albenda and Lief, "Net Lease Financing Transactions Under the Proposed Bankruptcy Act of 1973," 30 Business Lawyer, 713 (1975).

Section 502(c) of the House amendment presents a compromise between similar provisions contained in the House bill and the Senate amendment. The compromise language is consistent with an amendment to the definition of "claim" in section 104(4)(B) of the House amendment and requires estimation of any right to an equitable remedy for breach of performance if such breach gives rise to a right to payment. To the extent language in the House and Senate reports indicate otherwise, such language is expressly overruled.

Section 502(e) of the House amendment contains language modifying a similar section in the House bill and Senate amendment. Section 502(e)(1) states the general rule requiring the court to disallow any claim for reimbursement or contribution of an entity that is liable with the debtor on, or that has secured, the claim of a

creditor to any extent that the creditor's claim against the estate is disallowed. This adopts a policy that a surety's claim for reimbursement or contribution is entitled to no better status than the claim of the creditor assured by such surety. Section 502(e)(1)(B) alternatively disallows any claim for reimbursement or contribution by a surety to the extent such claim is contingent as of the time of allowance. Section 502(e)(2) is clear that to the extent a claim for reimbursement or contribution becomes fixed after the commencement of the case that it is to be considered a prepetition claim for purposes of allowance. The combined effect of sections 502(e)(1)(B) and 502(e)(2) is that a surety or codebtor is generally permitted a claim for reimbursement or contribution to the extent the surety or codebtor has paid the assured party at the time of allowance. Section 502(e)(1)(C) alternatively indicates that a claim for reimbursement or contribution of a surety or codebtor is disallowed to the extent the surety or codebtor requests subrogation under section 509 with respect to the rights of the assured party. Thus, the surety or codebtor has a choice; to the extent a claim for contribution or reimbursement would be advantageous, such as in the case where such a claim is secured, a surety or codebtor may opt for reimbursement or contribution under section 502(e). On the other hand, to the extent the claim for such surety or codebtor by way of subrogation is more advantageous, such as where such claim is secured, the surety may elect subrogation under section 509.

The section changes current law by making the election identical in all other respects. To the extent a creditor's claim is satisfied by a surety or codebtor, other creditors should not benefit by the surety's inability to file a claim against the estate merely because such surety or codebtor has failed to pay such creditor's claim in full. On the other hand, to the extent the creditor's claim against the estate is otherwise disallowed, the surety or codebtor should not be entitled to increased rights by way of reimbursement or contribution, to the detriment of competing claims of other unsecured creditors, than would be realized by way of subrogation.

While the foregoing scheme is equitable with respect to other unsecured creditors of the debtor, it is desirable to preserve present law to the extent that a surety or codebtor is not permitted to compete with the creditor he has assured until the assured party's claim has paid in full. Accordingly, section 509(c) of the House amendment subordinates both a claim by way of subrogation or a claim for reimbursement or contribution of a surety or codebtor to the claim of the assured party until the assured party's claim is paid in full.

Section 502(h) of the House amendment expands similar provisions contained in the House bill and the Senate amendment to indicate that any claim arising from the recovery of property under section 522(i), 550, or 553 shall be determined as though it were a prepetition claim.

Section 502(i) of the House amendment adopts a provision contained in section 502(j) of H.R. 8200 as passed by the House but that was not contained in the Senate amendment.

Section 502(i) of H.R. 8200 as passed by the House, but was not included in the Senate amendment, is deleted as a matter to be left to the bankruptcy tax bill next year.

The House amendment deletes section 502(i) of the Senate bill but adopts the policy of that section to a limited extent for confirmation of a plan of reorganization in section 1111(b) of the House amendment.

Section 502(j) of the House amendment is new. The provision codifies section 57k of the Bankruptcy Act [section 93(k) of former title 11].

Allowance of Claims or Interest: The House amendment adopts section 502(b)(9) of the House bill which disallows any tax claim resulting from a reduction of the Federal Unemployment Tax Act (FUTA) credit (sec. 3302 of the Internal Revenue Code [26 U.S.C. 3302]) on account of a tardy contribution to a State unem-

ployment fund if the contribution is attributable to ways or other compensation paid by the debtor before bankruptcy. The Senate amendment allowed this reduction, but would have subordinated it to other claims in the distribution of the estate's assets by treating it as a punitive (nonpecuniary loss) penalty. The House amendment would also not bar reduction of the FUTA credit on account of a trustee's late payment of a contribution to a State unemployment fund if the contribution was attributable to a trustee's payment of compensation earned from the estate.

Section 511 of the Senate amendment is deleted. Its substance is adopted in section 502(b)(9) of the House amendment which reflects an identical provision contained in H.R. 8200 as passed by the House.

SENATE REPORT NO. 95–989

A proof of claim or interest is prima facie evidence of the claim or interest. Thus, it is allowed under subsection (a) unless a party in interest objects. The rules and case law will determine who is a party in interest for purposes of objection to allowance. The case law is well developed on this subject today. As a result of the change in the liability of a general partner's estate for the debts of this partnership, see proposed 11 U.S.C. 723, the category of persons that are parties in interest in the partnership case will be expanded to include a creditor of a partner against whose estate the trustee of the partnership estate may proceed under proposed 11 U.S.C. 723(c).

Subsection (b) prescribes the grounds on which a claim may be disallowed. The court will apply these standards if there is an objection to a proof of claim. The burden of proof on the issue of allowance is left to the Rules of Bankruptcy Procedure. Under the current chapter XIII rules, a creditor is required to prove that his claim is free from usury, rule 13–301. It is expected that the rules will make similar provision for both liquidation and individual repayment plan cases. See Bankruptcy Act § 656(b) [section 1056(b) of former title 11]; H.R. 31, 94th Cong., 1st sess., sec. 6–104(a) (1975).

Paragraph (1) requires disallowance if the claim is unenforceable against the debtor for any reason (such as usury, unconscionability, or failure of consideration) other than because it is contingent or unmatured. All such contingent or unmatured claims are to be liquidated by the bankruptcy court in order to afford the debtor complete bankruptcy relief; these claims are generally not provable under present law.

Paragraph (2) requires disallowance to the extent that the claim is for unmatured interest as of the date of the petition. Whether interest is matured or unmatured on the date of bankruptcy is to be determined without reference to any ipso facto or bankruptcy clause in the agreement creating the claim. Interest disallowed under this paragraph includes postpetition interest that is not yet due and payable, and any portion of prepaid interest that represents an original discounting of the claim, yet that would not have been earned on the date of bankruptcy. For example, a claim on a $1,000 note issued the day before bankruptcy would only be allowed to the extent of the cash actually advanced. If the original discount was 10 percent so that the cash advanced was only $900, then notwithstanding the face amount of note, only $900 would be allowed. If $900 was advanced under the note some time before bankruptcy, the interest component of the note would have to be prorated and disallowed to the extent it was for interest after the commencement of the case.

Section 502(b) thus contains two principles of present law. First, interest stops accruing at the date of the filing of the petition, because any claim for unmatured interest is disallowed under this paragraph. Second, bankruptcy operates as the acceleration of the principal amount of all claims against the debtor. One unarticulated reason for this is that the discounting factor for claims after the commencement of the case is equivalent to contractual interest rate on the claim. Thus, this paragraph does not cause disallowance of claims that have not been discounted to a present value

because of the irrebuttable presumption that the discounting rate and the contractual interest rate (even a zero interest rate) are equivalent.

Paragraph (3) requires disallowance of a claim to the extent that the creditor may offset the claim against a debt owing to the debtor. This will prevent double recovery, and permit the claim to be filed only for the balance due. This follows section 68 of the Bankruptcy Act [section 108 of former title 11].

Paragraph (4) requires disallowance of a property tax claim to the extent that the tax due exceeds the value of the property. This too follows current law to the extent the property tax is ad valorem.

Paragraph (5) prevents overreaching by the debtor's attorneys and concealing of assets by debtors. It permits the court to examine the claim of a debtor's attorney independently of any other provision of this subsection, and to disallow it to the extent that it exceeds the reasonable value of the attorneys' services.

Postpetition alimony, maintenance or support claims are disallowed under paragraph (6). They are to be paid from the debtor's postpetition property, because the claims are nondischargeable.

Paragraph (7), derived from current law, limits the damages allowable to a landlord of the debtor. The history of this provision is set out at length in *Oldden v. Tonto Realty Co.*, 143 F.2d 916 (2d Cir. 1944). It is designed to compensate the landlord for his loss while not permitting a claim so large (based on a long-term lease) as to prevent other general unsecured creditors from recovering a dividend from the estate. The damages a landlord may assert from termination of a lease are limited to the rent reserved for the greater of one year or ten percent of the remaining lease term, not to exceed three years, after the earlier of the date of the filing of the petition and the date of surrender or repossession in a chapter 7 case and 3 years lease payments in a chapter 9, 11, or 13 case. The sliding scale formula for chapter 7 cases is new and designed to protect the long-term lessor. This subsection does not apply to limit administrative expense claims for use of the leased premises to which the landlord is otherwise entitled.

This paragraph will not overrule *Oldden*, or the proposition for which it has been read to stand: To the extent that a landlord has a security deposit in excess of the amount of his claim allowed under this paragraph, the excess comes into the estate. Moreover, his allowed claim is for his total damages, as limited by this paragraph. By virtue of proposed 11 U.S.C. 506(a) and 506(d), the claim will be divided into a secured portion and an unsecured portion in those cases in which the deposit that the landlord holds is less than his damages. As under *Oldden*, he will not be permitted to offset his actual damages against his security deposit and then claim for the balance under this paragraph. Rather, his security deposit will be applied in satisfaction of the claim that is allowed under this paragraph.

As used in section 502(b)(7), the phrase "lease of real property" applies only to a "true" or "bona fide" lease and does not apply to financing leases of real property or interests therein, or to leases of such property which are intended as security.

Historically, the limitation on allowable claims of lessors of real property was based on two considerations. First, the amount of the lessors damages on breach of a real estate lease was considered contingent and difficult to prove. Partly for this reason, claims of a lessor of real estate were not provable prior to the 1934 amendments to the Bankruptcy Act [former title 11]. Second, in a true lease of real property, the lessor retains all risk and benefits as to the value of the real estate at the termination of the lease. Historically, it was, therefore, considered equitable to limit the claims of a real estate lessor.

However, these considerations are not present in "lease financing" transactions where, in substance, the "lease" involves a sale of the real estate and the rental payments are in substance the payment of principal and interest on a secured loan or sale. In a financing

TITLE 11—BANKRUPTCY

lease the lessor is essentially a secured or unsecured creditor (depending upon whether his interest is perfected or not) of the debtor, and the lessor's claim should not be subject to the 502(b)(7) limitation. Financing "leases" are in substance installment sales or loans. The "lessors" are essentially sellers or lenders and should be treated as such for purposes of the bankruptcy law.

Whether a "lease" is true or bona fide lease or, in the alternative, a financing "lease" or a lease intended as security, depends upon the circumstances of each case. The distinction between a true lease and a financing transaction is based upon the economic substance of the transaction and not, for example, upon the locus of title, the form of the transaction or the fact that the transaction is denominated as a "lease". The fact that the lessee, upon compliance with the terms of the lease, becomes or has the option to become the owner of the leased property for no additional consideration or for nominal consideration indicates that the transaction is a financing lease or lease intended as security. In such cases, the lessor has no substantial interest in the leased property at the expiration of the lease term. In addition, the fact that the lessee assumes and discharges substantially all the risks and obligations ordinarily attributed to the outright ownership of the property is more indicative of a financing transaction than of a true lease. The rental payments in such cases are in substance payments of principal and interest either on a loan secured by the leased real property or on the purchase of the leased real property. See, e. g., Financial Accounting Standards Board Statement No. 13 and SEC Reg. S–X, 17 C.F.R. sec. 210.3–16(q) (1977); cf. *First National Bank of Chicago v. Irving Trust Co.*, 74 F.2d 263 (2nd Cir. 1934); and Albenda and Lief, "Net Lease Financing Transactions Under the Proposed Bankruptcy Act of 1973," 30 Business Lawyer, 713 (1975).

Paragraph (8) is new. It tracks the landlord limitation on damages provision in paragraph (7) for damages resulting from the breach by the debtor of an employment contract, but limits the recovery to the compensation reserved under an employment contract for the year following the earlier of the date of the petition and the termination of employment.

Subsection (c) requires the estimation of any claim liquidation of which would unduly delay the closing of the estate, such as a contingent claim, or any claim for which applicable law provides only an equitable remedy, such as specific performance. This subsection requires that all claims against the debtor be converted into dollar amounts.

Subsection (d) is derived from present law. It requires disallowance of a claim of a transferee of a voidable transfer in toto if the transferee has not paid the amount or turned over the property received as required under the sections under which the transferee's liability arises.

Subsection (e) also derived from present law, requires disallowance of the claim for reimbursement or contribution of a codebtor, surety or guarantor of an obligation of the debtor, unless the claim of the creditor on such obligation has been paid in full. The provision prevents competition between a creditor and his guarantor for the limited proceeds in the estate.

Subsection (f) specifies that "involuntary gap" creditors receive the same treatment as prepetition creditors. Under the allowance provisions of this subsection, knowledge of the commencement of the case will be irrelevant. The claim is to be allowed "the same as if such claim had arisen before the date of the filing of the petition." Under voluntary petition, proposed 11 U.S.C. 303(f), creditors must be permitted to deal with the debtor and be assured that their claims will be paid. For purposes of this subsection, "creditors" include governmental units holding claims for tax liabilities incurred during the period after the petition is filed and before the earlier of the order for relief or appointment of a trustee.

Subsection (g) gives entities injured by the rejection of an executory contract or unexpired lease, either under section 365 or under a plan or reorganization, a prepetition claim for any resulting damages, and requires that the injured entity be treated as a prepetition creditor with respect to that claim.

Subsection (h) gives a transferee of a setoff that is recovered by one trustee a prepetition claim for the amount recovered.

Subsection (i) answers the nonrecourse loan problem and gives the creditor an unsecured claim for the difference between the value of the collateral and the debt in response to the decision in *Great National Life Ins. Co. v. Pine Gate Associates, Ltd.*, Bankruptcy Case No. B75–4345A (N.D.Ga. Sept. 16, 1977).

The bill, as reported, deletes a provision in the bill as originally introduced (former sec. 502(i)) requiring a tax authority to file a proof of claim for recapture of an investment credit where, during title 11 proceedings, the trustee sells or otherwise disposes of property before the title 11 case began. The tax authority should not be required to submit a formal claim for a taxable event (a sale or other disposition of the asset) of whose occurrence the trustee necessarily knows better than the taxing authority. For procedural purposes, the recapture of investment credit is to be treated as an administrative expense, as to which only a request for payment is required.

HOUSE REPORT NO. 95–595

Paragraph (9) [of subsec. (b)] requires disallowance of certain employment tax claims. These relate to a Federal tax credit for State unemployment insurance taxes which is disallowed if the State tax is paid late. This paragraph disallows the Federal claim for the tax the same as if the credit had been allowed in full on the Federal return.

#### REFERENCES IN TEXT

The Federal Rules of Bankruptcy Procedure, referred to in subsec. (b)(9), are set out in the Appendix to this title.

#### AMENDMENTS

2005—Subsec. (b)(9). Pub. L. 109–8, §716(d), inserted '', and except that in a case under chapter 13, a claim of a governmental unit for a tax with respect to a return filed under section 1308 shall be timely if the claim is filed on or before the date that is 60 days after the date on which such return was filed as required'' before period at end.

Subsec. (g). Pub. L. 109–8, §910(b), designated existing provisions as par. (1) and added par. (2).

Subsec. (k). Pub. L. 109–8, §201(a), added subsec. (k).

1994—Subsec. (b)(9). Pub. L. 103–394, §213(a), added par. (9).

Subsec. (i). Pub. L. 103–394, §304(h)(1), substituted "507(a)(8)" for "507(a)(7)".

1986—Subsec. (b)(6)(A)(ii). Pub. L. 99–554, §283(f)(1), substituted "repossessed" for "repossesed".

Subsec. (g). Pub. L. 99–554, §257(j), inserted reference to chapter 12.

Subsec. (i). Pub. L. 99–554, §283(f)(2), substituted "507(a)(7)" for "507(a)(6)".

1984—Subsec. (a). Pub. L. 98–353, §445(a), inserted "general" before "partner".

Subsec. (b). Pub. L. 98–353, §445(b)(1), (2), in provisions preceding par. (1), inserted "(e)(2)," after "subsections" and "in lawful currency of the United States" after "claim".

Subsec. (b)(1). Pub. L. 98–353, §445(b)(3), substituted "and" for ", and unenforceable against".

Subsec. (b)(3). Pub. L. 98–353, §445(b)(5), inserted "the" after "exceeds".

Pub. L. 98–353, §445(b)(4), struck out par. (3) "such claim may be offset under section 553 of this title against a debt owing to the debtor;", and redesignated par. (4) as (3).

Subsec. (b)(4). Pub. L. 98–353, §445(b)(4), redesignated par. (5) as (4). Former par. (4) redesignated (3).

Subsec. (b)(5). Pub. L. 98–353, §445(b)(6), substituted "such claim" for "the claim" and struck out the comma after "petition".

Pub. L. 98–353, §445(b)(4), redesignated par. (6) as (5). Former par. (5) redesignated (4).

Subsec. (b)(6). Pub. L. 98–353, §445(b)(4), redesignated par. (7) as (6). Former par. (6) redesignated (5).

Subsec. (b)(7). Pub. L. 98–353, §445(b)(7)(A), inserted "the claim of an employee" before "for damages".

Pub. L. 98–353, §445(b)(4), redesignated par. (8) as (7). Former par. (7) redesignated (6).

Subsec. (b)(7)(A)(i). Pub. L. 98–353, §445(b)(7)(B), substituted "or" for "and".

Subsec. (b)(7)(B). Pub. L. 98–353, §445(b)(7)(C), (D), substituted "any" for "the" and inserted a comma after "such contract".

Subsec. (b)(8), (9). Pub. L. 98–353, §445(b)(4), redesignated par. (9) as (8). Former par. (8) redesignated (7).

Subsec. (c)(1). Pub. L. 98–353, §445(c)(1), inserted "the" before "fixing" and substituted "administration" for "closing".

Subsec. (c)(2). Pub. L. 98–353, §445(c)(2), inserted "right to payment arising from a" after "any" and struck out "if such breach gives rise to a right to payment" after "breach of performance".

Subsec. (e)(1). Pub. L. 98–353, §445(d)(1), (2), in provisions preceding subpar. (A) substituted ", (b), and (c)" for "and (b)" and substituted "or has secured" for ", or has secured,".

Subsec. (e)(1)(B). Pub. L. 98–353, §445(d)(3), inserted "or disallowance" after "allowance".

Subsec. (e)(1)(C). Pub. L. 98–353, §445(d)(4), substituted "asserts a right of subrogation to the rights of such creditor" for "requests subrogation" and struck out "to the rights of such creditor" after "of this title".

Subsec. (h). Pub. L. 98–353, §445(e), substituted "522" for "522(i)".

Subsec. (j). Pub. L. 98–353, §445(f), amended subsec. (j) generally, inserting provisions relating to reconsideration of a disallowed claim, and provisions relating to reconsideration of a claim under this subsection.

EFFECTIVE DATE OF 2005 AMENDMENT

Amendment by Pub. L. 109–8 effective 180 days after Apr. 20, 2005, and not applicable with respect to cases commenced under this title before such effective date, except as otherwise provided, see section 1501 of Pub. L. 109–8, set out as a note under section 101 of this title.

EFFECTIVE DATE OF 1994 AMENDMENT

Amendment by Pub. L. 103–394 effective Oct. 22, 1994, and not applicable with respect to cases commenced under this title before Oct. 22, 1994, see section 702 of Pub. L. 103–394, set out as a note under section 101 of this title.

EFFECTIVE DATE OF 1986 AMENDMENT

Amendment by section 257 of Pub. L. 99–554 effective 30 days after Oct. 27, 1986, but not applicable to cases commenced under this title before that date, see section 302(a), (c)(1) of Pub. L. 99–554, set out as a note under section 581 of Title 28, Judiciary and Judicial Procedure.

Amendment by section 283 of Pub. L. 99–554 effective 30 days after Oct. 27, 1986, see section 302(a) of Pub. L. 99–554.

EFFECTIVE DATE OF 1984 AMENDMENT

Amendment by Pub. L. 98–353 effective with respect to cases filed 90 days after July 10, 1984, see section 552(a) of Pub. L. 98–353, set out as a note under section 101 of this title.

§ 503. Allowance of administrative expenses

(a) An entity may timely file a request for payment of an administrative expense, or may tardily file such request if permitted by the court for cause.

(b) After notice and a hearing, there shall be allowed administrative expenses, other than

claims allowed under section 502(f) of this title, including—

(1)(A) the actual, necessary costs and expenses of preserving the estate including—

(i) wages, salaries, and commissions for services rendered after the commencement of the case; and

(ii) wages and benefits awarded pursuant to a judicial proceeding or a proceeding of the National Labor Relations Board as back pay attributable to any period of time occurring after commencement of the case under this title, as a result of a violation of Federal or State law by the debtor, without regard to the time of the occurrence of unlawful conduct on which such award is based or to whether any services were rendered, if the court determines that payment of wages and benefits by reason of the operation of this clause will not substantially increase the probability of layoff or termination of current employees, or of nonpayment of domestic support obligations, during the case under this title;

(B) any tax—

(i) incurred by the estate, whether secured or unsecured, including property taxes for which liability is in rem, in personam, or both, except a tax of a kind specified in section 507(a)(8) of this title; or

(ii) attributable to an excessive allowance of a tentative carryback adjustment that the estate received, whether the taxable year to which such adjustment relates ended before or after the commencement of the case;

(C) any fine, penalty, or reduction in credit relating to a tax of a kind specified in subparagraph (B) of this paragraph; and

(D) notwithstanding the requirements of subsection (a), a governmental unit shall not be required to file a request for the payment of an expense described in subparagraph (B) or (C), as a condition of its being an allowed administrative expense;

(2) compensation and reimbursement awarded under section 330(a) of this title;

(3) the actual, necessary expenses, other than compensation and reimbursement specified in paragraph (4) of this subsection, incurred by—

(A) a creditor that files a petition under section 303 of this title;

(B) a creditor that recovers, after the court's approval, for the benefit of the estate any property transferred or concealed by the debtor;

(C) a creditor in connection with the prosecution of a criminal offense relating to the case or to the business or property of the debtor;

(D) a creditor, an indenture trustee, an equity security holder, or a committee representing creditors or equity security holders other than a committee appointed under section 1102 of this title, in making a substantial contribution in a case under chapter 9 or 11 of this title;

(E) a custodian superseded under section 543 of this title, and compensation for the services of such custodian; or

## 11 U.S.C. § 503

Pub. L. 98–353, §445(b)(4), redesignated par. (6) as (5). Former par. (5) redesignated (4).

Subsec. (b)(6). Pub. L. 98–353, §445(b)(4), redesignated par. (7) as (6). Former par. (6) redesignated (5).

Subsec. (b)(7). Pub. L. 98–353, §445(b)(7)(A), inserted "the claim of an employee" before "for damages".

Pub. L. 98–353, §445(b)(4), redesignated par. (8) as (7). Former par. (7) redesignated (6).

Subsec. (b)(7)(A)(i). Pub. L. 98–353, §445(b)(7)(B), substituted "or" for "and".

Subsec. (b)(7)(B). Pub. L. 98–353, §445(b)(7)(C), (D), substituted "any" for "the" and inserted a comma after "such contract".

Subsec. (b)(8), (9). Pub. L. 98–353, §445(b)(4), redesignated par. (9) as (8). Former par. (8) redesignated (7).

Subsec. (c)(1). Pub. L. 98–353, §445(c)(1), inserted "the" before "fixing" and substituted "administration" for "closing".

Subsec. (c)(2). Pub. L. 98–353, §445(c)(2), inserted "right to payment arising from a" after "any" and struck out "if such breach gives rise to a right to payment" after "breach of performance".

Subsec. (e)(1). Pub. L. 98–353, §445(d)(1), (2), in provisions preceding subpar. (A) substituted ", (b), and (c)" for "and (b)" and substituted "or has secured" for ", or has secured,".

Subsec. (e)(1)(B). Pub. L. 98–353, §445(d)(3), inserted "or disallowance" after "allowance".

Subsec. (e)(1)(C). Pub. L. 98–353, §445(d)(4), substituted "asserts a right of subrogation to the rights of such creditor" for "requests subrogation" and struck out "to the rights of such creditor" after "of this title".

Subsec. (h). Pub. L. 98–353, §445(e), substituted "522" for "522(i)".

Subsec. (j). Pub. L. 98–353, §445(f), amended subsec. (j) generally, inserting provisions relating to reconsideration of a disallowed claim, and provisions relating to reconsideration of a claim under this subsection.

EFFECTIVE DATE OF 2005 AMENDMENT

Amendment by Pub. L. 109–8 effective 180 days after Apr. 20, 2005, and not applicable with respect to cases commenced under this title before such effective date, except as otherwise provided, see section 1501 of Pub. L. 109–8, set out as a note under section 101 of this title.

EFFECTIVE DATE OF 1994 AMENDMENT

Amendment by Pub. L. 103–394 effective Oct. 22, 1994, and not applicable with respect to cases commenced under this title before Oct. 22, 1994, see section 702 of Pub. L. 103–394, set out as a note under section 101 of this title.

EFFECTIVE DATE OF 1986 AMENDMENT

Amendment by section 257 of Pub. L. 99–554 effective 30 days after Oct. 27, 1986, but not applicable to cases commenced under this title before that date, see section 302(a), (c)(1) of Pub. L. 99–554, set out as a note under section 581 of Title 28, Judiciary and Judicial Procedure.

Amendment by section 283 of Pub. L. 99–554 effective 30 days after Oct. 27, 1986, see section 302(a) of Pub. L. 99–554.

EFFECTIVE DATE OF 1984 AMENDMENT

Amendment by Pub. L. 98–353 effective with respect to cases filed 90 days after July 10, 1984, see section 552(a) of Pub. L. 98–353, set out as a note under section 101 of this title.

## § 503. Allowance of administrative expenses

(a) An entity may timely file a request for payment of an administrative expense, or may tardily file such request if permitted by the court for cause.

(b) After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including—

(1)(A) the actual, necessary costs and expenses of preserving the estate including—

(i) wages, salaries, and commissions for services rendered after the commencement of the case; and

(ii) wages and benefits awarded pursuant to a judicial proceeding or a proceeding of the National Labor Relations Board as back pay attributable to any period of time occurring after commencement of the case under this title, as a result of a violation of Federal or State law by the debtor, without regard to the time of the occurrence of unlawful conduct on which such award is based or to whether any services were rendered, if the court determines that payment of wages and benefits by reason of the operation of this clause will not substantially increase the probability of layoff or termination of current employees, or of nonpayment of domestic support obligations, during the case under this title;

(B) any tax—

(i) incurred by the estate, whether secured or unsecured, including property taxes for which liability is in rem, in personam, or both, except a tax of a kind specified in section 507(a)(8) of this title; or

(ii) attributable to an excessive allowance of a tentative carryback adjustment that the estate received, whether the taxable year to which such adjustment relates ended before or after the commencement of the case;

(C) any fine, penalty, or reduction in credit relating to a tax of a kind specified in subparagraph (B) of this paragraph; and

(D) notwithstanding the requirements of subsection (a), a governmental unit shall not be required to file a request for the payment of an expense described in subparagraph (B) or (C), as a condition of its being an allowed administrative expense;

(2) compensation and reimbursement awarded under section 330(a) of this title;

(3) the actual, necessary expenses, other than compensation and reimbursement specified in paragraph (4) of this subsection, incurred by—

(A) a creditor that files a petition under section 303 of this title;

(B) a creditor that recovers, after the court's approval, for the benefit of the estate any property transferred or concealed by the debtor;

(C) a creditor in connection with the prosecution of a criminal offense relating to the case or to the business or property of the debtor;

(D) a creditor, an indenture trustee, an equity security holder, or a committee representing creditors or equity security holders other than a committee appointed under section 1102 of this title, in making a substantial contribution in a case under chapter 9 or 11 of this title;

(E) a custodian superseded under section 543 of this title, and compensation for the services of such custodian; or

(F) a member of a committee appointed under section 1102 of this title, if such expenses are incurred in the performance of the duties of such committee;

(4) reasonable compensation for professional services rendered by an attorney or an accountant of an entity whose expense is allowable under subparagraph (A), (B), (C), (D), or (E) of paragraph (3) of this subsection, based on the time, the nature, the extent, and the value of such services, and the cost of comparable services other than in a case under this title, and reimbursement for actual, necessary expenses incurred by such attorney or accountant;

(5) reasonable compensation for services rendered by an indenture trustee in making a substantial contribution in a case under chapter 9 or 11 of this title, based on the time, the nature, the extent, and the value of such services, and the cost of comparable services other than in a case under this title;

(6) the fees and mileage payable under chapter 119 of title 28;

(7) with respect to a nonresidential real property lease previously assumed under section 365, and subsequently rejected, a sum equal to all monetary obligations due, excluding those arising from or relating to a failure to operate or a penalty provision, for the period of 2 years following the later of the rejection date or the date of actual turnover of the premises, without reduction or setoff for any reason whatsoever except for sums actually received or to be received from an entity other than the debtor, and the claim for remaining sums due for the balance of the term of the lease shall be a claim under section 502(b)(6);

(8) the actual, necessary costs and expenses of closing a health care business incurred by a trustee or by a Federal agency (as defined in section 551(1) of title 5) or a department or agency of a State or political subdivision thereof, including any cost or expense incurred—

(A) in disposing of patient records in accordance with section 351; or

(B) in connection with transferring patients from the health care business that is in the process of being closed to another health care business; and

(9) the value of any goods received by the debtor within 20 days before the date of commencement of a case under this title in which the goods have been sold to the debtor in the ordinary course of such debtor's business.

(c) Notwithstanding subsection (b), there shall neither be allowed, nor paid—

(1) a transfer made to, or an obligation incurred for the benefit of, an insider of the debtor for the purpose of inducing such person to remain with the debtor's business, absent a finding by the court based on evidence in the record that—

(A) the transfer or obligation is essential to retention of the person because the individual has a bona fide job offer from another business at the same or greater rate of compensation;

(B) the services provided by the person are essential to the survival of the business; and

(C) either—

(i) the amount of the transfer made to, or obligation incurred for the benefit of, the person is not greater than an amount equal to 10 times the amount of the mean transfer or obligation of a similar kind given to nonmanagement employees for any purpose during the calendar year in which the transfer is made or the obligation is incurred; or

(ii) if no such similar transfers were made to, or obligations were incurred for the benefit of, such nonmanagement employees during such calendar year, the amount of the transfer or obligation is not greater than an amount equal to 25 percent of the amount of any similar transfer or obligation made to or incurred for the benefit of such insider for any purpose during the calendar year before the year in which such transfer is made or obligation is incurred;

(2) a severance payment to an insider of the debtor, unless—

(A) the payment is part of a program that is generally applicable to all full-time employees; and

(B) the amount of the payment is not greater than 10 times the amount of the mean severance pay given to nonmanagement employees during the calendar year in which the payment is made; or

(3) other transfers or obligations that are outside the ordinary course of business and not justified by the facts and circumstances of the case, including transfers made to, or obligations incurred for the benefit of, officers, managers, or consultants hired after the date of the filing of the petition.

(Pub. L. 95–598, Nov. 6, 1978, 92 Stat. 2581; Pub. L. 98–353, title III, §446, July 10, 1984, 98 Stat. 374; Pub. L. 99–554, title II, §283(g), Oct. 27, 1986, 100 Stat. 3117; Pub. L. 103–394, title I, §110, title II, §213(c), title III, §304(h)(2), Oct. 22, 1994, 108 Stat. 4113, 4126, 4134; Pub. L. 109–8, title III, §§329, 331, title IV, §445, title VII, §712(b), (c), title XI, §1103, title XII, §§1208, 1227(b), Apr. 20, 2005, 119 Stat. 101, 102, 117, 128, 190, 194, 200.)

HISTORICAL AND REVISION NOTES

LEGISLATIVE STATEMENTS

Section 503(a) of the House amendment represents a compromise between similar provisions in the House bill and the Senate amendment by leaving to the Rules of Bankruptcy Procedure the determination of the location at which a request for payment of an administrative expense may be filed. The preamble to section 503(b) of the House bill makes a similar change with respect to the allowance of administrative expenses.

Section 503(b)(1) adopts the approach taken in the House bill as modified by some provisions contained in the Senate amendment. The preamble to section 503(b) makes clear that none of the paragraphs of section 503(b) apply to claims or expenses of the kind specified in section 502(f) that arise in the ordinary course of the debtor's business or financial affairs and that arise during the gap between the commencement of an involuntary case and the appointment of a trustee or the order for relief, whichever first occurs. The remainder of section 503(b) represents a compromise between H.R. 8200 as passed by the House and the Senate amendments.

Section 503(b)(3)(E) codifies present law in cases such as *Randolph v. Scruggs*, 190 U.S. 533, which accords administrative expense status to services rendered by a pre-petition custodian or other party to the extent such services actually benefit the estate. Section 503(b)(4) of the House amendment conforms to the provision contained in H.R. 8200 as passed by the House and deletes language contained in the Senate amendment providing a different standard of compensation under section 330 of that amendment.

SENATE REPORT NO. 95–989

Subsection (a) of this section permits administrative expense claimants to file with the court a request for payment of an administrative expense. The Rules of Bankruptcy Procedure will specify the time, the form, and the method of such a filing.

Subsection (b) specifies the kinds of administrative expenses that are allowable in a case under the bankruptcy code. The subsection is derived mainly from section 64a(1) of the Bankruptcy Act [section 104(a)(1) of former title 11], with some changes. The actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the order for relief, and any taxes on, measured by, or withheld from such wages, salaries, and commissions, are allowable as administrative expenses.

In general, administrative expenses include taxes which the trustee incurs in administering the debtor's estate, including taxes on capital gains from sales of property by the trustee and taxes on income earned by the estate during the case. Interest on tax liabilities and certain tax penalties incurred by the trustee are also included in this first priority.

Taxes which the Internal Revenue Service may find due after giving the trustee a so-called "quickie" tax refund and later doing an audit of the refund are also payable as administrative expenses. The tax code [title 26] permits the trustee of an estate which suffers a net operating loss to carry back the loss against an earlier profit year of the estate or of the debtor and to obtain a tentative refund for the earlier year, subject, however, to a later full audit of the loss which led to the refund. The bill, in effect, requires the Internal Revenue Service to issue a tentative refund to the trustee (whether the refund was applied for by the debtor or by the trustee), but if the refund later proves to have been erroneous in amount, the Service can request that the tax attributable to the erroneous refund be payable by the estate as an administrative expense.

Postpetition payments to an individual debtor for services rendered to the estate are administrative expenses, and are not property of the estate when received by the debtor. This situation would most likely arise when the individual was a sole proprietor and was employed by the estate to run the business after the commencement of the case. An individual debtor in possession would be so employed, for example. See *Local Loan v. Hunt*, 292 U.S. 234, 243 (1943).

Compensation and reimbursement awarded officers of the estate under section 330 are allowable as administrative expenses. Actual, necessary expenses, other than compensation of a professional person, incurred by a creditor that files an involuntary petition, by a creditor that recovers property for the benefit of the estate, by a creditor that acts in connection with the prosecution of a criminal offense relating to the case, by a creditor, indenture, trustee, equity security holder, or committee of creditors or equity security holders (other than official committees) that makes a substantial contribution to a reorganization or municipal debt adjustment case, or by a superseded custodian, are all allowable administrative expenses. The phrase "substantial contribution in the case" is derived from Bankruptcy Act §§242 and 243 [sections 642 and 643 of former title 11]. It does not require a contribution that leads to confirmation of a plan, for in many cases, it will be a substantial contribution if the person involved uncovers facts that would lead to a denial of confirmation, such as fraud in connection with the case.

Paragraph (4) permits reasonable compensation for professional services rendered by an attorney or an accountant of an equity whose expense is compensable under the previous paragraph. Paragraph (5) permits reasonable compensation for an indenture trustee in making a substantial contribution in a reorganization or municipal debt adjustment case. Finally, paragraph (6) permits witness fees and mileage as prescribed under chapter 119 [§2041 et seq.] of title 28.

AMENDMENTS

2005—Subsec. (b)(1)(A). Pub. L. 109–8, §329, amended subpar. (A) generally. Prior to amendment, subpar. (A) read as follows: "the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case;".

Subsec. (b)(1)(B)(i). Pub. L. 109–8, §712(b), inserted "whether secured or unsecured, including property taxes for which liability is in rem, in personam, or both," before "except".

Subsec. (b)(1)(D). Pub. L. 109–8, §712(c), added subpar. (D).

Subsec. (b)(4). Pub. L. 109–8, §1208, inserted "subparagraph (A), (B), (C), (D), or (E) of" before "paragraph (3)".

Subsec. (b)(7). Pub. L. 109–8, §445, added par. (7).
Subsec. (b)(8). Pub. L. 109–8, §1103, added par. (8).
Subsec. (b)(9). Pub. L. 109–8, §1227(b), added par. (9).
Subsec. (c). Pub. L. 109–8, §331, added subsec. (c).
1994—Subsec. (a). Pub. L. 103–394, §213(c), inserted "timely" after "may" and ", or may tardily file such request if permitted by the court for cause" before period at end.

Subsec. (b)(1)(B)(i). Pub. L. 103–394, §304(h)(2), substituted "507(a)(8)" for "507(a)(7)".

Subsec. (b)(3)(F). Pub. L. 103–394, §110, added subpar. (F).

1986—Subsec. (b)(1)(B)(i). Pub. L. 99–554, §283(g)(1), substituted "507(a)(7)" for "507(a)(6)".

Subsec. (b)(5). Pub. L. 99–554, §283(g)(2), inserted "and" after "title;".

Subsec. (b)(6). Pub. L. 99–554, §283(g)(3), substituted a period for "; and".

1984—Subsec. (b). Pub. L. 98–353, §446(1), struck out the comma after "be allowed" in provisions preceding par. (1).

Subsec. (b)(1)(C). Pub. L. 98–353, §446(2), struck out the comma after "credit".

Subsec. (b)(2). Pub. L. 98–353, §446(3), inserted "(a)" after "330".

Subsec. (b)(3). Pub. L. 98–353, §446(4), inserted a comma after "paragraph (4) of this subsection".

Subsec. (b)(3)(C). Pub. L. 98–353, §446(5), struck out the comma after "case".

Subsec. (b)(5). Pub. L. 98–353, §446(6), struck out "and" after "title;".

Subsec. (b)(6). Pub. L. 98–353, §446(7), substituted "; and" for period at end.

EFFECTIVE DATE OF 2005 AMENDMENT

Amendment by Pub. L. 109–8 effective 180 days after Apr. 20, 2005, and not applicable with respect to cases commenced under this title before such effective date, except as otherwise provided, see section 1501 of Pub. L. 109–8, set out as a note under section 101 of this title.

EFFECTIVE DATE OF 1994 AMENDMENT

Amendment by Pub. L. 103–394 effective Oct. 22, 1994, and not applicable with respect to cases commenced under this title before Oct. 22, 1994, see section 702 of Pub. L. 103–394, set out as a note under section 101 of this title.

EFFECTIVE DATE OF 1986 AMENDMENT

Amendment by Pub. L. 99–554 effective 30 days after Oct. 27, 1986, see section 302(a) of Pub. L. 99–554, set out as a note under section 581 of Title 28, Judiciary and Judicial Procedure.

Amendment by Pub. L. 98–353 effective with respect to cases filed 90 days after July 10, 1984, see section 552(a) of Pub. L. 98–353, set out as a note under section 101 of this title.

## § 504. Sharing of compensation

(a) Except as provided in subsection (b) of this section, a person receiving compensation or reimbursement under section 503(b)(2) or 503(b)(4) of this title may not share or agree to share—

(1) any such compensation or reimbursement with another person; or

(2) any compensation or reimbursement received by another person under such sections.

(b)(1) A member, partner, or regular associate in a professional association, corporation, or partnership may share compensation or reimbursement received under section 503(b)(2) or 503(b)(4) of this title with another member, partner, or regular associate in such association, corporation, or partnership, and may share in any compensation or reimbursement received under such sections by another member, partner, or regular associate in such association, corporation, or partnership.

(2) An attorney for a creditor that files a petition under section 303 of this title may share compensation and reimbursement received under section 503(b)(4) of this title with any other attorney contributing to the services rendered or expenses incurred by such creditor's attorney.

(c) This section shall not apply with respect to sharing, or agreeing to share, compensation with a bona fide public service attorney referral program that operates in accordance with non-Federal law regulating attorney referral services and with rules of professional responsibility applicable to attorney acceptance of referrals.

(Pub. L. 95–598, Nov. 6, 1978, 92 Stat. 2582; Pub. L. 109–8, title III, § 326, Apr. 20, 2005, 119 Stat. 99.)

Section 504 prohibits the sharing of compensation, or fee splitting, among attorneys, other professionals, or trustees. The section provides only two exceptions: partners or associates in the same professional association, partnership, or corporation may share compensation inter se; and attorneys for petitioning creditors that join in a petition commencing an involuntary case may share compensation.

2005—Subsec. (c). Pub. L. 109–8 added subsec. (c).

Amendment by Pub. L. 109–8 effective 180 days after Apr. 20, 2005, and not applicable with respect to cases commenced under this title before such effective date, except as otherwise provided, see section 1501 of Pub. L. 109–8, set out as a note under section 101 of this title.

## § 505. Determination of tax liability

(a)(1) Except as provided in paragraph (2) of this subsection, the court may determine the amount or legality of any tax, any fine or penalty relating to a tax, or any addition to tax, whether or not previously assessed, whether or not paid, and whether or not contested before

and adjudicated by a judicial or administrative tribunal of competent jurisdiction.

(2) The court may not so determine—

(A) the amount or legality of a tax, fine, penalty, or addition to tax if such amount or legality was contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction before the commencement of the case under this title;

(B) any right of the estate to a tax refund, before the earlier of—

(i) 120 days after the trustee properly requests such refund from the governmental unit from which such refund is claimed; or

(ii) a determination by such governmental unit of such request; or

(C) the amount or legality of any amount arising in connection with an ad valorem tax on real or personal property of the estate, if the applicable period for contesting or redetermining that amount under applicable nonbankruptcy law has expired.

(b)(1)(A) The clerk shall maintain a list under which a Federal, State, or local governmental unit responsible for the collection of taxes within in the district may—

(i) designate an address for service of requests under this subsection; and

(ii) describe where further information concerning additional requirements for filing such requests may be found.

(B) If such governmental unit does not designate an address and provide such address to the clerk under subparagraph (A), any request made under this subsection may be served at the address for the filing of a tax return or protest with the appropriate taxing authority of such governmental unit.

(2) A trustee may request a determination of any unpaid liability of the estate for any tax incurred during the administration of the case by submitting a tax return for such tax and a request for such a determination to the governmental unit charged with responsibility for collection or determination of such tax at the address and in the manner designated in paragraph (1). Unless such return is fraudulent, or contains a material misrepresentation, the estate, the trustee, the debtor, and any successor to the debtor are discharged from any liability for such tax—

(A) upon payment of the tax shown on such return, if—

(i) such governmental unit does not notify the trustee, within 60 days after such request, that such return has been selected for examination; or

(ii) such governmental unit does not complete such an examination and notify the trustee of any tax due, within 180 days after such request or within such additional time as the court, for cause, permits;

(B) upon payment of the tax determined by the court, after notice and a hearing, after completion by such governmental unit of such examination; or

(C) upon payment of the tax determined by such governmental unit to be due.

(c) Notwithstanding section 362 of this title, after determination by the court of a tax under

## 11 U.S.C. § 507

to the failure of any entity to file a proof of such claim under section 501 of this title" for "such claim was disallowed only under section 502(e) of this title".

EFFECTIVE DATE OF 2005 AMENDMENT

Amendment by Pub. L. 109–8 effective 180 days after Apr. 20, 2005, and not applicable with respect to cases commenced under this title before such effective date, except as otherwise provided, see section 1501 of Pub. L. 109–8, set out as a note under section 101 of this title.

EFFECTIVE DATE OF 1984 AMENDMENT

Amendment by Pub. L. 98–353 effective with respect to cases filed 90 days after July 10, 1984, see section 552(a) of Pub. L. 98–353, set out as a note under section 101 of this title.

## § 507. Priorities

(a) The following expenses and claims have priority in the following order:

(1) First:

(A) Allowed unsecured claims for domestic support obligations that, as of the date of the filing of the petition in a case under this title, are owed to or recoverable by a spouse, former spouse, or child of the debtor, or such child's parent, legal guardian, or responsible relative, without regard to whether the claim is filed by such person or is filed by a governmental unit on behalf of such person, on the condition that funds received under this paragraph by a governmental unit under this title after the date of the filing of the petition shall be applied and distributed in accordance with applicable nonbankruptcy law.

(B) Subject to claims under subparagraph (A), allowed unsecured claims for domestic support obligations that, as of the date of the filing of the petition, are assigned by a spouse, former spouse, child of the debtor, or such child's parent, legal guardian, or responsible relative to a governmental unit (unless such obligation is assigned voluntarily by the spouse, former spouse, child, parent, legal guardian, or responsible relative of the child for the purpose of collecting the debt) or are owed directly to or recoverable by a governmental unit under applicable nonbankruptcy law, on the condition that funds received under this paragraph by a governmental unit under this title after the date of the filing of the petition be applied and distributed in accordance with applicable nonbankruptcy law.

(C) If a trustee is appointed or elected under section 701, 702, 703, 1104, 1202, or 1302, the administrative expenses of the trustee allowed under paragraphs (1)(A), (2), and (6) of section 503(b) shall be paid before payment of claims under subparagraphs (A) and (B), to the extent that the trustee administers assets that are otherwise available for the payment of such claims.

(2) Second, administrative expenses allowed under section 503(b) of this title, unsecured claims of any Federal reserve bank related to loans made through programs or facilities authorized under section 13(3) of the Federal Reserve Act (12 U.S.C. 343),[1] and any fees and charges assessed against the estate under chapter 123 of title 28.

(3) Third, unsecured claims allowed under section 502(f) of this title.

(4) Fourth, allowed unsecured claims, but only to the extent of $10,000 for each individual or corporation, as the case may be, earned within 180 days before the date of the filing of the petition or the date of the cessation of the debtor's business, whichever occurs first, for—

(A) wages, salaries, or commissions, including vacation, severance, and sick leave pay earned by an individual; or

(B) sales commissions earned by an individual or by a corporation with only 1 employee, acting as an independent contractor in the sale of goods or services for the debtor in the ordinary course of the debtor's business if, and only if, during the 12 months preceding that date, at least 75 percent of the amount that the individual or corporation earned by acting as an independent contractor in the sale of goods or services was earned from the debtor.

(5) Fifth, allowed unsecured claims for contributions to an employee benefit plan—

(A) arising from services rendered within 180 days before the date of the filing of the petition or the date of the cessation of the debtor's business, whichever occurs first; but only

(B) for each such plan, to the extent of—

(i) the number of employees covered by each such plan multiplied by $10,000; less

(ii) the aggregate amount paid to such employees under paragraph (4) of this subsection, plus the aggregate amount paid by the estate on behalf of such employees to any other employee benefit plan.

(6) Sixth, allowed unsecured claims of persons—

(A) engaged in the production or raising of grain, as defined in section 557(b) of this title, against a debtor who owns or operates a grain storage facility, as defined in section 557(b) of this title, for grain or the proceeds of grain, or

(B) engaged as a United States fisherman against a debtor who has acquired fish or fish produce from a fisherman through a sale or conversion, and who is engaged in operating a fish produce storage or processing facility—

but only to the extent of $4,000 for each such individual.

(7) Seventh, allowed unsecured claims of individuals, to the extent of $1,800 for each such individual, arising from the deposit, before the commencement of the case, of money in connection with the purchase, lease, or rental of property, or the purchase of services, for the personal, family, or household use of such individuals, that were not delivered or provided.

(8) Eighth, allowed unsecured claims of governmental units, only to the extent that such claims are for—

(A) a tax on or measured by income or gross receipts for a taxable year ending on or before the date of the filing of the petition—

(i) for which a return, if required, is last due, including extensions, after three

[1] See References in Text note below.

years before the date of the filing of the petition;

(ii) assessed within 240 days before the date of the filing of the petition, exclusive of—

(I) any time during which an offer in compromise with respect to that tax was pending or in effect during that 240-day period, plus 30 days; and

(II) any time during which a stay of proceedings against collections was in effect in a prior case under this title during that 240-day period, plus 90 days; or

(iii) other than a tax of a kind specified in section 523(a)(1)(B) or 523(a)(1)(C) of this title, not assessed before, but assessable, under applicable law or by agreement, after, the commencement of the case;

(B) a property tax incurred before the commencement of the case and last payable without penalty after one year before the date of the filing of the petition;

(C) a tax required to be collected or withheld and for which the debtor is liable in whatever capacity;

(D) an employment tax on a wage, salary, or commission of a kind specified in paragraph (4) of this subsection earned from the debtor before the date of the filing of the petition, whether or not actually paid before such date, for which a return is last due, under applicable law or under any extension, after three years before the date of the filing of the petition;

(E) an excise tax on—

(i) a transaction occurring before the date of the filing of the petition for which a return, if required, is last due, under applicable law or under any extension, after three years before the date of the filing of the petition; or

(ii) if a return is not required, a transaction occurring during the three years immediately preceding the date of the filing of the petition;

(F) a customs duty arising out of the importation of merchandise—

(i) entered for consumption within one year before the date of the filing of the petition;

(ii) covered by an entry liquidated or reliquidated within one year before the date of the filing of the petition; or

(iii) entered for consumption within four years before the date of the filing of the petition but unliquidated on such date, if the Secretary of the Treasury certifies that failure to liquidate such entry was due to an investigation pending on such date into assessment of antidumping or countervailing duties or fraud, or if information needed for the proper appraisement or classification of such merchandise was not available to the appropriate customs officer before such date; or

(G) a penalty related to a claim of a kind specified in this paragraph and in compensation for actual pecuniary loss.

An otherwise applicable time period specified in this paragraph shall be suspended for any period during which a governmental unit is prohibited under applicable nonbankruptcy law from collecting a tax as a result of a request by the debtor for a hearing and an appeal of any collection action taken or proposed against the debtor, plus 90 days; plus any time during which the stay of proceedings was in effect in a prior case under this title or during which collection was precluded by the existence of 1 or more confirmed plans under this title, plus 90 days.

(9) Ninth, allowed unsecured claims based upon any commitment by the debtor to a Federal depository institutions regulatory agency (or predecessor to such agency) to maintain the capital of an insured depository institution.

(10) Tenth, allowed claims for death or personal injury resulting from the operation of a motor vehicle or vessel if such operation was unlawful because the debtor was intoxicated from using alcohol, a drug, or another substance.

(b) If the trustee, under section 362, 363, or 364 of this title, provides adequate protection of the interest of a holder of a claim secured by a lien on property of the debtor and if, notwithstanding such protection, such creditor has a claim allowable under subsection (a)(2) of this section arising from the stay of action against such property under section 362 of this title, from the use, sale, or lease of such property under section 363 of this title, or from the granting of a lien under section 364(d) of this title, then such creditor's claim under such subsection shall have priority over every other claim allowable under such subsection.

(c) For the purpose of subsection (a) of this section, a claim of a governmental unit arising from an erroneous refund or credit of a tax has the same priority as a claim for the tax to which such refund or credit relates.

(d) An entity that is subrogated to the rights of a holder of a claim of a kind specified in subsection (a)(1), (a)(4), (a)(5), (a)(6), (a)(7), or (a)(9) of this section is not subrogated to the right of the holder of such claim to priority under such subsection.

(Pub. L. 95–598, Nov. 6, 1978, 92 Stat. 2583; Pub. L. 98–353, title III, §§350, 449, July 10, 1984, 98 Stat. 358, 374; Pub. L. 101–647, title XXV, §2522(d), Nov. 29, 1990, 104 Stat. 4867; Pub. L. 103–394, title I, §108(c), title II, §207, title III, §304(c), title V, §501(b)(3), (d)(11), Oct. 22, 1994, 108 Stat. 4112, 4123, 4132, 4142, 4145; Pub. L. 109–8, title II, §§212, 223, title VII, §§705, 706, title XIV, §1401, title XV, §1502(a)(1), Apr. 20, 2005, 119 Stat. 51, 62, 126, 214, 216; Pub. L. 111–203, title XI, §1101(b), July 21, 2010, 124 Stat. 2115; Pub. L. 111–327, §2(a)(15), Dec. 22, 2010, 124 Stat. 3559.)

ADJUSTMENT OF DOLLAR AMOUNTS

*For adjustment of certain dollar amounts specified in this section, that is not reflected in text, see Adjustment of Dollar Amounts note below.*

HISTORICAL AND REVISION NOTES

LEGISLATIVE STATEMENTS

Section 507(a)(3) of the House amendment represents a compromise dollar amount and date for the priority

between similar provisions contained in H.R. 8200 as passed by the House and the Senate amendments. A similar compromise is contained in section 507(a)(4).

Section 507(a)(5) represents a compromise on amount between the priority as contained in H.R. 8200 as passed by the House and the Senate amendment. The Senate provision for limiting the priority to consumers having less than a fixed gross income is deleted.

Section 507(a)(6) of the House amendment represents a compromise between similar provisions contained in H.R. 8200 as passed by the House and the Senate amendment.

Section 507(b) of the House amendment is new and is derived from the compromise contained in the House amendment with respect to adequate protection under section 361. Subsection (b) provides that to the extent adequate protection of the interest of a holder of a claim proves to be inadequate, then the creditor's claim is given priority over every other allowable claim entitled to distribution under section 507(a). Section 507(b) of the Senate amendment is deleted.

Section 507(c) of the House amendment is new. Section 507(d) of the House amendment prevents subrogation with respect to priority for certain priority claims. Subrogation with respect to priority is intended to be permitted for administrative claims and claims arising during the gap period.

Priorities: Under the House amendment, taxes receive priority as follows:

First. Administration expenses: The amendment generally follows the Senate amendment in providing expressly that taxes incurred during the administration of the estate share the first priority given to administrative expenses generally. Among the taxes which receives first priority, as defined in section 503, are the employees' and the employer's shares of employment taxes on wages earned and paid after the petition is filed. Section 503(b)(1) also includes in administration expenses a tax liability arising from an excessive allowance by a tax authority of a "quickie refund" to the estate. (In the case of Federal taxes, such refunds are allowed under special rules based on net operating loss carrybacks (sec. 6411 of the Internal Revenue Code [title 26]).

An exception is made to first priority treatment for taxes incurred by the estate with regard to the employer's share of employment taxes on wages earned from the debtor before the petition but paid from the estate after the petition has been filed. In this situation, the employer's tax receives either sixth priority or general claim treatment.

The House amendment also adopts the provisions of the Senate amendment which include in the definition of administrative expenses under section 503 any fine, penalty (including "additions to tax" under applicable tax laws) or reduction in credit imposed on the estate.

Second. "Involuntary gap" claims: "Involuntary gap" creditors are granted second priority by paragraph (2) of section 507(a). This priority includes tax claims arising in the ordinary course of the debtor's business or financial affairs after he has been placed involuntarily in bankruptcy but before a trustee is appointed or before the order for relief.

Third. Certain taxes on prepetition wages: Wage claims entitled to third priority are for compensation which does not exceed $2,000 and was earned during the 90 days before the filing of the bankruptcy petition or the cessation of the debtor's business. Certain employment taxes receive third priority in payment from the estate along with the payment of wages to which the taxes relate. In the case of wages earned before the filing of the petition, but paid by the trustee (rather than by the debtor) after the filing of the petition, claims or the employees' share of the employment taxes (withheld income taxes and the employees' share of the social security or railroad retirement tax) receive third priority to the extent the wage claims themselves are entitled to this priority.

In the case of wages earned from and paid by the debtor before the filing of the petition, the employer's share of the employment taxes on these wages paid by the debtor receives sixth priority or, if not entitled to that priority, are treated only as general claims. Under the House amendment, the employer's share of employment taxes on wages earned by employees of the debtor, but paid by the trustee after the filing of the bankruptcy petition, will also receive sixth priority to the extent that claims for the wages receive third priority. To the extent the claims for wages do not receive third priority, but instead are treated only as general claims, claims for the employer's share of the employment taxes attributable to those wages will also be treated as general claims. In calculating the amounts payable as general wage claims, the trustee must pay the employer's share of employment taxes on such wages.

Sixth priority. The House amendment modifies the provisions of both the House bill and Senate amendment in the case of sixth priority taxes. Under the amendment, the following Federal, State and local taxes are included in the sixth priority:

First. Income and gross receipts taxes incurred before the date of the petition for which the last due date of the return, including all extensions of time granted to file the return, occurred within 3 years before the date on which the petition was filed, or after the petition date. Under this rule, the due date of the return, rather than the date on which the taxes were assessed, determines the priority.

Second. Income and gross receipts taxes assessed at any time within 240 days before the petition date. Under this rule, the date on which the governmental unit assesses the tax, rather than the due date of the return, determines the priority.

If, following assessment of a tax, the debtor submits an offer in compromise to the governmental unit, the House amendment provides that the 240-day period is to be suspended for the duration of the offer and will resume running after the offer is withdrawn or rejected by the governmental unit, but the tax liability will receive priority if the title 11 petition is filed during the balance of the 240-day period or during a minimum of 30 days after the offer is withdrawn or rejected. This rule modifies a provision of the Senate amendment dealing specifically with offers in compromise. Under the modified rule, if, after the assessment, an offer in compromise is submitted by the debtor and is still pending (without having been accepted or rejected) at the date on which a title 11 petition is filed, the underlying liability will receive sixth priority. However, if an assessment of a tax liability is made but the tax is not collected within 240 days, the tax will not receive priority under section 507(a)(6)(A)(i) and the debtor cannot revive a priority for that tax by submitting an offer in compromise.

Third. Income and gross receipts taxes not assessed before the petition date but still permitted, under otherwise applicable tax laws, to be assessed. Thus, for example, a prepetition tax liability is to receive sixth priority under this rule if, under the applicable statute of limitations, the tax liability can still be assessed by the tax authority. This rule also covers situations referred to in section 507(a)(6)(B)(ii) of the Senate amendment where the assessment or collection of a tax was prohibited before the petition pending exhaustion of judicial or administrative remedies, except that the House amendment eliminates the 300-day limitation of the Senate bill. So, for example, if before the petition a debtor was engaged in litigation in the Tax Court, during which the Internal Revenue Code [title 26] bars the Internal Revenue Service from assessing or collecting the tax, and if the tax court decision is made in favor of the Service before the petition under title 11 is filed, thereby lifting the restrictions on assessment and collection, the tax liability will receive sixth priority even if the tax authority does not make an assessment within 300 days before the petition (provided, of course, that the statute of limitations on assessment has not expired by the petition date).

In light of the above categories of the sixth priority, and tax liability of the debtor (under the Internal Reve-

nue Code [title 26] or State or local law) as a transferee of property from another person will receive sixth priority without the limitations contained in the Senate amendment so long as the transferee liability had not been assessed by the tax authority by the petition date but could still have been assessed by that date under the applicable tax statute of limitations or, if the transferee liability had been assessed before the petition, the assessment was made no more than 240 days before the petition date.

Also in light of the above categories, the treatment of prepetition tax liabilities arising from an excessive allowance to the debtor of a tentative carryback adjustment, such as a "quickie refund" under section 6411 of the Internal Revenue Code [title 26] is revised as follows: If the tax authority has assessed the additional tax before the petition, the tax liability will receive priority if the date of assessment was within 240 days before the petition date. If the tax authority had not assessed the additional tax by the petition, the tax liability will still receive priority so long as, on the petition date, assessment of the liability is not barred by the statute of limitations.

Fourth. Any property tax assessed before the commencement of the case and last payable without penalty within 1 year before the petition, or thereafter.

Fifth. Taxes which the debtor was required by law to withhold or collect from others and for which he is liable in any capacity, regardless of the age of the tax claims. This category covers the so-called "trust fund" taxes, that is, income taxes which an employer is required to withhold from the pay of his employees, and the employees' share of social security taxes.

In addition, this category includes the liability of a responsible officer under the Internal Revenue Code (sec. 6672) [title 26] for income taxes or for the employees' share of social security taxes which that officer was responsible for withholding from the wages of employees and paying to the Treasury, although he was not himself the employer. This priority will operate when a person found to be a responsible officer has himself filed in title 11, and the priority will cover the debtor's responsible officer liability regardless of the age of the tax year to which the tax relates. The U.S. Supreme Court has interpreted present law to require the same result as will be reached under this rule. *U.S. v. Sotelo*, 436 U.S. 268 (1978) [98 S.Ct. 1795, 56 L.Ed.2d 275, rehearing denied 98 S.Ct. 3126, 438 U.S. 907, 57 L.Ed.2d 1150].

This category also includes the liability under section 3505 of the Internal Revenue Code [26 U.S.C. 3505] of a taxpayer who loans money for the payment of wages or other compensation.

Sixth. The employer's share of employment taxes on wages paid before the petition and on third-priority wages paid postpetition by the estate. The priority rules under the House amendment governing employment taxes can thus be summarized as follows: Claims for the employees' shares of employment taxes attributable to wages both earned and paid before the filing of the petition are to receive sixth priority. In the case of employee wages earned, but not paid, before the filing of the bankruptcy petition, claims for the employees' share of employment taxes receive third priority to the extent the wages themselves receive third priority. Claims which relate to wages earned before the petition, but not paid before the petition (and which are not entitled to the third priority under the rule set out above), will be paid as general claims. Since the related wages will receive no priority, the related employment taxes would also be paid as nonpriority general claims.

The employer's share of the employment taxes on wages earned and paid before the petition will receive sixth priority to the extent the return for these taxes was last due (including extensions of time) within 3 years before the filing of the petition, or was due after the petition was filed. Older tax claims of this nature will be payable as general claims. In the case of wages earned by employees before the petition, but actually paid by the trustee (as claims against the estate)

after the title 11 case commenced, the employer's share of the employment taxes on third priority wages will be payable as sixth priority claims and the employer's taxes on prepetition wages which are treated only as general claims will be payable only as general claims. In calculating the amounts payable as general wage claims, the trustee must pay the employer's share of employment taxes on such wages. The House amendment thus deletes the provision of the Senate amendment that certain employer taxes receive third priority and are to be paid immediately after payment of third priority wages and the employees' shares of employment taxes on those wages.

In the case of employment taxes relating to wages earned and paid after the petition, both the employees' shares and the employer's share will receive first priority as administration expenses of the estate.

Seventh. Excise taxes on transactions for which a return, if required, is last due, under otherwise applicable law or under any extension of time to file the return, within 3 years before the petition was filed, or thereafter. If a return is not required with regard to a particular excise tax, priority is given if the transaction or event itself occurred within 3 years before the date on which the title 11 petition was filed. All Federal, State or local taxes generally considered or expressly treated as excises are covered by this category, including sales taxes, estate and gift taxes, gasoline and special fuel taxes, and wagering and truck taxes.

Eighth. Certain unpaid customs duties. The House amendment covers in this category duties on imports entered for consumption within 1 year before the filing of the petition, but which are still unliquidated on the petition date; duties covered by an entry liquidated or reliquidated within 1 year before the petition date; and any duty on merchandise entered for consumption within 4 years before the petition but not liquidated on the petition date, if the Secretary of the Treasury or his delegate certifies that duties were not liquidated because of possible assessment of antidumping or countervailing duties or fraud penalties.

For purposes of the above priority rules, the House amendment adopts the provision of the Senate bill that any tax liability which, under otherwise applicable tax law, is collectible in the form of a "penalty," is to be treated in the same manner as a tax liability. In bankruptcy terminology, such tax liabilities are referred to as pecuniary loss penalties. Thus, any tax liability which under the Internal Revenue Code [title 26] or State or local tax law is payable as a "penalty," in addition to the liability of a responsible person under section 6672 of the Internal Revenue Code [26 U.S.C. 6672] will be entitled to the priority which the liability would receive if it were expressly labeled as a "tax" under the applicable law. However, a tax penalty which is punitive in nature is given subordinated treatment under section 726(a)(4).

The House amendment also adopts the provision of the Senate amendment that a claim arising from an erroneous refund or credit of tax, other than a "quickie refund," is to receive the same priority as the tax to which the refund or credit relates.

The House amendment deletes the express provision of the Senate amendment that a tax liability is to receive sixth priority if it satisfies any one of the subparagraphs of section 507(a)(6) even if the liability fails to satisfy the terms of one or more other subparagraphs. No change of substance is intended by the deletion, however, in light of section 102(5) of the House amendment, providing a rule of construction that the word "or" is not intended to be exclusive.

The House amendment deletes from the express priority categories of the Senate amendment the priority for a debtor's liability as a third party for failing to surrender property or to pay an obligation in response to a levy for taxes of another, and the priority for amounts provided for under deferred payment agreements between a debtor and the tax authority.

The House amendment also adopts the substance of the definition in section 346(a) the Senate amendment

of when taxes are to be considered ''incurred'' except that the House amendment applies these definitions solely for purposes of determining which category of section 507 tests the priority of a particular tax liability. Thus, for example, the House amendment contains a special rule for the treatment of taxes under the 45-day exception to the preference rules under section 547 and the definitions of when a tax is incurred for priority purposes are not to apply to such preference rules. Under the House amendment, for purposes of the priority rules, a tax on income for a particular period is to be considered ''incurred'' on the last day of the period. A tax on or measured by some event, such as the payment of wages or a transfer by reason of death or gift, or an excise tax on a sale or other transaction, is to be considered ''incurred'' on the date of the transaction or event.

SENATE REPORT NO. 95–989

Section 507 specifies the kinds of claims that are entitled to priority in distribution, and the order of their priority. Paragraph (1) grants first priority to allowed administrative expenses and to fees and charges assessed against the estate under chapter 123 [§ 1911 et seq.] of title 28. Taxes included as administrative expenses under section 503(b)(1) of the bill generally receive the first priority, but the bill makes certain qualifications: Examples of these specially treated claims are the estate's liability for recapture of an investment tax credit claimed by the debtor before the title 11 case (this liability receives sixth priority) and the estate's employment tax liabilities on wages earned before, but paid after, the petition was filed (this liability generally receives the same priority as the wages).

''Involuntary gap'' creditors, granted first priority under current law, are granted second priority by paragraph (2). This priority, covering claims arising in the ordinary course of the debtor's business or financial affairs after a title 11 case has begun but before a trustee is appointed or before the order for relief, includes taxes incurred during the conduct of such activities.

Paragraph (3) expands and increases the wage priority found in current section 64a(2) [section 104(a)(2) of former title 11]. The amount entitled to priority is raised from $600 to $1,800. The former figure was last adjusted in 1926. Inflation has made it nearly meaningless, and the bill brings it more than up to date. The three month limit of current law is retained, but is modified to run from the earlier of the date of the filing of the petition or the date of the cessation of the debtor's business. The priority is expanded to cover vacation, severance, and sick leave pay. The bill adds to the third priority so-called ''trust fund'' taxes, that is, withheld income taxes and the employees' share of the social security or railroad retirement taxes, but only to the extent that the wages on which taxes are imposed are themselves entitled to third priority.

The employer's share, the employment tax and the employer's share of the social security or railroad retirement tax on third priority compensation, is also included in the third priority category, but only if, and to the extent that the wages and related trust fund taxes have first been paid in full. Because of the claimants urgent need for their wages in the typical cases, the employer's taxes should not be paid before the wage claims entitled to priority, as well as the related trust fund taxes, are fully paid.

Paragraph (4) overrules *United States v. Embassy Restaurant*, 359 U.S. 29 (1958), which held that fringe benefits were not entitled to wage priority status. The bill recognizes the realities of labor contract negotiations, where fringe benefits may be substituted for wage demands. The priority granted is limited to claims for contributions to employee benefit plans such as pension plans, health or life insurance plans, and others, arising from services rendered within 180 days before the commencement of the case or the date of cessation of the debtor's business, whichever occurs first. The dollar limit placed on the total of all contributions payable under this paragraph is equal to the difference between the maximum allowable priority under paragraph (3), $1,800, times the number of employees covered by the plan less the actual distributions under paragraph (3) with respect to these employees.

Paragraph (5) is a new priority for consumer creditors—those who have deposited money in connection with the purchase, lease, or rental of property, or the purchase of services, for their personal, family, or household use, that were not delivered or provided. The priority amount is not to exceed $600. In order to reach only those persons most deserving of this special priority, it is limited to individuals whose adjustable gross income from all sources derived does not exceed $20,000. See Senate Hearings, testimony of Prof. Vern Countryman, at pp. 848–849. The income of the husband and wife should be aggregated for the purposes of the $20,000 limit if either or both spouses assert such a priority claim.

The sixth priority is for certain taxes. Priority is given to income taxes for a taxable year that ended on or before the date of the filing of the petition, if the last due date of the return for such year occurred not more than 3 years immediately before the date on which the petition was filed (§ 507(a)(6)(A)(i)). For the purposes of this rule, the last due date of the return is the last date under any extension of time to file the return which the taxing authority may have granted the debtor.

Employment taxes and transfer taxes (including gift, estate, sales, use and other excise taxes) are also given sixth priority if the transaction or event which gave rise to the tax occurred before the petition date, provided that the required return or report of such tax liabilities was last due within 3 years before the petition was filed or was last due after the petition date (§ 507(a)(6)(A)(ii)). The employment taxes covered under this rule are the employer's share of the social security and railroad retirement taxes and required employer payments toward unemployment insurance.

Priority is given to income taxes and other taxes of a kind described in section 507(a)(6)(A)(i) and (ii) which the Federal, State, or local tax authority had assessed within 3 years after the last due date of the return, that is, including any extension of time to file the return, if the debtor filed in title 11 within 240 days after the assessment was made (§ 507(a)(6)(B)(i)). This rule may bring into the sixth priority the debtor's tax liability for some taxable years which would not qualify for priority under the general three-year rule of section 507(a)(6)(A).

The sixth priority category also includes taxes which the tax authority was barred by law from assessing or collecting at any time during the 300 days before the petition under title 11 was filed (§ 507(a)(6)(B)(ii)). In the case of certain Federal taxes, this preserves a priority for tax liabilities for years more than three years before the filing of the petition where the debtor and the Internal Revenue Service were negotiating over an audit of the debtor's returns or were engaged in litigation in the Tax Court. In such situations, the tax law prohibits the service's right to assess a tax deficiency until ninety days after the service sends the taxpayer a deficiency letter or, if the taxpayer files a petition in the Tax Court during the 90-day period, until the outcome of the litigation. A similar priority exists in present law, except that the taxing authority is allowed no time to assess and collect the taxes after the restrictions on assessment (discussed above) are lifted. Some taxpayers have exploited this loophole by filing in bankruptcy immediately after the end of the 90-day period or immediately after the close of Tax Court proceedings. The bill remedies this defect by preserving a priority for taxes the assessment of which was barred by law by giving the tax authority 300 days within which to make the assessment after the lifting of the bar and then to collect or file public notice of its tax lien. Thus, if a taxpayer files a title 11 petition at any time during that 300-day period, the tax deficiency will be entitled to priority. If the petition is filed more than 300 days after the restriction on assessment was lifted,

the taxing authority will not have priority for the tax deficiency.

Taxes for which an offer in compromise was withdrawn by the debtor, or rejected by a governmental unit, within 240 days before the petition date (§507(a)(6)(B)(iii)) will also receive sixth priority. This rule closes a loophole under present law under which, following an assessment of tax, some taxpayers have submitted a formal offer in compromise, dragged out negotiations with the taxing authority until the tax liability would lose priority under the three-year priority period of present law, and then filed in bankruptcy before the governmental unit could take collection steps.

Also included are certain taxes for which no return or report is required by law (§507(a)(6)(C)), if the taxable transaction occurred within three years before the petition was filed.

Taxes (not covered by the third priority) which the debtor was required by law to withhold or collect from others and for which he is liable in any capacity, regardless of the age of the tax claims (§507(a)(6)(D)) are included. This category covers the so-called ''trust fund'' taxes, that is, income taxes which an employer is required to withhold from the pay of his employees, the employees' shares of social security and railroad retirement taxes, and also Federal unemployment insurance. This category also includes excise taxes which a seller of goods or services is required to collect from a buyer and pay over to a taxing authority.

This category also covers the liability of a responsible corporate officer under the Internal Revenue Code [title 26] for income taxes or for the employees' share of employment taxes which, under the tax law, the employer was required to withhold from the wages of employees. This priority will operate where a person found to be a responsible officer has himself filed a petition under title 11, and the priority covers the debtor's liability as an officer under the Internal Revenue Code, regardless of the age of the tax year to which the tax relates.

The priority rules under the bill governing employment taxes can be summarized as follows: In the case of wages earned and actually paid before the petition under title 11 was filed, the liability for the employees' share of the employment taxes, regardless of the prepetition year in which the wages were earned and paid. The employer's share of the employment taxes on all wages earned and paid before the petition receive sixth priority; generally, these taxes will be those for which a return was due within three years before the petition. With respect to wages earned by employees before the petition but actually paid by the trustee after the title 11 case commenced, taxes required to be withheld receives the same priority as the wages themselves. Thus, the employees' share of taxes on third priority wages also receives third priority. Taxes on the balance of such wages receive no priority and are collectible only as general claims because the wages themselves are payable only as general claims and liability for the taxes arises only to the extent the wages are actually paid. The employer's share of employment taxes on third priority wages earned before the petition but paid after the petition was filed receives third priority, but only if the wages in this category have first been paid in full. Assuming there are sufficient funds to pay third priority wages and the related employer taxes in full, the employer's share of taxes on the balance of wage payments becomes a general claim (because the wages themselves are payable as general claims). Both the employees' and the employer's share of employment taxes on wages earned and paid after the petition was filed receive first priority as administrative expenses.

Also covered by this sixth priority are property taxes required to be assessed within 3 years before the filing of the petition (§507(a)(6)(E)).

Taxes attributable to a tentative carryback adjustment received by the debtor before the petition was filed, such as a ''quickie refund'' received under section 6411 of the Internal Revenue Code [title 26]

(§507(a)(6)(F)) are included. However, the tax claim against the debtor will rein a prepetition loss year for which the tax return was last due, including extensions, within 3 years before the petition was filed.

Taxes resulting from a recapture, occasioned by a transfer during bankruptcy, of a tax credit or deduction taken during an earlier tax year (§507(a)(6)(G)) are included. A typical example occurs when there is a sale by the trustee of depreciable property during the case and depreciation deductions taken in prepetition years are subject to recapture under section 1250 of the Code [title 26].

Taxes owed by the debtor as a transferee of assets from another person who is liable for a tax, if the tax claim against the transferor would have received priority in a chapter 11 case commenced by the transferor within 1 year before the date of the petition filed by the transferee (§507(a)(6)(H)), are included.

Also included are certain tax payments required to have been made during the 1 year immediately before the petition was filed, where the debtor had previously entered into a deferred payment agreement (including an offer in compromise) to pay an agreed liability in periodic installments but had become delinquent in one or more installments before the petition was filed (§507(a)(6)(I)). This priority covers all types of deferred or part payment agreements. The priority covers only installments which first became due during the 1 year before the petition but which remained unpaid at the date of the petition. The priority does not come into play, however, if before the case began or during the case, the debtor and the taxing authority agree to a further extension of time to pay the delinquent amounts.

Certain tax-related liabilities which are not true taxes or which are not collected by regular assessment procedures (§507(a)(6)(J)) are included. One type of liability covered in this category is the liability under section 3505 of the Internal Revenue Code [title 26] of a lender who pays wages directly to employees of another employer or who supplies funds to an employer for the payment of wages. Another is the liability under section 6332 of the Internal Revenue Code [title 26], of a person who fails to turn over money or property of the taxpayer in response to a levy. Since the taxing authority must collect such a liability from the third party by suit rather than normal assessment procedures, an extra year is added to the normal 3-year priority periods. If a suit was commenced by the taxing authority within the four-year period and before the petition was filed, the priority is also preserved, provided that the suit had not terminated more than 1 year before the date of the filing of the petition.

Also included are certain unpaid customs duties which have not grown unreasonably ''stale'' (§507(a)(6)(K)). These include duties on imports entered for consumption with 3 years before the filing of the petition or if the duties are still unliquidated on the petition date. If an import entry has been liquidated (in general, liquidation is in an administrative determination of the value and tariff rate of the item) or reliquidated, within two years of the filing of the petition the customs liability is given priority. If the Secretary of the Treasury certifies that customs duties were not liquidated because of an investigation into possible assessment of antidumping or countervailing duties, or because of fraud penalties, duties not liquidated for this reason during the five years before the importer filed under title 11 also will receive priority.

Subsection (a) of this section also provides specifically that interest on sixth priority tax claims accrued before the filing of the petition is also entitled to sixth priority.

Subsection (b) of this section provides that any fine or penalty which represents compensation for actual pecuniary loss of a governmental unit, and which involves a tax liability entitled to sixth priority, is to receive the same priority.

Subsection (b) also provides that a claim arising from an erroneous refund or credit of tax is to be given the

same priority as the tax to which the refund or credit relates.

#### REFERENCES IN TEXT

Section 13(3) of the Federal Reserve Act, referred to in subsec. (a)(2), is classified to section 343(3) of Title 12, Banks and Banking.

#### AMENDMENTS

2010—Subsec. (a)(2). Pub. L. 111–203 inserted "unsecured claims of any Federal reserve bank related to loans made through programs or facilities authorized under section 13(3) of the Federal Reserve Act (12 U.S.C. 343)," after "this title,".

Subsec. (a)(8)(A)(ii)(II). Pub. L. 111–327 substituted "; or" for period at end.

2005—Subsec. (a)(1). Pub. L. 109–8, § 212(9), added par. (1). Former par. (1) redesignated (2).

Subsec. (a)(2). Pub. L. 109–8, § 212(2), (3), redesignated par. (1) as (2) and substituted "Second" for "First". Former par. (2) redesignated (3).

Subsec. (a)(3). Pub. L. 109–8, § 212(2), (4), redesignated par. (2) as (3) and substituted "Third" for "Second". Former par. (3) redesignated (4).

Subsec. (a)(4). Pub. L. 109–8, § 1401, which directed amendment of par. (4), "as amended by section 212", by substituting "$10,000" for "$4,000" and "180" for "90" in introductory provisions, effective Apr. 20, 2005, was executed to this par., which was par. (3), to reflect the probable intent of Congress, notwithstanding that the redesignation of this par. as (4) by Pub. L. 109–8, § 212(2), was effective 180 days after Apr. 20, 2005. See Effective Date of 2005 Amendment notes below.

Pub. L. 109–8, § 212(2), (5), redesignated par. (3) as (4) and substituted "Fourth" for "Third" in introductory provisions and a period for semicolon at end. Former par. (4) redesignated (5).

Subsec. (a)(5). Pub. L. 109–8, § 212(2), (6), redesignated par. (4) as (5) and substituted "Fifth" for "Fourth" in introductory provisions. Former par. (5) redesignated (6).

Subsec. (a)(5)(B)(i). Pub. L. 109–8, § 1401(2), which directed amendment of par. (5), "as amended by section 212", by substituting "$10,000" for "$4,000", effective Apr. 20, 2005, was executed to this par., which was par. (4), to reflect the probable intent of Congress, notwithstanding that the redesignation of this par. as (5) by Pub. L. 109–8, § 212(2), was effective 180 days after Apr. 20, 2005. See Effective Date of 2005 Amendment notes below.

Subsec. (a)(5)(B)(ii). Pub. L. 109–8, § 1502(a)(1)(A)(i), substituted "paragraph (4)" for "paragraph (3)".

Subsec. (a)(6). Pub. L. 109–8, § 212(2), (7), redesignated par. (5) as (6) and substituted "Sixth" for "Fifth" in introductory provisions. Former par. (6) redesignated (7).

Subsec. (a)(7). Pub. L. 109–8, § 212(1), (2), (8), redesignated par. (6) as (7), substituted "Seventh" for "Sixth", and struck out former par. (7) which read as follows: "Seventh, allowed claims for debts to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, determination made in accordance with State or territorial law by a governmental unit, or property settlement agreement, but not to the extent that such debt—

"(A) is assigned to another entity, voluntarily, by operation of law, or otherwise; or

"(B) includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance or support."

Subsec. (a)(8). Pub. L. 109–8, § 705(2), inserted at end "An otherwise applicable time period specified in this paragraph shall be suspended for any period during which a governmental unit is prohibited under applicable nonbankruptcy law from collecting a tax as a result of a request by the debtor for a hearing and an appeal of any collection action taken or proposed against the debtor, plus 90 days; plus any time during which the stay of proceedings was in effect in a prior case under this title or during which collection was precluded by the existence of 1 or more confirmed plans under this title, plus 90 days."

Subsec. (a)(8)(A). Pub. L. 109–8, § 705(1)(A), inserted "for a taxable year ending on or before the date of the filing of the petition" after "gross receipts" in introductory provisions.

Subsec. (a)(8)(A)(i). Pub. L. 109–8, § 705(1)(B), struck out "for a taxable year ending on or before the date of the filing of the petition" before "for which a return".

Subsec. (a)(8)(A)(ii). Pub. L. 109–8, § 705(1)(C), added cl. (ii) and struck out former cl. (ii) which read as follows: "assessed within 240 days, plus any time plus 30 days during which an offer in compromise with respect to such tax that was made within 240 days after such assessment was pending, before the date of the filing of the petition; or".

Subsec. (a)(8)(B). Pub. L. 109–8, § 706, substituted "incurred" for "assessed".

Subsec. (a)(8)(D). Pub. L. 109–8, § 1502(a)(1)(A)(ii), substituted "paragraph (4)" for "paragraph (3)".

Subsec. (a)(10). Pub. L. 109–8, § 223, added par. (10).

Subsec. (b). Pub. L. 109–8, § 1502(a)(1)(B), substituted "subsection (a)(2)" for "subsection (a)(1)".

Subsec. (d). Pub. L. 109–8, § 1502(a)(1)(C), substituted "subsection (a)(1)" for "subsection (a)(3)".

1994—Subsec. (a)(3). Pub. L. 103–394, § 207, amended par. (3) generally. Prior to amendment, par. (3) read as follows: "Third, allowed unsecured claims for wages, salaries, or commissions, including vacation, severance, and sick leave pay—

"(A) earned by an individual within 90 days before the date of the filing of the petition or the date of the cessation of the debtor's business, whichever occurs first; but only

"(B) to the extent of $2,000 for each such individual."

Subsec. (a)(4)(B)(i). Pub. L. 103–394, § 108(c)(1), substituted "$4,000" for "$2,000".

Subsec. (a)(5). Pub. L. 103–394, §§ 108(c)(2), 501(b)(3), substituted "section 557(b)" for "section 557(b)(1)" after "grain, as defined in" and "section 557(b)" for "section 557(b)(2)" after "facility, as defined in" in subpar. (A) and "$4,000" for "$2,000" in concluding provisions.

Subsec. (a)(6). Pub. L. 103–394, § 108(c)(3), substituted "$1,800" for "$900".

Subsec. (a)(7). Pub. L. 103–394, § 304(c)(3), added par. (7). Former par. (7) redesignated (8).

Subsec. (a)(8). Pub. L. 103–394, § 304(c)(2), redesignated par. (7) as (8) and substituted "Eighth" for "Seventh". Former par. (8) redesignated (9).

Subsec. (a)(9). Pub. L. 103–394, §§ 304(c)(1), 501(d)(11)(A), redesignated par. (8) as (9) and substituted "Ninth" for "Eighth" and "a Federal depository institutions regulatory agency (or predecessor to such agency)" for "the Federal Deposit Insurance Corporation, the Resolution Trust Corporation, the Director of the Office of Thrift Supervision, the Comptroller of the Currency, or the Board of Governors of the Federal Reserve System, or their predecessors or successors,".

Subsec. (d). Pub. L. 103–394, § 501(d)(11)(B), substituted "(a)(6), (a)(7), (a)(8), or (a)(9)" for "or (a)(6)".

1990—Subsec. (a)(8). Pub. L. 101–647 added par. (8).

1984—Subsec. (a)(3). Pub. L. 98–353, § 449(a)(1), inserted a comma after "severance".

Subsec. (a)(4). Pub. L. 98–353, § 449(a)(2), substituted "an employee benefit plan" for "employee benefit plans" in provisions preceding subpar. (A).

Subsec. (a)(4)(B)(i). Pub. L. 98–353, § 449(a)(3), inserted "each" after "covered by".

Subsec. (a)(5). Pub. L. 98–353, § 350(3), added par. (5). Former par. (5) redesignated (6).

Subsec. (a)(6). Pub. L. 98–353, § 350(1), redesignated former par. (5) as (6) and substituted "Sixth" for "Fifth". Former par. (6) redesignated (7).

Subsec. (a)(7). Pub. L. 98–353, §§ 350(2), 449(a)(4), redesignated former par. (6) as (7), substituted "Seventh" for "Sixth", and inserted "only" after "units,".

Subsec. (c). Pub. L. 98–353, §449(b), substituted ''has the same priority'' for ''shall be treated the same''.

EFFECTIVE DATE OF 2010 AMENDMENT

Amendment by Pub. L. 111–203 effective 1 day after July 21, 2010, except as otherwise provided, see section 4 of Pub. L. 111–203, set out as an Effective Date note under section 5301 of Title 12, Banks and Banking.

EFFECTIVE DATE OF 2005 AMENDMENT

Pub. L. 109–8, title XIV, §1406, Apr. 20, 2005, 119 Stat. 215, as amended by Pub. L. 111–327, §3, Dec. 22, 2010, 124 Stat. 3563, provided that:

''(a) EFFECTIVE DATE.—Except as provided in subsection (b), this title [amending this section and sections 523, 548, 1104, and 1114 of this title and enacting provisions set out as a note under section 523 of this title] and the amendments made by this title shall take effect on the date of the enactment of this Act [Apr. 20, 2005].

''(b) APPLICATION OF AMENDMENTS.—

''(1) IN GENERAL.—Except as provided in paragraph (2), the amendments made by this title shall apply only with respect to cases commenced under title 11 of the United States Code on or after the date of the enactment of this Act [Apr. 20, 2005].

''(2) AVOIDANCE PERIOD.—The amendment made by section 1402(1) [amending section 548 of this title] shall apply only with respect to cases commenced under title 11 of the United States Code more than 1 year after the date of the enactment of this Act.''

Amendment by sections 212, 223, 705, 706, and 1502(a)(1) of Pub. L. 109–8 effective 180 days after Apr. 20, 2005, and not applicable with respect to cases commenced under this title before such effective date, except as otherwise provided, see section 1501 of Pub. L. 109–8, set out as a note under section 101 of this title.

EFFECTIVE DATE OF 1994 AMENDMENT

Amendment by Pub. L. 103–394 effective Oct. 22, 1994, and not applicable with respect to cases commenced under this title before Oct. 22, 1994, see section 702 of Pub. L. 103–394, set out as a note under section 101 of this title.

EFFECTIVE DATE OF 1984 AMENDMENT

Amendment by Pub. L. 98–353 effective with respect to cases filed 90 days after July 10, 1984, see section 552(a) of Pub. L. 98–353, set out as a note under section 101 of this title.

ADJUSTMENT OF DOLLAR AMOUNTS

The dollar amounts specified in this section were adjusted by notices of the Judicial Conference of the United States pursuant to section 104 of this title as follows:

By notice dated Feb. 19, 2010, 75 F.R. 8747, effective Apr. 1, 2010, in subsec. (a)(4), dollar amount ''10,950'' was adjusted to ''11,725''; in subsec. (a)(5), dollar amount ''10,950'' was adjusted to ''11,725''; in subsec. (a)(6), dollar amount ''5,400'' was adjusted to ''5,775''; and, in subsec. (a)(7), dollar amount ''2,425'' was adjusted to ''2,600''. See note of the Judicial Conference of the United States set out as a note under section 104 of this title.

By notice dated Feb. 7, 2007, 72 F.R. 7082, effective Apr. 1, 2007, in subsec. (a)(4), dollar amount ''10,000'' was adjusted to ''10,950''; in subsec. (a)(5), dollar amount ''10,000'' was adjusted to ''10,950''; in subsec. (a)(6), dollar amount ''4,925'' was adjusted to ''5,400''; and, in subsec. (a)(7), dollar amount ''2,225'' was adjusted to ''2,425''.

By notice dated Feb. 18, 2004, 69 F.R. 8482, effective Apr. 1, 2004, in subsec. (a)(3), dollar amount ''4,650'' was adjusted to ''4,925''; in subsec. (a)(4)(B)(i), dollar amount ''4,650'' was adjusted to ''4,925''; in subsec. (a)(5), dollar amount ''4,650'' was adjusted to ''4,925''; and, in subsec. (a)(6), dollar amount ''2,100'' was adjusted to ''2,225''.

By notice dated Feb. 13, 2001, 66 F.R. 10910, effective Apr. 1, 2001, in subsec. (a)(3), dollar amount ''4,300'' was adjusted to ''4,650''; in subsec. (a)(4)(B)(i), dollar amount ''4,300'' was adjusted to ''4,650''; in subsec. (a)(5), dollar amount ''4,300'' was adjusted to ''4,650''; and, in subsec. (a)(6), dollar amount ''1,950'' was adjusted to ''2,100''.

By notice dated Feb. 3, 1998, 63 F.R. 7179, effective Apr. 1, 1998, in subsec. (a)(3), dollar amount ''4,000'' was adjusted to ''4,300''; in subsec. (a)(4)(B)(i), dollar amount ''4,000'' was adjusted to ''4,300''; in subsec. (a)(5), dollar amount ''4,000'' was adjusted to ''4,300''; and, in subsec. (a)(6), dollar amount ''1,800'' was adjusted to ''1,950''.

## § 508. Effect of distribution other than under this title

If a creditor of a partnership debtor receives, from a general partner that is not a debtor in a case under chapter 7 of this title, payment of, or a transfer of property on account of, a claim that is allowed under this title and that is not secured by a lien on property of such partner, such creditor may not receive any payment under this title on account of such claim until each of the other holders of claims on account of which such holders are entitled to share equally with such creditor under this title has received payment under this title equal in value to the consideration received by such creditor from such general partner.

(Pub. L. 95–598, Nov. 6, 1978, 92 Stat. 2585; Pub. L. 109–8, title VIII, §802(d)(7), Apr. 20, 2005, 119 Stat. 146.)

HISTORICAL AND REVISION NOTES
LEGISLATIVE STATEMENTS

Section 508(b) of the House amendment is new and provides an identical rule with respect to a creditor of a partnership who receives payment from a partner, to that of a creditor of a debtor who receives a payment in a foreign proceeding involving the debtor.

SENATE REPORT NO. 95–989

This section prohibits a creditor from receiving any distribution in the bankruptcy case if he has received payment of a portion of his claim in a foreign proceeding, until the other creditors in the bankruptcy case in this country that are entitled to share equally with that creditor have received as much as he has in the foreign proceeding.

AMENDMENTS

2005—Pub. L. 109–8 designated subsec. (b) as entire section and struck out subsec. (a) which read as follows: ''If a creditor receives, in a foreign proceeding, payment of, or a transfer of property on account of, a claim that is allowed under this title, such creditor may not receive any payment under this title on account of such claim until each of the other holders of claims on account of which such holders are entitled to share equally with such creditor under this title has received payment under this title equal in value to the consideration received by such creditor in such foreign proceeding.''

EFFECTIVE DATE OF 2005 AMENDMENT

Amendment by Pub. L. 109–8 effective 180 days after Apr. 20, 2005, and not applicable with respect to cases commenced under this title before such effective date, except as otherwise provided, see section 1501 of Pub. L. 109–8, set out as a note under section 101 of this title.

## § 509. Claims of codebtors

(a) Except as provided in subsection (b) or (c) of this section, an entity that is liable with the

**<u>11 U.S.C. § 1101</u>**

tion 728 of former title 11] to transfer the case to chapter X [chapter 10 of former title 11] and a transfer motion which was filed by private parties was denied by the court.

While there are other examples of large publicly held companies which have successfully reorganized in chapter XI [chapter 11 of former title 11], including Esgrow, Inc. (C.D.Cal. 73–02510), Sherwood Diversified Services Inc. (S.D.N.Y. 73–B–213), and United Merchants and Manufacturers, Inc. (S.D.N.Y. 77–B–1513), the numerous successful chapter XI cases demonstrate two points: first, the complicated and time-consuming provisions of chapter X [chapter 10 of former title 11] are not always necessary for the successful reorganization of a company with publicly held debt, and second, the more flexible provisions in chapter XI permit a debtor to obtain relief under the Bankruptcy Act [former title 11] in significantly less time than is required to confirm a plan of reorganization under chapter X of the Bankruptcy Act.

One cannot overemphasize the advantages of speed and simplicity to both creditors and debtors. Chapter XI [chapter 11 of former title 11] allows a debtor to negotiate a plan outside of court and, having reached a settlement with a majority in number and amount of each class of creditors, permits the debtor to bind all unsecured creditors to the terms of the arrangement. From the perspective of creditors, early confirmation of a plan of arrangement: first, generally reduces administrative expenses which have priority over the claims of unsecured creditors; second, permits creditors to receive prompt distributions on their claims with respect to which interest does not accrue after the filing date; and third, increases the ultimate recovery on creditor claims by minimizing the adverse effect on the business which often accompanies efforts to operate an enterprise under the protection of the Bankruptcy Act [former title 11].

Although chapter XI [chapter 11 of former title 11] offers the corporate debtor flexibility and continuity of management, successful rehabilitation under chapter XI is often impossible for a number of reasons. First, chapter XI does not permit a debtor to "affect" secured creditors or shareholders, in the absence of their consent. Second, whereas a debtor corporation in chapter X [chapter 10 of former title 11], upon the consummation of the plan or reorganization, is discharged from all its debts and liabilities, a corporation in chapter XI may not be able to get a discharge in respect of certain kinds of claims including fraud claims, even in cases where the debtor is being operated under new management. The language of chapter 11 in the House amendment solves these problems and thus increases the utility and flexibility of the new chapter 11, as compared to chapter XI of the existing Bankruptcy Act [chapter 11 of former title 11].

Those who would urge the adoption of a two-track system have two major obstacles to meet. First, the practical experience of those involved in business rehabilitation cases, practitioners, debtors, and bankruptcy judges, has been that the more simple and expeditious procedures of chapter XI [chapter 11 of former title 11] are appropriate in the great majority of cases. While attempts have been made to convince the courts that a chapter X [chapter 10 of former title 11] proceeding is required in every case where public debt is present, the courts have categorically rejected such arguments. Second, chapter X has been far from a success. Of the 991 chapter X cases filed during the period of January 1, 1967, through December 31, 1977, only 664 have been terminated. Of those cases recorded as "terminated," only 140 resulted in consummated plans. This 21 percent success rate suggests one of the reasons for the unpopularity of chapter X.

In summary, it has been the experience of the great majority of those who have testified before the Senate and House subcommittees that a consolidated approach to business rehabilitation is warranted. Such approach is adopted in the House amendment.

Having discussed the general reasons why chapter 11 of the House amendment is sorely needed, a brief discussion of the differences between the House bill, Senate amendment, and the House amendment, is in order. Since chapter 11 of the House amendment rejects the concept of separate treatment for a public company, sections 1101(3), 1104(a), 1125(f), 1128, and 1130(a)(7) of the Senate amendment have been deleted.

AMENDMENTS

2005—Pub. L. 109–8, title III, §321(a)(2), title IV, §436(b), Apr. 20, 2005, 119 Stat. 95, 113, added items 1115 and 1116.

1988—Pub. L. 100–334, §2(c), June 16, 1988, 102 Stat. 613, added item 1114.

1984—Pub. L. 98–353, title III, §§514(b), 541(b), July 10, 1984, 98 Stat. 387, 391, added item 1113 and substituted "Implementation" for "Execution" in item 1142.

1983—Pub. L. 97–449, §5(a)(1), Jan. 12, 1983, 96 Stat. 2442, substituted "subtitle IV of title 49" for "Interstate Commerce Act" in item 1166.

## SUBCHAPTER I—OFFICERS AND ADMINISTRATION

### § 1101. Definitions for this chapter

In this chapter—

(1) "debtor in possession" means debtor except when a person that has qualified under section 322 of this title is serving as trustee in the case;

(2) "substantial consummation" means—

(A) transfer of all or substantially all of the property proposed by the plan to be transferred;

(B) assumption by the debtor or by the successor to the debtor under the plan of the business or of the management of all or substantially all of the property dealt with by the plan; and

(C) commencement of distribution under the plan.

(Pub. L. 95–598, Nov. 6, 1978, 92 Stat. 2626.)

HISTORICAL AND REVISION NOTES

SENATE REPORT NO. 95–989

This section contains definitions of three terms that are used in chapter 11. Paragraph (1) defines debtor in possession to mean the debtor, except when a trustee who has qualified in serving in the case.

Paragraph (2), derived from section 229a of current law [section 629(a) of former title 11], defines substantial consummation. Substantial consummation of a plan occurs when transfer of all or substantially all of the property proposed by the plan to be transferred is actually transferred; when the debtor (or its successor) has assumed the business of the debtor or the management of all or substantially all of the property dealt with by the plan; and when distribution under the plan has commenced.

Paragraph (3) defines for purposes of Chapter 11 a public company to mean "a debtor who, within 12 months prior to the filing of a petition for relief under this chapter, had outstanding liabilities of $5 million or more, exclusive of liabilities for goods, services, or taxes and not less than 1,000 security holders." There are, as noted, special safeguards for public investors related to the reorganization of a public company, as so defined.

Both requirements must be met: liabilities, excluding tax obligations and trade liabilities, must be $5 million or more; and (2) the number of holders of securities, debt or equity, or both, must be not less than 1,000. The amount and number are to be determined as of any time within 12 months prior to the filing of the petition for reorganization.

## 11 U.S.C. § 1125

EFFECTIVE DATE OF 2005 AMENDMENT

Amendment by Pub. L. 109–8 effective 180 days after Apr. 20, 2005, and not applicable with respect to cases commenced under this title before such effective date, except as otherwise provided, see section 1501 of Pub. L. 109–8, set out as a note under section 101 of this title.

EFFECTIVE DATE OF 1994 AMENDMENT

Amendment by Pub. L. 103–394 effective Oct. 22, 1994, and not applicable with respect to cases commenced under this title before Oct. 22, 1994, see section 702 of Pub. L. 103–394, set out as a note under section 101 of this title.

EFFECTIVE DATE OF 1984 AMENDMENT

Amendment by Pub. L. 98–353 effective with respect to cases filed 90 days after July 10, 1984, see section 552(a) of Pub. L. 98–353, set out as a note under section 101 of this title.

## § 1125. Postpetition disclosure and solicitation

(a) In this section—

(1) ''adequate information'' means information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of the holders of claims or interests in the case, that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan, but adequate information need not include such information about any other possible or proposed plan and in determining whether a disclosure statement provides adequate information, the court shall consider the complexity of the case, the benefit of additional information to creditors and other parties in interest, and the cost of providing additional information; and

(2) ''investor typical of holders of claims or interests of the relevant class'' means investor having—

(A) a claim or interest of the relevant class;

(B) such a relationship with the debtor as the holders of other claims or interests of such class generally have; and

(C) such ability to obtain such information from sources other than the disclosure required by this section as holders of claims or interests in such class generally have.

(b) An acceptance or rejection of a plan may not be solicited after the commencement of the case under this title from a holder of a claim or interest with respect to such claim or interest, unless, at the time of or before such solicitation, there is transmitted to such holder the plan or a summary of the plan, and a written disclosure statement approved, after notice and a hearing, by the court as containing adequate information. The court may approve a disclosure statement without a valuation of the debtor or an appraisal of the debtor's assets.

(c) The same disclosure statement shall be transmitted to each holder of a claim or interest of a particular class, but there may be transmitted different disclosure statements, differing in amount, detail, or kind of information, as between classes.

(d) Whether a disclosure statement required under subsection (b) of this section contains adequate information is not governed by any otherwise applicable nonbankruptcy law, rule, or regulation, but an agency or official whose duty is to administer or enforce such a law, rule, or regulation may be heard on the issue of whether a disclosure statement contains adequate information. Such an agency or official may not appeal from, or otherwise seek review of, an order approving a disclosure statement.

(e) A person that solicits acceptance or rejection of a plan, in good faith and in compliance with the applicable provisions of this title, or that participates, in good faith and in compliance with the applicable provisions of this title, in the offer, issuance, sale, or purchase of a security, offered or sold under the plan, of the debtor, of an affiliate participating in a joint plan with the debtor, or of a newly organized successor to the debtor under the plan, is not liable, on account of such solicitation or participation, for violation of any applicable law, rule, or regulation governing solicitation of acceptance or rejection of a plan or the offer, issuance, sale, or purchase of securities.

(f) Notwithstanding subsection (b), in a small business case—

(1) the court may determine that the plan itself provides adequate information and that a separate disclosure statement is not necessary;

(2) the court may approve a disclosure statement submitted on standard forms approved by the court or adopted under section 2075 of title 28; and

(3)(A) the court may conditionally approve a disclosure statement subject to final approval after notice and a hearing;

(B) acceptances and rejections of a plan may be solicited based on a conditionally approved disclosure statement if the debtor provides adequate information to each holder of a claim or interest that is solicited, but a conditionally approved disclosure statement shall be mailed not later than 25 days before the date of the hearing on confirmation of the plan; and

(C) the hearing on the disclosure statement may be combined with the hearing on confirmation of a plan.

(g) Notwithstanding subsection (b), an acceptance or rejection of the plan may be solicited from a holder of a claim or interest if such solicitation complies with applicable nonbankruptcy law and if such holder was solicited before the commencement of the case in a manner complying with applicable nonbankruptcy law.

(Pub. L. 95–598, Nov. 6, 1978, 92 Stat. 2633; Pub. L. 98–353, title III, §509, July 10, 1984, 98 Stat. 385; Pub. L. 103–394, title II, §217(e), Oct. 22, 1994, 108 Stat. 4127; Pub. L. 109–8, title IV, §§408, 431, title VII, §717, Apr. 20, 2005, 119 Stat. 106, 109, 131.)

HISTORICAL AND REVISION NOTES

LEGISLATIVE STATEMENTS

Section 1125 of the House amendment is derived from section 1125 of the House bill and Senate amendment

except with respect to section 1125(f) of the Senate amendment. It will not be necessary for the court to consider the report of the examiner prior to approval of a disclosure statement. The investigation of the examiner is to proceed on an independent basis from the procedure of the reorganization under chapter 11. In order to ensure that the examiner's report will be expeditious and fair, the examiner is precluded from serving as a trustee in the case or from representing a trustee if a trustee is appointed, whether the case remains in chapter 11 or is converted to chapter 7 or 13.

SENATE REPORT NO. 95–989

This section extends disclosure requirements in connection with solicitations to all cases under chapter 11. Heretofore this subject was dealt with by the Bankruptcy Act [former title 11] mainly in the special contexts of railroad reorganizations and chapter X [chapter 10 of former title 11] cases.

Subsection (a) defines (1) the subject matter of disclosure as "adequate information" and relates the standard of adequacy to an (2) "investor typical of holders or claims or interests of the relevant class." "Investor" is used broadly here, for it will almost always include a trade creditor or other creditors who originally had no investment interest or interest. It refers to the investment-type decision by those called upon to accept a plan to modify their claims or interests, which typically will involve acceptance of new securities or of a cash payment in lieu thereof.

Both the kind and form of information are left essentially to the judicial discretion of the court, guided by the specification in subparagraph (a)(1) that it be of a kind and in sufficient detail that a reasonable and typical investor can make an informed judgment about the plan. The information required will necessarily be governed by the circumstances of the case.

Reporting and audit standards devised for solvent and continuing businesses do not necessarily fit a debtor in reorganization. Subsection (a)(1) expressly incorporates consideration of the nature and history of the debtor and the condition of its books and records into the determination of what is reasonably practicable to supply. These factors are particularly pertinent to historical data and to discontinued operations of no future relevance.

A plan is necessarily predicated on knowledge of the assets and liabilities being dealt with and on factually supported expectations as to the future course of the business sufficient to meet the feasibility standard in section 1130(a)(11) of this title. It may thus be necessary to provide estimates or judgments for that purpose. Yet it remains practicable to describe, in such detail as may be relevant and needed, the basis for the plan and the data on which supporters of the plan rely.

Subsection (b) establishes the jurisdiction of the court over this subject by prohibiting solicitation of acceptance or rejection of a plan after the commencement of the case, unless the person solicited receives, before or at the time of the solicitation, a written disclosure statement approved by the court, after notice and hearing, as containing adequate information. As under present law, determinations of value, by appraisal or otherwise, are not required if not needed to accomplish the purpose specified in subsection (a)(1).

Subsection (c) requires that the same disclosure statement be transmitted to each member of a class. It recognizes that the information needed for an informed judgment about the plan may differ among classes. A class whose rights under the plan center on a particular fund or asset would have no use for an extensive description of other matters that could not affect them.

Subsection (d) relieves the court of the need to follow any otherwise applicable Federal or state law in determining the adequacy of the information contained in the disclosure statement submitted for its approval. It authorizes an agency or official, Federal or state, charged with administering cognate laws so preempted to advise the court on the adequacy of proposed disclosure statement. But they are not authorized to appeal the court's decision.

Solicitations with respect to a plan do not involve just mere requests for opinions. Acceptance of the plan vitally affects creditors and shareholders, and most frequently the solicitation involves an offering of securities in exchange for claims or interests. The present bankruptcy statute [former title 11] has exempted such offerings under each of its chapters from the registration and disclosure requirements of the Securities Act of 1933 [15 U.S.C. 77a et seq.], an exemption also continued by section 1145(a)(2) of this title. The extension of the disclosure requirements to all chapter 11 cases justifies the coordinate extension of these exemptions. By the same token, no valid purpose is served not to exempt from the requirements of similar state laws in a matter under the exclusive jurisdiction of the Federal bankruptcy laws.

Subsection (e) exonerates any person who, in good faith and in compliance with this title, solicits or participates in the offer, issuance, sale or purchase, under the plan, of a security from any liability, on account of such solicitation or participation, for violation of any law, rule, or regulation governing the offer, issuance, sale, or purchase of securities. This exoneration is coordinate with the exemption from Federal or State registration or licensing requirements provided by section 1145 of this title.

In the nonpublic case, the court, when approving the disclosure statement, has before it the texts of the plan, a proposed disclosure document, and such other information the plan proponents and other interested parties may present at the hearing. In the final analysis the exoneration which subsection (e) grants must depend on the good faith of the plan proponents and of those who participate in the preparation of the disclosure statement and in the solicitation. Subsection (e) does not affect civil or criminal liability for defects and inadequacies that are beyond the limits of the exoneration that good faith provides.

Section 1125 applies to public companies as well, subject to the qualifications of subsection (f). In case of a public company no solicitations of acceptance is permitted unless authorized by the court upon or after approval of the plan pursuant to section 1128(c). In addition to the documents specified in subsection (b), subsection (f) requires transmission of the opinion and order of the court approving the plan and, if filed, the advisory report of the Securities and Exchange Commission or a summary thereof prepared by the Commission.

HOUSE REPORT NO. 95–595

This section is new. It is the heart of the consolidation of the various reorganization chapters found in current law. It requires disclosure before solicitation of acceptances of a plan or reorganization.

Subsection (a) contains two definitions. First, "adequate information" is defined to mean information of a kind, and insufficient detail, as far as is reasonably practical in light of the nature and history of the debtor and the condition of the debtor's books and records, that would enable a hypothetical reasonable investor typical of holders of claims or interests of the relevant class to make an informed judgment about the plan. Second, "investor typical of holders of claims or interests of the relevant class" is defined to mean an investor having a claim or interest of the relevant class, having such a relationship with the debtor as the holders of other claims or interests of the relevant class have, and having such ability to obtain information from sources other than the disclosure statement as holders of claims or interests of the relevant class have, and having such ability to obtain information from sources other than the disclosure statement as holders of claims or interests of the relevant class have. That is, the hypothetical investor against which the disclosure is measured must not be an insider if other members of the class are not insiders, and so on. In other words, the adequacy of disclosure is measured against the typical investor, not an extraordinary one.

The Supreme Court's rulemaking power will not extend to rulemaking that will prescribe what con-

stitutes adequate information. That standard is a sub-
stantive standard. Precisely what constitutes adequate
information in any particular instance will develop on
a case-by-case basis. Courts will take a practical ap-
proach as to what is necessary under the circumstances
of each case, such as the cost of preparation of the
statements, the need for relative speed in solicitation
and confirmation, and, of course, the need for investor
protection. There will be a balancing of interests in
each case. In reorganization cases, there is frequently
great uncertainty. Therefore the need for flexibility is
greatest.

Subsection (b) is the operative subsection. It pro-
hibits solicitation of acceptances or rejections of a plan
after the commencement of the case unless, at the time
of the solicitation or before, there is transmitted to the
solicitee the plan or a summary of the plan, and a writ-
ten disclosure statement approved by the court as con-
taining adequate information. The subsection permits
approval of the statement without the necessity of a
valuation of the debtor or an appraisal of the debtor's
assets. However, in some cases, a valuation or appraisal
will be necessary to develop adequate information. The
court will be able to determine what is necessary in
light of the facts and circumstances of each particular
case.

Subsection (c) requires that the same disclosure
statement go to all members of a particular class, but
permits different disclosure to different classes.

Subsection (d) excepts the disclosure statements
from the requirements of the securities laws (such as
section 14 of the 1934 Act [15 U.S.C. 78n] and section 5
of the 1933 Act [15 U.S.C. 77e]), and from similar State
securities laws (blue sky laws, for example). The sub-
section permits an agency or official whose duty is to
administer or enforce such laws (such as the Securities
and Exchange Commission or State Corporation Com-
missioners) to appear and be heard on the issue of
whether a disclosure statement contains adequate in-
formation, but the agencies and officials are not grant-
ed the right of appeal from an adverse determination in
any capacity. They may join in an appeal by a true
party in interest, however.

Subsection (e) is a safe harbor provision, and is nec-
essary to make the exemption provided by subsection
(d) effective. Without it, a creditor that solicited an ac-
ceptance or rejection in reliance on the court's ap-
proval of a disclosure statement would be potentially
liable under antifraud sections designed to enforce the
very sections of the securities laws from which sub-
section (d) excuses compliance. The subsection protects
only persons that solicit in good faith and in compli-
ance with the applicable provisions of the reorganiza-
tion chapter. It provides protection from legal liability
as well as from equitable liability based on an injunc-
tive action by the SEC or other agency or official.

AMENDMENTS

2005—Subsec. (a)(1). Pub. L. 109–8, §717, inserted "in-
cluding a discussion of the potential material Federal
tax consequences of the plan to the debtor, any succes-
sor to the debtor, and a hypothetical investor typical of
the holders of claims or interests in the case," after
"records," and substituted "such a hypothetical inves-
tor" for "a hypothetical reasonable investor typical of
holders of claims or interests".

Pub. L. 109–8, §431(1), inserted before semicolon "and
in determining whether a disclosure statement pro-
vides adequate information, the court shall consider
the complexity of the case, the benefit of additional in-
formation to creditors and other parties in interest,
and the cost of providing additional information".

Subsec. (f). Pub. L. 109–8, §431(2), added subsec. (f) and
struck out former subsec. (f) which read as follows:
"Notwithstanding subsection (b), in a case in which the
debtor has elected under section 1121(e) to be consid-
ered a small business—

  "(1) the court may conditionally approve a disclo-
sure statement subject to final approval after notice
and a hearing;

  "(2) acceptances and rejections of a plan may be so-
licited based on a conditionally approved disclosure
statement as long as the debtor provides adequate in-
formation to each holder of a claim or interest that
is solicited, but a conditionally approved disclosure
statement shall be mailed at least 10 days prior to
the date of the hearing on confirmation of the plan;
and

  "(3) a hearing on the disclosure statement may be
combined with a hearing on confirmation of a plan."
Subsec. (g). Pub. L. 109–8, §408, added subsec. (g).
1994—Subsec. (f). Pub. L. 103–394 added subsec. (f).
1984—Subsec. (a)(1). Pub. L. 98–353, §509(a)(1), inserted
", but adequate information need not include such in-
formation about any other possible or proposed plan".
Subsec. (a)(2)(B). Pub. L. 98–353, §509(a)(2), inserted
"the" after "with".
Subsec. (a)(2)(C). Pub. L. 98–353, §509(a)(3), inserted
"of" after "holders".
Subsec. (d). Pub. L. 98–353, §509(b), inserted "required
under subsection (b) of this section" and ", or other-
wise seek review of,".
Subsec. (e). Pub. L. 98–353, §509(c), inserted "accept-
ance or rejection of a plan" after "solicits", and "solic-
itation of acceptance or rejection of a plan or" after
"governing".

EFFECTIVE DATE OF 2005 AMENDMENT

Amendment by Pub. L. 109–8 effective 180 days after
Apr. 20, 2005, and not applicable with respect to cases
commenced under this title before such effective date,
except as otherwise provided, see section 1501 of Pub. L.
109–8, set out as a note under section 101 of this title.

EFFECTIVE DATE OF 1994 AMENDMENT

Amendment by Pub. L. 103–394 effective Oct. 22, 1994,
and not applicable with respect to cases commenced
under this title before Oct. 22, 1994, see section 702 of
Pub. L. 103–394, set out as a note under section 101 of
this title.

EFFECTIVE DATE OF 1984 AMENDMENT

Amendment by Pub. L. 98–353 effective with respect
to cases filed 90 days after July 10, 1984, see section
552(a) of Pub. L. 98–353, set out as a note under section
101 of this title.

## § 1126. Acceptance of plan

(a) The holder of a claim or interest allowed
under section 502 of this title may accept or re-
ject a plan. If the United States is a creditor or
equity security holder, the Secretary of the
Treasury may accept or reject the plan on be-
half of the United States.

(b) For the purposes of subsections (c) and (d)
of this section, a holder of a claim or interest
that has accepted or rejected the plan before the
commencement of the case under this title is
deemed to have accepted or rejected such plan,
as the case may be, if—

  (1) the solicitation of such acceptance or re-
jection was in compliance with any applicable
nonbankruptcy law, rule, or regulation gov-
erning the adequacy of disclosure in connec-
tion with such solicitation; or

  (2) if there is not any such law, rule, or regu-
lation, such acceptance or rejection was solic-
ited after disclosure to such holder of ade-
quate information, as defined in section 1125(a)
of this title.

(c) A class of claims has accepted a plan if
such plan has been accepted by creditors, other
than any entity designated under subsection (e)
of this section, that hold at least two-thirds in
amount and more than one-half in number of

## **11 U.S.C. § 1127**

EFFECTIVE DATE OF 1984 AMENDMENT

Amendment by Pub. L. 98–353 effective with respect to cases filed 90 days after July 10, 1984, see section 552(a) of Pub. L. 98–353, set out as a note under section 101 of this title.

## § 1127. Modification of plan

(a) The proponent of a plan may modify such plan at any time before confirmation, but may not modify such plan so that such plan as modified fails to meet the requirements of sections 1122 and 1123 of this title. After the proponent of a plan files a modification of such plan with the court, the plan as modified becomes the plan.

(b) The proponent of a plan or the reorganized debtor may modify such plan at any time after confirmation of such plan and before substantial consummation of such plan, but may not modify such plan so that such plan as modified fails to meet the requirements of sections 1122 and 1123 of this title. Such plan as modified under this subsection becomes the plan only if circumstances warrant such modification and the court, after notice and a hearing, confirms such plan as modified, under section 1129 of this title.

(c) The proponent of a modification shall comply with section 1125 of this title with respect to the plan as modified.

(d) Any holder of a claim or interest that has accepted or rejected a plan is deemed to have accepted or rejected, as the case may be, such plan as modified, unless, within the time fixed by the court, such holder changes such holder's previous acceptance or rejection.

(e) If the debtor is an individual, the plan may be modified at any time after confirmation of the plan but before the completion of payments under the plan, whether or not the plan has been substantially consummated, upon request of the debtor, the trustee, the United States trustee, or the holder of an allowed unsecured claim, to—

(1) increase or reduce the amount of payments on claims of a particular class provided for by the plan;

(2) extend or reduce the time period for such payments; or

(3) alter the amount of the distribution to a creditor whose claim is provided for by the plan to the extent necessary to take account of any payment of such claim made other than under the plan.

(f)(1) Sections 1121 through 1128 and the requirements of section 1129 apply to any modification under subsection (e).

(2) The plan, as modified, shall become the plan only after there has been disclosure under section 1125 as the court may direct, notice and a hearing, and such modification is approved.

(Pub. L. 95–598, Nov. 6, 1978, 92 Stat. 2635; Pub. L. 98–353, title III, §511, July 10, 1984, 98 Stat. 386; Pub. L. 109–8, title III, §321(e), Apr. 20, 2005, 119 Stat. 96; Pub. L. 111–327, §2(a)(34), Dec. 22, 2010, 124 Stat. 3561.)

HISTORICAL AND REVISION NOTES

LEGISLATIVE STATEMENTS

Section 1127(a) of the House amendment adopts a provision contained in the House bill permitting only the proponent of a plan to modify the plan and rejecting the alternative of open modification contained in the Senate amendment.

SENATE REPORT NO. 95–989

Under subsection (a) the proponent may file a proposal to modify a plan prior to confirmation. In the case of a public company the modifying proposal may be filed prior to approval.

Subsection (b) provides that a party in interest eligible to file a plan may file instead of a plan a proposal to modify a plan filed by another. Under subsection (c) a party in interest objecting to some feature of a plan may submit a proposal to modify the plan to meet the objection.

After a plan has been confirmed, but before its substantial consummation, a plan may be modified by leave of court, which subsection (d) provides shall be granted for good cause. Subsection (e) provides that a proposal to modify a plan is subject to the disclosure requirements of section 1125 and as provided in subsection (f). It provides that a creditor or stockholder who voted for or against a plan is deemed to have accepted or rejected the modifying proposal. But if the modification materially and adversely affects any of their interests, they must be afforded an opportunity to change their vote in accordance with the disclosure and solicitation requirements of section 1125.

Under subsection (g) a plan, if modified prior to confirmation, shall be confirmed if it meets the requirements of section 1130.

HOUSE REPORT NO. 95–595

Subsection (a) permits the proponent of a plan to modify it at any time before confirmation, subject, of course, to the requirements of sections 1122 and 1123, governing classification and contents of a plan. After the proponent of a plan files a modification with the court, the plan as modified becomes the plan, and is to be treated the same as an original plan.

Subsection (b) permits modification of a plan after confirmation under certain circumstances. The modification must be proposed before substantial consummation of the plan. The requirements of sections 1122 and 1123 continue to apply. The plan as modified under this subsection becomes the plan only if the court confirms the plan as modified under section 1129 and the circumstances warrant the modification.

Subsection (c) requires the proponent of a modification to comply with the disclosure provisions of section 1125. Of course, if the modification were insufficiently minor, the court might determine that additional disclosure was not required under the circumstances.

Subsection (d) simplifies modification procedure by deeming any creditor or equity security holder that has already accepted or rejected the plan to have accepted or rejected the modification, unless, within the time fixed by the court, the creditor or equity security holder changes this previous acceptance or rejection.

AMENDMENTS

2010—Subsec. (f)(1). Pub. L. 111–327 substituted "subsection (e)" for "subsection (a)".

2005—Subsecs. (e), (f). Pub. L. 109–8 added subsecs. (e) and (f).

1984—Subsec. (a). Pub. L. 98–353, §511(a), inserted "of a plan" after "After the proponent", and "of such plan" after "modification".

Subsec. (b). Pub. L. 98–353, §511(b), substituted "circumstances warrant such modification and the court, after notice and a hearing, confirms such plan as modified, under section 1129 of this title" for "the court, after notice and a hearing, confirms such plan, as modified, under section 1129 of this title, and circumstances warrant such modification".

EFFECTIVE DATE OF 2005 AMENDMENT

Amendment by Pub. L. 109–8 effective 180 days after Apr. 20, 2005, and not applicable with respect to cases commenced under this title before such effective date, except as otherwise provided, see section 1501 of Pub. L. 109–8, set out as a note under section 101 of this title.

EFFECTIVE DATE OF 1984 AMENDMENT

Amendment by Pub. L. 98–353 effective with respect to cases filed 90 days after July 10, 1984, see section 552(a) of Pub. L. 98–353, set out as a note under section 101 of this title.

## § 1128. Confirmation hearing

(a) After notice, the court shall hold a hearing on confirmation of a plan.

(b) A party in interest may object to confirmation of a plan.

(Pub. L. 95–598, Nov. 6, 1978, 92 Stat. 2635.)

HISTORICAL AND REVISION NOTES

SENATE REPORT NO. 95–989

[Section 1129 (enacted as section 1128)] Subsection (a) requires that there be a hearing in every case on the confirmation of the plan. Notice is required.

Subsection (b) permits any party in interest to object to the confirmation of the plan. The Securities and Exchange Commission and indenture trustees, as parties in interest under section 1109, may object to confirmation of the plan.

## § 1129. Confirmation of plan

(a) The court shall confirm a plan only if all of the following requirements are met:

(1) The plan complies with the applicable provisions of this title.

(2) The proponent of the plan complies with the applicable provisions of this title.

(3) The plan has been proposed in good faith and not by any means forbidden by law.

(4) Any payment made or to be made by the proponent, by the debtor, or by a person issuing securities or acquiring property under the plan, for services or for costs and expenses in or in connection with the case, or in connection with the plan and incident to the case, has been approved by, or is subject to the approval of, the court as reasonable.

(5)(A)(i) The proponent of the plan has disclosed the identity and affiliations of any individual proposed to serve, after confirmation of the plan, as a director, officer, or voting trustee of the debtor, an affiliate of the debtor participating in a joint plan with the debtor, or a successor to the debtor under the plan; and

(ii) the appointment to, or continuance in, such office of such individual, is consistent with the interests of creditors and equity security holders and with public policy; and

(B) the proponent of the plan has disclosed the identity of any insider that will be employed or retained by the reorganized debtor, and the nature of any compensation for such insider.

(6) Any governmental regulatory commission with jurisdiction, after confirmation of the plan, over the rates of the debtor has approved any rate change provided for in the plan, or such rate change is expressly conditioned on such approval.

(7) With respect to each impaired class of claims or interests—

(A) each holder of a claim or interest of such class—

(i) has accepted the plan; or

(ii) will receive or retain under the plan on account of such claim or interest property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if the debtor were liquidated under chapter 7 of this title on such date; or

(B) if section 1111(b)(2) of this title applies to the claims of such class, each holder of a claim of such class will receive or retain under the plan on account of such claim property of a value, as of the effective date of the plan, that is not less than the value of such holder's interest in the estate's interest in the property that secures such claims.

(8) With respect to each class of claims or interests—

(A) such class has accepted the plan; or

(B) such class is not impaired under the plan.

(9) Except to the extent that the holder of a particular claim has agreed to a different treatment of such claim, the plan provides that—

(A) with respect to a claim of a kind specified in section 507(a)(2) or 507(a)(3) of this title, on the effective date of the plan, the holder of such claim will receive on account of such claim cash equal to the allowed amount of such claim;

(B) with respect to a class of claims of a kind specified in section 507(a)(1), 507(a)(4), 507(a)(5), 507(a)(6), or 507(a)(7) of this title, each holder of a claim of such class will receive—

(i) if such class has accepted the plan, deferred cash payments of a value, as of the effective date of the plan, equal to the allowed amount of such claim; or

(ii) if such class has not accepted the plan, cash on the effective date of the plan equal to the allowed amount of such claim;

(C) with respect to a claim of a kind specified in section 507(a)(8) of this title, the holder of such claim will receive on account of such claim regular installment payments in cash—

(i) of a total value, as of the effective date of the plan, equal to the allowed amount of such claim;

(ii) over a period ending not later than 5 years after the date of the order for relief under section 301, 302, or 303; and

(iii) in a manner not less favorable than the most favored nonpriority unsecured claim provided for by the plan (other than cash payments made to a class of creditors under section 1122(b)); and

(D) with respect to a secured claim which would otherwise meet the description of an unsecured claim of a governmental unit under section 507(a)(8), but for the secured status of that claim, the holder of that claim will receive on account of that claim, cash payments, in the same manner and over the same period, as prescribed in subparagraph (C).

(10) If a class of claims is impaired under the plan, at least one class of claims that is impaired under the plan has accepted the plan,

## **11 U.S.C. § 1144**

(Pub. L. 95–598, Nov. 6, 1978, 92 Stat. 2639.)

HISTORICAL AND REVISION NOTES

SENATE REPORT NO. 95–989

Section 1143 fixes a 5-year limitation on presentment or surrender of securities or the performance of any other act that is a condition to participation in distribution under the plan. The 5 years runs from the date of the entry of the order of confirmation. Any entity that does not take the appropriate action with the 5-year period is barred from participation in the distribution under the plan.

## § 1144. Revocation of an order of confirmation

On request of a party in interest at any time before 180 days after the date of the entry of the order of confirmation, and after notice and a hearing, the court may revoke such order if and only if such order was procured by fraud. An order under this section revoking an order of confirmation shall—

(1) contain such provisions as are necessary to protect any entity acquiring rights in good faith reliance on the order of confirmation; and

(2) revoke the discharge of the debtor.

(Pub. L. 95–598, Nov. 6, 1978, 92 Stat. 2639; Pub. L. 98–353, title III, §515, July 10, 1984, 98 Stat. 387.)

HISTORICAL AND REVISION NOTES

SENATE REPORT NO. 95–989

If an order of confirmation was procured by fraud, then the court may revoke the order on request of a party in interest if the request is made before 180 days after the date of the entry of the order of confirmation. The order revoking the order of confirmation must revoke the discharge of the debtor, and contain such provisions as are necessary to protect any entity acquiring rights in good faith reliance on the order of confirmation.

AMENDMENTS

1984—Pub. L. 98–353 inserted "if and only" after "revoke such order".

EFFECTIVE DATE OF 1984 AMENDMENT

Amendment by Pub. L. 98–353 effective with respect to cases filed 90 days after July 10, 1984, see section 552(a) of Pub. L. 98–353, set out as a note under section 101 of this title.

## § 1145. Exemption from securities laws

(a) Except with respect to an entity that is an underwriter as defined in subsection (b) of this section, section 5 of the Securities Act of 1933 and any State or local law requiring registration for offer or sale of a security or registration or licensing of an issuer of, underwriter of, or broker or dealer in, a security do not apply to—

(1) the offer or sale under a plan of a security of the debtor, of an affiliate participating in a joint plan with the debtor, or of a successor to the debtor under the plan—

(A) in exchange for a claim against, an interest in, or a claim for an administrative expense in the case concerning the debtor or such affiliate; or

(B) principally in such exchange and partly for cash or property;

(2) the offer of a security through any warrant, option, right to subscribe, or conversion privilege that was sold in the manner specified in paragraph (1) of this subsection, or the sale of a security upon the exercise of such a warrant, option, right, or privilege;

(3) the offer or sale, other than under a plan, of a security of an issuer other than the debtor or an affiliate, if—

(A) such security was owned by the debtor on the date of the filing of the petition;

(B) the issuer of such security is—

(i) required to file reports under section 13 or 15(d) of the Securities Exchange Act of 1934; and

(ii) in compliance with the disclosure and reporting provision of such applicable section; and

(C) such offer or sale is of securities that do not exceed—

(i) during the two-year period immediately following the date of the filing of the petition, four percent of the securities of such class outstanding on such date; and

(ii) during any 180-day period following such two-year period, one percent of the securities outstanding at the beginning of such 180-day period; or

(4) a transaction by a stockbroker in a security that is executed after a transaction of a kind specified in paragraph (1) or (2) of this subsection in such security and before the expiration of 40 days after the first date on which such security was bona fide offered to the public by the issuer or by or through an underwriter, if such stockbroker provides, at the time of or before such transaction by such stockbroker, a disclosure statement approved under section 1125 of this title, and, if the court orders, information supplementing such disclosure statement.

(b)(1) Except as provided in paragraph (2) of this subsection and except with respect to ordinary trading transactions of an entity that is not an issuer, an entity is an underwriter under section 2(a)(11) of the Securities Act of 1933, if such entity—

(A) purchases a claim against, interest in, or claim for an administrative expense in the case concerning, the debtor, if such purchase is with a view to distribution of any security received or to be received in exchange for such a claim or interest;

(B) offers to sell securities offered or sold under the plan for the holders of such securities;

(C) offers to buy securities offered or sold under the plan from the holders of such securities, if such offer to buy is—

(i) with a view to distribution of such securities; and

(ii) under an agreement made in connection with the plan, with the consummation of the plan, or with the offer or sale of securities under the plan; or

(D) is an issuer, as used in such section 2(a)(11), with respect to such securities.

(2) An entity is not an underwriter under section 2(a)(11) of the Securities Act of 1933 or under paragraph (1) of this subsection with respect to an agreement that provides only for—

**<u>28 U.S.C. § 158</u>**

under title 11 to a bankruptcy judge to hear and determine and to enter appropriate orders and judgments, subject to review under section 158 of this title.

(d) The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown. The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.

(e) If the right to a jury trial applies in a proceeding that may be heard under this section by a bankruptcy judge, the bankruptcy judge may conduct the jury trial if specially designated to exercise such jurisdiction by the district court and with the express consent of all the parties.

(Added Pub. L. 98–353, title I, § 104(a), July 10, 1984, 98 Stat. 340; amended Pub. L. 99–554, title I, §§ 143, 144(b), Oct. 27, 1986, 100 Stat. 3096; Pub. L. 103–394, title I, § 112, Oct. 22, 1994, 108 Stat. 4117; Pub. L. 109–8, title VIII, § 802(c)(1), Apr. 20, 2005, 119 Stat. 145.)

AMENDMENTS

2005—Subsec. (b)(2)(P). Pub. L. 109–8 added subpar. (P).

1994—Subsec. (e). Pub. L. 103–394 added subsec. (e).

1986—Subsec. (b)(2). Pub. L. 99–554, in subpar. (B) substituted "interests" for "interest" and inserted reference to chapter 12, and in subpar. (G) inserted a comma after "annul".

EFFECTIVE DATE OF 2005 AMENDMENT

Amendment by Pub. L. 109–8 effective 180 days after Apr. 20, 2005, and not applicable with respect to cases commenced under Title 11, Bankruptcy, before such effective date, except as otherwise provided, see section 1501 of Pub. L. 109–8, set out as a note under section 101 of Title 11.

EFFECTIVE DATE OF 1994 AMENDMENT

Amendment by Pub. L. 103–394 effective Oct. 22, 1994, and not applicable with respect to cases commenced under Title 11, Bankruptcy, before Oct. 22, 1994, see section 702 of Pub. L. 103–394, set out as a note under section 101 of Title 11.

EFFECTIVE DATE OF 1986 AMENDMENT

Amendment by Pub. L. 99–554 effective 30 days after Oct. 27, 1986, see section 302(a) of Pub. L. 99–554, set out as a note under section 581 of this title.

## § 158. Appeals

(a) The district courts of the United States shall have jurisdiction to hear appeals [1]
    (1) from final judgments, orders, and decrees;
    (2) from interlocutory orders and decrees issued under section 1121(d) of title 11 increasing or reducing the time periods referred to in section 1121 of such title; and
    (3) with leave of the court, from other interlocutory orders and decrees;

and, with leave of the court, from interlocutory orders and decrees, of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under section 157 of this title. An

---

[1] So in original. Probably should be followed by a dash.

appeal under this subsection shall be taken only to the district court for the judicial district in which the bankruptcy judge is serving.

(b)(1) The judicial council of a circuit shall establish a bankruptcy appellate panel service composed of bankruptcy judges of the districts in the circuit who are appointed by the judicial council in accordance with paragraph (3), to hear and determine, with the consent of all the parties, appeals under subsection (a) unless the judicial council finds that—
    (A) there are insufficient judicial resources available in the circuit; or
    (B) establishment of such service would result in undue delay or increased cost to parties in cases under title 11.

Not later than 90 days after making the finding, the judicial council shall submit to the Judicial Conference of the United States a report containing the factual basis of such finding.

(2)(A) A judicial council may reconsider, at any time, the finding described in paragraph (1).

(B) On the request of a majority of the district judges in a circuit for which a bankruptcy appellate panel service is established under paragraph (1), made after the expiration of the 1-year period beginning on the date such service is established, the judicial council of the circuit shall determine whether a circumstance specified in subparagraph (A) or (B) of such paragraph exists.

(C) On its own motion, after the expiration of the 3-year period beginning on the date a bankruptcy appellate panel service is established under paragraph (1), the judicial council of the circuit may determine whether a circumstance specified in subparagraph (A) or (B) of such paragraph exists.

(D) If the judicial council finds that either of such circumstances exists, the judicial council may provide for the completion of the appeals then pending before such service and the orderly termination of such service.

(3) Bankruptcy judges appointed under paragraph (1) shall be appointed and may be reappointed under such paragraph.

(4) If authorized by the Judicial Conference of the United States, the judicial councils of 2 or more circuits may establish a joint bankruptcy appellate panel comprised of bankruptcy judges from the districts within the circuits for which such panel is established, to hear and determine, upon the consent of all the parties, appeals under subsection (a) of this section.

(5) An appeal to be heard under this subsection shall be heard by a panel of 3 members of the bankruptcy appellate panel service, except that a member of such service may not hear an appeal originating in the district for which such member is appointed or designated under section 152 of this title.

(6) Appeals may not be heard under this subsection by a panel of the bankruptcy appellate panel service unless the district judges for the district in which the appeals occur, by majority vote, have authorized such service to hear and determine appeals originating in such district.

(c)(1) Subject to subsections (b) and (d)(2), each appeal under subsection (a) shall be heard by a 3-judge panel of the bankruptcy appellate panel service established under subsection (b)(1) unless—

(A) the appellant elects at the time of filing the appeal; or

(B) any other party elects, not later than 30 days after service of notice of the appeal;

to have such appeal heard by the district court.

(2) An appeal under subsections (a) and (b) of this section shall be taken in the same manner as appeals in civil proceedings generally are taken to the courts of appeals from the district courts and in the time provided by Rule 8002 of the Bankruptcy Rules.

(d)(1) The courts of appeals shall have jurisdiction of appeals from all final decisions, judgments, orders, and decrees entered under subsections (a) and (b) of this section.

(2)(A) The appropriate court of appeals shall have jurisdiction of appeals described in the first sentence of subsection (a) if the bankruptcy court, the district court, or the bankruptcy appellate panel involved, acting on its own motion or on the request of a party to the judgment, order, or decree described in such first sentence, or all the appellants and appellees (if any) acting jointly, certify that—

(i) the judgment, order, or decree involves a question of law as to which there is no controlling decision of the court of appeals for the circuit or of the Supreme Court of the United States, or involves a matter of public importance;

(ii) the judgment, order, or decree involves a question of law requiring resolution of conflicting decisions; or

(iii) an immediate appeal from the judgment, order, or decree may materially advance the progress of the case or proceeding in which the appeal is taken;

and if the court of appeals authorizes the direct appeal of the judgment, order, or decree.

(B) If the bankruptcy court, the district court, or the bankruptcy appellate panel—

(i) on its own motion or on the request of a party, determines that a circumstance specified in clause (i), (ii), or (iii) of subparagraph (A) exists; or

(ii) receives a request made by a majority of the appellants and a majority of appellees (if any) to make the certification described in subparagraph (A);

then the bankruptcy court, the district court, or the bankruptcy appellate panel shall make the certification described in subparagraph (A).

(C) The parties may supplement the certification with a short statement of the basis for the certification.

(D) An appeal under this paragraph does not stay any proceeding of the bankruptcy court, the district court, or the bankruptcy appellate panel from which the appeal is taken, unless the respective bankruptcy court, district court, or bankruptcy appellate panel, or the court of appeals in which the appeal is pending, issues a stay of such proceeding pending the appeal.

(E) Any request under subparagraph (B) for certification shall be made not later than 60 days after the entry of the judgment, order, or decree.

(Added Pub. L. 98–353, title I, § 104(a), July 10, 1984, 98 Stat. 341; amended Pub. L. 101–650, title III, § 305, Dec. 1, 1990, 104 Stat. 5105; Pub. L. 103–394, title I, §§ 102, 104(c), (d), Oct. 22, 1994, 108 Stat. 4108–4110; Pub. L. 109–8, title XII, § 1233(a), Apr. 20, 2005, 119 Stat. 202; Pub. L. 111–327, § 2(c)(1), Dec. 22, 2010, 124 Stat. 3562.)

REFERENCES IN TEXT

The Bankruptcy Rules, referred to in subsec. (c)(2), are set out in the Appendix to Title 11, Bankruptcy.

AMENDMENTS

2010—Subsec. (d)(2)(D). Pub. L. 111–327 substituted "appeal is pending" for "appeal in pending".

2005—Subsec. (c)(1). Pub. L. 109–8, § 1233(a)(1), substituted "Subject to subsections (b) and (d)(2)," for "Subject to subsection (b),".

Subsec. (d). Pub. L. 109–8, § 1233(a)(2), designated existing provisions as par. (1) and added par. (2).

1994—Subsec. (a). Pub. L. 103–394, § 102, which directed the amendment of subsec. (a) by striking "from" the first place it appears and all that follows through "decrees," and inserting pars. (1) to (3), was executed by making the insertion and striking after "appeals" "from final judgments, orders, and decrees,", which is through "decrees," the first place appearing, to reflect the probable intent of Congress.

Subsec. (b)(1). Pub. L. 103–394, § 104(c)(3), added par. (1) and struck out former par. (1) which read as follows: "The judicial council of a circuit may establish a bankruptcy appellate panel, comprised of bankruptcy judges from districts within the circuit, to hear and determine, upon the consent of all the parties, appeals under subsection (a) of this section."

Subsec. (b)(2). Pub. L. 103–394, § 104(c)(3), added par. (2). Former par. (2) redesignated (4).

Subsec. (b)(3). Pub. L. 103–394, § 104(c)(1), (3), added par. (3) and struck out former par. (3) which read as follows: "No appeal may be referred to a panel under this subsection unless the district judges for the district, by majority vote, authorize such referral of appeals originating within the district."

Subsec. (b)(4). Pub. L. 103–394, § 104(c)(1), (2), redesignated par. (2) as (4) and struck out former par. (4) which read as follows: "A panel established under this section shall consist of three bankruptcy judges, provided a bankruptcy judge may not hear an appeal originating within a district for which the judge is appointed or designated under section 152 of this title."

Subsec. (b)(5), (6). Pub. L. 103–394, § 104(c)(4), added pars. (5) and (6).

Subsec. (c). Pub. L. 103–394, § 104(d), designated existing provisions as par. (2) and added par. (1).

1990—Subsec. (b)(2) to (4). Pub. L. 101–650 added par. (2) and redesignated former pars. (2) and (3) as (3) and (4), respectively.

EFFECTIVE DATE OF 2005 AMENDMENT

Amendment by Pub. L. 109–8 effective 180 days after Apr. 20, 2005, and not applicable with respect to cases commenced under Title 11, Bankruptcy, before such effective date, except as otherwise provided, see section 1501 of Pub. L. 109–8, set out as a note under section 101 of Title 11.

EFFECTIVE DATE OF 1994 AMENDMENT

Amendment by Pub. L. 103–394 effective Oct. 22, 1994, and not applicable with respect to cases commenced under Title 11, Bankruptcy, before Oct. 22, 1994, see section 702 of Pub. L. 103–394, set out as a note under section 101 of Title 11.

PROCEDURAL RULES

Pub. L. 109–8, title XII, § 1233(b), Apr. 20, 2005, 119 Stat. 203, provided that:

"(1) TEMPORARY APPLICATION.—A provision of this subsection shall apply to appeals under section 158(d)(2) of title 28, United States Code, until a rule of practice and procedure relating to such provision and such ap-

peals is promulgated or amended under chapter 131 of such title.

''(2) CERTIFICATION.—A district court, a bankruptcy court, or a bankruptcy appellate panel may make a certification under section 158(d)(2) of title 28, United States Code, only with respect to matters pending in the respective bankruptcy court, district court, or bankruptcy appellate panel.

''(3) PROCEDURE.—Subject to any other provision of this subsection, an appeal authorized by the court of appeals under section 158(d)(2)(A) of title 28, United States Code, shall be taken in the manner prescribed in subdivisions (a)(1), (b), (c), and (d) of rule 5 of the Federal Rules of Appellate Procedure. For purposes of subdivision (a)(1) of rule 5—

''(A) a reference in such subdivision to a district court shall be deemed to include a reference to a bankruptcy court and a bankruptcy appellate panel, as appropriate; and

''(B) a reference in such subdivision to the parties requesting permission to appeal to be served with the petition shall be deemed to include a reference to the parties to the judgment, order, or decree from which the appeal is taken.

''(4) FILING OF PETITION WITH ATTACHMENT.—A petition requesting permission to appeal, that is based on a certification made under subparagraph (A) or (B) of section 158(d)(2) shall—

''(A) be filed with the circuit clerk not later than 10 days after the certification is entered on the docket of the bankruptcy court, the district court, or the bankruptcy appellate panel from which the appeal is taken; and

''(B) have attached a copy of such certification.

''(5) REFERENCES IN RULE 5.—For purposes of rule 5 of the Federal Rules of Appellate Procedure—

''(A) a reference in such rule to a district court shall be deemed to include a reference to a bankruptcy court and to a bankruptcy appellate panel; and

''(B) a reference in such rule to a district clerk shall be deemed to include a reference to a clerk of a bankruptcy court and to a clerk of a bankruptcy appellate panel.

''(6) APPLICATION OF RULES.—The Federal Rules of Appellate Procedure shall apply in the courts of appeals with respect to appeals authorized under section 158(d)(2)(A), to the extent relevant and as if such appeals were taken from final judgments, orders, or decrees of the district courts or bankruptcy appellate panels exercising appellate jurisdiction under subsection (a) or (b) of section 158 of title 28, United States Code.''

### § 159. Bankruptcy statistics

(a) The clerk of the district court, or the clerk of the bankruptcy court if one is certified pursuant to section 156(b) of this title, shall collect statistics regarding debtors who are individuals with primarily consumer debts seeking relief under chapters 7, 11, and 13 of title 11. Those statistics shall be in a standardized format prescribed by the Director of the Administrative Office of the United States Courts (referred to in this section as the ''Director'').

(b) The Director shall—

(1) compile the statistics referred to in subsection (a);

(2) make the statistics available to the public; and

(3) not later than July 1, 2008, and annually thereafter, prepare, and submit to Congress a report concerning the information collected under subsection (a) that contains an analysis of the information.

(c) The compilation required under subsection (b) shall—

(1) be itemized, by chapter, with respect to title 11;

(2) be presented in the aggregate and for each district; and

(3) include information concerning—

(A) the total assets and total liabilities of the debtors described in subsection (a), and in each category of assets and liabilities, as reported in the schedules prescribed pursuant to section 2075 of this title and filed by debtors;

(B) the current monthly income, average income, and average expenses of debtors as reported on the schedules and statements that each such debtor files under sections 521 and 1322 of title 11;

(C) the aggregate amount of debt discharged in cases filed during the reporting period, determined as the difference between the total amount of debt and obligations of a debtor reported on the schedules and the amount of such debt reported in categories which are predominantly nondischargeable;

(D) the average period of time between the date of the filing of the petition and the closing of the case for cases closed during the reporting period;

(E) for cases closed during the reporting period—

(i) the number of cases in which a reaffirmation agreement was filed; and

(ii)(I) the total number of reaffirmation agreements filed;

(II) of those cases in which a reaffirmation agreement was filed, the number of cases in which the debtor was not represented by an attorney; and

(III) of those cases in which a reaffirmation agreement was filed, the number of cases in which the reaffirmation agreement was approved by the court;

(F) with respect to cases filed under chapter 13 of title 11, for the reporting period—

(i)(I) the number of cases in which a final order was entered determining the value of property securing a claim in an amount less than the amount of the claim; and

(II) the number of final orders entered determining the value of property securing a claim;

(ii) the number of cases dismissed, the number of cases dismissed for failure to make payments under the plan, the number of cases refiled after dismissal, and the number of cases in which the plan was completed, separately itemized with respect to the number of modifications made before completion of the plan, if any; and

(iii) the number of cases in which the debtor filed another case during the 6-year period preceding the filing;

(G) the number of cases in which creditors were fined for misconduct and any amount of punitive damages awarded by the court for creditor misconduct; and

(H) the number of cases in which sanctions under rule 9011 of the Federal Rules of Bankruptcy Procedure were imposed against the debtor's attorney or damages awarded under such Rule.

## Fᴇᴅ. R. Bᴀɴᴋʀ. P. 2002

PART II—OFFICERS AND ADMINISTRATION; NOTICES; MEETINGS; EXAMINATIONS; ELECTIONS; ATTORNEYS AND ACCOUNTANTS

## Rule 2001. Appointment of Interim Trustee Before Order for Relief in a Chapter 7 Liquidation Case

(a) APPOINTMENT. At any time following the commencement of an involuntary liquidation case and before an order for relief, the court on written motion of a party in interest may order the appointment of an interim trustee under §303(g) of the Code. The motion shall set forth the necessity for the appointment and may be granted only after hearing on notice to the debtor, the petitioning creditors, the United States trustee, and other parties in interest as the court may designate.

(b) BOND OF MOVANT. An interim trustee may not be appointed under this rule unless the movant furnishes a bond in an amount approved by the court, conditioned to indemnify the debtor for costs, attorney's fee, expenses, and damages allowable under §303(i) of the Code.

(c) ORDER OF APPOINTMENT. The order directing the appointment of an interim trustee shall state the reason the appointment is necessary and shall specify the trustee's duties.

(d) TURNOVER AND REPORT. Following qualification of the trustee selected under §702 of the Code, the interim trustee, unless otherwise ordered, shall (1) forthwith deliver to the trustee all the records and property of the estate in possession or subject to control of the interim trustee and, (2) within 30 days thereafter file a final report and account.

(As amended Mar. 30, 1987, eff. Aug. 1, 1987; Apr. 30, 1991, eff. Aug. 1, 1991.)

NOTES OF ADVISORY COMMITTEE ON RULES—1983

This rule is adapted from former Bankruptcy Rule 201. See also former Chapter X Rule 10-201. In conformity with title 11 of the United States Code, this rule substitutes "interim trustee" for "receiver." Subdivision (a) and (e) of Rule 201 are not included because the provisions contained therein are found in detail in §303(g) of the Code, or they are inconsistent with §701 of the Code. Similarly, the provisions in Rule 201(d) relating to a debtor's counterbond are not included because of their presence in §303(g).

*Subdivision (a)* makes it clear that the court may not on its own motion order the appointment of an interim trustee before an order for relief is entered. Appointment may be ordered only on motion of a party in interest.

*Subdivision (b)* requires those seeking the appointment of an interim trustee to furnish a bond. The bond may be the same one required of petitioning creditors under §303(e) of the Code to indemnify the debtor for damages allowed by the court under §303(i).

*Subdivision (c)* requires that the order specify which duties enumerated in §303(g) shall be performed by the interim trustee. Reference should be made to Rule 2015 for additional duties required of an interim trustee including keeping records and filing periodic reports with the court.

*Subdivision (d)* requires turnover of records and property to the trustee selected under §702 of the Code, after qualification. That trustee may be the interim trustee who becomes the trustee because of the failure of creditors to elect one under §702(d) or the trustee elected by creditors under §702(b), (c).

NOTES OF ADVISORY COMMITTEE ON RULES—1991 AMENDMENT

This rule is amended to conform to §303(g) of the Code which provides that the United States trustee appoints the interim trustee. See Rule X–1003. This rule does not apply to the exercise by the court of the power to act sua sponte pursuant to §105(a) of the Code.

## Rule 2002. Notices to Creditors, Equity Security Holders, Administrators in Foreign Proceedings, Persons Against Whom Provisional Relief is Sought in Ancillary and Other Cross-Border Cases, United States, and United States Trustee

(a) TWENTY-ONE-DAY NOTICES TO PARTIES IN INTEREST. Except as provided in subdivisions (h), (i), (l), (p), and (q) of this rule, the clerk, or some other person as the court may direct, shall give the debtor, the trustee, all creditors and indenture trustees at least 21 days' notice by mail of:

(1) the meeting of creditors under §341 or §1104(b) of the Code, which notice, unless the court orders otherwise, shall include the debtor's employer identification number, social security number, and any other federal taxpayer identification number;

(2) a proposed use, sale, or lease of property of the estate other than in the ordinary course of business, unless the court for cause shown shortens the time or directs another method of giving notice;

(3) the hearing on approval of a compromise or settlement of a controversy other than approval of an agreement pursuant to Rule 4001(d), unless the court for cause shown directs that notice not be sent;

(4) in a chapter 7 liquidation, a chapter 11 reorganization case, or a chapter 12 family farmer debt adjustment case, the hearing on the dismissal of the case or the conversion of the case to another chapter, unless the hearing is under §707(a)(3) or §707(b) or is on dismissal of the case for failure to pay the filing fee;

(5) the time fixed to accept or reject a proposed modification of a plan;

(6) a hearing on any entity's request for compensation or reimbursement of expenses if the request exceeds $1,000;

(7) the time fixed for filing proofs of claims pursuant to Rule 3003(c); and

(8) the time fixed for filing objections and the hearing to consider confirmation of a chapter 12 plan.

(b) TWENTY-EIGHT-DAY NOTICES TO PARTIES IN INTEREST. Except as provided in subdivision (l) of this rule, the clerk, or some other person as the court may direct, shall give the debtor, the trustee, all creditors and indenture trustees not less than 28 days' notice by mail of the time fixed (1) for filing objections and the hearing to consider approval of a disclosure statement or, under §1125(f), to make a final determination whether the plan provides adequate information so that a separate disclosure statement is not necessary; and (2) for filing objections and the hearing to consider confirmation of a chapter 9, chapter 11, or chapter 13 plan.

(c) CONTENT OF NOTICE.

(1) *Proposed Use, Sale, or Lease of Property.* Subject to Rule 6004, the notice of a proposed use, sale, or lease of property required by sub-

division (a)(2) of this rule shall include the time and place of any public sale, the terms and conditions of any private sale and the time fixed for filing objections. The notice of a proposed use, sale, or lease of property, including real estate, is sufficient if it generally describes the property. The notice of a proposed sale or lease of personally identifiable information under §363(b)(1) of the Code shall state whether the sale is consistent with any policy prohibiting the transfer of the information.

(2) *Notice of Hearing on Compensation.* The notice of a hearing on an application for compensation or reimbursement of expenses required by subdivision (a)(6) of this rule shall identify the applicant and the amounts requested.

(3) *Notice of Hearing on Confirmation When Plan Provides for an Injunction.* If a plan provides for an injunction against conduct not otherwise enjoined under the Code, the notice required under Rule 2002(b)(2) shall:

(A) include in conspicuous language (bold, italic, or underlined text) a statement that the plan proposes an injunction;

(B) describe briefly the nature of the injunction; and

(C) identify the entities that would be subject to the injunction.

(d) NOTICE TO EQUITY SECURITY HOLDERS. In a chapter 11 reorganization case, unless otherwise ordered by the court, the clerk, or some other person as the court may direct, shall in the manner and form directed by the court give notice to all equity security holders of (1) the order for relief; (2) any meeting of equity security holders held pursuant to §341 of the Code; (3) the hearing on the proposed sale of all or substantially all of the debtor's assets; (4) the hearing on the dismissal or conversion of a case to another chapter; (5) the time fixed for filing objections to and the hearing to consider approval of a disclosure statement; (6) the time fixed for filing objections to and the hearing to consider confirmation of a plan; and (7) the time fixed to accept or reject a proposed modification of a plan.

(e) NOTICE OF NO DIVIDEND. In a chapter 7 liquidation case, if it appears from the schedules that there are no assets from which a dividend can be paid, the notice of the meeting of creditors may include a statement to that effect; that it is unnecessary to file claims; and that if sufficient assets become available for the payment of a dividend, further notice will be given for the filing of claims.

(f) OTHER NOTICES. Except as provided in subdivision (*l*) of this rule, the clerk, or some other person as the court may direct, shall give the debtor, all creditors, and indenture trustees notice by mail of:

(1) the order for relief;

(2) the dismissal or the conversion of the case to another chapter, or the suspension of proceedings under §305;

(3) the time allowed for filing claims pursuant to Rule 3002;

(4) the time fixed for filing a complaint objecting to the debtor's discharge pursuant to §727 of the Code as provided in Rule 4004;

(5) the time fixed for filing a complaint to determine the dischargeability of a debt pursuant to §523 of the Code as provided in Rule 4007;

(6) the waiver, denial, or revocation of a discharge as provided in Rule 4006;

(7) entry of an order confirming a chapter 9, 11, or 12 plan;

(8) a summary of the trustee's final report in a chapter 7 case if the net proceeds realized exceed $1,500;

(9) a notice under Rule 5008 regarding the presumption of abuse;

(10) a statement under §704(b)(1) as to whether the debtor's case would be presumed to be an abuse under §707(b); and

(11) the time to request a delay in the entry of the discharge under §§1141(d)(5)(C), 1228(f), and 1328(h). Notice of the time fixed for accepting or rejecting a plan pursuant to Rule 3017(c) shall be given in accordance with Rule 3017(d).

(g) ADDRESSING NOTICES.

(1) Notices required to be mailed under Rule 2002 to a creditor, indenture trustee, or equity security holder shall be addressed as such entity or an authorized agent has directed in its last request filed in the particular case. For the purposes of this subdivision—

(A) a proof of claim filed by a creditor or indenture trustee that designates a mailing address constitutes a filed request to mail notices to that address, unless a notice of no dividend has been given under Rule 2002(e) and a later notice of possible dividend under Rule 3002(c)(5) has not been given; and

(B) a proof of interest filed by an equity security holder that designates a mailing address constitutes a filed request to mail notices to that address.

(2) Except as provided in §342(f) of the Code, if a creditor or indenture trustee has not filed a request designating a mailing address under Rule 2002(g)(1) or Rule 5003(e), the notices shall be mailed to the address shown on the list of creditors or schedule of liabilities, whichever is filed later. If an equity security holder has not filed a request designating a mailing address under Rule 2002(g)(1) or Rule 5003(e), the notices shall be mailed to the address shown on the list of equity security holders.

(3) If a list or schedule filed under Rule 1007 includes the name and address of a legal representative of an infant or incompetent person, and a person other than that representative files a request or proof of claim designating a name and mailing address that differs from the name and address of the representative included in the list or schedule, unless the court orders otherwise, notices under Rule 2002 shall be mailed to the representative included in the list or schedules and to the name and address designated in the request or proof of claim.

(4) Notwithstanding Rule 2002(g)(1)–(3), an entity and a notice provider may agree that when the notice provider is directed by the court to give a notice, the notice provider shall give the notice to the entity in the manner agreed to and at the address or addresses

the entity supplies to the notice provider. That address is conclusively presumed to be a proper address for the notice. The notice provider's failure to use the supplied address does not invalidate any notice that is otherwise effective under applicable law.

(5) A creditor may treat a notice as not having been brought to the creditor's attention under §342(g)(1) only if, prior to issuance of the notice, the creditor has filed a statement that designates the name and address of the person or organizational subdivision of the creditor responsible for receiving notices under the Code, and that describes the procedures established by the creditor to cause such notices to be delivered to the designated person or subdivision.

(h) NOTICES TO CREDITORS WHOSE CLAIMS ARE FILED. In a chapter 7 case, after 90 days following the first date set for the meeting of creditors under §341 of the Code, the court may direct that all notices required by subdivision (a) of this rule be mailed only to the debtor, the trustee, all indenture trustees, creditors that hold claims for which proofs of claim have been filed, and creditors, if any, that are still permitted to file claims by reason of an extension granted pursuant to Rule 3002(c)(1) or (c)(2). In a case where notice of insufficient assets to pay a dividend has been given to creditors pursuant to subdivision (e) of this rule, after 90 days following the mailing of a notice of the time for filing claims pursuant to Rule 3002(c)(5), the court may direct that notices be mailed only to the entities specified in the preceding sentence.

(i) NOTICES TO COMMITTEES. Copies of all notices required to be mailed pursuant to this rule shall be mailed to the committees elected under §705 or appointed under §1102 of the Code or to their authorized agents. Notwithstanding the foregoing subdivisions, the court may order that notices required by subdivision (a)(2), (3) and (6) of this rule be transmitted to the United States trustee and be mailed only to the committees elected under §705 or appointed under §1102 of the Code or to their authorized agents and to the creditors and equity security holders who serve on the trustee or debtor in possession and file a request that all notices be mailed to them. A committee appointed under §1114 shall receive copies of all notices required by subdivisions (a)(1), (a)(5), (b), (f)(2), and (f)(7), and such other notices as the court may direct.

(j) NOTICES TO THE UNITED STATES. Copies of notices required to be mailed to all creditors under this rule shall be mailed (1) in a chapter 11 reorganization case, to the Securities and Exchange Commission at any place the Commission designates, if the Commission has filed either a notice of appearance in the case or a written request to receive notices; (2) in a commodity broker case, to the Commodity Futures Trading Commission at Washington, D.C.; (3) in a chapter 11 case, to the Internal Revenue Service at its address set out in the register maintained under Rule 5003(e) for the district in which the case is pending; (4) if the papers in the case disclose a debt to the United States other than for taxes, to the United States attorney for the district in which the case is pending and to the department, agency, or instrumentality of the United States through which the debtor became indebted; or (5) if the filed papers disclose a stock interest of the United States, to the Secretary of the Treasury at Washington, D.C.

(k) NOTICES TO UNITED STATES TRUSTEE. Unless the case is a chapter 9 municipality case or unless the United States trustee requests otherwise, the clerk, or some other person as the court may direct, shall transmit to the United States trustee notice of the matters described in subdivisions (a)(2), (a)(3), (a)(4), (a)(8), (b), (f)(1), (f)(2), (f)(4), (f)(6), (f)(7), (f)(8), and (q) of this rule and notice of hearings on all applications for compensation or reimbursement of expenses. Notices to the United States trustee shall be transmitted within the time prescribed in subdivision (a) or (b) of this rule. The United States trustee shall also receive notice of any other matter if such notice is requested by the United States trustee or ordered by the court. Nothing in these rules requires the clerk or any other person to transmit to the United States trustee any notice, schedule, report, application or other document in a case under the Securities Investor Protection Act, 15 U.S.C. §78aaa *et.*[1] *seq.*

(*l*) NOTICE BY PUBLICATION. The court may order notice by publication if it finds that notice by mail is impracticable or that it is desirable to supplement the notice.

(m) ORDERS DESIGNATING MATTER OF NOTICES. The court may from time to time enter orders designating the matters in respect to which, the entity to whom, and the form and manner in which notices shall be sent except as otherwise provided by these rules.

(n) CAPTION. The caption of every notice given under this rule shall comply with Rule 1005. The caption of every notice required to be given by the debtor to a creditor shall include the information required to be in the notice by §342(c) of the Code.

(*o*) NOTICE OF ORDER FOR RELIEF IN CONSUMER CASE. In a voluntary case commenced by an individual debtor whose debts are primarily consumer debts, the clerk or some other person as the court may direct shall give the trustee and all creditors notice by mail of the order for relief within 21 days from the date thereof.

(p) NOTICE TO A CREDITOR WITH A FOREIGN ADDRESS.

(1) If, at the request of the United States trustee or a party in interest, or on its own initiative, the court finds that a notice mailed within the time prescribed by these rules would not be sufficient to give a creditor with a foreign address to which notices under these rules are mailed reasonable notice under the circumstances, the court may order that the notice be supplemented with notice by other means or that the time prescribed for the notice by mail be enlarged.

(2) Unless the court for cause orders otherwise, a creditor with a foreign address to which notices under this rule are mailed shall be given at least 30 days' notice of the time fixed for filing a proof of claim under Rule 3002(c) or Rule 3003(c).

(3) Unless the court for cause orders otherwise, the mailing address of a creditor with a

---

[1] So in original. Period probably should not appear.

foreign address shall be determined under Rule 2002(g).

(q) NOTICE OF PETITION FOR RECOGNITION OF FOREIGN PROCEEDING AND OF COURT'S INTENTION TO COMMUNICATE WITH FOREIGN COURTS AND FOREIGN REPRESENTATIVES.—

(1) *Notice of Petition for Recognition.* The clerk, or some other person as the court may direct, shall forthwith give the debtor, all persons or bodies authorized to administer foreign proceedings of the debtor, all entities against whom provisional relief is being sought under §1519 of the Code, all parties to litigation pending in the United States in which the debtor is a party at the time of the filing of the petition, and such other entities as the court may direct, at least 21 days' notice by mail of the hearing on the petition for recognition of a foreign proceeding. The notice shall state whether the petition seeks recognition as a foreign main proceeding or foreign nonmain proceeding.

(2) *Notice of Court's Intention to Communicate with Foreign Courts and Foreign Representatives.* The clerk, or some other person as the court may direct, shall give the debtor, all persons or bodies authorized to administer foreign proceedings of the debtor, all entities against whom provisional relief is being sought under §1519 of the Code, all parties to litigation pending in the United States in which the debtor is a party at the time of the filing of the petition, and such other entities as the court may direct, notice by mail of the court's intention to communicate with a foreign court or foreign representative.

(As amended Pub. L. 98–91, §2(a), Aug. 30, 1983, 97 Stat. 607; Pub. L. 98–353, title III, §321, July 10, 1984, 98 Stat. 357; Mar. 30, 1987, eff. Aug. 1, 1987; Apr. 30, 1991, eff. Aug. 1, 1991; Apr. 22, 1993, eff. Aug. 1, 1993; Apr. 23, 1996, eff. Dec. 1, 1996; Apr. 11, 1997, eff. Dec. 1, 1997; Apr. 26, 1999, eff. Dec. 1, 1999; Apr. 17, 2000, eff. Dec. 1, 2000; Apr. 23, 2001, eff. Dec. 1, 2001; Mar. 27, 2003, eff. Dec. 1, 2003; Apr. 26, 2004, eff. Dec. 1, 2004; Apr. 25, 2005, eff. Dec. 1, 2005; Apr. 23, 2008, eff. Dec. 1, 2008; Mar. 26, 2009, eff. Dec. 1, 2009.)

NOTES OF ADVISORY COMMITTEE ON RULES—1983

Some of the notices required by this rule may be given either by the clerk or as the court may otherwise direct. For example, the court may order the trustee or debtor in possession to transmit one or more of the notices required by this rule, such as, notice of a proposed sale of property. See §363(b) of the Code. When publication of notices is required or desirable, reference should be made to Rule 9008.

Notice of the order for relief is required to be given by §342 of the Code and by subdivision (f)(1) of this rule. That notice may be combined with the notice of the meeting of creditors as indicated in Official Form No. 16, the notice and order of the meeting of creditors.

*Subdivision (a)* sets forth the requirement that 20 days notice be given of the significant events in a case under the Bankruptcy Code. The former Act and Rules provided a ten day notice in bankruptcy and Chapter XI cases, and a 20 day notice in a Chapter X case. This rule generally makes uniform the 20 day notice provision except that subdivision (b) contains a 25 day period for certain events in a chapter 9, 11, or 13 case. Generally, Rule 9006 permits reduction of time periods. Since notice by mail is complete on mailing, the requirement of subdivision (a) is satisfied if the notices are deposited

in the mail at least 20 days before the event. See Rule 9006(e). The exceptions referred to in the introductory phrase include the modifications in the notice procedure permitted by subdivision (h) as to non-filing creditors, subdivision (i) as to cases where a committee is functioning, and subdivision (k) where compliance with subdivision (a) is impracticable.

The notice of a proposed sale affords creditors an opportunity to object to the sale and raise a dispute for the court's attention. Section 363(b) of the Code permits the trustee or debtor in possession to sell property, other than in the ordinary course of business, only after notice and hearing. If no objection is raised after notice, §102(1) provides that there need not be an actual hearing. Thus, absent objection, there would be no court involvement with respect to a trustee's sale. Once an objection is raised, only the court may pass on it.

Prior to the Code the court could shorten the notice period for a proposed sale of property or dispense with notice. This subdivision (a), permits the 20 day period to be shortened in appropriate circumstances but the rule does not contain a provision allowing the court to dispense with notice. The rule is thus consistent with the Code, §§363(b) and 102(1)(A) of the Code. See 28 U.S.C. §2075. It may be necessary, in certain circumstances, however, to use a method of notice other than mail. Subdivision (a)(2) vests the court with discretion, on cause shown, to order a different method. Reference should also be made to Rule 6004 which allows a different type of notice of proposed sales when the property is of little value.

Notice of the hearing on an application for compensation or reimbursement of expenses totalling $100 or less need not be given. In chapter 13 cases relatively small amounts are sometimes allowed for post-confirmation services and it would not serve a useful purpose to require advance notice.

*Subdivision (b)* is similar to subdivision (a) but lengthens the notice time to 25 days with respect to those events particularly significant in chapter 9, 11 and 13 cases. The additional time may be necessary to formulate objections to a disclosure statement or confirmation of a plan and preparation for the hearing on approval of the disclosure statement or confirmation. The disclosure statement and hearing thereon is only applicable in chapter 9 cases (§901(a) of the Code), and chapter 11 cases (§1125 of the Code).

*Subdivision (c)* specifies certain matters that should be included in the notice of a proposed sale of property and notice of the hearing on an application for allowances. Rule 6004 fixes the time within which parties in interest may file objections to a proposed sale of property.

*Subdivision (d)* relates exclusively to the notices given to equity security holders in chapter 11 cases. Under chapter 11, a plan may impair the interests of the debtor's shareholders or a plan may be a relatively simple restructuring of unsecured debt. In some cases, it is necessary that equity interest holders receive various notices and in other cases there is no purpose to be served. This subdivision indicates that the court is not mandated to order notices but rather that the matter should be treated with some flexibility. The court may decide whether notice is to be given and how it is to be given. Under §341(b) of the Code, a meeting of equity security holders is not required in each case, only when it is ordered by the court. Thus subdivision (d)(2) requires notice only when the court orders a meeting.

In addition to the notices specified in this subdivision, there may be other events or matters arising in a case as to which equity security holders should receive notice. These are situations left to determination by the court.

*Subdivision (e),* authorizing a notice of the apparent insufficiency of assets for the payment of any dividend, is correlated with Rule 3002(c)(5), which provides for the issuance of an additional notice to creditors if the possibility of a payment later materializes.

*Subdivision (f)* provides for the transmission of other notices to which no time period applies. Clause (1) re-

quires notice of the order for relief; this complements the mandate of §342 of the Code requiring such notice as is appropriate of the order for relief. This notice may be combined with the notice of the meeting of creditors to avoid the necessity of more than one mailing. See Official Form No. 16, notice of meeting of creditors.

*Subdivision (g)* recognizes that an agent authorized to receive notices for a creditor may, without a court order, designate where notices to the creditor he represents should be addressed. Agent includes an officer of a corporation, an attorney at law, or an attorney in fact if the requisite authority has been given him. It should be noted that Official Forms Nos. 17 and 18 do not include an authorization of the holder of a power of attorney to receive notices for the creditor. Neither these forms nor this rule carries any implication that such an authorization may not be given in a power of attorney or that a request for notices to be addressed to both the creditor or his duly authorized agent may not be filed.

*Subdivision (h)*. After the time for filing claims has expired in a chapter 7 case, creditors who have not filed their claims in accordance with Rule 3002(c) are not entitled to share in the estate except as they may come within the special provisions of §726 of the Code or Rule 3002(c)(6). The elimination of notice to creditors who have no recognized stake in the estate may permit economies in time and expense. Reduction of the list of creditors to receive notices under this subdivision is discretionary. This subdivision does not apply to the notice of the meeting of creditors.

*Subdivision (i)* contains a list of matters of which notice may be given a creditors' committee or to its authorized agent in lieu of notice to the creditors. Such notice may serve every practical purpose of a notice to all the creditors and save delay and expense. *In re Schulte-United, Inc.*, 59 F.2d 553, 561 (8th Cir. 1932).

*Subdivision (j)*. The premise for the requirement that the district director of internal revenue receive copies of notices that all creditors receive in a chapter 11 case is that every debtor is potentially a tax debtor of the United States. Notice to the district director alerts him to the possibility that a tax debtor's estate is about to be liquidated or reorganized and that the debtor may be discharged. When other indebtedness to the United States is indicated, the United States attorney is notified as the person in the best position to protect the interests of the government. In addition, the provision requires notice by mail to the head of any department, agency, or instrumentality of the United States through whose action the debtor became indebted to the United States. This rule is not intended to preclude a local rule from requiring a state or local tax authority to receive some or all of the notices to creditors under these rules.

*Subdivision (k)* specifies two kinds of situations in which notice by publication may be appropriate: (1) when notice by mail is impracticable; and (2) when notice by mail alone is less than adequate. Notice by mail may be impracticable when, for example, the debtor has disappeared or his records have been destroyed and the names and addresses of his creditors are unavailable, or when the number of creditors with nominal claims is very large and the estate to be distributed may be insufficient to defray the costs of issuing the notices. Supplementing notice by mail is also indicated when the debtor's records are incomplete or inaccurate and it is reasonable to believe that publication may reach some of the creditors who would otherwise be missed. Rule 9008 applies when the court directs notice by publication under this rule. Neither clause (2) of subdivision (a) nor subdivision (k) of this rule is concerned with the publication of advertisement to the general public of a sale of property of the estate at public auction under Rule 6004(b). See 3 Collier, *Bankruptcy* 522–23 (14th ed. 1971); 4B *id.* 1165–67 (1967); 2 *id.* ¶363.03 (15th ed. 1981).

*Subdivision (m)*. Inclusion in notices to creditors of information as to other names used by the debtor as required by Rule 1005 will assist them in the preparation of their proofs of claim and in deciding whether to file a complaint objecting to the debtor's discharge. Additional names may be listed by the debtor on his statement of affairs when he did not file the petition. The mailing of notices should not be postponed to await a delayed filing of the statement of financial affairs.

NOTES OF ADVISORY COMMITTEE ON RULES—1987 AMENDMENT

*Subdivision (a)* is amended to provide that notice of a hearing on an application for compensation must be given only when the amount requested is in excess of $500.

*Subdivision (d)*. A new notice requirement is added as clause (3). When a proposed sale is of all or substantially all of the debtor's assets, it is appropriate that equity security holders be given notice of the proposed sale. The clauses of subdivision (d) are renumbered to accommodate this addition.

*Subdivision (f)*. Clause (7) is eliminated. Mailing of a copy of the discharge order is governed by Rule 4004(g).

*Subdivision (g)* is amended to relieve the clerk of the duty to mail notices to the address shown in a proof of claim when a notice of no dividend has been given pursuant to Rule 2002. This amendment avoids the necessity of the clerk searching proofs of claim which are filed in no dividend cases to ascertain whether a different address is shown.

*Subdivision (n)* was enacted by §321 of the 1984 amendments.

NOTES OF ADVISORY COMMITTEE ON RULES—1991 AMENDMENT

*Subdivision (a)(3)* is amended to exclude compromise or settlement agreements concerning adequate protection or which modify or terminate the automatic stay, provide for use of cash collateral, or create a senior or equal lien on collateral to obtain credit. Notice requirements relating to approval of such agreements are governed by Rule 4001(d).

*Subdivision (a)(5)* is amended to include a hearing on dismissal or conversion of a chapter 12 case. This subdivision does not apply when a hearing is not required. It is also amended to avoid the necessity of giving notice to all creditors of a hearing on the dismissal of a consumer debtor's case based on substantial abuse of chapter 7. Such hearings on dismissal under §707(b) of the Code are governed by Rule 1017(e).

*Subdivision (a)(9)* is added to provide for notice of the time fixed for filing objections and the hearing to consider confirmation of a plan in a chapter 12 case. Section 1224 of the Code requires "expedited notice" of the confirmation hearing in a chapter 12 case and requires that the hearing be concluded not later than 45 days after the filing of the plan unless the time is extended for cause. This amendment establishes 20 days as the notice period. The court may shorten this time on its own motion or on motion of a party in interest. The notice includes both the date of the hearing and the date for filing objections, and must be accompanied by a copy of the plan or a summary of the plan in accordance with Rule 3015(d).

*Subdivision (b)* is amended to delete as unnecessary the references to subdivisions (h) and (i).

*Subdivision (d)* does not require notice to equity security holders in a chapter 12 case. The procedural burden of requiring such notice is outweighed by the likelihood that all equity security holders of a family farmer will be informed of the progress of the case without formal notice. Subdivision (d) is amended to recognize that the United States trustee may convene a meeting of equity security holders pursuant to §341(b).

*Subdivision (f)(2)* is amended and subdivision (f)(4) is deleted to require notice of any conversion of the case, whether the conversion is by court order or is effectuated by the debtor filing a notice of conversion pursuant to §§1208(a) or 1307(a). Subdivision (f)(8), renumbered (f)(7), is amended to include entry of an order confirming a chapter 12 plan. Subdivision (f)(9) is amended to increase the amount to $1,500.

*Subdivisions (g) and (j)* are amended to delete the words "with the court" and subdivision (i) is amended to delete the words "with the clerk" because these phrases are unnecessary. See Rules 5005(a) and 9001(3).

*Subdivision (i)* is amended to require that the United States trustee receive notices required by subdivision (a)(2), (3) and (7) of this rule notwithstanding a court order limiting such notice to committees and to creditors and equity security holders who request such notices. Subdivision (i) is amended further to include committees elected pursuant to §705 of the Code and to provide that committees of retired employees appointed in chapter 11 cases receive certain notices.

*Subdivision (k)* is derived from Rule X–1008. The administrative functions of the United States trustee pursuant to 28 U.S.C. §586(a) and standing to be heard on issues under §307 and other sections of the Code require that the United States trustee be informed of developments and issues in every case except chapter 9 cases. The rule omits those notices described in subdivision (a)(1) because a meeting of creditors is convened only by the United States trustee, and those notices described in subdivision (a)(4) (date fixed for filing claims against a surplus), subdivision (a)(6) (time fixed to accept or reject proposed modification of a plan), subdivision (a)(8) (time fixed for filing proofs of claims in chapter 11 cases), subdivision (f)(3) (time fixed for filing claims in chapter 7, 12, and 13 cases), and subdivision (f)(5) (time fixed for filing complaint to determine dischargeability of debt) because these notices do not relate to matters that generally involve the United States trustee. Nonetheless, the omission of these notices does not prevent the United States trustee from receiving such notices upon request. The United States trustee also receives notice of hearings on applications for compensation or reimbursement without regard to the $500 limitation contained in subdivision (a)(7) of this rule. This rule is intended to be flexible in that it permits the United States trustee in a particular judicial district to request notices in certain categories, and to request not to receive notices in other categories, when the practice in that district makes that desirable.

### NOTES OF ADVISORY COMMITTEE ON RULES—1993 AMENDMENT

*Subdivision (j)* is amended to avoid the necessity of sending an additional notice to the Washington, D.C. address of the Securities and Exchange Commission if the Commission prefers to have notices sent only to a local office. This change also clarifies that notices required to be mailed pursuant to this rule must be sent to the Securities and Exchange Commission only if it has filed a notice of appearance or has filed a written request. Other amendments are stylistic and make no substantive change.

### NOTES OF ADVISORY COMMITTEE ON RULES—1996 AMENDMENT

*Paragraph (a)(4)* is abrogated to conform to the abrogation of Rule 3002(c)(6). The remaining paragraphs of subdivision (a) are renumbered, and references to these paragraphs contained in other subdivisions of this rule are amended accordingly.

*Paragraph (j)(8)* is amended so that a summary of the trustee's final account, which is prepared after distribution of property, does not have to be mailed to the debtor, all creditors, and indenture trustees in a chapter 7 case. Parties are sufficiently protected by receiving a summary of the trustee's final report that informs parties of the proposed distribution of property.

*Subdivision (h)* is amended (1) to provide that an order under this subdivision may not be issued if a notice of no dividend is given pursuant to Rule 2002(e) and the time for filing claims has not expired as provided in Rule 3002(c)(5); (2) to clarify that notices required to be mailed by subdivision (a) to parties other than creditors must be mailed to those entities despite an order issued pursuant to subdivision (h); (3) to provide that if the court, pursuant to Rule 3002(c)(1) or 3002(c)(2), has granted an extension of time to file a proof of claim, the creditor for whom the extension has been granted must continue to receive notices despite an order issued pursuant to subdivision (h); and (4) to delete references to subdivision (a)(4) and Rule 3002(c)(6), which have been abrogated.

Other amendments to this rule are stylistic.

*GAP Report on Rule 2002.* No changes since publication, except for stylistic changes and the correction of a typographical error in the committee note.

### NOTES OF ADVISORY COMMITTEE ON RULES—1997 AMENDMENT

*Paragraph (a)(1)* is amended to include notice of a meeting of creditors convened under §1104(b) of the Code for the purpose of electing a trustee in a chapter 11 case. The court for cause shown may order the 20-day period reduced pursuant to Rule 9006(c)(1).

*Subdivision (n)* is amended to conform to the 1994 amendment to §342 of the Code. As provided in §342(c), the failure of a notice given by the debtor to a creditor to contain the information required by §342(c) does not invalidate the legal effect of the notice.

*GAP Report on Rule 2002.* No changes to the published draft.

### COMMITTEE NOTES ON RULES—1999 AMENDMENT

*Paragraph (a)(4)* is amended to conform to the amendments to Rule 1017. If the United States trustee files a motion to dismiss a case for the debtor's failure to file the list of creditors, schedules, or the statement of financial affairs within the time specified in §707(a)(3), the amendments to this rule and to Rule 1017 eliminate the requirement that all creditors receive notice of the hearing.

*Paragraph (a)(4)* is amended further to conform to Rule 1017(b), which requires that notice of the hearing on dismissal of a case for failure to pay the filing fee be served on only the debtor and the trustee.

*Paragraph (f)(2)* is amended to provide for notice of the suspension of proceedings under §305.

*GAP Report on Rule 2002.* No changes since publication.

### COMMITTEE NOTES ON RULES—2000 AMENDMENT

*Paragraph (a)(6)* is amended to increase the dollar amount from $500 to $1,000. The amount was last amended in 1987, when it was changed from $100 to $500. The amendment also clarifies that the notice is required only if a particular entity is requesting more than $1,000 as compensation or reimbursement of expenses. If several professionals are requesting compensation or reimbursement, and only one hearing will be held on all applications, notice under paragraph (a)(6) is required only with respect to the entities that have requested more than $1,000. If each applicant requests $1,000 or less, notice under paragraph (a)(6) is not required even though the aggregate amount of all applications to be considered at the hearing is more than $1,000.

If a particular entity had filed prior applications or had received compensation or reimbursement of expenses at an earlier time in the case, the amounts previously requested or awarded are not considered when determining whether the present application exceeds $1,000 for the purpose of applying this rule.

*GAP Report on Rule 2002(a).* No changes since publication.

### COMMITTEE NOTES ON RULES—2001 AMENDMENT

*Subdivision (c)(3)* is added to assure that parties given notice of a hearing to consider confirmation of a plan under subdivision (b) are given adequate notice of an injunction provided for in the plan if it would enjoin conduct that is not otherwise enjoined by operation of the Code. The validity and effect of any injunction provided for in a plan are substantive law matters that are beyond the scope of these rules.

The notice requirement of subdivision (c)(3) is not applicable to an injunction contained in a plan if it is substantially the same as an injunction provided under the Code. For example, if a plan contains an injunction against acts to collect a discharged debt from the debtor, Rule 2002(c)(3) would not apply because that conduct would be enjoined under §524(a)(2) upon the debtor's discharge. But if a plan provides that creditors will be enjoined from asserting claims against persons who are not debtors in the case, the notice of the confirmation hearing must include the information required under Rule 2002(c)(3) because that conduct would not be enjoined by operation of the Code. *See* §524(e).

The requirement that the notice identify the entities that would be subject to the injunction requires only reasonable identification under the circumstances. If the entities that would be subject to the injunction cannot be identified by name, the notice may describe them by class or category if reasonable under the circumstances. For example, it may be sufficient for the notice to identify the entities as "all creditors of the debtor" and for the notice to be published in a manner that satisfies due process requirements.

*Subdivision (g)* has been revised to clarify that where a creditor or indenture trustee files both a proof of claim which includes a mailing address and a separate request designating a mailing address, the last paper filed determines the proper address. The amendments also clarify that a request designating a mailing address is effective only with respect to a particular case.

Under Rule 2002(g), a duly filed proof of claim is considered a request designating a mailing address if a notice of no dividend has been given under Rule 3002(e), but has been superseded by a subsequent notice of possible dividend under Rule 3002(c)(5). A duly filed proof of interest is considered a request designating a mailing address of an equity security holder.

Rule 2002(g)(3) is added to assure that notices to an infant or incompetent person under this rule are mailed to the appropriate guardian or other legal representative. Under Rule 1007(m), if the debtor knows that a creditor is an infant or incompetent person, the debtor is required to include in the list and schedule of creditors the name and address of the person upon whom process would be served in an adversary proceeding in accordance with Rule 7004(b)(2). If the infant or incompetent person, or another person, files a request or proof of claim designating a different name and mailing address, the notices would have to be mailed to both names and addresses until the court resolved the issue as to the proper mailing address.

The other amendments to Rule 2002(g) are stylistic.

*Changes Made After Publication and Comments.* In Rule 2002(c)(3), the word "highlighted" was replaced with "underlined" because highlighted documents are difficult to scan electronically for inclusion in the clerks' files. The Committee Note was revised to put in a more prominent position the statement that the validity and effect of any injunction provided for in a plan are substantive matters beyond the scope of the rules.

In Rule 2002(g), no changes were made.

COMMITTEE NOTES ON RULES—2003 AMENDMENT

Subdivision (a)(1) of the rule is amended to direct the clerk or other person giving notice of the §341 or §1104(b) meeting of creditors to include the debtor's full social security number on the notice. Official Form 9, the form of the notice of the meeting of creditors that will become a part of the court's file in the case, will include only the last four digits of the debtor's social security number. This rule, however, directs the clerk to include the full social security number on the notice that is served on the creditors and other identified parties, unless the court orders otherwise in a particular case. This will enable creditors and other parties in interest who are in possession of the debtor's social security number to verify the debtor's identity and proceed accordingly. The filed Official Form 9, however, will not include the debtor's full social security number. This will prevent the full social security number from

becoming a part of the court's file in the case, and the number will not be included in the court's electronic records. Creditors who already have the debtor's social security number will be able to verify the existence of a case under the debtor's social security number, but any person searching the electronic case files without the number will not be able to acquire the debtor's social security number.

*Changes Made After Publication and Comments.* The rule amendment was made in response to concerns of both private creditors and taxing authorities that truncating the social security number of a debtor to the last four digits would unduly hamper their ability to identify the debtor and govern their actions accordingly. Therefore, the Advisory Committee amended Rule 2002 to require the clerk to include the debtor's full social security number on the notice informing creditors of the §341 meeting and other significant deadlines in the case. This is essentially a continuation of the practice under the current rules, and the amendment is necessary because of the amendment to Rule 1005 that restricts publication of the social security number on the caption of the petition to the final four digits of the number.

COMMITTEE NOTES ON RULES—2004 AMENDMENT

The rule is amended to reflect that the structure of the Internal Revenue Service no longer includes a District Director. Thus, rather than sending notice to the District Director, the rule now requires that the notices be sent to the location designated by the Service and set out in the register of addresses maintained by the clerk under Rule 5003(e). The other change is stylistic.

COMMITTEE NOTES ON RULES—2005 AMENDMENT

A new paragraph (g)(4) is inserted in the rule. The new paragraph authorizes an entity and a notice provider to agree that the notice provider will give notices to the entity at the address or addresses set out in their agreement. Rule 9001(9) sets out the definition of a notice provider.

The business of many entities is national in scope, and technology currently exists to direct the transmission of notice (both electronically and in paper form) to those entities in an accurate and much more efficient manner than by sending individual notices to the same creditor by separate mailings. The rule authorizes an entity and a notice provider to determine the manner of the service as well as to set the address or addresses to which the notices must be sent. For example, they could agree that all notices sent by the notice provider to the entity must be sent to a single, nationwide electronic or postal address. They could also establish local or regional addresses to which notices would be sent in matters pending in specific districts. Since the entity and notice provider also can agree on the date of the commencement of service under the agreement, there is no need to set a date in the rule after which notices would have to be sent to the address or addresses that the entity establishes. Furthermore, since the entity supplies the address to the notice provider, use of that address is conclusively presumed to be proper. Nonetheless, if that address is not used, the notice still may be effective if the notice is otherwise effective under applicable law. This is the same treatment given under Rule 5003(e) to notices sent to governmental units at addresses other than those set out in that register of addresses.

The remaining subdivisions of Rule 2002(g) continue to govern the addressing of a notice that is not sent pursuant to an agreement described in Rule 2002(g)(4).

*Changes Made After Publication and Comment.* No changes since publication.

COMMITTEE NOTES ON RULES—2008 AMENDMENT

Subdivision (b) is amended to provide for 25 days' notice of the time for the court to make a final determination whether the plan in a small business case can

serve as a disclosure statement. Conditional approval of a disclosure statement in a small business case is governed by Rule 3017.1 and does not require 25 days' notice. The court may consider this matter in a hearing combined with the confirmation hearing in a small business case.

Because of the requirements of Rule 6004(g), subdivision (c)(1) is amended to require that a trustee leasing or selling personally identifiable information under §363(b)(1)(A) or (B) of the Code, as amended in 2005, include in the notice of the lease or sale transaction a statement as to whether the lease or sale is consistent with a policy prohibiting the transfer of the information.

Subdivisions (f)(9) and (10) are new. They reflect the 2005 amendments to §§342(d) and 704(b) of the Code. Section 342(d) requires the clerk to give notice to creditors shortly after the commencement of the case as to whether a presumption of abuse exists. Subdivision (f)(9) adds this notice to the list of notices that the clerk must give. Subdivision (f)(10) implements the amendment to §704(b), which requires the court to provide a copy to all creditors of a statement by the United States trustee or bankruptcy administrator as to whether the debtor's case would be presumed to be an abuse under §707(b) not later than five days after receiving it.

Subdivision (f)(11) is also added to provide notice to creditors of the debtor's filing of a statement in a chapter 11, 12, or 13 case that there is no reasonable cause to believe that §522(q) applies in the case. This allows a creditor who disputes that assertion to request a delay of the entry of the discharge in the case.

Subdivision (g)(2) of the rule is amended because the 2005 amendments to §342(f) of the Code permit creditors in chapter 7 and 13 individual debtor cases to file a notice with any bankruptcy court of the address to which the creditor wishes all notices to be sent. The amendment to Rule 2002(g)(2) therefore only limits application of the subdivision when a creditor files a notice under §342(f).

New subdivision (g)(5) implements §342(g)(1) which was added to the Code in 2005. Section 342(g)(1) allows a creditor to treat a notice as not having been brought to the creditor's attention, and so potentially ineffective, until it is received by a person or organizational subdivision that the creditor has designated to receive notices under the Bankruptcy Code. Under that section, the creditor must have established reasonable procedures for such notices to be delivered to the designated person or subdivision. The rule provides that, in order to challenge a notice under §342(g)(1), a creditor must have filed the name and address of the designated notice recipient, as well as a description of the procedures for directing notices to that recipient, prior to the time that the challenged notice was issued. The filing required by the rule may be made as part of a creditor's filing under §342(f), which allows a creditor to file a notice of the address to be used by all bankruptcy courts or by particular bankruptcy courts to provide notice to the creditor in cases under chapters 7 and 13. Filing the name and address of the designated notice recipient and the procedures for directing notices to that recipient will reduce uncertainty as to the proper party for receiving notice and limit factual disputes as to whether a notice recipient has been designated and as to the nature of procedures adopted to direct notices to the recipient.

Subdivision (k) is amended to add notices given under subdivision (q) to the list of notices which must be served on the United States trustee.

Section 1514(d) of the Code, added by the 2005 amendments, requires that such additional time as is reasonable under the circumstances be given to creditors with foreign addresses with respect to notices and the filing of a proof of claim. Thus, subdivision (p)(1) is added to this rule to give the court flexibility to direct that notice by other means shall supplement notice by mail, or to enlarge the notice period, for creditors with foreign addresses. If cause exists, such as likely delays in the

delivery of mailed notices in particular locations, the court may order that notice also be given by email, facsimile, or private courier. Alternatively, the court may enlarge the notice period for a creditor with a foreign address. It is expected that in most situations involving foreign creditors, fairness will not require any additional notice or extension of the notice period. This rule recognizes that the court has discretion to establish procedures to determine, on its own initiative, whether relief under subdivision (p) is appropriate, but that the court is not required to establish such procedures and may decide to act only on request of a party in interest.

Subdivision (p)(2) is added to the rule to grant creditors with a foreign address to which notices are mailed at least 30 days' notice of the time within which to file proofs of claims if notice is mailed to the foreign address, unless the court orders otherwise. If cause exists, such as likely delays in the delivery of notices in particular locations, the court may extend the notice period for creditors with foreign addresses. The court may also shorten the additional notice time if circumstances so warrant. For example, if the court in a chapter 11 case determines that supplementing the notice to a foreign creditor with notice by electronic means, such as email or facsimile, would give the creditor reasonable notice, the court may order that the creditor be given only 20 days' notice in accordance with Rule 2002(a)(7).

Subdivision (p)(3) is added to provide that the court may, for cause, override a creditor's designation of a foreign address under Rule 2002(g). For example, if a party in interest believes that a creditor has wrongfully designated a foreign address to obtain additional time when it has a significant presence in the United States, the party can ask the court to order that notices to that creditor be sent to an address other than the one designated by the foreign creditor.

Subdivision (q) is added to require that notice of the hearing on the petition for recognition of a foreign proceeding be given to the debtor, all administrators in foreign proceedings of the debtor, entities against whom provisional relief is sought, and entities with whom the debtor is engaged in litigation at the time of the commencement of the case. There is no need at this stage of the proceedings to provide notice to all creditors. If the foreign representative should take action to commence a case under another chapter of the Code, the rules governing those proceedings will operate to provide that notice is given to all creditors.

The rule also requires notice of the court's intention to communicate with a foreign court or foreign representative.

*Changes Made After Publication.* Subdivision (g)(2) was amended to provide that the designated address of a governmental unit under Rule 5003(e) establishes an exception to the rule that a creditor's address is to be taken from the debtor's schedules. The fifth and sixth paragraphs of the Committee Note were amended to explain that change.

Subdivision (p)(3) was added to the rule to provide that the court may override a creditor's designation of a foreign mailing address under Rule 2002(g). This will permit a party in interest to seek court relief if a creditor has improperly designated a foreign address.

Subdivision (q)(1) and (2) were amended by adopting language from §101(24) to identify foreign representatives as "all persons or bodies authorized to administer foreign proceedings of the debtor" rather than as "all administrators in foreign proceedings of the debtor." References to Rule 5012 in subdivision (q)(2) and in the Committee Note were deleted.

COMMITTEE NOTES ON RULES—2009 AMENDMENT

The rule is amended to implement changes in connection with the amendment to Rule 9006(a) and the manner by which time is computed under the rules. The deadlines in the rule are amended to substitute a deadline that is a multiple of seven days. Throughout the rules, deadlines are amended in the following manner:

- 5-day periods become 7-day periods
- 10-day periods become 14-day periods
- 15-day periods become 14-day periods
- 20-day periods become 21-day periods
- 25-day periods become 28-day periods

### REFERENCES IN TEXT

The Securities Investor Protection Act, referred to in subd. (k), probably means the Securities Investor Protection Act of 1970, Pub. L. 91–598, Dec. 30, 1970, 84 Stat. 1636, as amended, which is classified generally to chapter 2B–1 (§78aaa et seq.) of Title 15, Commerce and Trade. For complete classification of this Act to the Code, see section 78aaa of Title 15 and Tables.

### AMENDMENT BY PUBLIC LAW

1984—Subd. (n). Pub. L. 98–353 added subd. (n).

1983—Subd. (f). Pub. L. 98–91 inserted '', or some other person as the Court may direct,'' after ''clerk''.

### EFFECTIVE DATE OF 1984 AMENDMENT

Amendment by Pub. L. 98–353 effective with respect to cases filed 90 days after July 10, 1984, see section 552(a) of Pub. L. 98–353, set out as a note under section 101 of this title.

### EFFECTIVE DATE OF 1983 AMENDMENT

Section 1 of Pub. L. 98–91 provided: ''That rule 2002(f) of the Bankruptcy Rules, as proposed by the United States Supreme Court in the order of April 25, 1983, of the Court, shall take effect on August 1, 1983, except as otherwise provided in section 2 [amending subd. (f) of this rule and enacting a provision set out as a note below].''

Section 2(b) of Pub. L. 98–91 provided that: ''The amendment made by subsection (a) [amending subd. (f) of this rule] shall take effect on August 1, 1983.''

## Rule 2003. Meeting of Creditors or Equity Security Holders

(a) DATE AND PLACE. Except as otherwise provided in §341(e) of the Code, in a chapter 7 liquidation or a chapter 11 reorganization case, the United States trustee shall call a meeting of creditors to be held no fewer than 21 and no more than 40 days after the order for relief. In a chapter 12 family farmer debt adjustment case, the United States trustee shall call a meeting of creditors to be held no fewer than 21 and no more than 35 days after the order for relief. In a chapter 13 individual's debt adjustment case, the United States trustee shall call a meeting of creditors to be held no fewer than 21 and no more than 50 days after the order for relief. If there is an appeal from or a motion to vacate the order for relief, or if there is a motion to dismiss the case, the United States trustee may set a later date for the meeting. The meeting may be held at a regular place for holding court or at any other place designated by the United States trustee within the district convenient for the parties in interest. If the United States trustee designates a place for the meeting which is not regularly staffed by the United States trustee or an assistant who may preside at the meeting, the meeting may be held not more than 60 days after the order for relief.

(b) ORDER OF MEETING.

(1) *Meeting of Creditors.* The United States trustee shall preside at the meeting of creditors. The business of the meeting shall include the examination of the debtor under oath and, in a chapter 7 liquidation case, may include the election of a creditors' committee and, if the case is not under subchapter V of chapter 7, the election of a trustee. The presiding officer shall have the authority to administer oaths.

(2) *Meeting of Equity Security Holders.* If the United States trustee convenes a meeting of equity security holders pursuant to §341(b) of the Code, the United States trustee shall fix a date for the meeting and shall preside.

(3) *Right To Vote.* In a chapter 7 liquidation case, a creditor is entitled to vote at a meeting if, at or before the meeting, the creditor has filed a proof of claim or a writing setting forth facts evidencing a right to vote pursuant to §702(a) of the Code unless objection is made to the claim or the proof of claim is insufficient on its face. A creditor of a partnership may file a proof of claim or writing evidencing a right to vote for the trustee for the estate of the general partner notwithstanding that a trustee for the estate of the partnership has previously qualified. In the event of an objection to the amount or allowability of a claim for the purpose of voting, unless the court orders otherwise, the United States trustee shall tabulate the votes for each alternative presented by the dispute and, if resolution of such dispute is necessary to determine the result of the election, the tabulations for each alternative shall be reported to the court.

(c) RECORD OF MEETING. Any examination under oath at the meeting of creditors held pursuant to §341(a) of the Code shall be recorded verbatim by the United States trustee using electronic sound recording equipment or other means of recording, and such record shall be preserved by the United States trustee and available for public access until two years after the conclusion of the meeting of creditors. Upon request of any entity, the United States trustee shall certify and provide a copy or transcript of such recording at the entity's expense.

(d) REPORT OF ELECTION AND RESOLUTION OF DISPUTES IN A CHAPTER 7 CASE.

(1) *Report of Undisputed Election.* In a chapter 7 case, if the election of a trustee or a member of a creditors' committee is not disputed, the United States trustee shall promptly file a report of the election, including the name and address of the person or entity elected and a statement that the election is undisputed.

(2) *Disputed Election.* If the election is disputed, the United States trustee shall promptly file a report stating that the election is disputed, informing the court of the nature of the dispute, and listing the name and address of any candidate elected under any alternative presented by the dispute. No later than the date on which the report is filed, the United States trustee shall mail a copy of the report to any party in interest that has made a request to receive a copy of the report. Pending disposition by the court of a disputed election for trustee, the interim trustee shall continue in office. Unless a motion for the resolution of the dispute is filed no later than 14 days after the United States trustee files a report of a disputed election for trustee, the interim trustee shall serve as trustee in the case.

(e) ADJOURNMENT. The meeting may be adjourned from time to time by announcement at

## FED. R. BANKR. P. 2019

NOTES OF ADVISORY COMMITTEE ON RULES—1983

This rule is derived from former Rules 8–210, 9–15 and 10–210 and it implements §§1109 and 1164 of the Code.

Pursuant to §1109 of the Code, parties in interest have a right to be heard and the Securities and Exchange Commission may raise and be heard on any issue but it may not take an appeal. That section is applicable in chapter 9 cases (§901 of the Code) and in chapter 11 cases, including cases under subchapter IV thereof for the reorganization of a railroad.

In a railroad reorganization case under subchapter IV of chapter 11, §1164 also gives the right to be heard to the Interstate Commerce Commission, the Department of Transportation and any state or local regulatory commission with jurisdiction over the debtor, but these entities may not appeal.

This rule does not apply in adversary proceedings. For intervention in adversary proceedings, see Rule 7024. The rules do not provide any right of compensation to or reimbursement of expenses for intervenors or others covered by this rule. Section 503(b)(3)(D) and (4) is not applicable to the entities covered by this rule.

*Subdivision (a)* is derived from former Chapter VIII Rule 8–210 and former Chapter X Rule 10–210. It permits intervention of an entity (see §101(14), (21) of the Code) not otherwise entitled to do so under the Code or this rule. Such a party seeking to intervene must show cause therefor.

*Subdivision (b)* specifically grants the appropriate state's Attorney General the right to appear and be heard on behalf of consumer creditors when it is in the public interest. See House Rep. No. 95–595, 95th Cong., 1st Sess. (1977) 189. While "consumer creditor" is not defined in the Code or elsewhere, it would include the type of individual entitled to priority under §507(a)(5) of the Code, that is, an individual who has deposited money for the purchase, lease or rental of property or the purchase of services for the personal, family, or household use of the individual. It would also include individuals who purchased or leased property for such purposes in connection with which there may exist claims for breach of warranty.

This subdivision does not grant the Attorney General the status of party in interest. In other contexts, the Attorney General will, of course, be a party in interest as for example, in representing a state in connection with a tax claim.

*Subdivision (c)* recognizes the possible interests of the Secretary of the Treasury or of the state of the debtor's locale when a municipality is the debtor. It is derived from former Chapter IX Rule 9–15 and §85(d) of the Act.

*Subdivision (d)* is derived from former Chapter X Rule 10–210 which, in turn, was derived from §206 of the Act. Section 206 has no counterpart in the Code.

*Subdivision (e)* is derived from former Chapter VIII Rule 8–210(d). It gives the court flexibility in directing the type of future notices to be given intervenors.

NOTES OF ADVISORY COMMITTEE ON RULES—1987 AMENDMENT

*Subdivision (d)* is amended to make it clear that the prohibition against appeals by labor unions is limited only to their participation in connection with the hearings on the plan as provided in subdivision (d). If a labor union would otherwise have the right to file an appeal or to be a party to an appeal, this rule does not preclude the labor union from exercising that right.

NOTES OF ADVISORY COMMITTEE ON RULES—1991 AMENDMENT

*Subdivisions (b) and (d)* are amended to include chapter 12.

## Rule 2019. Disclosure Regarding Creditors and Equity Security Holders in Chapter 9 and Chapter 11 Cases

(a) DEFINITIONS. In this rule the following terms have the meanings indicated:

(1) "Disclosable economic interest" means any claim, interest, pledge, lien, option, participation, derivative instrument, or any other right or derivative right granting the holder an economic interest that is affected by the value, acquisition, or disposition of a claim or interest.

(2) "Represent" or "represents" means to take a position before the court or to solicit votes regarding the confirmation of a plan on behalf of another.

(b) DISCLOSURE BY GROUPS, COMMITTEES, AND ENTITIES.

(1) In a chapter 9 or 11 case, a verified statement setting forth the information specified in subdivision (c) of this rule shall be filed by every group or committee that consists of or represents, and every entity that represents, multiple creditors or equity security holders that are (A) acting in concert to advance their common interests, and (B) not composed entirely of affiliates or insiders of one another.

(2) Unless the court orders otherwise, an entity is not required to file the verified statement described in paragraph (1) of this subdivision solely because of its status as:

(A) an indenture trustee;

(B) an agent for one or more other entities under an agreement for the extension of credit;

(C) a class action representative; or

(D) a governmental unit that is not a person.

(c) INFORMATION REQUIRED. The verified statement shall include:

(1) the pertinent facts and circumstances concerning:

(A) with respect to a group or committee, other than a committee appointed under §1102 or §1114 of the Code, the formation of the group or committee, including the name of each entity at whose instance the group or committee was formed or for whom the group or committee has agreed to act; or

(B) with respect to an entity, the employment of the entity, including the name of each creditor or equity security holder at whose instance the employment was arranged;

(2) if not disclosed under subdivision (c)(1), with respect to an entity, and with respect to each member of a group or committee:

(A) name and address;

(B) the nature and amount of each disclosable economic interest held in relation to the debtor as of the date the entity was employed or the group or committee was formed; and

(C) with respect to each member of a group or committee that claims to represent any entity in addition to the members of the group or committee, other than a committee appointed under §1102 or §1114 of the Code, the date of acquisition by quarter and year of each disclosable economic interest, unless acquired more than one year before the petition was filed;

(3) if not disclosed under subdivision (c)(1) or (c)(2), with respect to each creditor or equity

security holder represented by an entity, group, or committee, other than a committee appointed under § 1102 or § 1114 of the Code:

(A) name and address; and

(B) the nature and amount of each disclosable economic interest held in relation to the debtor as of the date of the statement; and

(4) a copy of the instrument, if any, authorizing the entity, group, or committee to act on behalf of creditors or equity security holders.

(d) SUPPLEMENTAL STATEMENTS. If any fact disclosed in its most recently filed statement has changed materially, an entity, group, or committee shall file a verified supplemental statement whenever it takes a position before the court or solicits votes on the confirmation of a plan. The supplemental statement shall set forth the material changes in the facts required by subdivision (c) to be disclosed.

(e) DETERMINATION OF FAILURE TO COMPLY; SANCTIONS.

(1) On motion of any party in interest, or on its own motion, the court may determine whether there has been a failure to comply with any provision of this rule.

(2) If the court finds such a failure to comply, it may:

(A) refuse to permit the entity, group, or committee to be heard or to intervene in the case;

(B) hold invalid any authority, acceptance, rejection, or objection given, procured, or received by the entity, group, or committee; or

(C) grant other appropriate relief.

(As amended Mar. 30, 1987, eff. Aug. 1, 1987; Apr. 30, 1991, eff. Aug. 1, 1991; Apr. 26, 2011, eff. Dec. 1, 2011.)

NOTES OF ADVISORY COMMITTEE ON RULES—1983

This rule is a comprehensive regulation of representation in chapter 9 municipality and in chapter 11 reorganization cases. It is derived from §§ 209–213 of the Act and former Chapter X Rule 10–211.

*Subdivision (b)* is derived from §§ 212, 213 of the Act. As used in clause (2), "other authorization" would include a power or warrant of attorney which are specifically mentioned in § 212 of the Act. This rule deals with representation provisions in mortgages, trust deeds, etc. to protect the beneficiaries from unfair practices and the like. It does not deal with the validation or invalidation of security interests generally. If immediate compliance is not possible, the court may permit a representative to be heard on a specific matter, but there is no implicit waiver of compliance on a permanent basis.

NOTES OF ADVISORY COMMITTEE ON RULES—1991 AMENDMENT

*Subdivision (a)* is amended to exclude from the requirements of this rule committees of retired employees appointed pursuant to § 1114 of the Code. The words "with the clerk" are deleted as unnecessary. See Rules 5005(a) and 9001(3).

COMMITTEE NOTES ON RULES—2011 AMENDMENT

The rule is substantially amended to expand the scope of its coverage and the content of its disclosure requirements. Stylistic and organizational changes are also made in order to provide greater clarity. Because the rule no longer applies only to representatives of creditors and equity security holders, the title of the rule has been changed to reflect its broadened focus on disclosure of financial information in chapter 9 and chapter 11 cases.

*Subdivision (a).* The content of subdivision (a) is new. It sets forth two definitions. The first is the definition of the term "disclosable economic interest," which is used in subdivisions (c)(2) and (c)(3). The definition of the term is intended to be sufficiently broad to cover any economic interest that could affect the legal and strategic positions a stakeholder takes in a chapter 9 or chapter 11 case. A disclosable economic interest extends beyond claims and interests owned by a stakeholder and includes, among other types of holdings, short positions, credit default swaps, and total return swaps.

The second definition is of "represent" or "represents." The definition provides that representation requires active participation in the case or in a proceeding on behalf of another entity—either by taking a position on a matter before the court or by soliciting votes on the confirmation of a plan. Thus, for example, an attorney who is retained and consulted by a creditor or equity security holder to monitor the case, but who does not advocate any position before the court or engage in solicitation activities on behalf of that client, does not represent the creditor or equity security holder for purposes of this rule.

*Subdivision (b).* Subdivision (b)(1) specifies who is covered by the rule's disclosure requirements. In addition to an entity, group, or committee that *represents* more than one creditor or equity security holder, the amendment extends the rule's coverage to groups or committees that *consist of* more than one creditor or equity security holder. The rule no longer excludes official committees, except as specifically indicated. The rule applies to a group of creditors or equity security holders that act in concert to advance common interests (except when the group consists exclusively of affiliates or insiders of one another), even if the group does not call itself a committee.

Subdivision (b)(2) excludes certain entities from the rule's coverage. Even though these entities may represent multiple creditors or equity security holders, they do so under formal legal arrangements of trust or contract law that preclude them from acting on the basis of conflicting economic interests. For example, an indenture trustee's responsibilities are defined by the indenture, and individual interests of bondholders would not affect the trustee's representation.

*Subdivision (c).* Subdivision (c) sets forth the information that must be included in a verified statement required to be filed under this rule. Subdivision (c)(1) continues to require disclosure concerning the formation of a committee or group, other than an official committee, and the employment of an entity.

Subdivision (c)(2) specifies information that must be disclosed with respect to the entity and each member of the committee and group filing the statement. In the case of a committee or group, the information about the nature and amount of a disclosable economic interest must be specifically provided on a member-by-member basis, and not in the aggregate. The quarter and year in which each disclosable economic interest was acquired by each member of a committee or group (other than an official committee) that claims to represent others must also be specifically provided, except for a disclosable economic interest acquired more than a year before the filing of the petition. Although the rule no longer requires the disclosure of the precise date of acquisition or the amount paid for disclosable economic interests, nothing in this rule precludes either the discovery of that information or its disclosure when ordered by the court pursuant to authority outside this rule.

Subdivision (c)(3) specifies information that must be disclosed with respect to creditors or equity security holders that are represented by an entity, group, or committee. This provision does not apply with respect to those represented by official committees. The information required to be disclosed under subdivision (c)(3)

parallels that required to be disclosed under subdivision (c)(2)(A) and (B). The amendment also clarifies that under (c)(3) the nature and amount of each disclosable economic interest of represented creditors and shareholders must be stated as of the date of the verified statement.

Subdivision (c)(4) requires the attachment of any instrument authorizing the filer of the verified statement to act on behalf of creditors or equity security holders.

*Subdivision (d).* Subdivision (d) requires the filing of a supplemental statement at the time an entity, group, or committee takes a position before the court or solicits its votes on a plan if there has been a material change in any of the information contained in its last filed statement. The supplemental verified statement must set forth the material changes that have occurred regarding the information required to be disclosed by subdivision (c) of this rule.

*Subdivision (e).* Subdivision (e) addresses the court's authority to determine whether there has been a violation of this rule and to impose a sanction for any violation. It no longer addresses the court's authority to determine violations of other applicable laws regulating the activities and personnel of an entity, group, or committee.

*Changes Made After Publication.*

*Subdivision (a).* A definition of "represent" or "represents" was added, and the subdivision was divided into paragraphs (1) and (2).

*Subdivision (b).* The provision authorizing the court to require disclosure by an entity that seeks or opposes the granting of relief was deleted.

In the paragraph now designated as (1), language was added providing that groups, committees, and entities are covered by the rule only if they consist of or represent multiple creditors or equity security holders "that are (A) acting in concert to advance their common interests, and (B) not composed entirely of affiliates or insiders of one another." The phrase "and, unless the court directs otherwise, every indenture trustee," was deleted.

Subdivision (b)(2) was added to specify entities that are not required to file a verified statement merely because they act in one of the designated capacities.

*Subdivision (c).* The authorization in subdivision (c)(2)(B) and (c)(3)(B) for the court to require the disclosure of the amount paid for a disclosable economic interest was deleted.

The requirement in subdivision (c)(2)(C) and (c)(3)(C) for disclosure of the acquisition date of each disclosable economic interest was modified. The requirement was made applicable only to members of an unofficial group or committee that claims to represent any entity in addition to the members of the group or committee, and the date that must be disclosed was limited to the quarter and year of acquisition.

*Subdivision (d).* The requirement of monthly supplementation of a verified statement was modified to require supplementation whenever a covered group, committee, or entity takes a position before the court or solicits votes on the confirmation of a plan and there has been a material change in any fact disclosed in its most recently filed statement.

*Subdivision (e).* The provisions published as subdivision (e)(1)(B) and (C), which authorized the court to determine failures to comply with legal requirements other than those imposed by Rule 2019, were deleted.

Subdivision (e)(2), which enumerated the materials the court could examine in making a determination of noncompliance, was deleted.

*Committee Note.* In the discussion of the definition of "disclosable economic interest," the specific examples of "short positions, credit default swaps, and total return swaps" were added to illustrate the breadth of the definition. A sentence was added to the discussion of subdivision (c)(2) that states that the rule does not affect the right of a party to obtain information by means of discovery or as ordered by the court under any authority outside the rule.

*Other changes.* Stylistic and organizational changes were made throughout the rule and Committee Note to reduce the length and clarify the meaning of the published proposal.

## Rule 2020. Review of Acts by United States Trustee

A proceeding to contest any act or failure to act by the United States trustee is governed by Rule 9014.

(Added Apr. 30, 1991, eff. Aug. 1, 1991.)

NOTES OF ADVISORY COMMITTEE ON RULES—1991

The United States trustee performs administrative functions, such as the convening of the meeting of creditors and the appointment of trustees and committees. Most of the acts of the United States trustee are not controversial and will go unchallenged. However, the United States trustee is not a judicial officer and does not resolve disputes regarding the propriety of its own actions. This rule, which is new, provides a procedure for judicial review of the United States trustee's acts or failure to act in connection with the administration of the case. For example, if the United States trustee schedules a §341 meeting to be held 90 days after the petition is filed, and a party in interest wishes to challenge the propriety of that act in view of §341(a) of the Code and Rule 2003 which requires that the meeting be held not more than 40 days after the order for relief, this rule permits the party to do so by motion.

This rule provides for review of acts already committed by the United States trustee, but does not provide for advisory opinions in advance of the act. This rule is not intended to limit the discretion of the United States trustee, provided that the United States trustee's act is authorized by, and in compliance with, the Code, title 28, these rules, and other applicable law.

## PART III—CLAIMS AND DISTRIBUTION TO CREDITORS AND EQUITY INTEREST HOLDERS; PLANS

## Rule 3001. Proof of Claim

(a) FORM AND CONTENT. A proof of claim is a written statement setting forth a creditor's claim. A proof of claim shall conform substantially to the appropriate Official Form.

(b) WHO MAY EXECUTE. A proof of claim shall be executed by the creditor or the creditor's authorized agent except as provided in Rules 3004 and 3005.

(c) SUPPORTING INFORMATION.

(1) *Claim Based on a Writing.* When a claim, or an interest in property of the debtor securing the claim, is based on a writing, the original or a duplicate shall be filed with the proof of claim. If the writing has been lost or destroyed, a statement of the circumstances of the loss or destruction shall be filed with the claim.

(2) *Additional Requirements in an Individual Debtor Case; Sanctions for Failure to Comply.* In a case in which the debtor is an individual:

(A) If, in addition to its principal amount, a claim includes interest, fees, expenses, or other charges incurred before the petition was filed, an itemized statement of the interest, fees, expenses, or charges shall be filed with the proof of claim.

(B) If a security interest is claimed in the debtor's property, a statement of the amount necessary to cure any default as of the date of the petition shall be filed with the proof of claim.

(C) If a security interest is claimed in property that is the debtor's principal resi-

# F<span>ED</span>. R. B<span>ANKR</span>. P. 3001

parallels that required to be disclosed under subdivision (c)(2)(A) and (B). The amendment also clarifies that under (c)(3) the nature and amount of each disclosable economic interest of represented creditors and shareholders must be stated as of the date of the verified statement.

Subdivision (c)(4) requires the attachment of any instrument authorizing the filer of the verified statement to act on behalf of creditors or equity security holders.

*Subdivision (d).* Subdivision (d) requires the filing of a supplemental statement at the time an entity, group, or committee takes a position before the court or solicits its votes on a plan if there has been a material change in any of the information contained in its last filed statement. The supplemental verified statement must set forth the material changes that have occurred regarding the information required to be disclosed by subdivision (c) of this rule.

*Subdivision (e).* Subdivision (e) addresses the court's authority to determine whether there has been a violation of this rule and to impose a sanction for any violation. It no longer addresses the court's authority to determine violations of other applicable laws regulating the activities and personnel of an entity, group, or committee.

*Changes Made After Publication.*

*Subdivision (a).* A definition of ''represent'' or ''represents'' was added, and the subdivision was divided into paragraphs (1) and (2).

*Subdivision (b).* The provision authorizing the court to require disclosure by an entity that seeks or opposes the granting of relief was deleted.

In the paragraph now designated as (1), language was added providing that groups, committees, and entities are covered by the rule only if they consist of or represent multiple creditors or equity security holders ''that are (A) acting in concert to advance their common interests, and (B) not composed entirely of affiliates or insiders of one another.'' The phrase ''and, unless the court directs otherwise, every indenture trustee,'' was deleted.

Subdivision (b)(2) was added to specify entities that are not required to file a verified statement merely because they act in one of the designated capacities.

*Subdivision (c).* The authorization in subdivision (c)(2)(B) and (c)(3)(B) for the court to require the disclosure of the amount paid for a disclosable economic interest was deleted.

The requirement in subdivision (c)(2)(C) and (c)(3)(C) for disclosure of the acquisition date of each disclosable economic interest was modified. The requirement was made applicable only to members of an unofficial group or committee that claims to represent any entity in addition to the members of the group or committee, and the date that must be disclosed was limited to the quarter and year of acquisition.

*Subdivision (d).* The requirement of monthly supplementation of a verified statement was modified to require supplementation whenever a covered group, committee, or entity takes a position before the court or solicits votes on the confirmation of a plan and there has been a material change in any fact disclosed in its most recently filed statement.

*Subdivision (e).* The provisions published as subdivision (e)(1)(B) and (C), which authorized the court to determine failures to comply with legal requirements other than those imposed by Rule 2019, were deleted.

Subdivision (e)(2), which enumerated the materials the court could examine in making a determination of noncompliance, was deleted.

*Committee Note.* In the discussion of the definition of ''disclosable economic interest,'' the specific examples of ''short positions, credit default swaps, and total return swaps'' were added to illustrate the breadth of the definition. A sentence was added to the discussion of subdivision (c)(2) that states that the rule does not affect the right of a party to obtain information by means of discovery or as ordered by the court under any authority outside the rule.

*Other changes.* Stylistic and organizational changes were made throughout the rule and Committee Note to

reduce the length and clarify the meaning of the published proposal.

## Rule 2020. Review of Acts by United States Trustee

A proceeding to contest any act or failure to act by the United States trustee is governed by Rule 9014.

(Added Apr. 30, 1991, eff. Aug. 1, 1991.)

NOTES OF ADVISORY COMMITTEE ON RULES—1991

The United States trustee performs administrative functions, such as the convening of the meeting of creditors and the appointment of trustees and committees. Most of the acts of the United States trustee are not controversial and will go unchallenged. However, the United States trustee is not a judicial officer and does not resolve disputes regarding the propriety of its own actions. This rule, which is new, provides a procedure for judicial review of the United States trustee's acts or failure to act in connection with the administration of the case. For example, if the United States trustee schedules a §341 meeting to be held 90 days after the petition is filed, and a party in interest wishes to challenge the propriety of that act in view of §341(a) of the Code and Rule 2003 which requires that the meeting be held not more than 40 days after the order for relief, this rule permits the party to do so by motion.

This rule provides for review of acts already committed by the United States trustee, but does not provide for advisory opinions in advance of the act. This rule is not intended to limit the discretion of the United States trustee, provided that the United States trustee's act is authorized by, and in compliance with, the Code, title 28, these rules, and other applicable law.

## PART III—CLAIMS AND DISTRIBUTION TO CREDITORS AND EQUITY INTEREST HOLDERS; PLANS

### Rule 3001. Proof of Claim

(a) FORM AND CONTENT. A proof of claim is a written statement setting forth a creditor's claim. A proof of claim shall conform substantially to the appropriate Official Form.

(b) WHO MAY EXECUTE. A proof of claim shall be executed by the creditor or the creditor's authorized agent except as provided in Rules 3004 and 3005.

(c) SUPPORTING INFORMATION.

(1) *Claim Based on a Writing.* When a claim, or an interest in property of the debtor securing the claim, is based on a writing, the original or a duplicate shall be filed with the proof of claim. If the writing has been lost or destroyed, a statement of the circumstances of the loss or destruction shall be filed with the claim.

(2) *Additional Requirements in an Individual Debtor Case; Sanctions for Failure to Comply.* In a case in which the debtor is an individual:

(A) If, in addition to its principal amount, a claim includes interest, fees, expenses, or other charges incurred before the petition was filed, an itemized statement of the interest, fees, expenses, or charges shall be filed with the proof of claim.

(B) If a security interest is claimed in the debtor's property, a statement of the amount necessary to cure any default as of the date of the petition shall be filed with the proof of claim.

(C) If a security interest is claimed in property that is the debtor's principal resi-

dence, the attachment prescribed by the appropriate Official Form shall be filed with the proof of claim. If an escrow account has been established in connection with the claim, an escrow account statement prepared as of the date the petition was filed and in a form consistent with applicable nonbankruptcy law shall be filed with the attachment to the proof of claim.

(D) If the holder of a claim fails to provide any information required by this subdivision (c), the court may, after notice and hearing, take either or both of the following actions:

(i) preclude the holder from presenting the omitted information, in any form, as evidence in any contested matter or adversary proceeding in the case, unless the court determines that the failure was substantially justified or is harmless; or

(ii) award other appropriate relief, including reasonable expenses and attorney's fees caused by the failure.

(d) EVIDENCE OF PERFECTION OF SECURITY INTEREST. If a security interest in property of the debtor is claimed, the proof of claim shall be accompanied by evidence that the security interest has been perfected.

(e) TRANSFERRED CLAIM.

(1) *Transfer of Claim Other Than for Security Before Proof Filed.* If a claim has been transferred other than for security before proof of the claim has been filed, the proof of claim may be filed only by the transferee or an indenture trustee.

(2) *Transfer of Claim Other than for Security after Proof Filed.* If a claim other than one based on a publicly traded note, bond, or debenture has been transferred other than for security after the proof of claim has been filed, evidence of the transfer shall be filed by the transferee. The clerk shall immediately notify the alleged transferor by mail of the filing of the evidence of transfer and that objection thereto, if any, must be filed within 21 days of the mailing of the notice or within any additional time allowed by the court. If the alleged transferor files a timely objection and the court finds, after notice and a hearing, that the claim has been transferred other than for security, it shall enter an order substituting the transferee for the transferor. If a timely objection is not filed by the alleged transferor, the transferee shall be substituted for the transferor.

(3) *Transfer of Claim for Security Before Proof Filed.* If a claim other than one based on a publicly traded note, bond, or debenture has been transferred for security before proof of the claim has been filed, the transferor or transferee or both may file a proof of claim for the full amount. The proof shall be supported by a statement setting forth the terms of the transfer. If either the transferor or the transferee files a proof of claim, the clerk shall immediately notify the other by mail of the right to join in the filed claim. If both transferor and transferee file proofs of the same claim, the proofs shall be consolidated. If the transferor or transferee does not file an agreement regarding its relative rights respecting voting of the claim, payment of dividends thereon, or

participation in the administration of the estate, on motion by a party in interest and after notice and a hearing, the court shall enter such orders respecting these matters as may be appropriate.

(4) *Transfer of Claim for Security after Proof Filed.* If a claim other than one based on a publicly traded note, bond, or debenture has been transferred for security after the proof of claim has been filed, evidence of the terms of the transfer shall be filed by the transferee. The clerk shall immediately notify the alleged transferor by mail of the filing of the evidence of transfer and that objection thereto, if any, must be filed within 21 days of the mailing of the notice or within any additional time allowed by the court. If a timely objection is filed by the alleged transferor, the court, after notice and a hearing, shall determine whether the claim has been transferred for security. If the transferor or transferee does not file an agreement regarding its relative rights respecting voting of the claim, payment of dividends thereon, or participation in the administration of the estate, on motion by a party in interest and after notice and a hearing, the court shall enter such orders respecting these matters as may be appropriate.

(5) *Service of Objection or Motion; Notice of Hearing.* A copy of an objection filed pursuant to paragraph (2) or (4) or a motion filed pursuant to paragraph (3) or (4) of this subdivision together with a notice of a hearing shall be mailed or otherwise delivered to the transferor or transferee, whichever is appropriate, at least 30 days prior to the hearing.

(f) EVIDENTIARY EFFECT. A proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim.

(g)[1] To the extent not inconsistent with the United States Warehouse Act or applicable State law, a warehouse receipt, scale ticket, or similar document of the type routinely issued as evidence of title by a grain storage facility, as defined in section 557 of title 11, shall constitute prima facie evidence of the validity and amount of a claim of ownership of a quantity of grain.

(As amended Pub. L. 98–353, title III, §354, July 10, 1984, 98 Stat. 361; Apr. 30, 1991, eff. Aug. 1, 1991; Mar. 26, 2009, eff. Dec. 1, 2009; Apr. 26, 2011, eff. Dec. 1, 2011.)

NOTES OF ADVISORY COMMITTEE ON RULES—1983

This rule is adapted from former Bankruptcy Rules 301 and 302. The Federal Rules of Evidence, made applicable to cases under the Code by Rule 1101, do not prescribe the evidentiary effect to be accorded particular documents. Subdivision (f) of this rule supplements the Federal Rules of Evidence as they apply to cases under the Code.

*Subdivision (c).* This subdivision is similar to former Bankruptcy Rule 302(c) and continues the requirement for the filing of any written security agreement and provides that the filing of a duplicate of a writing underlying a claim authenticates the claim with the same effect as the filing of the original writing. *Cf.* Rules 1001(4) and 1003 of F.R. of Evid. Subdivision (d) together with the requirement in the first sentence of subdivision (c) for the filing of any written security agree-

---

[1] So in original. Subsec. (g) enacted without a catchline.

ment, is designed to facilitate the determination whether the claim is secured and properly perfected so as to be valid against the trustee.

*Subdivision (d).* "Satisfactory evidence" of perfection, which is to accompany the proof of claim, would include a duplicate of an instrument filed or recorded, a duplicate of a certificate of title when a security interest is perfected by notation on such a certificate, a statement that pledged property has been in possession of the secured party since a specified date, or a statement of the reasons why no action was necessary for perfection. The secured creditor may not be required to file a proof of claim under this rule if he is not seeking allowance of a claim for a deficiency. But see §506(d) of the Code.

*Subdivision (e).* The rule recognizes the differences between an unconditional transfer of a claim and a transfer for the purpose of security and prescribes a procedure for dealing with the rights of the transferor and transferee when the transfer is for security. The rule clarifies the procedure to be followed when a transfer precedes or follows the filing of the petition. The interests of sound administration are served by requiring the post-petition transferee to file with the proof of claim a statement of the transferor acknowledging the transfer and the consideration for the transfer. Such a disclosure will assist the court in dealing with evils that may arise out of post-bankruptcy traffic in claims against an estate. *Monroe v. Scofield,* 135 F.2d 725 (10th Cir. 1943); *In re Philadelphia & Western Ry.,* 64 F. Supp. 738 (E.D. Pa. 1946); *cf. In re Latham Lithographic Corp.,* 107 F.2d 749 (2d Cir. 1939). Both paragraphs (1) and (3) of this subdivision, which deal with a transfer before the filing of a proof of claim, recognize that the transferee may be unable to obtain the required statement from the transferor, but in that event a sound reason for such inability must accompany the proof of claim filed by the transferee.

Paragraphs (3) and (4) clarify the status of a claim transferred for the purpose of security. An assignee for security has been recognized as a rightful claimant in bankruptcy. *Feder v. John Engelhorn & Sons,* 202 F.2d 411 (2d Cir. 1953). An assignor's right to file a claim notwithstanding the assignment was sustained in *In re R & L Engineering Co.,* 182 F. Supp. 317 (S.D. Cal. 1960). Facilitation of the filing of proofs by both claimants as holders of interests in a single claim is consonant with equitable treatment of the parties and sound administration. See *In re Latham Lithographic Corp.,* 107 F.2d 749 (2d Cir. 1939).

Paragraphs (2) and (4) of subdivision (e) deal with the transfer of a claim after proof has been filed. Evidence of the terms of the transfer required to be disclosed to the court will facilitate the court's determination of the appropriate order to be entered because of the transfer.

Paragraph (5) describes the procedure to be followed when an objection is made by the transferor to the transferee's filed evidence of transfer.

NOTES OF ADVISORY COMMITTEE ON RULES—1987

*Subdivision (g)* was added by §354 of the 1984 amendments.

NOTES OF ADVISORY COMMITTEE ON RULES—1991
AMENDMENT

*Subdivision (a)* is amended in anticipation of future revision and renumbering of the Official Forms.

*Subdivision (e)* is amended to limit the court's role to the adjudication of disputes regarding transfers of claims. If a claim has been transferred prior to the filing of a proof of claim, there is no need to state the consideration for the transfer or to submit other evidence of the transfer. If a claim has been transferred other than for security after a proof of claim has been filed, the transferee is substituted for the transferor in the absence of a timely objection by the alleged transferor. In that event, the clerk should note the transfer without the need for court approval. If a timely objec-

tion is filed, the court's role is to determine whether a transfer has been made that is enforceable under non-bankruptcy law. This rule is not intended either to encourage or discourage postpetition transfers of claims or to affect any remedies otherwise available under nonbankruptcy law to a transferor or transferee such as for misrepresentation in connection with the transfer of a claim. "After notice and a hearing" as used in subdivision (e) shall be construed in accordance with paragraph (5).

The words "with the clerk" in subdivision (e)(2) and (e)(4) are deleted as unnecessary. See Rules 5005(a) and 9001(3).

COMMITTEE NOTES ON RULES—2009 AMENDMENT

The rule is amended to implement changes in connection with the amendment to Rule 9006(a) and the manner by which time is computed under the rules. The deadlines in the rule are amended to substitute a deadline that is a multiple of seven days. Throughout the rules, deadlines are amended in the following manner:
- 5-day periods become 7-day periods
- 10-day periods become 14-day periods
- 15-day periods become 14-day periods
- 20-day periods become 21-day periods
- 25-day periods become 28-day periods

COMMITTEE NOTES ON RULES—2011 AMENDMENT

*Subdivision (c).* Subdivision (c) is amended to prescribe with greater specificity the supporting information required to accompany certain proofs of claim and, in cases in which the debtor is an individual, the consequences of failing to provide the required information.

Existing subdivision (c) is redesignated as (c)(1).

Subdivision (c)(2) is added to require additional information to accompany proofs of claim filed in cases in which the debtor is an individual. When the holder of a claim seeks to recover—in addition to the principal amount of a debt—interest, fees, expenses, or other charges, the proof of claim must be accompanied by a statement itemizing these additional amounts with sufficient specificity to make clear the basis for the claimed amount.

If a claim is secured by a security interest in the property of the debtor and the debtor defaulted on the claim prior to the filing of the petition, the proof of claim must be accompanied by a statement of the amount required to cure the prepetition default.

If the claim is secured by a security interest in the debtor's principal residence, the proof of claim must be accompanied by the attachment prescribed by the appropriate Official Form. In that attachment, the holder of the claim must provide the information required by subparagraphs (A) and (B) of this paragraph (2). In addition, if an escrow account has been established in connection with the claim, an escrow account statement showing the account balance, and any amount owed, as of the date the petition was filed must be submitted in accordance with subparagraph (C). The statement must be prepared in a form consistent with the requirements of nonbankruptcy law. *See, e.g.,* 12 U.S.C. §2601 *et seq.* (Real Estate Settlement Procedure Act). Thus the holder of the claim may provide the escrow account statement using the same form it uses outside of bankruptcy for this purpose.

Subparagraph (D) of subdivision (c)(2) sets forth sanctions that the court may impose on a creditor in an individual debtor case that fails to provide information required by subdivision (c). Failure to provide the required information does not itself constitute a ground for disallowance of a claim. *See* §502(b) of the Code. But when an objection to the allowance of a claim is made or other litigation arises concerning the status or treatment of a claim, if the holder of that claim has not complied with the requirements of this subdivision, the court may preclude it from presenting as evidence any of the omitted information, unless the failure to comply with this subdivision was substantially justified or harmless. The court retains discretion to allow

an amendment to a proof of claim under appropriate circumstances or to impose a sanction different from or in addition to the preclusion of the introduction of evidence.

*Changes Made After Publication.*

*Subdivision (c)(1).* The requirement that the last account statement sent to the debtor be filed with the proof of claim was deleted.

*Subdivision (c)(2).* In subparagraph (C), a provision was added requiring the use of the appropriate Official Form for the attachment filed by a holder of a claim secured by a security interest in a debtor's principal residence.

In subdivision (c)(2)(D), the clause ''the holder shall be precluded'' was deleted, and the provision was revised to state that ''the court may, after notice and hearing, take either or both'' of the specified actions.

*Committee Note.* In the discussion of subdivision (c)(2), the term ''security interest'' was added to the sentence that discusses the required filing of a statement of the amount necessary to cure a prepetition default.

The discussion of subdivision (c)(2)(D) was expanded to clarify that failure to provide required documentation, by itself, is not a ground for disallowance of a claim and that the court has several options in responding to a creditor's failure to provide information required by subdivision (c).

*Other changes.* Stylistic changes were made to the rule and the Committee Note.

#### REFERENCES IN TEXT

The United States Warehouse Act, referred to in subd. (g), is Part C of act Aug. 11, 1916, ch. 313, 39 Stat. 486, as amended, which is classified generally to chapter 10 (§241 et seq.) of Title 7, Agriculture. For complete classification of this Act to the Code, see Short Title note set out under section 241 of Title 7 and Tables.

#### AMENDMENT BY PUBLIC LAW

1984—Subd. (g). Pub. L. 98–353 added subd. (g).

#### EFFECTIVE DATE OF 1984 AMENDMENT

Amendment by Pub. L. 98–353 effective with respect to cases filed 90 days after July 10, 1984, see section 552(a) of Pub. L. 98–353, set out as a note under section 101 of this title.

### Rule 3002. Filing Proof of Claim or Interest

(a) NECESSITY FOR FILING. An unsecured creditor or an equity security holder must file a proof of claim or interest for the claim or interest to be allowed, except as provided in Rules 1019(3), 3003, 3004, and 3005.

(b) PLACE OF FILING. A proof of claim or interest shall be filed in accordance with Rule 5005.

(c) TIME FOR FILING. In a chapter 7 liquidation, chapter 12 family farmer's debt adjustment, or chapter 13 individual's debt adjustment case, a proof of claim is timely filed if it is filed not later than 90 days after the first date set for the meeting of creditors called under §341(a) of the Code, except as follows:

(1) A proof of claim filed by a governmental unit, other than for a claim resulting from a tax return filed under §1308, is timely filed if it is filed not later than 180 days after the date of the order for relief. A proof of claim filed by a governmental unit for a claim resulting from a tax return filed under §1308 is timely filed if it is filed no later than 180 days after the date of the order for relief or 60 days after the date of the filing of the tax return. The court may, for cause, enlarge the time for a governmental unit to file a proof of claim only upon motion of the governmental unit made

before expiration of the period for filing a timely proof of claim.

(2) In the interest of justice and if it will not unduly delay the administration of the case, the court may extend the time for filing a proof of claim by an infant or incompetent person or the representative of either.

(3) An unsecured claim which arises in favor of an entity or becomes allowable as a result of a judgment may be filed within 30 days after the judgment becomes final if the judgment is for the recovery of money or property from that entity or denies or avoids the entity's interest in property. If the judgment imposes a liability which is not satisfied, or a duty which is not performed within such period or such further time as the court may permit, the claim shall not be allowed.

(4) A claim arising from the rejection of an executory contract or unexpired lease of the debtor may be filed within such time as the court may direct.

(5) If notice of insufficient assets to pay a dividend was given to creditors under Rule 2002(e), and subsequently the trustee notifies the court that payment of a dividend appears possible, the clerk shall give at least 90 days' notice by mail to creditors of that fact and of the date by which proofs of claim must be filed.

(6) If notice of the time to file a proof of claim has been mailed to a creditor at a foreign address, on motion filed by the creditor before or after the expiration of the time, the court may extend the time by not more than 60 days if the court finds that the notice was insufficient under the circumstances to give the creditor a reasonable time to file a proof of claim.

(As amended Mar. 30, 1987, eff. Aug. 1, 1987; Apr. 30, 1991, eff. Aug. 1, 1991; Apr. 23, 1996, eff. Dec. 1, 1996; Apr. 23, 2008, eff. Dec. 1, 2008.)

#### NOTES OF ADVISORY COMMITTEE ON RULES—1983

*Subdivision (a)* of this rule is substantially a restatement of the general requirement that claims be proved and filed. The exceptions refer to Rule 3003 providing for the filing of claims in chapter 9 and 11 cases, and to Rules 3004 and 3005 authorizing claims to be filed by the debtor or trustee and the filing of a claim by a contingent creditor of the debtor.

A secured claim need not be filed or allowed under §502 or §506(d) unless a party in interest has requested a determination and allowance or disallowance under §502.

*Subdivision (c)* is adapted from former Bankruptcy Rule 302(e) but changes the time limits on the filing of claims in chapter 7 and 13 cases from six months to 90 days after the first date set for the meeting of creditors. The special rule for early filing by a secured creditor in a chapter 13 case, in former Rule 13–302(e)(1) is not continued.

Although the claim of a secured creditor may have arisen before the petition, a judgment avoiding the security interest may not have been entered until after the time for filing claims has expired. Under Rule 3002(c)(3) the creditor who did not file a secured claim may nevertheless file an unsecured claim within the time prescribed. A judgment does not become final for the purpose of starting the 30 day period provided for by paragraph (3) until the time for appeal has expired or, if an appeal is taken, until the appeal has been disposed of. *In re Tapp,* 61 F. Supp. 594 (W.D. Ky. 1945).

Paragraph (1) is derived from former Bankruptcy Rule 302(e). The governmental unit may move for an

# FED. R. BANKR. P. 7023

REFERENCES IN TEXT

The Federal Rules of Civil Procedure, referred to in text, are set out in the Appendix to Title 28, Judiciary and Judicial Procedure.

### Rule 7020. Permissive Joinder of Parties

Rule 20 F.R.Civ.P. applies in adversary proceedings.

REFERENCES IN TEXT

The Federal Rules of Civil Procedure, referred to in text, are set out in the Appendix to Title 28, Judiciary and Judicial Procedure.

### Rule 7021. Misjoinder and Non-Joinder of Parties

Rule 21 F.R.Civ.P. applies in adversary proceedings.

REFERENCES IN TEXT

The Federal Rules of Civil Procedure, referred to in text, are set out in the Appendix to Title 28, Judiciary and Judicial Procedure.

### Rule 7022. Interpleader

Rule 22(a) F.R.Civ.P. applies in adversary proceedings. This rule supplements—and does not limit—the joinder of parties allowed by Rule 7020.

(As amended Apr. 23, 2008, eff. Dec. 1, 2008.)

COMMITTEE NOTES ON RULES—2008 AMENDMENT

The rule is amended to conform to the changes made to the Federal Rules of Civil Procedure through the restyling of those rules effective on December 1, 2007.

REFERENCES IN TEXT

The Federal Rules of Civil Procedure, referred to in text, are set out in the Appendix to Title 28, Judiciary and Judicial Procedure.

### Rule 7023. Class Proceedings

Rule 23 F.R.Civ.P. applies in adversary proceedings.

REFERENCES IN TEXT

The Federal Rules of Civil Procedure, referred to in text, are set out in the Appendix to Title 28, Judiciary and Judicial Procedure.

### Rule 7023.1. Derivative Actions

Rule 23.1 F.R.Civ.P. applies in adversary proceedings.

(As amended Apr. 23, 2008, eff. Dec. 1, 2008.)

COMMITTEE NOTES ON RULES—2008 AMENDMENT

The rule is amended to conform to the changes made to the Federal Rules of Civil Procedure through the restyling of those rules effective on December 1, 2007.

REFERENCES IN TEXT

The Federal Rules of Civil Procedure, referred to in text, are set out in the Appendix to Title 28, Judiciary and Judicial Procedure.

### Rule 7023.2. Adversary Proceedings Relating to Unincorporated Associations

Rule 23.2 F.R.Civ.P. applies in adversary proceedings.

REFERENCES IN TEXT

The Federal Rules of Civil Procedure, referred to in text, are set out in the Appendix to Title 28, Judiciary and Judicial Procedure.

### Rule 7024. Intervention

Rule 24 F.R.Civ.P. applies in adversary proceedings.

NOTES OF ADVISORY COMMITTEE ON RULES—1983

A person may seek to intervene in the case under the Code or in an adversary proceeding relating to the case under the Code. Intervention in a case under the Code is governed by Rule 2018 and intervention in an adversary proceeding is governed by this rule. Intervention in a case and intervention in an adversary proceeding must be sought separately.

REFERENCES IN TEXT

The Federal Rules of Civil Procedure, referred to in text, are set out in the Appendix to Title 28, Judiciary and Judicial Procedure.

### Rule 7025. Substitution of Parties

Subject to the provisions of Rule 2012, Rule 25 F.R.Civ.P. applies in adversary proceedings.

NOTES OF ADVISORY COMMITTEE ON RULES—1983

Rule 25 F.R.Civ.P. refers to Rule 4 F.R.Civ.P. Pursuant to Rule 7002 that reference is to Rule 4 as incorporated and modified by Rule 7004.

REFERENCES IN TEXT

The Federal Rules of Civil Procedure, referred to in text, are set out in the Appendix to Title 28, Judiciary and Judicial Procedure.

### Rule 7026. General Provisions Governing Discovery

Rule 26 F.R.Civ.P. applies in adversary proceedings.

REFERENCES IN TEXT

The Federal Rules of Civil Procedure, referred to in text, are set out in the Appendix to Title 28, Judiciary and Judicial Procedure.

### Rule 7027. Depositions Before Adversary Proceedings or Pending Appeal

Rule 27 F.R.Civ.P. applies in adversary proceedings.

NOTES OF ADVISORY COMMITTEE ON RULES—1983

Rule 27(a)(2) F.R.Civ.P. refers to Rule 4 F.R.Civ.P. Pursuant to Rule 7002 the reference is to Rule 4 F.R.Civ.P. as incorporated and modified by Rule 7004.

REFERENCES IN TEXT

The Federal Rules of Civil Procedure, referred to in text, are set out in the Appendix to Title 28, Judiciary and Judicial Procedure.

### Rule 7028. Persons Before Whom Depositions May Be Taken

Rule 28 F.R.Civ.P. applies in adversary proceedings.

REFERENCES IN TEXT

The Federal Rules of Civil Procedure, referred to in text, are set out in the Appendix to Title 28, Judiciary and Judicial Procedure.

### Rule 7029. Stipulations Regarding Discovery Procedure

Rule 29 F.R.Civ.P. applies in adversary proceedings.

REFERENCES IN TEXT

The Federal Rules of Civil Procedure, referred to in text, are set out in the Appendix to Title 28, Judiciary and Judicial Procedure.

## Fed. R. Bankr. P. 8001

## Rule 7065. Injunctions

Rule 65 F.R.Civ.P. applies in adversary proceedings, except that a temporary restraining order or preliminary injunction may be issued on application of a debtor, trustee, or debtor in possession without compliance with Rule 65(c).

### REFERENCES IN TEXT

The Federal Rules of Civil Procedure, referred to in text, are set out in the Appendix to Title 28, Judiciary and Judicial Procedure.

## Rule 7067. Deposit in Court

Rule 67 F.R.Civ.P. applies in adversary proceedings.

### REFERENCES IN TEXT

The Federal Rules of Civil Procedure, referred to in text, are set out in the Appendix to Title 28, Judiciary and Judicial Procedure.

## Rule 7068. Offer of Judgment

Rule 68 F.R.Civ.P. applies in adversary proceedings.

### REFERENCES IN TEXT

The Federal Rules of Civil Procedure, referred to in text, are set out in the Appendix to Title 28, Judiciary and Judicial Procedure.

## Rule 7069. Execution

Rule 69 F.R.Civ.P. applies in adversary proceedings.

### REFERENCES IN TEXT

The Federal Rules of Civil Procedure, referred to in text, are set out in the Appendix to Title 28, Judiciary and Judicial Procedure.

## Rule 7070. Judgment for Specific Acts; Vesting Title

Rule 70 F.R.Civ.P. applies in adversary proceedings and the court may enter a judgment divesting the title of any party and vesting title in others whenever the real or personal property involved is within the jurisdiction of the court.

(As amended Mar. 30, 1987, eff. Aug. 1, 1987.)

### NOTES OF ADVISORY COMMITTEE ON RULES—1987 AMENDMENT

The reference to court is used in the amendment because the district court may preside over an adversary proceeding.

### REFERENCES IN TEXT

The Federal Rules of Civil Procedure, referred to in text, are set out in the Appendix to Title 28, Judiciary and Judicial Procedure.

## Rule 7071. Process in Behalf of and Against Persons Not Parties

Rule 71 F.R.Civ.P. applies in adversary proceedings.

### REFERENCES IN TEXT

The Federal Rules of Civil Procedure, referred to in text, are set out in the Appendix to Title 28, Judiciary and Judicial Procedure.

## Rule 7087. Transfer of Adversary Proceeding

On motion and after a hearing, the court may transfer an adversary proceeding or any part thereof to another district pursuant to 28 U.S.C. §1412, except as provided in Rule 7019(2).

(As amended Mar. 30, 1987, eff. Aug. 1, 1987.)

### NOTES OF ADVISORY COMMITTEE ON RULES—1987 AMENDMENT

The reference to the venue section of title 28 is amended to conform to the 1984 amendments to title 28.

# PART VIII—APPEALS TO DISTRICT COURT OR BANKRUPTCY APPELLATE PANEL

## Rule 8001. Manner of Taking Appeal; Voluntary Dismissal; Certification to Court of Appeals

(a) APPEAL AS OF RIGHT; HOW TAKEN. An appeal from a judgment, order, or decree of a bankruptcy judge to a district court or bankruptcy appellate panel as permitted by 28 U.S.C. §158(a)(1) or (a)(2) shall be taken by filing a notice of appeal with the clerk within the time allowed by Rule 8002. An appellant's failure to take any step other than timely filing a notice of appeal does not affect the validity of the appeal, but is ground only for such action as the district court or bankruptcy appellate panel deems appropriate, which may include dismissal of the appeal. The notice of appeal shall (1) conform substantially to the appropriate Official Form, (2) contain the names of all parties to the judgment, order, or decree appealed from and the names, addresses, and telephone numbers of their respective attorneys, and (3) be accompanied by the prescribed fee. Each appellant shall file a sufficient number of copies of the notice of appeal to enable the clerk to comply promptly with Rule 8004.

(b) APPEAL BY LEAVE; HOW TAKEN. An appeal from an interlocutory judgment, order, or decree of a bankruptcy judge as permitted by 28 U.S.C. §158(a)(3) shall be taken by filing a notice of appeal, as prescribed in subdivision (a) of this rule, accompanied by a motion for leave to appeal prepared in accordance with Rule 8003 and with proof of service in accordance with Rule 8008.

(c) VOLUNTARY DISMISSAL.

(1) *Before Docketing.* If an appeal has not been docketed, the appeal may be dismissed by the bankruptcy judge on the filing of a stipulation for dismissal signed by all the parties, or on motion and notice by the appellant.

(2) *After Docketing.* If an appeal has been docketed and the parties to the appeal sign and file with the clerk of the district court or the clerk of the bankruptcy appellate panel an agreement that the appeal be dismissed and pay any court costs or fees that may be due, the clerk of the district court or the clerk of the bankruptcy appellate panel shall enter an order dismissing the appeal. An appeal may also be dismissed on motion of the appellant on terms and conditions fixed by the district court or bankruptcy appellate panel.

[(d) EFFECT OF TAKING A DIRECT APPEAL TO THE COURT OF APPEALS] (Abrogated Mar. 30, 1987, eff. Aug. 1, 1987)

(e) ELECTION TO HAVE APPEAL HEARD BY DISTRICT COURT INSTEAD OF BANKRUPTCY APPELLATE PANEL; WITHDRAWAL OF ELECTION.

(1) *Separate Writing for Election.* An election to have an appeal heard by the district court

under 28 U.S.C. §158(c)(1) may be made only by a statement of election contained in a separate writing filed within the time prescribed by 28 U.S.C. §158(c)(1).

(2) *Withdrawal of Election.* A request to withdraw the election may be filed only by written stipulation of all the parties to the appeal or their attorneys of record. Upon such a stipulation, the district court may either transfer the appeal to the bankruptcy appellate panel or retain the appeal in the district court.

(f) CERTIFICATION FOR DIRECT APPEAL TO COURT OF APPEALS.

(1) *Timely Appeal Required.* A certification of a judgment, order, or decree of a bankruptcy court to a court of appeals under 28 U.S.C. §158(d)(2) shall not be effective until a timely appeal has been taken in the manner required by subdivisions (a) or (b) of this rule and the notice of appeal has become effective under Rule 8002.

(2) *Court Where Certification Made and Filed.* A certification that a circumstance specified in 28 U.S.C. §158(d)(2)(A)(i)–(iii) exists shall be filed in the court in which a matter is pending for purposes of 28 U.S.C. §158(d)(2) and this rule. A matter is pending in a bankruptcy court until the docketing, in accordance with Rule 8007(b), of an appeal taken under 28 U.S.C. §158(a)(1) or (2), or the grant of leave to appeal under 28 U.S.C. §158(a)(3). A matter is pending in a district court or bankruptcy appellate panel after the docketing, in accordance with Rule 8007(b), of an appeal taken under 28 U.S.C. §158(a)(1) or (2), or the grant of leave to appeal under 28 U.S.C. §158(a)(3).

(A) *Certification by Court on Request or Court's Own Initiative.*

(i) Before Docketing or Grant of Leave to Appeal. Only a bankruptcy court may make a certification on request or on its own initiative while the matter is pending in the bankruptcy court.

(ii) After Docketing or Grant of Leave to Appeal. Only the district court or bankruptcy appellate panel involved may make a certification on request of the parties or on its own initiative while the matter is pending in the district court or bankruptcy appellate panel.

(B) *Certification by All Appellants and Appellees Acting Jointly.* A certification by all the appellants and appellees, if any, acting jointly may be made by filing the appropriate Official Form with the clerk of the court in which the matter is pending. The certification may be accompanied by a short statement of the basis for the certification, which may include the information listed in subdivision (f)(3)(C) of this rule.

(3) *Request for Certification; Filing; Service; Contents.*

(A) A request for certification shall be filed, within the time specified by 28 U.S.C. §158(d)(2), with the clerk of the court in which the matter is pending.

(B) Notice of the filing of a request for certification shall be served in the manner required for service of a notice of appeal under Rule 8004.

(C) A request for certification shall include the following:

(i) the facts necessary to understand the question presented;

(ii) the question itself;

(iii) the relief sought;

(iv) the reasons why the appeal should be allowed and is authorized by statute or rule, including why a circumstance specified in 28 U.S.C. §158(d)(2)(A)(i)–(iii) exists; and

(v) an attached copy of the judgment, order, or decree complained of and any related opinion or memorandum.

(D) A party may file a response to a request for certification or a cross request within 14 days after the notice of the request is served, or another time fixed by the court.

(E) Rule 9014 does not govern a request, cross request, or any response. The matter shall be submitted without oral argument unless the court otherwise directs.

(F) A certification of an appeal under 28 U.S.C. §158(d)(2) shall be made in a separate document served on the parties.

(4) *Certification on Court's Own Initiative.*

(A) A certification of an appeal on the court's own initiative under 28 U.S.C. §158(d)(2) shall be made in a separate document served on the parties in the manner required for service of a notice of appeal under Rule 8004. The certification shall be accompanied by an opinion or memorandum that contains the information required by subdivision (f)(3)(C)(i)–(iv) of this rule.

(B) A party may file a supplementary short statement of the basis for certification within 14 days after the certification.

(5) *Duties of Parties After Certification.* A petition for permission to appeal in accordance with F.R.App.P. 5 shall be filed no later than 30 days after a certification has become effective as provided in subdivision (f)(1).

(As amended Mar. 30, 1987, eff. Aug. 1, 1987; Apr. 30, 1991, eff. Aug. 1, 1991; Apr. 11, 1997, eff. Dec. 1, 1997; Apr. 23, 2008, eff. Dec. 1, 2008; Mar. 26, 2009, eff. Dec. 1, 2009.)

NOTES OF ADVISORY COMMITTEE ON RULES—1983

These rules in Part VIII apply only to appeals to the district courts or bankruptcy appellate panels. Subsequent appeals to the courts of appeals, or direct appeals by agreement of the parties under 28 U.S.C. §1293(b), are governed by the Federal Rules of Appellate Procedure.

*Subdivisions (a) and (b)* require that a notice of appeal be filed whenever a litigant seeks to secure appellate review by the district court or bankruptcy appellate panel. An appeal from an interlocutory order which will be heard only if leave is granted under 28 U.S.C. §§1334(b) or 1482(b) is taken by filing a notice of appeal accompanied by a motion for leave to appeal which complies with the requirements set forth in Rule 8003. Rule 8003 also governs other aspects of interlocutory appeals.

*Subdivision (c)* is an adaptation of Rule 42 F.R.App.P.

*Subdivision (d)* deals with the situation in which an appellant perfects an appeal to the district court or a bankruptcy appellate panel and also a direct appeal pursuant to 28 U.S.C. §1293(b) to the court of appeals. This subdivision provides that once the appeal to the court of appeals is taken, a notice of appeal to the dis-

trict court or bankruptcy appellate panel shall be dismissed and, if the first appeal is to the district court or bankruptcy appellate panel, the first appeal shall be dismissed. Paragraph (3) gives an appellant or cross appellant an opportunity to file an appeal to the district court or bankruptcy appellate panel if the court of appeals dismisses the direct appeal because the judgment, order, or decree appealed from is not final. Since the court of appeals has determined the judgment, order, or decree is not final, the new appeal is an appeal for which leave is necessary.

NOTES OF ADVISORY COMMITTEE ON RULES—1987
AMENDMENT

*Subdivisions (a) and (b)* are amended to conform to the 1984 amendments.

*Subdivision (d)* is abrogated because there is no direct appeal to the court of appeals under 28 U.S.C. §158, as enacted by the 1984 amendments.

*Subdivision (e)* is new. Section 158(b)(1) of title 28 authorizes the circuit councils to establish bankruptcy appellate panels. Appeals may not be heard by these panels unless the district court authorizes the referral and all parties to the appeal consent. This rule requires that the parties consent to such an appeal; however, the method of consenting to an appeal may be the subject of a rule promulgated by a circuit council under Rule 8018.

NOTES OF ADVISORY COMMITTEE ON RULES—1991
AMENDMENT

Reference to the Official Form number is deleted in anticipation of future revision and renumbering of the Official Forms.

NOTES OF ADVISORY COMMITTEE ON RULES—1997
AMENDMENT

This rule is amended to conform to the Bankruptcy Reform Act of 1994 which amended 28 U.S.C. §158. As amended, a party may—without obtaining leave of the court—appeal from an interlocutory order or decree of the bankruptcy court issued under §1121(d) of the Code increasing or reducing the time periods referred to in §1121.

*Subdivision (e)* is amended to provide the procedure for electing under 28 U.S.C. §158(c)(1) to have an appeal heard by the district court instead of the bankruptcy appellate panel service. This subdivision is applicable only if a bankruptcy appellate panel service is authorized under 28 U.S.C. §158(b) to hear the appeal.

*GAP Report on Rule 8001.* The heading of subdivision (e) is amended to clarify that it applies to the election to have an appeal heard by the district court instead of the BAP. The final paragraph of the Committee Note is revised to clarify that subdivision (e) is applicable only if a BAP is authorized to hear the appeal.

COMMITTEE NOTES ON RULES—2008 AMENDMENT

Subdivision (e) is amended by redesignating the subdivision as (e)(1) and adding new subdivision (e)(2). Subdivision (e)(2) explicitly recognizes the district court's authority to transfer an appeal to the bankruptcy appellate panel on two conditions: first, all of the parties to the appeal must have agreed to request the withdrawal of the election to have the district court hear the appeal; and, second, the district court must decide whether to grant the request for withdrawal. The district court has discretion either to keep the case or transfer it to the bankruptcy appellate panel, which will prevent strategic behavior by parties and avoid the wasting of judicial resources.

Subdivision (f) is added to the rule to implement the 2005 amendments to 28 U.S.C. §158(d). That section authorizes appeals directly to the court of appeals, with that court's consent, upon certification that a ground for the appeal exists under §158(d)(2)(A)(i)–(iii). Certification can be made by the court on its own initiative under subdivision (f)(4), or in response to a request of a party or a majority of the appellants and appellees (if

any) under subdivision (f)(3). Certification also can be made by all of the appellants and appellees under subdivision (f)(2)(B). Under subdivision (f)(1), certification is effective only when a timely appeal is commenced under subdivision (a) or (b), and a notice of appeal has been timely filed under Rule 8002. These actions will provide sufficient notice of the appeal to the circuit clerk, so the rule dispenses with the uncodified temporary procedural requirements set out in §1233(b)(4) of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109–8.

The rule adopts a bright-line test for identifying the court in which a matter is pending. Under subdivision (f)(2), the bright-line chosen is the "docketing" under Rule 8007(b) of an appeal of an interlocutory order or decree under 28 U.S.C. §158(a)(2) or a final judgment, order or decree under 28 U.S.C. §158(a)(1), or the granting of leave to appeal any other interlocutory judgment, order or decree under 28 U.S.C. §158(a)(3), whichever is earlier.

To ensure that parties are aware of a certification, the rule requires either that it be made on the Official Form (if being made by all of the parties to the appeal) or on a separate document (whether the certification is made on the court's own initiative or in response to a request by a party). This is particularly important because the rule adopts the bankruptcy practice established by Rule 8001(a) and (b) of requiring a notice of appeal in every instance, including interlocutory orders, of appeals from bankruptcy court orders, judgments, and decrees. Because this requirement is satisfied by filing the notice of appeal that takes the appeal to the district court or bankruptcy appellate panel in the first instance, the rule does not require a separate notice of appeal if a certification occurs after a district court or bankruptcy appellate panel decision.

A certification under subdivision (f)(1) does not place the appeal in the circuit court. Rather, the court of appeals must first authorize the direct appeal. Subdivision (f)(5) therefore provides that any party intending to pursue the appeal in the court of appeals must seek that permission under Rule 5 of the Federal Rules of Appellate Procedure. Subdivision (f)(5) requires that the petition for permission to appeal be filed within 30 days after an effective certification.

*Changes Made After Publication.* The second paragraph of the Committee Note was amended to identify more specifically the different ways in which the certification of a direct appeal to the court of appeals.

COMMITTEE NOTES ON RULES—2009 AMENDMENT

The rule is amended to implement changes in connection with the amendment to Rule 9006(a) and the manner by which time is computed under the rules. The deadlines in the rule are amended to substitute a deadline that is a multiple of seven days. Throughout the rules, deadlines are amended in the following manner:
- 5-day periods become 7-day periods
- 10-day periods become 14-day periods
- 15-day periods become 14-day periods
- 20-day periods become 21-day periods
- 25-day periods become 28-day periods

REFERENCES IN TEXT

The Federal Rules of Appellate Procedure, referred to in subd. (f)(5), are set out in the Appendix to Title 28, Judiciary and Judicial Procedure.

## Rule 8002. Time for Filing Notice of Appeal

(a) FOURTEEN-DAY PERIOD. The notice of appeal shall be filed with the clerk within 14 days of the date of the entry of the judgment, order, or decree appealed from. If a timely notice of appeal is filed by a party, any other party may file a notice of appeal within 14 days of the date on which the first notice of appeal was filed, or within the time otherwise prescribed by this rule, whichever period last expires. A notice of

**F<small>ED</small>. R. B<small>ANKR</small>. P. 8002**

trict court or bankruptcy appellate panel shall be dismissed and, if the first appeal is to the district court or bankruptcy appellate panel, the first appeal shall be dismissed. Paragraph (3) gives an appellant or cross appellant an opportunity to file an appeal to the district court or bankruptcy appellate panel if the court of appeals dismisses the direct appeal because the judgment, order, or decree appealed from is not final. Since the court of appeals has determined the judgment, order, or decree is not final, the new appeal is an appeal for which leave is necessary.

NOTES OF ADVISORY COMMITTEE ON RULES—1987 AMENDMENT

*Subdivisions (a) and (b)* are amended to conform to the 1984 amendments.

*Subdivision (d)* is abrogated because there is no direct appeal to the court of appeals under 28 U.S.C. §158, as enacted by the 1984 amendments.

*Subdivision (e)* is new. Section 158(b)(1) of title 28 authorizes the circuit councils to establish bankruptcy appellate panels. Appeals may not be heard by these panels unless the district court authorizes the referral and all parties to the appeal consent. This rule requires that the parties consent to such an appeal; however, the method of consenting to an appeal may be the subject of a rule promulgated by a circuit council under Rule 8018.

NOTES OF ADVISORY COMMITTEE ON RULES—1991 AMENDMENT

Reference to the Official Form number is deleted in anticipation of future revision and renumbering of the Official Forms.

NOTES OF ADVISORY COMMITTEE ON RULES—1997 AMENDMENT

This rule is amended to conform to the Bankruptcy Reform Act of 1994 which amended 28 U.S.C. §158. As amended, a party may—without obtaining leave of the court—appeal from an interlocutory order or decree of the bankruptcy court issued under §1121(d) of the Code increasing or reducing the time periods referred to in §1121.

*Subdivision (e)* is amended to provide the procedure for electing under 28 U.S.C. §158(c)(1) to have an appeal heard by the district court instead of the bankruptcy appellate panel service. This subdivision is applicable only if a bankruptcy appellate panel service is authorized under 28 U.S.C. §158(b) to hear the appeal.

*GAP Report on Rule 8001.* The heading of subdivision (e) is amended to clarify that it applies to the election to have an appeal heard by the district court instead of the BAP. The final paragraph of the Committee Note is revised to clarify that subdivision (e) is applicable only if a BAP is authorized to hear the appeal.

COMMITTEE NOTES ON RULES—2008 AMENDMENT

Subdivision (e) is amended by redesignating the subdivision as (e)(1) and adding new subdivision (e)(2). Subdivision (e)(2) explicitly recognizes the district court's authority to transfer an appeal to the bankruptcy appellate panel on two conditions: first, all of the parties to the appeal must have agreed to request the withdrawal of the election to have the district court hear the appeal; and, second, the district court must decide whether to grant the request for withdrawal. The district court has discretion either to keep the case or transfer it to the bankruptcy appellate panel, which will prevent strategic behavior by parties and avoid the wasting of judicial resources.

Subdivision (f) is added to the rule to implement the 2005 amendments to 28 U.S.C. §158(d). That section authorizes appeals directly to the court of appeals, with that court's consent, upon certification that a ground for the appeal exists under §158(d)(2)(A)(i)–(iii). Certification can be made by the court on its own initiative under subdivision (f)(4), or in response to a request of a party or a majority of the appellants and appellees (if

any) under subdivision (f)(3). Certification also can be made by all of the appellants and appellees under subdivision (f)(2)(B). Under subdivision (f)(1), certification is effective only when a timely appeal is commenced under subdivision (a) or (b), and a notice of appeal has been timely filed under Rule 8002. These actions will provide sufficient notice of the appeal to the circuit clerk, so the rule dispenses with the uncodified temporary procedural requirements set out in §1233(b)(4) of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109–8.

The rule adopts a bright-line test for identifying the court in which a matter is pending. Under subdivision (f)(2), the bright-line chosen is the "docketing" under Rule 8007(b) of an appeal of an interlocutory order or decree under 28 U.S.C. §158(a)(2) or a final judgment, order or decree under 28 U.S.C. §158(a)(1), or the granting of leave to appeal any other interlocutory judgment, order or decree under 28 U.S.C. §158(a)(3), whichever is earlier.

To ensure that parties are aware of a certification, the rule requires either that it be made on the Official Form (if being made by all of the parties to the appeal) or on a separate document (whether the certification is made on the court's own initiative or in response to a request by a party). This is particularly important because the rule adopts the bankruptcy practice established by Rule 8001(a) and (b) of requiring a notice of appeal in every instance, including interlocutory orders, of appeals from bankruptcy court orders, judgments, and decrees. Because this requirement is satisfied by filing the notice of appeal that takes the appeal to the district court or bankruptcy appellate panel in the first instance, the rule does not require a separate notice of appeal if a certification occurs after a district court or bankruptcy appellate panel decision.

A certification under subdivision (f)(1) does not place the appeal in the circuit court. Rather, the court of appeals must first authorize the direct appeal. Subdivision (f)(5) therefore provides that any party intending to pursue the appeal in the court of appeals must seek that permission under Rule 5 of the Federal Rules of Appellate Procedure. Subdivision (f)(5) requires that the petition for permission to appeal be filed within 30 days after an effective certification.

*Changes Made After Publication.* The second paragraph of the Committee Note was amended to identify more specifically the different ways in which the certification of a direct appeal to the court of appeals.

COMMITTEE NOTES ON RULES—2009 AMENDMENT

The rule is amended to implement changes in connection with the amendment to Rule 9006(a) and the manner by which time is computed under the rules. The deadlines in the rule are amended to substitute a deadline that is a multiple of seven days. Throughout the rules, deadlines are amended in the following manner:

- 5-day periods become 7-day periods
- 10-day periods become 14-day periods
- 15-day periods become 14-day periods
- 20-day periods become 21-day periods
- 25-day periods become 28-day periods

REFERENCES IN TEXT

The Federal Rules of Appellate Procedure, referred to in subd. (f)(5), are set out in the Appendix to Title 28, Judiciary and Judicial Procedure.

## Rule 8002. Time for Filing Notice of Appeal

(a) FOURTEEN-DAY PERIOD. The notice of appeal shall be filed with the clerk within 14 days of the date of the entry of the judgment, order, or decree appealed from. If a timely notice of appeal is filed by a party, any other party may file a notice of appeal within 14 days of the date on which the first notice of appeal was filed, or within the time otherwise prescribed by this rule, whichever period last expires. A notice of

appeal filed after the announcement of a decision or order but before entry of the judgment, order, or decree shall be treated as filed after such entry and on the day thereof. If a notice of appeal is mistakenly filed with the district court or the bankruptcy appellate panel, the clerk of the district court or the clerk of the bankruptcy appellate panel shall note thereon the date on which it was received and transmit it to the clerk and it shall be deemed filed with the clerk on the date so noted.

(b) EFFECT OF MOTION ON TIME FOR APPEAL. If any party makes a timely motion of a type specified immediately below, the time for appeal for all parties runs from the entry of the order disposing of the last such motion outstanding. This provision applies to a timely motion:

(1) to amend or make additional findings of fact under Rule 7052, whether or not granting the motion would alter the judgment;

(2) to alter or amend the judgment under Rule 9023;

(3) for a new trial under Rule 9023; or

(4) for relief under Rule 9024 if the motion is filed no later than 14 days after the entry of judgment. A notice of appeal filed after announcement or entry of the judgment, order, or decree but before disposition of any of the above motions is ineffective to appeal from the judgment, order, or decree, or part thereof, specified in the notice of appeal, until the entry of the order disposing of the last such motion outstanding. Appellate review of an order disposing of any of the above motions requires the party, in compliance with Rule 8001, to amend a previously filed notice of appeal. A party intending to challenge an alteration or amendment of the judgment, order, or decree shall file a notice, or an amended notice, of appeal within the time prescribed by this Rule 8002 measured from the entry of the order disposing of the last such motion outstanding. No additional fees will be required for filing an amended notice.

(c) EXTENSION OF TIME FOR APPEAL.

(1) The bankruptcy judge may extend the time for filing the notice of appeal by any party, unless the judgment, order, or decree appealed from:

(A) grants relief from an automatic stay under §362, §922, §1201, or §1301;

(B) authorizes the sale or lease of property or the use of cash collateral under §363;

(C) authorizes the obtaining of credit under §364;

(D) authorizes the assumption or assignment of an executory contract or unexpired lease under §365;

(E) approves a disclosure statement under §1125; or

(F) confirms a plan under §943, §1129, §1225, or §1325 of the Code.

(2) A request to extend the time for filing a notice of appeal must be made by written motion filed before the time for filing a notice of appeal has expired, except that such a motion filed not later than 21 days after the expiration of the time for filing a notice of appeal may be granted upon a showing of excusable neglect. An extension of time for filing a no-

tice of appeal may not exceed 21 days from the expiration of the time for filing a notice of appeal otherwise prescribed by this rule or 14 days from the date of entry of the order granting the motion, whichever is later.

(As amended Mar. 30, 1987, eff. Aug. 1, 1987; Apr. 30, 1991, eff. Aug. 1, 1991; Apr. 29, 1994, eff. Aug. 1, 1994; Apr. 11, 1997, eff. Dec. 1, 1997; Mar. 26, 2009, eff. Dec. 1, 2009.)

NOTES OF ADVISORY COMMITTEE ON RULES—1983

This rule is an adaptation of Rule 4(a) F.R.App.P. The time to appeal from a judgment, order, or decree of a bankruptcy judge is 10 days, rather than the 30 days provided for in the civil practice. The shortened time is specified in order to obtain prompt appellate review, often important to the administration of a case under the Code. If a timely notice of appeal is filed, other parties have an additional 10 days within which to file a notice of appeal. A notice of appeal filed within the additional 10 day period by an appellee is a cross appeal, but there is a separate appeal if a non-appellee files a notice of appeal within that 10 day period. The district courts and bankruptcy appellate panels have inherent authority to consolidate appeals.

*Subdivision (b)* is essentially the same as Rule 4(a)(4) of the F.R.App.P.

*Subdivision (c)* is similar to former Bankruptcy Rule 802(c). To expedite the disposition of appeals the maximum extension of time is 20 days instead of the 30 days provided by Rule 4(a)(5) of the F.R.App.P. Subject to the exceptions set forth in subdivision (c), the court may extend the time for taking an appeal when a motion for extension is filed after the expiration of the original 10 day period but no later than 20 days after the expiration of the original 10 day period. Orders of the bankruptcy court relating to the sale of property, extension of credit, confirmation of a plan, dismissal or conversion of the case, and approval of the disclosure statement are of such significance to the administration of the case, the parties in interest, and third parties that this subdivision requires that either an appeal or a motion for extension be filed within the original 10 day period.

If a timely notice of appeal is not filed, no appeal may be taken later. Former Bankruptcy Rule 803, which provided that a referee's judgment became final when the appeal period expired, has been omitted as unnecessary.

NOTES OF ADVISORY COMMITTEE ON RULES—1991
AMENDMENT

*Subdivision (a)* is amended to conform to F.R.App.P. 4(a)(2) which is designed to avoid the loss of the right to appeal when a notice of appeal is filed prematurely.

*Subdivision (b)(1)* is deleted because Rule 9015 was abrogated in 1987.

NOTES OF ADVISORY COMMITTEE ON RULES—1994
AMENDMENT

These amendments are intended to conform to the 1993 amendments to F.R.App.P. 4(a)(4) and 6(b)(2)(i).

This rule as amended provides that a notice of appeal filed before the disposition of a specified postjudgment motion will become effective upon disposition of the motion. A notice filed before the filing of one of the specified motions or after the filing of a motion but before disposition of the motion is, in effect, suspended until the motion is disposed of, whereupon, the previously filed notice effectively places jurisdiction in the district court or bankruptcy appellate panel.

Because a notice of appeal will ripen into an effective appeal upon disposition of a postjudgment motion, in some instances there will be an appeal from a judgment that has been altered substantially because the motion was granted in whole or in part. The appeal may be dismissed for want of prosecution when the appellant fails

to meet the briefing schedule. But, the appellee may also move to strike the appeal. When responding to such a motion, the appellant would have an opportunity to state that, even though some relief sought in a postjudgment motion was granted, the appellant still plans to pursue the appeal. Because the appellant's response would provide the appellee with sufficient notice of the appellant's intentions, the rule does not require an additional notice of appeal in that situation.

The amendment provides that a notice of appeal filed before the disposition of a postjudgment tolling motion is sufficient to bring the judgment, order, or decree specified in the original notice of appeal to the district court or bankruptcy appellate panel. If the judgment is altered upon disposition of a postjudgment motion, however, and if a party who has previously filed a notice of appeal wishes to appeal from the disposition of the motion, the party must amend the notice to so indicate. When a party files an amended notice, no additional fees are required because the notice is an amendment of the original and not a new notice of appeal.

*Subdivision (b)* is also amended to include, among motions that extend the time for filing a notice of appeal, a motion under Rule 9024 that is filed within 10 days after entry of judgment. The addition of this motion conforms to a similar amendment to F.R.App.P. 4(a)(4) made in 1993, except that a Rule 9024 motion does not toll the time to appeal unless it is filed within the 10-day period. The reason for providing that the motion extends the time to appeal only if it is *filed* within the 10-day period is to enable the court and the parties in interest to determine solely from the court records whether the time to appeal has been extended by a motion for relief under Rule 9024.

NOTES OF ADVISORY COMMITTEE ON RULES—1997 AMENDMENT

*Subdivision (c)* is amended to provide that a request for an extension of time to file a notice of appeal must be *filed* within the applicable time period. This amendment will avoid uncertainty as to whether the mailing of a motion or an oral request in court is sufficient to request an extension of time, and will enable the court and the parties in interest to determine solely from the court records whether a timely request for an extension has been made.

The amendments also give the court discretion to permit a party to file a notice of appeal more than 20 days after expiration of the time to appeal otherwise prescribed, but only if the motion was timely filed and the notice of appeal is filed within a period not exceeding 10 days after entry of the order extending the time. This amendment is designed to protect parties that file timely motions to extend the time to appeal from the harshness of the present rule as demonstrated in *In re Mouradick*, 13 F.3d 326 (9th Cir. 1994), where the court held that a notice of appeal filed within the 3-day period expressly prescribed by an order granting a timely motion for an extension of time did not confer jurisdiction on the appellate court because the notice of appeal was not filed within the 20-day period specified in subdivision (c).

The subdivision is amended further to prohibit any extension of time to file a notice of appeal—even if the motion for an extension is filed before the expiration of the original time to appeal—if the order appealed from grants relief from the automatic stay, authorizes the sale or lease of property, use of cash collateral, obtaining of credit, or assumption or assignment of an executory contract or unexpired lease under §365, or approves a disclosure statement or confirms a plan. These types of orders are often relied upon immediately after they are entered and should not be reviewable on appeal after the expiration of the original appeal period under Rule 8002(a) and (b).

*GAP Report on Rule 8002.* No changes to the published draft.

COMMITTEE NOTES ON RULES—2009 AMENDMENT

The rule is amended to implement changes in connection with the amendment to Rule 9006(a) and the manner by which time is computed under the rules. The deadlines in the rule are amended to substitute a deadline that is a multiple of seven days. Throughout the rules, deadlines are amended in the following manner:

- 5-day periods become 7-day periods
- 10-day periods become 14-day periods
- 15-day periods become 14-day periods
- 20-day periods become 21-day periods
- 25-day periods become 28-day periods

## Rule 8003. Leave to Appeal

(a) CONTENT OF MOTION; ANSWER. A motion for leave to appeal under 28 U.S.C. §158(a) shall contain: (1) a statement of the facts necessary to an understanding of the questions to be presented by the appeal; (2) a statement of those questions and of the relief sought; (3) a statement of the reasons why an appeal should be granted; and (4) a copy of the judgment, order, or decree complained of and of any opinion or memorandum relating thereto. Within 14 days after service of the motion, an adverse party may file with the clerk an answer in opposition.

(b) TRANSMITTAL; DETERMINATION OF MOTION. The clerk shall transmit the notice of appeal, the motion for leave to appeal and any answer thereto to the clerk of the district court or the clerk of the bankruptcy appellate panel as soon as all parties have filed answers or the time for filing an answer has expired. The motion and answer shall be submitted without oral argument unless otherwise ordered.

(c) APPEAL IMPROPERLY TAKEN REGARDED AS A MOTION FOR LEAVE TO APPEAL. If a required motion for leave to appeal is not filed, but a notice of appeal is timely filed, the district court or bankruptcy appellate panel may grant leave to appeal or direct that a motion for leave to appeal be filed. The district court or the bankruptcy appellate panel may also deny leave to appeal but in so doing shall consider the notice of appeal as a motion for leave to appeal. Unless an order directing that a motion for leave to appeal be filed provides otherwise, the motion shall be filed within 14 days of entry of the order.

(d) REQUIREMENT OF LEAVE TO APPEAL. If leave to appeal is required by 28 U.S.C. §158(a) and has not earlier been granted, the authorization of a direct appeal by a court of appeals under 28 U.S.C. §158(d)(2) shall be deemed to satisfy the requirement for leave to appeal.

(As amended Mar. 30, 1987, eff. Aug. 1, 1987; Apr. 23, 2008, eff. Dec. 1, 2008; Mar. 26, 2009, eff. Dec. 1, 2009.)

NOTES OF ADVISORY COMMITTEE ON RULES—1983

*Subdivisions (a) and (b)* of this rule are derived from Rules 5 and 6 F.R.App.P. The motion for leave to appeal is addressed to the district court or the bankruptcy appellate panel, although filed with the clerk of the bankruptcy court.

*Subdivision (c)* provides that if a party mistakenly believes the order appealed from is final and files only a notice of appeal, the appeal is not automatically dismissed. The district court or bankruptcy appellate panel has the options to direct that a motion be filed, to decide exclusively on the papers already filed to grant leave to appeal, or to deny leave to appeal. Cf. 28 U.S.C. §2103.

COMMITTEE NOTES ON RULES—2008 AMENDMENT

The rule is amended to add subdivision (d) to solve the jurisdictional problem that could otherwise ensue

## FED. R. BANKR. P. 8003

to meet the briefing schedule. But, the appellee may also move to strike the appeal. When responding to such a motion, the appellant would have an opportunity to state that, even though some relief sought in a postjudgment motion was granted, the appellant still plans to pursue the appeal. Because the appellant's response would provide the appellee with sufficient notice of the appellant's intentions, the rule does not require an additional notice of appeal in that situation.

The amendment provides that a notice of appeal filed before the disposition of a postjudgment tolling motion is sufficient to bring the judgment, order, or decree specified in the original notice of appeal to the district court or bankruptcy appellate panel. If the judgment is altered upon disposition of a postjudgment motion, however, and if a party who has previously filed a notice of appeal wishes to appeal from the disposition of the motion, the party must amend the notice to so indicate. When a party files an amended notice, no additional fees are required because the notice is an amendment of the original and not a new notice of appeal.

*Subdivision (b)* is also amended to include, among motions that extend the time for filing a notice of appeal, a motion under Rule 9024 that is filed within 10 days after entry of judgment. The addition of this motion conforms to a similar amendment to F.R.App.P. 4(a)(4) made in 1993, except that a Rule 9024 motion does not toll the time to appeal unless it is filed within the 10-day period. The reason for providing that the motion extends the time to appeal only if it is *filed* within the 10-day period is to enable the court and the parties in interest to determine solely from the court records whether the time to appeal has been extended by a motion for relief under Rule 9024.

NOTES OF ADVISORY COMMITTEE ON RULES—1997 AMENDMENT

*Subdivision (c)* is amended to provide that a request for an extension of time to file a notice of appeal must be *filed* within the applicable time period. This amendment will avoid uncertainty as to whether the mailing of a motion or an oral request in court is sufficient to request an extension of time, and will enable the court and the parties in interest to determine solely from the court records whether a timely request for an extension has been made.

The amendments also give the court discretion to permit a party to file a notice of appeal more than 20 days after expiration of the time to appeal otherwise prescribed, but only if the motion was timely filed and the notice of appeal is filed within a period not exceeding 10 days after entry of the order extending the time. This amendment is designed to protect parties that file timely motions to extend the time to appeal from the harshness of the present rule as demonstrated in *In re Mouradick*, 13 F.3d 326 (9th Cir. 1994), where the court held that a notice of appeal filed within the 3-day period expressly prescribed by an order granting a timely motion for an extension of time did not confer jurisdiction on the appellate court because the notice of appeal was not filed within the 20-day period specified in subdivision (c).

The subdivision is amended further to prohibit any extension of time to file a notice of appeal—even if the motion for an extension is filed before the expiration of the original time to appeal—if the order appealed from grants relief from the automatic stay, authorizes the sale or lease of property, use of cash collateral, obtaining of credit, or assumption or assignment of an executory contract or unexpired lease under § 365, or approves a disclosure statement or confirms a plan. These types of orders are often relied upon immediately after they are entered and should not be reviewable on appeal after the expiration of the original appeal period under Rule 8002(a) and (b).

*GAP Report on Rule 8002.* No changes to the published draft.

COMMITTEE NOTES ON RULES—2009 AMENDMENT

The rule is amended to implement changes in connection with the amendment to Rule 9006(a) and the man-

ner by which time is computed under the rules. The deadlines in the rule are amended to substitute a deadline that is a multiple of seven days. Throughout the rules, deadlines are amended in the following manner:
- 5-day periods become 7-day periods
- 10-day periods become 14-day periods
- 15-day periods become 14-day periods
- 20-day periods become 21-day periods
- 25-day periods become 28-day periods

## Rule 8003. Leave to Appeal

(a) CONTENT OF MOTION; ANSWER. A motion for leave to appeal under 28 U.S.C. § 158(a) shall contain: (1) a statement of the facts necessary to an understanding of the questions to be presented by the appeal; (2) a statement of those questions and of the relief sought; (3) a statement of the reasons why an appeal should be granted; and (4) a copy of the judgment, order, or decree complained of and of any opinion or memorandum relating thereto. Within 14 days after service of the motion, an adverse party may file with the clerk an answer in opposition.

(b) TRANSMITTAL; DETERMINATION OF MOTION. The clerk shall transmit the notice of appeal, the motion for leave to appeal and any answer thereto to the clerk of the district court or the clerk of the bankruptcy appellate panel as soon as all parties have filed answers or the time for filing an answer has expired. The motion and answer shall be submitted without oral argument unless otherwise ordered.

(c) APPEAL IMPROPERLY TAKEN REGARDED AS A MOTION FOR LEAVE TO APPEAL. If a required motion for leave to appeal is not filed, but a notice of appeal is timely filed, the district court or bankruptcy appellate panel may grant leave to appeal or direct that a motion for leave to appeal be filed. The district court or the bankruptcy appellate panel may also deny leave to appeal but in so doing shall consider the notice of appeal as a motion for leave to appeal. Unless an order directing that a motion for leave to appeal be filed provides otherwise, the motion shall be filed within 14 days of entry of the order.

(d) REQUIREMENT OF LEAVE TO APPEAL. If leave to appeal is required by 28 U.S.C. § 158(a) and has not earlier been granted, the authorization of a direct appeal by a court of appeals under 28 U.S.C. § 158(d)(2) shall be deemed to satisfy the requirement for leave to appeal.

(As amended Mar. 30, 1987, eff. Aug. 1, 1987; Apr. 23, 2008, eff. Dec. 1, 2008; Mar. 26, 2009, eff. Dec. 1, 2009.)

NOTES OF ADVISORY COMMITTEE ON RULES—1983

*Subdivisions (a) and (b)* of this rule are derived from Rules 5 and 6 F.R.App.P. The motion for leave to appeal is addressed to the district court or the bankruptcy appellate panel, although filed with the clerk of the bankruptcy court.

*Subdivision (c)* provides that if a party mistakenly believes the order appealed from is final and files only a notice of appeal, the appeal is not automatically dismissed. The district court or bankruptcy appellate panel has the options to direct that a motion be filed, to decide exclusively on the papers already filed to grant leave to appeal, or to deny leave to appeal. Cf. 28 U.S.C. § 2103.

COMMITTEE NOTES ON RULES—2008 AMENDMENT

The rule is amended to add subdivision (d) to solve the jurisdictional problem that could otherwise ensue

when a district court or bankruptcy appellate panel has not granted leave to appeal under 28 U.S.C. §158(a)(3). If the court of appeals accepts the appeal, the requirement of leave to appeal is deemed satisfied. However, if the court of appeals does not authorize a direct appeal, the question of whether to grant leave to appeal remains a matter to be resolved by the district court or the bankruptcy appellate panel.

*Changes Made After Publication.* No changes were made after publication.

Committee Notes on Rules—2009 Amendment

The rule is amended to implement changes in connection with the amendment to Rule 9006(a) and the manner by which time is computed under the rules. The deadlines in the rule are amended to substitute a deadline that is a multiple of seven days. Throughout the rules, deadlines are amended in the following manner:

- 5-day periods become 7-day periods
- 10-day periods become 14-day periods
- 15-day periods become 14-day periods
- 20-day periods become 21-day periods
- 25-day periods become 28-day periods

## Rule 8004. Service of the Notice of Appeal

The clerk shall serve notice of the filing of a notice of appeal by mailing a copy thereof to counsel of record of each party other than the appellant or, if a party is not represented by counsel, to the party's last known address. Failure to serve notice shall not affect the validity of the appeal. The clerk shall note on each copy served the date of the filing of the notice of appeal and shall note in the docket the names of the parties to whom copies are mailed and the date of the mailing. The clerk shall forthwith transmit to the United States trustee a copy of the notice of appeal, but failure to transmit such notice shall not affect the validity of the appeal.

(As amended Mar. 30, 1987, eff. Aug. 1, 1987; Apr. 30, 1991, eff. Aug. 1, 1991.)

Notes of Advisory Committee on Rules—1983

This rule is an adaptation of Rule 3(d) F.R.App.P.

Notes of Advisory Committee on Rules—1991 Amendment

This rule is amended to keep the United States trustee informed of the progress of the case.

## Rule 8005. Stay Pending Appeal

A motion for a stay of the judgment, order, or decree of a bankruptcy judge, for approval of a supersedeas bond, or for other relief pending appeal must ordinarily be presented to the bankruptcy judge in the first instance. Notwithstanding Rule 7062 but subject to the power of the district court and the bankruptcy appellate panel reserved hereinafter, the bankruptcy judge may suspend or order the continuation of other proceedings in the case under the Code or make any other appropriate order during the pendency of an appeal on such terms as will protect the rights of all parties in interest. A motion for such relief, or for modification or termination of relief granted by a bankruptcy judge, may be made to the district court or the bankruptcy appellate panel, but the motion shall show why the relief, modification, or termination was not obtained from the bankruptcy judge. The district court or the bankruptcy appellate panel may condition the relief it grants under this rule on

the filing of a bond or other appropriate security with the bankruptcy court. When an appeal is taken by a trustee, a bond or other appropriate security may be required, but when an appeal is taken by the United States or an officer or agency thereof or by direction of any department of the Government of the United States a bond or other security shall not be required.

(As amended Mar. 30, 1987, eff. Aug. 1, 1987.)

Notes of Advisory Committee on Rules—1983

The first, third, and fourth sentences of this rule are adaptations of Rule 8(a) and (b) F.R.App.P. The second sentence of the rule is derived from §39(c) of the Bankruptcy Act and confers on the bankruptcy judge discretion respecting the stay or continuation of other proceedings in the case while an appeal is pending.

The last sentence of the rule, which specifically subjects a trustee to the same kind of security requirements as other litigants, is derived from former Bankruptcy Rule 805. The exemption of the United States from the bond or security requirements is the same as the exemption contained in Rule 62(e) F.R.Civ.P.

Sections 363(m) and 364(e) of the Code provide that unless an order approving a sale of property, or authorizing the obtaining of credit or the incurring of debt is stayed pending appeal, the sale of property to a good faith purchaser or a good faith extension of credit, with or without any priority or lien, shall not be affected by the reversal or modification of such order on appeal, whether or not the purchaser or creditor knows of the pendency of the appeal.

## Rule 8006. Record and Issues on Appeal

Within 14 days after filing the notice of appeal as provided by Rule 8001(a), entry of an order granting leave to appeal, or entry of an order disposing of the last timely motion outstanding of a type specified in Rule 8002(b), whichever is later, the appellant shall file with the clerk and serve on the appellee a designation of the items to be included in the record on appeal and a statement of the issues to be presented. Within 14 days after the service of the appellant's statement the appellee may file and serve on the appellant a designation of additional items to be included in the record on appeal and, if the appellee has filed a cross appeal, the appellee as cross appellant shall file and serve a statement of the issues to be presented on the cross appeal and a designation of additional items to be included in the record. A cross appellee may, within 14 days of service of the cross appellant's statement, file and serve on the cross appellant a designation of additional items to be included in the record. The record on appeal shall include the items so designated by the parties, the notice of appeal, the judgment, order, or decree appealed from, and any opinion, findings of fact, and conclusions of law of the court. Any party filing a designation of the items to be included in the record shall provide to the clerk a copy of the items designated or, if the party fails to provide the copy, the clerk shall prepare the copy at the party's expense. If the record designated by any party includes a transcript of any proceeding or a part thereof, the party shall, immediately after filing the designation, deliver to the reporter and file with the clerk a written request for the transcript and make satisfactory arrangements for payment of its cost. All parties shall take any other action necessary to enable the clerk to assemble and transmit the record.

## FED. R. BANKR. P. 8006

when a district court or bankruptcy appellate panel has not granted leave to appeal under 28 U.S.C. §158(a)(3). If the court of appeals accepts the appeal, the requirement of leave to appeal is deemed satisfied. However, if the court of appeals does not authorize a direct appeal, the question of whether to grant leave to appeal remains a matter to be resolved by the district court or the bankruptcy appellate panel.

*Changes Made After Publication.* No changes were made after publication.

Committee Notes on Rules—2009 Amendment

The rule is amended to implement changes in connection with the amendment to Rule 9006(a) and the manner by which time is computed under the rules. The deadlines in the rule are amended to substitute a deadline that is a multiple of seven days. Throughout the rules, deadlines are amended in the following manner:

- 5-day periods become 7-day periods
- 10-day periods become 14-day periods
- 15-day periods become 14-day periods
- 20-day periods become 21-day periods
- 25-day periods become 28-day periods

## Rule 8004. Service of the Notice of Appeal

The clerk shall serve notice of the filing of a notice of appeal by mailing a copy thereof to counsel of record of each party other than the appellant or, if a party is not represented by counsel, to the party's last known address. Failure to serve notice shall not affect the validity of the appeal. The clerk shall note on each copy served the date of the filing of the notice of appeal and shall note in the docket the names of the parties to whom copies are mailed and the date of the mailing. The clerk shall forthwith transmit to the United States trustee a copy of the notice of appeal, but failure to transmit such notice shall not affect the validity of the appeal.

(As amended Mar. 30, 1987, eff. Aug. 1, 1987; Apr. 30, 1991, eff. Aug. 1, 1991.)

Notes of Advisory Committee on Rules—1983

This rule is an adaptation of Rule 3(d) F.R.App.P.

Notes of Advisory Committee on Rules—1991 Amendment

This rule is amended to keep the United States trustee informed of the progress of the case.

## Rule 8005. Stay Pending Appeal

A motion for a stay of the judgment, order, or decree of a bankruptcy judge, for approval of a supersedeas bond, or for other relief pending appeal must ordinarily be presented to the bankruptcy judge in the first instance. Notwithstanding Rule 7062 but subject to the power of the district court and the bankruptcy appellate panel reserved hereinafter, the bankruptcy judge may suspend or order the continuation of other proceedings in the case under the Code or make any other appropriate order during the pendency of an appeal on such terms as will protect the rights of all parties in interest. A motion for such relief, or for modification or termination of relief granted by a bankruptcy judge, may be made to the district court or the bankruptcy appellate panel, but the motion shall show why the relief, modification, or termination was not obtained from the bankruptcy judge. The district court or the bankruptcy appellate panel may condition the relief it grants under this rule on

the filing of a bond or other appropriate security with the bankruptcy court. When an appeal is taken by a trustee, a bond or other appropriate security may be required, but when an appeal is taken by the United States or an officer or agency thereof or by direction of any department of the Government of the United States a bond or other security shall not be required.

(As amended Mar. 30, 1987, eff. Aug. 1, 1987.)

Notes of Advisory Committee on Rules—1983

The first, third, and fourth sentences of this rule are adaptations of Rule 8(a) and (b) F.R.App.P. The second sentence of the rule is derived from §39(c) of the Bankruptcy Act and confers on the bankruptcy judge discretion respecting the stay or continuation of other proceedings in the case while an appeal is pending.

The last sentence of the rule, which specifically subjects a trustee to the same kind of security requirements as other litigants, is derived from former Bankruptcy Rule 805. The exemption of the United States from the bond or security requirements is the same as the exemption contained in Rule 62(e) F.R.Civ.P.

Sections 363(m) and 364(e) of the Code provide that unless an order approving a sale of property, or authorizing the obtaining of credit or the incurring of debt is stayed pending appeal, the sale of property to a good faith purchaser or a good faith extension of credit, with or without any priority or lien, shall not be affected by the reversal or modification of such order on appeal, whether or not the purchaser or creditor knows of the pendency of the appeal.

## Rule 8006. Record and Issues on Appeal

Within 14 days after filing the notice of appeal as provided by Rule 8001(a), entry of an order granting leave to appeal, or entry of an order disposing of the last timely motion outstanding of a type specified in Rule 8002(b), whichever is later, the appellant shall file with the clerk and serve on the appellee a designation of the items to be included in the record on appeal and a statement of the issues to be presented. Within 14 days after the service of the appellant's statement the appellee may file and serve on the appellant a designation of additional items to be included in the record on appeal and, if the appellee has filed a cross appeal, the appellee as cross appellant shall file and serve a statement of the issues to be presented on the cross appeal and a designation of additional items to be included in the record. A cross appellee may, within 14 days of service of the cross appellant's statement, file and serve on the cross appellant a designation of additional items to be included in the record. The record on appeal shall include the items so designated by the parties, the notice of appeal, the judgment, order, or decree appealed from, and any opinion, findings of fact, and conclusions of law of the court. Any party filing a designation of the items to be included in the record shall provide to the clerk a copy of the items designated or, if the party fails to provide the copy, the clerk shall prepare the copy at the party's expense. If the record designated by any party includes a transcript of any proceeding or a part thereof, the party shall, immediately after filing the designation, deliver to the reporter and file with the clerk a written request for the transcript and make satisfactory arrangements for payment of its cost. All parties shall take any other action necessary to enable the clerk to assemble and transmit the record.

(As amended Mar. 30, 1987, eff. Aug. 1, 1987; Apr. 30, 1991, eff. Aug. 1, 1991; Apr. 29, 1994, eff. Aug. 1, 1994; Mar. 26, 2009, eff. Dec. 1, 2009.)

NOTES OF ADVISORY COMMITTEE ON RULES—1983

This rule is an adaptation of Rule 10(b) F.R.App.P. The last sentence of the rule is derived from Rule 11(a) F.R.App.P.

NOTES OF ADVISORY COMMITTEE ON RULES—1991 AMENDMENT

The seven-day time periods are changed to 10 days to conform to Rule 75(b)(2) F.R.Civ.P. and Rule 10(b)(3) F.R.App.P. The amendment requiring a party to provide a copy of the items designated for the record is to facilitate the amendments to Rule 8007 providing for retention by the bankruptcy clerk of the original record.

NOTES OF ADVISORY COMMITTEE ON RULES—1994 AMENDMENT

The amendment to the first sentence of this rule is made together with the amendment to Rule 8002(b), which provides, in essence, that certain specified postjudgment motions suspend a filed notice of appeal until the disposition of the last of such motions. The purpose of this amendment is to suspend the 10-day period for filing and serving a designation of the record and statement of the issues if a timely postjudgment motion is made and a notice of appeal is suspended under Rule 8002(b). The 10-day period set forth in the first sentence of this rule begins to run when the order disposing of the last of such postjudgment motions outstanding is entered. The other amendments to this rule are stylistic.

COMMITTEE NOTES ON RULES—2009 AMENDMENT

The rule is amended to implement changes in connection with the amendment to Rule 9006(a) and the manner by which time is computed under the rules. The deadlines in the rule are amended to substitute a deadline that is a multiple of seven days. Throughout the rules, deadlines are amended in the following manner:

- 5-day periods become 7-day periods
- 10-day periods become 14-day periods
- 15-day periods become 14-day periods
- 20-day periods become 21-day periods
- 25-day periods become 28-day periods

## Rule 8007. Completion and Transmission of the Record; Docketing of the Appeal

(a) DUTY OF REPORTER TO PREPARE AND FILE TRANSCRIPT. On receipt of a request for a transcript, the reporter shall acknowledge on the request the date it was received and the date on which the reporter expects to have the transcript completed and shall transmit the request, so endorsed, to the clerk or the clerk of the bankruptcy appellate panel. On completion of the transcript the reporter shall file it with the clerk and, if appropriate, notify the clerk of the bankruptcy appellate panel. If the transcript cannot be completed within 30 days of receipt of the request the reporter shall seek an extension of time from the clerk or the clerk of the bankruptcy appellate panel and the action of the clerk shall be entered in the docket and the parties notified. If the reporter does not file the transcript within the time allowed, the clerk or the clerk of the bankruptcy appellate panel shall notify the bankruptcy judge.

(b) DUTY OF CLERK TO TRANSMIT COPY OF RECORD; DOCKETING OF APPEAL. When the record is complete for purposes of appeal, the clerk shall transmit a copy thereof forthwith to the clerk of the district court or the clerk of the bankruptcy appellate panel. On receipt of the transmission the clerk of the district court or the clerk of the bankruptcy appellate panel shall enter the appeal in the docket and give notice promptly to all parties to the judgment, order, or decree appealed from of the date on which the appeal was docketed. If the bankruptcy appellate panel directs that additional copies of the record be furnished, the clerk of the bankruptcy appellate panel shall notify the appellant and, if the appellant fails to provide the copies, the clerk shall prepare the copies at the expense of the appellant.

(c) RECORD FOR PRELIMINARY HEARING. If prior to the time the record is transmitted a party moves in the district court or before the bankruptcy appellate panel for dismissal, for a stay pending appeal, for additional security on the bond on appeal or on a supersedeas bond, or for any intermediate order, the clerk at the request of any party to the appeal shall transmit to the clerk of the district court or the clerk of the bankruptcy appellate panel a copy of the parts of the record as any party to the appeal shall designate.

(As amended Mar. 30, 1987, eff. Aug. 1, 1987; Apr. 30, 1991, eff. Aug. 1, 1991.)

NOTES OF ADVISORY COMMITTEE ON RULES—1983

*Subdivision (a)* is an adaptation of Rule 11(b) F.R.App.P.

*Subdivision (b)* is similar to former Bankruptcy Rule 807. The duty of the clerk of the bankruptcy court to transmit the record as soon as the record is complete is derived from the second paragraph of Rule 11(b) F.R.App.P. The last sentence of the subdivision applies to appeals to bankruptcy appellate panels. Additional copies of the record may be needed when the appendix to the brief required under Rule 8009(b) is not adequate in the judgment of the bankruptcy appellate panel for disposition of the appeal. If additional copies are required, the appellant will arrange for the production of the copies; if the appellant fails to do so, the clerk of the bankruptcy appellate panel shall prepare the copies at the expense of the appellant.

*Subdivision (c)* is derived from subdivisions (c), (e) and (f) of Rule 11 F.R.App.P. and subdivision (d) is essentially the same as Rule 11(b) F.R.App.P.

NOTES OF ADVISORY COMMITTEE ON RULES—1991 AMENDMENT

This rule is amended to require that the bankruptcy clerk retain the original record and transmit a copy of the record to the clerk of the district court or bankruptcy appellate panel. Transmission of the original documents may cause disruption in the continuing administration of the case in the bankruptcy court.

## Rule 8008. Filing and Service

(a) FILING. Papers required or permitted to be filed with the clerk of the district court or the clerk of the bankruptcy appellate panel may be filed by mail addressed to the clerk, but filing is not timely unless the papers are received by the clerk within the time fixed for filing, except that briefs are deemed filed on the day of mailing. An original and one copy of all papers shall be filed when an appeal is to the district court; an original and three copies shall be filed when an appeal is to a bankruptcy appellate panel. The district court or bankruptcy appellate panel may require that additional copies be furnished.

## FED. R. BANKR. P. 8010

deadlines in the rule are amended to substitute a deadline that is a multiple of seven days. Throughout the rules, deadlines are amended in the following manner:

- 5-day periods become 7-day periods
- 10-day periods become 14-day periods
- 15-day periods become 14-day periods
- 20-day periods become 21-day periods
- 25-day periods become 28-day periods

## Rule 8010. Form of Briefs; Length

(a) FORM OF BRIEFS. Unless the district court or the bankruptcy appellate panel by local rule otherwise provides, the form of brief shall be as follows:

(1) *Brief of the Appellant.* The brief of the appellant shall contain under appropriate headings and in the order here indicated:

(A) A table of contents, with page references, and a table of cases alphabetically arranged, statutes and other authorities cited, with references to the pages of the brief where they are cited.

(B) A statement of the basis of appellate jurisdiction.

(C) A statement of the issues presented and the applicable standard of appellate review.

(D) A statement of the case. The statement shall first indicate briefly the nature of the case, the course of the proceedings, and the disposition in the court below. There shall follow a statement of the facts relevant to the issues presented for review, with appropriate references to the record.

(E) An argument. The argument may be preceded by a summary. The argument shall contain the contentions of the appellant with respect to the issues presented, and the reasons therefor, with citations to the authorities, statutes and parts of the record relied on.

(F) A short conclusion stating the precise relief sought.

(2) *Brief of the Appellee.* The brief of the appellee shall conform to the requirements of paragraph (1)(A)–(E) of this subdivision, except that a statement of the basis of appellate jurisdiction, of the issues, or of the case need not be made unless the appellee is dissatisfied with the statement of the appellant.

(b) REPRODUCTION OF STATUTES, RULES, REGULATIONS, OR SIMILAR MATERIAL. If determination of the issues presented requires reference to the Code or other statutes, rules, regulations, or similar material, relevant parts thereof shall be reproduced in the brief or in an addendum or they may be supplied to the court in pamphlet form.

(c) LENGTH OF BRIEFS. Unless the district court or the bankruptcy appellate panel by local rule or order otherwise provides, principal briefs shall not exceed 50 pages, and reply briefs shall not exceed 25 pages, exclusive of pages containing the table of contents, tables of citations and any addendum containing statutes, rules, regulations, or similar material.

NOTES OF ADVISORY COMMITTEE ON RULES—1983

This rule is derived from subdivisions (a), (b), (c), and (f) of Rule 28 F.R.App.P.

When an appeal is to a bankruptcy appellate panel and an appendix is filed pursuant to Rule 8009(b) and

reference is made in a brief to parts of the record included in the appendix, the reference should be to the appropriate pages of the appendix at which those parts appear.

## Rule 8011. Motions

(a) CONTENT OF MOTIONS; RESPONSE; REPLY. A request for an order or other relief shall be made by filing with the clerk of the district court or the clerk of the bankruptcy appellate panel a motion for such order or relief with proof of service on all other parties to the appeal. The motion shall contain or be accompanied by any matter required by a specific provision of these rules governing such a motion, shall state with particularity the grounds on which it is based, and shall set forth the order or relief sought. If a motion is supported by briefs, affidavits or other papers, they shall be served and filed with the motion. Any party may file a response in opposition to a motion other than one for a procedural order within seven days after service of the motion, but the district court or the bankruptcy appellate panel may shorten or extend the time for responding to any motion.

(b) DETERMINATION OF MOTIONS FOR PROCEDURAL ORDERS. Notwithstanding subdivision (a) of this rule, motions for procedural orders, including any motion under Rule 9006, may be acted on at any time, without awaiting a response thereto and without hearing. Any party adversely affected by such action may move for reconsideration, vacation, or modification of the action.

(c) DETERMINATION OF ALL MOTIONS. All motions will be decided without oral argument unless the court orders otherwise. A motion for a stay, or for other emergency relief may be denied if not presented promptly.

(d) EMERGENCY MOTIONS. Whenever a movant requests expedited action on a motion on the ground that, to avoid irreparable harm, relief is needed in less time than would normally be required for the district court or bankruptcy appellate panel to receive and consider a response, the word "Emergency" shall precede the title of the motion. The motion shall be accompanied by an affidavit setting forth the nature of the emergency. The motion shall state whether all grounds advanced in support thereof were submitted to the bankruptcy judge and, if any grounds relied on were not submitted, why the motion should not be remanded to the bankruptcy judge for reconsideration. The motion shall include the office addresses and telephone numbers of moving and opposing counsel and shall be served pursuant to Rule 8008. Prior to filing the motion, the movant shall make every practicable effort to notify opposing counsel in time for counsel to respond to the motion. The affidavit accompanying the motion shall also state when and how opposing counsel was notified or if opposing counsel was not notified why it was not practicable to do so.

(e) POWER OF A SINGLE JUDGE TO ENTERTAIN MOTIONS. A single judge of a bankruptcy appellate panel may grant or deny any request for relief which under these rules may properly be sought by motion, except that a single judge may not dismiss or otherwise decide an appeal or a motion for leave to appeal. The action of a single judge may be reviewed by the panel.

## FED. R. BANKR. P. 9006

(b) CAPTION. Each paper filed shall contain a caption setting forth the name of the court, the title of the case, the bankruptcy docket number, and a brief designation of the character of the paper.

NOTES OF ADVISORY COMMITTEE ON RULES—1983

*Subdivision (b).* Additional requirements applicable to the caption for a petition are found in Rule 1005, to the caption for notices to creditors in Rule 2002(m), and to the caption for a pleading or other paper filed in an adversary proceeding in Rule 7010. Failure to comply with this or any other rule imposing a merely formal requirement does not ordinarily result in the loss of rights. See Rule 9005.

## Rule 9005. Harmless Error

Rule 61 F.R.Civ.P. applies in cases under the Code. When appropriate, the court may order the correction of any error or defect or the cure of any omission which does not affect substantial rights.

REFERENCES IN TEXT

The Federal Rules of Civil Procedure, referred to in text, are set out in the Appendix to Title 28, Judiciary and Judicial Procedure.

## Rule 9005.1. Constitutional Challenge to a Statute—Notice, Certification, and Intervention

Rule 5.1 F.R.Civ.P. applies in cases under the Code.

(Added Apr. 30, 2007, eff. Dec. 1, 2007.)

COMMITTEE NOTES ON RULES—2007

The rule is added to adopt the new rule added to the Federal Rules of Civil Procedure. The new Civil Rule replaces Rule 24(c) F. R. Civ. P., so the cross reference to Civil Rule 24 contained in Rule 7024 is no longer sufficient to bring the provisions of new Civil Rule 5.1 into adversary proceedings. This rule also makes Civil Rule 5.1 applicable to all contested matters and other proceedings within the bankruptcy case.

*Changes After Publication.* No changes were made after publication.

REFERENCES IN TEXT

The Federal Rules of Civil Procedure, referred to in text, are set out in the Appendix to Title 28, Judiciary and Judicial Procedure.

## Rule 9006. Computing and Extending Time

(a) COMPUTING TIME. The following rules apply in computing any time period specified in these rules, in the Federal Rules of Civil Procedure, in any local rule or court order, or in any statute that does not specify a method of computing time.

(1) *Period Stated in Days or a Longer Unit.* When the period is stated in days or a longer unit of time:

(A) exclude the day of the event that triggers the period;

(B) count every day, including intermediate Saturdays, Sundays, and legal holidays; and

(C) include the last day of the period, but if the last day is a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday.

(2) *Period Stated in Hours.* When the period is stated in hours:

(A) begin counting immediately on the occurrence of the event that triggers the period;

(B) count every hour, including hours during intermediate Saturdays, Sundays, and legal holidays; and

(C) if the period would end on a Saturday, Sunday, or legal holiday, then continue the period until the same time on the next day that is not a Saturday, Sunday, or legal holiday.

(3) *Inaccessibility of Clerk's Office.* Unless the court orders otherwise, if the clerk's office is inaccessible:

(A) on the last day for filing under Rule 9006(a)(1), then the time for filing is extended to the first accessible day that is not a Saturday, Sunday, or legal holiday; or

(B) during the last hour for filing under Rule 9006(a)(2), then the time for filing is extended to the same time on the first accessible day that is not a Saturday, Sunday, or legal holiday.

(4) *''Last Day'' Defined.* Unless a different time is set by a statute, local rule, or order in the case, the last day ends:

(A) for electronic filing, at midnight in the court's time zone; and

(B) for filing by other means, when the clerk's office is scheduled to close.

(5) *''Next Day'' Defined.* The ''next day'' is determined by continuing to count forward when the period is measured after an event and backward when measured before an event.

(6) *''Legal Holiday'' Defined.* ''Legal holiday'' means:

(A) the day set aside by statute for observing New Year's Day, Martin Luther King Jr.'s Birthday, Washington's Birthday, Memorial Day, Independence Day, Labor Day, Columbus Day, Veterans' Day, Thanksgiving Day, or Christmas Day;

(B) any day declared a holiday by the President or Congress; and

(C) for periods that are measured after an event, any other day declared a holiday by the state where the district court is located. (In this rule, ''state'' includes the District of Columbia and any United States commonwealth or territory.)

(b) ENLARGEMENT.

(1) *In General.* Except as provided in paragraphs (2) and (3) of this subdivision, when an act is required or allowed to be done at or within a specified period by these rules or by a notice given thereunder or by order of court, the court for cause shown may at any time in its discretion (1) with or without motion or notice order the period enlarged if the request therefor is made before the expiration of the period originally prescribed or as extended by a previous order or (2) on motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect.

(2) *Enlargement Not Permitted.* The court may not enlarge the time for taking action under Rules 1007(d), 2003(a) and (d), 7052, 9023, and 9024.

(3) *Enlargement Governed By Other Rules.* The court may enlarge the time for taking action under Rules 1006(b)(2), 1017(e), 3002(c), 4003(b), 4004(a), 4007(c), 4008(a), 8002, and 9033, only to the extent and under the conditions stated in those rules. In addition, the court may enlarge the time to file the statement required under Rule 1007(b)(7), and to file schedules and statements in a small business case under §1116(3) of the Code, only to the extent and under the conditions stated in Rule 1007(c).

(c) REDUCTION.

(1) *In General.* Except as provided in paragraph (2) of this subdivision, when an act is required or allowed to be done at or within a specified time by these rules or by a notice given thereunder or by order of court, the court for cause shown may in its discretion with or without motion or notice order the period reduced.

(2) *Reduction Not Permitted.* The court may not reduce the time for taking action under Rules 2002(a)(7), 2003(a), 3002(c), 3014, 3015, 4001(b)(2), (c)(2), 4003(a), 4004(a), 4007(c), 4008(a), 8002, and 9033(b). In addition, the court may not reduce the time under Rule 1007(c) to file the statement required by Rule 1007(b)(7).

(d) FOR MOTIONS—AFFIDAVITS. A written motion, other than one which may be heard ex parte, and notice of any hearing shall be served not later than seven days before the time specified for such hearing, unless a different period is fixed by these rules or by order of the court. Such an order may for cause shown be made on ex parte application. When a motion is supported by affidavit, the affidavit shall be served with the motion; and, except as otherwise provided in Rule 9023, opposing affidavits may be served not later than one day before the hearing, unless the court permits them to be served at some other time.

(e) TIME OF SERVICE. Service of process and service of any paper other than process or of notice by mail is complete on mailing.

(f) ADDITIONAL TIME AFTER SERVICE BY MAIL OR UNDER RULE 5(b)(2)(D), (E), OR (F) F.R.CIV.P. When there is a right or requirement to act or undertake some proceedings within a prescribed period after service and that service is by mail or under Rule 5(b)(2)(D), (E), or (F) F.R.Civ.P., three days are added after the prescribed period would otherwise expire under Rule 9006(a).

(g) GRAIN STORAGE FACILITY CASES. This rule shall not limit the court's authority under §557 of the Code to enter orders governing procedures in cases in which the debtor is an owner or operator of a grain storage facility.

(As amended Mar. 30, 1987, eff. Aug. 1, 1987; Apr. 25, 1989, eff. Aug. 1, 1989; Apr. 30, 1991, eff. Aug. 1, 1991; Apr. 23, 1996, eff. Dec. 1, 1996; Apr. 26, 1999, eff. Dec. 1, 1999; Apr. 23, 2001, eff. Dec. 1, 2001; Apr. 25, 2005, eff. Dec. 1, 2005; Apr. 23, 2008, eff. Dec. 1, 2008; Mar. 26, 2009, eff. Dec. 1, 2009.)

NOTES OF ADVISORY COMMITTEE ON RULES—1983

*Subdivision (a).* This rule is an adaptation of Rule 6 F.R.Civ.P. It governs the time for acts to be done and proceedings to be had in cases under the Code and any litigation arising therein.

*Subdivision (b)* is patterned after Rule 6(b) F.R.Civ.P. and Rule 26(b) F.R.App.P.

Paragraph (1) of this subdivision confers on the court discretion generally to authorize extensions of time for doing acts required or allowed by these rules or orders of court. The exceptions to this general authority to extend the time are contained in paragraphs (2) and (3).

In the interest of prompt administration of bankruptcy cases certain time periods may not be extended. Paragraph (2) lists the rules which establish time periods which may not be extended: Rule 1007(d), time for filing a list of 20 largest creditors; Rule 1017(b)(3), 30 day period for sending notice of dismissal for failure to pay the filing fee; Rule 1019(2), 20 day period for notice of conversion to a chapter 7 case; Rule 2003(a), meeting of creditors not more than 40 days after order for relief; Rule 2003(d), 10 days for filing a motion for resolution of an election dispute; Rule 3014, time for the §1111(b)(2) election; Rule 4001(b), expiration of stay 30 days following the commencement of final hearing; Rule 7052(b), 10 day period to move to amend findings of fact; Rule 9015(f), 20 day period to move for judgment notwithstanding the verdict; Rule 9023, 10 day period to move for a new trial; and Rule 9024, time to move for relief from judgment.

Many rules which establish a time for doing an act also contain a specific authorization and standard for granting an extension of time and, in some cases, limit the length of an extension. In some instances it would be inconsistent with the objective of the rule and sound administration of the case to permit extension under Rule 9006(b)(1), but with respect to the other rules it is appropriate that the power to extend time be supplemented by Rule 9006(b)(1). Unless a rule which contains a specific authorization to extend time is listed in paragraph (3) of this subdivision, an extension of the time may be granted under paragraph (1) of this subdivision. If a rule is included in paragraph (3) an extension may not be granted under paragraph (1). The following rules are listed in paragraph (3): Rule 1006(b)(2), time for paying the filing fee in installments; Rule 3002(c), 90 day period for filing a claim in a chapter 7 or 13 case; Rule 4003(b), 30 days for filing objections to a claim of exemptions; Rule 4004(a), 60 day period to object to a discharge; Rule 4007(b), 60 day period to file a dischargeability complaint; and Rule 8002, 10 days for filing a notice of appeal.

*Subdivision (c).* Paragraph (1) of this subdivision authorizes the reduction of the time periods established by these rules or an order of the court. Excluded from this general authority are the time periods established by the rules referred to in paragraph (2) of the subdivision: Rule 2002 (a) and (b), 20 day and 25 day notices of certain hearings and actions in the case; Rule 2003(a), meeting of creditors in a chapter 7 or 13 case; Rule 3002(c), 90 days for filing a claim in a chapter 7 or 13 case; Rule 3014, time for §1111(b)(2) election; Rule 3015, 10 day period after filing of petition to file a chapter 13 plan; Rule 4003(a), 15 days for a dependent to claim exemptions; Rule 4004(a), 60 day period to object to a discharge; Rule 4007(c), 60 day period to file a dischargeability complaint; and Rule 8002, 10 days for filing a notice of appeal. Reduction of the time periods fixed in the rules referred to in this subdivision would be inconsistent with the purposes of those rules and would cause harmful uncertainty.

*Subdivision (d)* is derived from Rule 6(d) F.R.Civ.P. The reference is to Rule 9023 instead of to Rule 59(c) F.R.Civ.P. because Rule 9023 incorporates Rule 59 F.R.Civ.P. but excepts therefrom motions to reconsider orders allowing and disallowing claims.

*Subdivision (f)* is new and is the same as Rule 6(e) F.R.Civ.P.

NOTES OF ADVISORY COMMITTEE ON RULES—1987
AMENDMENT

*Subdivision (a)* is amended to conform to the 1984 amendments to Rule 6 F.R.Civ.P.

*Subdivision (b).* The reference to Rule 4001(b) in paragraph (3) is deleted because of the amendments made to Rule 4001. Rule 9033, which is new, contains specific

provisions governing the extension of time to file objections to proposed findings of fact and conclusions of law. Rule 9033 is added to the rules referred to in paragraph (3).

*Subdivision (c).* Rule 4001(b)(2) and (c)(2) provide that a final hearing on a motion to use cash collateral or a motion for authority to obtain credit may be held no earlier than 15 days after the filing of the motion. These two rules are added to paragraph (2) to make it clear that the 15 day period may not be reduced. Rule 9033 is also added to paragraph (2).

*Subdivision (g)* is new. Under §557 of the Code, as enacted by the 1984 amendments, the court is directed to expedite grain storage facility cases. This subdivision makes it clear that this rule does not limit the court's authority under §557.

The original Advisory Committee Note to this rule included the 25 day notice period of Rule 2002(b) as a time period which may not be reduced under Rule 9006(c)(2). This was an error.

### NOTES OF ADVISORY COMMITTEE ON RULES—1989 AMENDMENT

Prior to 1987, subdivision (a) provided that intermediate weekends and legal holidays would not be counted in the computation of a time period if the prescribed or allowed time was less than 7 days. This rule was amended in 1987 to conform to Fed. R. Civ. P. 6(a) which provides for the exclusion of intermediate weekends and legal holidays if the time prescribed or allowed is less than 11 days. An undesirable result of the 1987 amendment was that 10-day time periods prescribed in the interest of prompt administration of bankruptcy cases were extended to at least 14 calendar days.

As a result of the present amendment, 10-day time periods prescribed or allowed will no longer be extended to at least 14 calendar days because of intermediate weekends and legal holidays.

### NOTES OF ADVISORY COMMITTEE ON RULES—1991 AMENDMENT

As a result of the 1989 amendment to this rule, the method of computing time under subdivision (a) is not the same as the method of computing time under Rule 6(a) F.R.Civ.P. Subdivision (a) is amended to provide that it governs the computation of time periods prescribed by the Federal Rules of Civil Procedure when the Bankruptcy Rules make a civil rule applicable to a bankruptcy case or proceeding.

*Subdivision (b)(2)* is amended because of the deletion of Rule 1019(2). Reference to Rule 9015(f) is deleted because of the abrogation of Rule 9015 in 1987.

*Subdivision (b)(3)* is amended to limit the enlargement of time regarding dismissal of a chapter 7 case for substantial abuse in accordance with Rule 1017(e).

### NOTES OF ADVISORY COMMITTEE ON RULES—1996 AMENDMENT

Subdivision (c)(2) is amended to conform to the abrogation of Rule 2002(a)(4) and the renumbering of Rule 2002(a)(8) to Rule 2002(a)(7).

*GAP Report on Rule 9006.* No changes since publication, except for a stylistic change.

### COMMITTEE NOTES ON RULES—1999 AMENDMENT

Rule 9006(b)(2) is amended to conform to the abrogation of Rule 1017(b)(3).

*GAP Report on Rule 9006.* The proposed amendment to Rule 9006(b)(2) has been added as a technical change to conform to the abrogation of Rule 1017(b)(3). The proposed amendment to Rule 9006(c)(2), providing that the time under Rule 1019(6) to file a request for payment of an administrative expense after a case is converted to chapter 7 could not be reduced by the court, was deleted. The proposed amendments to Rule 1019(6) have been changed so that the court will fix the time for filing the request for payment. Since the court will fix the time limit, the court should have the power to reduce it. *See* GAP Report to Rule 1019(6).

### COMMITTEE NOTES ON RULES—2001 AMENDMENT

Rule 5(b) F. R. Civ. P., which is made applicable in adversary proceedings by Rule 7005, is being restyled and amended to authorize service by electronic means—or any other means not otherwise authorized under Rule 5(b)—if consent is obtained from the person served. The amendment to Rule 9006(f) is intended to extend the three-day "mail rule" to service under Rule 5(b)(2)(D), including service by electronic means. The three-day rule also will apply to service under Rule 5(b)(2)(C) F. R. Civ. P. when the person served has no known address and the paper is served by leaving a copy with the clerk of the court.

*Changes Made After Publication and Comments.* No changes were made.

### COMMITTEE NOTES ON RULES—2005 AMENDMENT

Rule 9006(f) is amended, consistent with a corresponding amendment to Rule 6(e) of the F.R. Civ. P., to clarify the method of counting the number of days to respond after service either by mail or under Civil Rule 5(b)(2)(C) or (D). Three days are added after the prescribed period expires. If, before the application of Rule 9006(f), the prescribed period is less than 8 days, intervening Saturdays, Sundays, and legal holidays are excluded from the calculation under Rule 9006(a). Some illustrations may be helpful.

Under existing Rule 9006(a), assuming that there are no legal holidays and that a response is due in seven days, if a paper is filed on a Monday, the seven day response period commences on Tuesday and concludes on Wednesday of the next week. Adding three days to the end of the period would extend it to Saturday, but because the response period ends on a weekend, the response day would be the following Monday, two weeks after the filing of the initial paper. If the paper is filed on a Tuesday, the seven-day response period would end on the following Thursday, and the response time would also be the following Monday. If the paper is mailed on a Wednesday, the initial seven-day period would expire nine days later on a Friday, but the response would again be due on the following Monday because of Rule 9006(f). If the paper is mailed on a Thursday, however, the seven day period ends on Monday, eleven days after the mailing of the service because of the exclusion of the two intervening Saturdays and Sundays. The response is due three days later on the following Thursday. If the paper is mailed on a Friday, the seven day period would conclude on a Tuesday, and the response is due three days later on a Friday.

No other change in the system of counting time is intended.

Other changes are stylistic.

*Changes Made After Publication and Comment.* The phrase "would otherwise expire under Rule 9006(a)" was added to the end of the rule to clarify further that the three day extension is to be added to the end of the period that is established under the counting provisions of Rule 9006(a). This also maintains a parallel construction with Civil Rule 6(e) in which the same addition to the rule was made after the public comment period.

### COMMITTEE NOTES ON RULES—2008 AMENDMENT

Subdivision (b)(3) is amended to implement §1116(3) of the Code, as amended by the 2005 amendments, which places specific limits on the extension of time for filing schedules and statements of financial affairs in a small business case.

Subdivisions (b)(3) and (c)(2) are amended to provide that enlargement or reduction of the time to file the statement of completion of a personal financial management course required by Rule 1007(b)(7) are governed by Rule 1007(c). Likewise, the amendments to subdivisions (b)(3) and (c)(2) recognize that the enlargement of time to file a reaffirmation agreement is governed by Rule 4008(a), and that reduction of the time provided under that rule is not permitted.

Other amendments are stylistic.

*Changes Made After Publication.* Subdivision (b)(3) was amended to provide that Rule 9006 does not govern the

enlargement of time to file a reaffirmation agreement, the statement required under Rule 1007(b)(7), or the time to file schedules and statements of financial affairs in small business cases. The title of subdivision (b)(3) was also amended to more accurately describe the operation of the provision. Subdivision (c)(2) was amended to recognize that the court may not reduce the time under Rule 1007(c) to file the statement required by Rule 1007(b)(7).

COMMITTEE NOTES ON RULES—2009 AMENDMENT

*Subdivision (a).* Subdivision (a) has been amended to simplify and clarify the provisions that describe how deadlines are computed. Subdivision (a) governs the computation of any time period found in a Federal Rule of Bankruptcy Procedure, a Federal Rule of Civil Procedure, a statute, a local rule, or a court order. In accordance with Bankruptcy Rule 9029(a), a local rule may not direct that a deadline be computed in a manner inconsistent with subdivision (a).

The time-computation provisions of subdivision (a) apply only when a time period must be computed. They do not apply when a fixed time to act is set. The amendments thus carry forward the approach taken in *Violette v. P.A. Days, Inc.,* 427 F.3d 1015, 1016 (6th Cir. 2005) (holding that Civil Rule 6(a) ''does not apply to situations where the court has established a specific calendar day as a deadline''), and reject the contrary holding of *In re American Healthcare Management, Inc.,* 900 F.2d 827, 832 (5th Cir. 1990) (holding that Bankruptcy Rule 9006(a) governs treatment of date-certain deadline set by court order). If, for example, the date for filing is ''no later than November 1, 2007,'' subdivision (a) does not govern. But if a filing is required to be made ''within 10 days'' or ''within 72 hours,'' subdivision (a) describes how that deadline is computed.

Subdivision (a) does not apply when computing a time period set by a statute if the statute specifies a method of computing time. *See, e.g.,* 11 U.S.C. §527(a)(2) (debt relief agencies must provide a written notice to an assisted person ''not later than 3 business days'' after providing bankruptcy assistance services).

*Subdivision (a)(1).* New subdivision (a)(1) addresses the computation of time periods that are stated in days. It also applies to time periods that are stated in weeks, months, or years. *See, e.g.,* Federal Rule of Civil Procedure 60(c)(1) made applicable to bankruptcy cases under Rule 9024. Subdivision (a)(1)(B)'s directive to ''count every day'' is relevant only if the period is stated in days (not weeks, months, or years).

Under former Rule 9006(a), a period of eight days or more was computed differently than a period of less than eight days. Intermediate Saturdays, Sundays, and legal holidays were included in computing the longer periods, but excluded in computing the shorter periods. Former Rule 9006(a) thus made computing deadlines unnecessarily complicated and led to counterintuitive results.

Under new subdivision (a)(1), all deadlines stated in days (no matter the length) are computed in the same way. The day of the event that triggers the deadline is not counted. All other days—including intermediate Saturdays, Sundays, and legal holidays—are counted, with only one exception: If the period ends on a Saturday, Sunday, or legal holiday, then the deadline falls on the next day that is not a Saturday, Sunday, or legal holiday. An illustration is provided below in the discussion of subdivision (a)(5). Subdivision (a)(3) addresses filing deadlines that expire on a day when the clerk's office is inaccessible.

Where subdivision (a) formerly referred to the ''act, event, or default'' that triggers the deadline, new subdivision (a) refers simply to the ''event'' that triggers the deadline; this change in terminology is adopted for brevity and simplicity, and is not intended to change meaning.

Periods previously expressed as less than eight days will be shortened as a practical matter by the decision to count intermediate Saturdays, Sundays, and legal holidays in computing all periods. Many of those peri-

ods have been lengthened to compensate for the change. *See, e.g.,* Rules 2008 (trustee's duty to notify court of acceptance of the appointment within five days is extended to seven days); 6004(b) (time for filing and service of objection to proposed use, sale or lease of property extended from five days prior to the hearing to seven days prior to the hearing); and 9006(d) (time for giving notice of a hearing extended from five days prior to the hearing to seven days).

Most of the 10-day periods were adjusted to meet the change in computation method by setting 14 days as the new period. *See, e.g.,* Rules 1007(h) (10-day period to file supplemental schedule for property debtor becomes entitled to acquire after the commencement of the case is extended to 14 days); 3020(e) (10-day stay of order confirming a chapter 11 plan extended to 14 days); 8002(a) (10-day period in which to file notice of appeal extended to 14 days). A 14-day period also has the advantage that the final day falls on the same day of the week as the event that triggered the period—the14th day after a Monday, for example, is a Monday. This advantage of using week-long periods led to adopting seven-day periods to replace some of the periods set at less than 10 days, 21-day periods to replace 20-day periods, and 28-day periods to replace 25-day periods.Thirty-day and longer periods, however, were generally retained without change.

*Subdivision (a)(2).* New subdivision (a)(2) addresses the computation of time periods that are stated in hours. No such deadline currently appears in the Federal Rules of Bankruptcy Procedure. But some statutes contain deadlines stated in hours, as do some court orders issued in expedited proceedings.

Under subdivision (a)(2), a deadline stated in hours starts to run immediately on the occurrence of the event that triggers the deadline. The deadline generally ends when the time expires. If, however, the time period expires at a specific time (say, 2:17 p.m.) on a Saturday, Sunday, or legal holiday, then the deadline is extended to the same time (2:17 p.m.) on the next day that is not a Saturday, Sunday, or legal holiday. Periods stated in hours are not to be ''rounded up'' to the next whole hour. Subdivision (a)(3) addresses situations when the clerk's office is inaccessible during the last hour before a filing deadline expires.

Subdivision (a)(2)(B) directs that every hour be counted. Thus, for example, a 72-hour period that commences at 10:23 a.m. on Friday, November 2, 2007, will run until 9:23 a.m. on Monday, November 5; the discrepancy in start and end times in this example results from the intervening shift from daylight saving time to standard time.

*Subdivision (a)(3).* When determining the last day of a filing period stated in days or a longer unit of time, a day on which the clerk's office is not accessible because of the weather or another reason is treated like a Saturday, Sunday, or legal holiday. When determining the end of a filing period stated in hours, if the clerk's office is inaccessible during the last hour of the filing period computed under subdivision (a)(2) then the period is extended to the same time on the next day that is not a weekend, holiday, or day when the clerk's office is inaccessible.

Subdivision (a)(3)'s extensions apply ''[u]nless the court orders otherwise.'' In some circumstances, the court might not wish a period of inaccessibility to trigger a full 24-hour extension; in those instances, the court can specify a briefer extension.

The text of the rule no longer refers to ''weather or other conditions'' as the reason for the inaccessibility of the clerk's office. The reference to ''weather'' was deleted from the text to underscore that inaccessibility can occur for reasons unrelated to weather, such as an outage of the electronic filing system. Weather can still be a reason for inaccessibility of the clerk's office. The rule does not attempt to define inaccessibility. Rather, the concept will continue to develop through caselaw. *See, e.g.,* William G. Phelps, *When Is Office of Clerk of Court Inaccessible Due to Weather or Other Conditions for Purpose of Computing Time Period for Filing Pa-*

pers under Rule 6(a) of Federal Rules of Civil Procedure, 135 A.L.R. Fed. 259 (1996) (collecting cases). In addition, many local provisions address inaccessibility for purposes of electronic filing. *See, e.g.,* D. Kan. Rule 5.4.11 ("A Filing User whose filing is made untimely as the result of a technical failure may seek appropriate relief from the court.").

*Subdivision (a)(4).* New subdivision (a)(4) defines the end of the last day of a period for purposes of subdivision (a)(1). Subdivision (a)(4) does not apply in computing periods stated in hours under subdivision (a)(2), and does not apply if a different time is set by a statute, local rule, or order in the case. A local rule may provide, for example, that papers filed in a drop box after the normal hours of the clerk's office are filed as of the day that is date-stamped on the papers by a device in the drop box.

28 U.S.C. §452 provides that "[a]ll courts of the United States shall be deemed always open for the purpose of filing proper papers, issuing and returning process, and making motions and orders." A corresponding provision exists in Rule 5001(a). Some courts have held that these provisions permit an after-hours filing by handing the papers to an appropriate official. *See, e.g., Casalduc v. Diaz,* 117 F.2d 915, 917 (1st Cir. 1941). Subdivision (a)(4) does not address the effect of the statute on the question of after-hours filing; instead, the rule is designed to deal with filings in the ordinary course without regard to Section 452.

*Subdivision (a)(5).* New subdivision (a)(5) defines the "next" day for purposes of subdivisions (a)(1)(C) and (a)(2)(C). The Federal Rules of Bankruptcy Procedure contain both forward-looking time periods and backward-looking time periods. A forward-looking time period requires something to be done within a period of time *after* an event. *See, e.g.,* Rules 1007(c) ("[''the schedules, statements, and other documents shall be filed by the debtor within 14 days of the entry of the order for relief''); 1019(5)(B)(ii) ("the trustee, not later than 30 days after conversion of the case, shall file and transmit to the United States trustee a final report and account''); and 7012(a) ("If a complaint is duly served, the defendant shall serve an answer within 30 days after the issuance of the summons, except when a different time is prescribed by the court.").

A backward-looking time period requires something to be done within a period of time *before* an event. *See, e.g.,* Rules 6004(b) ("an objection to a proposed use, sale, or lease of property shall be filed and served not less than seven days before the date set for the proposed action''); 9006(d) ("A written motion, other than one which may be heard ex parte, and notice of any hearing shall be served not later than seven days before the time specified for such hearing.") In determining what is the "next" day for purposes of subdivisions (a)(1)(C) and (a)(2)(C), one should continue counting in the same direction—that is, forward when computing a forward-looking period and backward when computing a backward-looking period. If, for example, a filing is due within 10 days *after* an event, and the tenth day falls on Saturday, September 1, 2007, then the filing is due on Tuesday, September 4, 2007 (Monday, September 3, is Labor Day). But if a filing is due 10 days *before* an event, and the tenth day falls on Saturday, September 1, then the filing is due on Friday, August 31.

*Subdivision (a)(6).* New subdivision (a)(6) defines "legal holiday" for purposes of the Federal Rules of Bankruptcy Procedure, including the time-computation provisions of subdivision (a). Subdivision (a)(6) continues to include within the definition of "legal holiday" days that are declared a holiday by the President or Congress.

For forward-counted periods—*i.e.,* periods that are measured after an event—subdivision (a)(6)(C) includes certain state holidays within the definition of legal holidays, and defines the term "state"—for purposes of subdivision (a)(6)—to include the District of Columbia and any commonwealth or territory of the United States. Thus, for purposes of subdivision (a)(6)'s definition of "legal holiday," "state" includes the District of Columbia, Guam, American Samoa, the U.S. Virgin Islands, the Commonwealth of Puerto Rico, and the Commonwealth of the Northern Mariana Islands.

However, state legal holidays are not recognized in computing backward-counted periods. For both forward- and backward-counted periods, the rule thus protects those who may be unsure of the effect of state holidays. For forward-counted deadlines, treating state holidays the same as federal holidays extends the deadline. Thus, someone who thought that the federal courts might be closed on a state holiday would be safeguarded against an inadvertent late filing. In contrast, for backward-counted deadlines, not giving state holidays the treatment of federal holidays allows filing on the state holiday itself rather than the day before. Take, for example, Monday, April 21, 2008 (Patriot's Day, a legal holiday in the relevant state). If a filing is due 14 days after an event, and the fourteenth day is April 21, then the filing is due on Tuesday, April 22 because Monday, April 21 counts as a legal holiday. But if a filing is due 14 days before an event, and the fourteenth day is April 21, the filing is due on Monday, April 21; the fact that April 21 is a state holiday does not make April 21 a legal holiday for purposes of computing this backward-counted deadline. But note that if the clerk's office is inaccessible on Monday, April 21, then subdivision (a)(3) extends the April 21 filing deadline forward to the next accessible day that is not a Saturday, Sunday or legal holiday—no earlier than Tuesday, April 22.

*Changes Made After Publication.* The reference to Rule 6(a)(1) in subdivision (a)(3)(A) at line 50 of the rule as it was published was corrected by referring instead to Rule 9006(a)(1).

The Standing Committee changed Rule 9006(a)(6) to exclude state holidays from the definition of "legal holiday" for purposes of computing backward-counted periods; conforming changes were made to the Committee Note to subdivision (a)(6). In addition, the term "possession" was deleted from the definition of "state" in subdivision (a)(6), and a conforming change was made to the Committee Note.

[*Subdivision (d).*] The rule is amended to implement changes in connection with the amendment to Rule 9006(a) and the manner by which time is computed under the rules. The deadline in the rule is amended to substitute a deadline that is a multiple of seven days. Throughout the rules, deadlines are amended in the following manner:

- 5-day periods become 7-day periods
- 10-day periods become 14-day periods
- 15-day periods become 14-day periods
- 20-day periods become 21-day periods
- 25-day periods become 28-day periods

Subdivision (f) is amended to conform to the changes made to Rule 5(b)(2) of the Federal Rules of Civil Procedure as a part of the Civil Rules Restyling Project. As a part of that project, subparagraphs (b)(2)(C) and (D) of that rule were rewritten as subparagraphs (b)(2)(D), (E), and (F). The cross reference to those rules contained in subdivision (f) of this rule is corrected by this amendment.

### REFERENCES IN TEXT

The Federal Rules of Civil Procedure, referred to in subds. (a) and (f), are set out in the Appendix to Title 28, Judiciary and Judicial Procedure.

## Rule 9007. General Authority to Regulate Notices

When notice is to be given under these rules, the court shall designate, if not otherwise specified herein, the time within which, the entities to whom, and the form and manner in which the notice shall be given. When feasible, the court may order any notices under these rules to be combined.

(As amended Mar. 30, 1987, eff. Aug. 1, 1987.)

## FED. R. BANKR. P. 9008

**Rule 9008. Service or Notice by Publication**

Whenever these rules require or authorize service or notice by publication, the court shall, to the extent not otherwise specified in these rules, determine the form and manner thereof, including the newspaper or other medium to be used and the number of publications.

**Rule 9009. Forms**

Except as otherwise provided in Rule 3016(d), the Official Forms prescribed by the Judicial Conference of the United States shall be observed and used with alterations as may be appropriate. Forms may be combined and their contents rearranged to permit economies in their use. The Director of the Administrative Office of the United States Courts may issue additional forms for use under the Code. The forms shall be construed to be consistent with these rules and the Code.

(As amended Apr. 30, 1991, eff. Aug. 1, 1991; Apr. 23, 2008, eff. Dec. 1, 2008.)

NOTES OF ADVISORY COMMITTEE ON RULES—1983

The rule continues the obligatory character of the Official Forms in the interest of facilitating the processing of the paperwork of bankruptcy administration, but provides that Official Forms will be prescribed by the Judicial Conference of the United States. The Supreme Court and the Congress will thus be relieved of the burden of considering the large number of complex forms used in bankruptcy practice. The use of the Official Forms has generally been held subject to a "rule of substantial compliance" and some of these rules, for example Rule 1002, specifically state that the filed document need only "conform substantially" to the Official Form. See also Rule 9005. The second sentence recognizes the propriety of combining and rearranging Official Forms to take advantage of technological developments and resulting economies.

The Director of the Administrative Office is authorized to issue additional forms for the guidance of the bar.

NOTES OF ADVISORY COMMITTEE ON RULES—1991 AMENDMENT

Rule 9029 [9009] is amended to clarify that local court rules may not prohibit or limit the use of the Official Forms.

COMMITTEE NOTES ON RULES—2008 AMENDMENT

The rule is amended to provide that a plan proponent in a small business chapter 11 case need not use an Official Form of a plan of reorganization and disclosure statement. The use of those forms is optional, and under Rule 3016(d) the proponent may submit a plan and disclosure statement in those cases that does not conform to the Official Forms.

*Changes Made After Publication.* No changes were made after publication.

**Rule 9010. Representation and Appearances; Powers of Attorney**

(a) AUTHORITY TO ACT PERSONALLY OR BY ATTORNEY. A debtor, creditor, equity security holder, indenture trustee, committee or other party may (1) appear in a case under the Code and act either in the entity's own behalf or by an attorney authorized to practice in the court, and (2) perform any act not constituting the practice of law, by an authorized agent, attorney in fact, or proxy.

(b) NOTICE OF APPEARANCE. An attorney appearing for a party in a case under the Code shall file a notice of appearance with the attorney's name, office address and telephone number, unless the attorney's appearance is otherwise noted in the record.

(c) POWER OF ATTORNEY. The authority of any agent, attorney in fact, or proxy to represent a creditor for any purpose other than the execution and filing of a proof of claim or the acceptance or rejection of a plan shall be evidenced by a power of attorney conforming substantially to the appropriate Official Form. The execution of any such power of attorney shall be acknowledged before one of the officers enumerated in 28 U.S.C. §459, §953, Rule 9012, or a person authorized to administer oaths under the laws of the state where the oath is administered.

(As amended Mar. 30, 1987, eff. Aug. 1, 1987; Apr. 30, 1991, eff. Aug. 1, 1991.)

NOTES OF ADVISORY COMMITTEE ON RULES—1983

This rule is substantially the same as former Bankruptcy Rule 910 and does not purport to change prior holdings prohibiting a corporation from appearing *pro se.* See *In re Las Colinas Development Corp.,* 585 F.2d 7 (1st Cir. 1978).

NOTES OF ADVISORY COMMITTEE ON RULES—1987 AMENDMENT

*Subdivision (c)* is amended to include a reference to Rule 9012 which is amended to authorize a bankruptcy judge or clerk to administer oaths.

NOTES OF ADVISORY COMMITTEE ON RULES—1991 AMENDMENT

References to Official Form numbers in subdivision (c) are deleted in anticipation of future revision and renumbering of the Official Forms.

**Rule 9011. Signing of Papers; Representations to the Court; Sanctions; Verification and Copies of Papers**

(a) SIGNATURE. Every petition, pleading, written motion, and other paper, except a list, schedule, or statement, or amendments thereto, shall be signed by at least one attorney of record in the attorney's individual name. A party who is not represented by an attorney shall sign all papers. Each paper shall state the signer's address and telephone number, if any. An unsigned paper shall be stricken unless omission of the signature is corrected promptly after being called to the attention of the attorney or party.

(b) REPRESENTATIONS TO THE COURT. By presenting to the court (whether by signing, filing, submitting, or later advocating) a petition, pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,—[1]

(1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;

(2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;

---

[1] So in original. The comma probably should not appear.

**<u>FED. R. BANKR. P. 9010</u>**

**Rule 9008. Service or Notice by Publication**

Whenever these rules require or authorize service or notice by publication, the court shall, to the extent not otherwise specified in these rules, determine the form and manner thereof, including the newspaper or other medium to be used and the number of publications.

**Rule 9009. Forms**

Except as otherwise provided in Rule 3016(d), the Official Forms prescribed by the Judicial Conference of the United States shall be observed and used with alterations as may be appropriate. Forms may be combined and their contents rearranged to permit economies in their use. The Director of the Administrative Office of the United States Courts may issue additional forms for use under the Code. The forms shall be construed to be consistent with these rules and the Code.

(As amended Apr. 30, 1991, eff. Aug. 1, 1991; Apr. 23, 2008, eff. Dec. 1, 2008.)

Notes of Advisory Committee on Rules—1983

The rule continues the obligatory character of the Official Forms in the interest of facilitating the processing of the paperwork of bankruptcy administration, but provides that Official Forms will be prescribed by the Judicial Conference of the United States. The Supreme Court and the Congress will thus be relieved of the burden of considering the large number of complex forms used in bankruptcy practice. The use of the Official Forms has generally been held subject to a "rule of substantial compliance" and some of these rules, for example Rule 1002, specifically state that the filed document need only "conform substantially" to the Official Form. See also Rule 9005. The second sentence recognizes the propriety of combining and rearranging Official Forms to take advantage of technological developments and resulting economies.

The Director of the Administrative Office is authorized to issue additional forms for the guidance of the bar.

Notes of Advisory Committee on Rules—1991
Amendment

Rule 9029 [9009] is amended to clarify that local court rules may not prohibit or limit the use of the Official Forms.

Committee Notes on Rules—2008 Amendment

The rule is amended to provide that a plan proponent in a small business chapter 11 case need not use an Official Form of a plan of reorganization and disclosure statement. The use of those forms is optional, and under Rule 3016(d) the proponent may submit a plan and disclosure statement in those cases that does not conform to the Official Forms.

*Changes Made After Publication.* No changes were made after publication.

**Rule 9010. Representation and Appearances; Powers of Attorney**

(a) Authority To Act Personally or by Attorney. A debtor, creditor, equity security holder, indenture trustee, committee or other party may (1) appear in a case under the Code and act either in the entity's own behalf or by an attorney authorized to practice in the court, and (2) perform any act not constituting the practice of law, by an authorized agent, attorney in fact, or proxy.

(b) Notice of Appearance. An attorney appearing for a party in a case under the Code shall file a notice of appearance with the attorney's name, office address and telephone number, unless the attorney's appearance is otherwise noted in the record.

(c) Power of Attorney. The authority of any agent, attorney in fact, or proxy to represent a creditor for any purpose other than the execution and filing of a proof of claim or the acceptance or rejection of a plan shall be evidenced by a power of attorney conforming substantially to the appropriate Official Form. The execution of any such power of attorney shall be acknowledged before one of the officers enumerated in 28 U.S.C. §459, §953, Rule 9012, or a person authorized to administer oaths under the laws of the state where the oath is administered.

(As amended Mar. 30, 1987, eff. Aug. 1, 1987; Apr. 30, 1991, eff. Aug. 1, 1991.)

Notes of Advisory Committee on Rules—1983

This rule is substantially the same as former Bankruptcy Rule 910 and does not purport to change prior holdings prohibiting a corporation from appearing *pro se.* See *In re Las Colinas Development Corp.,* 585 F.2d 7 (1st Cir. 1978).

Notes of Advisory Committee on Rules—1987
Amendment

*Subdivision (c)* is amended to include a reference to Rule 9012 which is amended to authorize a bankruptcy judge or clerk to administer oaths.

Notes of Advisory Committee on Rules—1991
Amendment

References to Official Form numbers in subdivision (c) are deleted in anticipation of future revision and renumbering of the Official Forms.

**Rule 9011. Signing of Papers; Representations to the Court; Sanctions; Verification and Copies of Papers**

(a) Signature. Every petition, pleading, written motion, and other paper, except a list, schedule, or statement, or amendments thereto, shall be signed by at least one attorney of record in the attorney's individual name. A party who is not represented by an attorney shall sign all papers. Each paper shall state the signer's address and telephone number, if any. An unsigned paper shall be stricken unless omission of the signature is corrected promptly after being called to the attention of the attorney or party.

(b) Representations to the Court. By presenting to the court (whether by signing, filing, submitting, or later advocating) a petition, pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,—[1]

(1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;

(2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;

---

[1] So in original. The comma probably should not appear.

# FED. R. BANKR. P. 9014

NOTES OF ADVISORY COMMITTEE ON RULES—1997
AMENDMENT

This rule is amended to conform to the 1993 changes to F.R.Civ.P. 11. For an explanation of these amendments, see the advisory committee note to the 1993 amendments to F.R.Civ.P. 11.

The "safe harbor" provision contained in subdivision (c)(1)(A), which prohibits the filing of a motion for sanctions unless the challenged paper is not withdrawn or corrected within a prescribed time after service of the motion, does not apply if the challenged paper is a petition. The filing of a petition has immediate serious consequences, including the imposition of the automatic stay under §362 of the Code, which may not be avoided by the subsequent withdrawal of the petition. In addition, a petition for relief under chapter 7 or chapter 11 may not be withdrawn unless the court orders dismissal of the case for cause after notice and a hearing.

*GAP Report on Rule 9011.* The proposed amendments to subdivision (a) were revised to clarify that a party not represented by an attorney must sign lists, schedules, and statements, as well as other papers that are filed.

## Rule 9012. Oaths and Affirmations

(a) PERSONS AUTHORIZED TO ADMINISTER OATHS. The following persons may administer oaths and affirmations and take acknowledgments: a bankruptcy judge, clerk, deputy clerk, United States trustee, officer authorized to administer oaths in proceedings before the courts of the United States or under the laws of the state where the oath is to be taken, or a diplomatic or consular officer of the United States in any foreign country.

(b) AFFIRMATION IN LIEU OF OATH. When in a case under the Code an oath is required to be taken a solemn affirmation may be accepted in lieu thereof.

(As amended Mar. 30, 1987, eff. Aug. 1, 1987; Apr. 30, 1991, eff. Aug. 1, 1991.)

NOTES OF ADVISORY COMMITTEE ON RULES—1983

This rule is derived from Rule 43(d) F.R.Civ.P.

The provisions of former Bankruptcy Rule 912(a) relating to who may administer oaths have been deleted as unnecessary. Bankruptcy judges and the clerks and deputy clerks of bankruptcy courts are authorized by statute to administer oaths and affirmations and to take acknowledgments. 28 U.S.C. §§459, 953. A person designated to preside at the meeting of creditors has authority under Rule 2003(b)(1) to administer the oath. Administration of the oath at a deposition is governed by Rule 7028.

NOTES OF ADVISORY COMMITTEE ON RULES—1987
AMENDMENT

*Subdivision (a)* has been added to the rule to authorize bankruptcy judges and clerks to administer oaths.

NOTES OF ADVISORY COMMITTEE ON RULES—1991
AMENDMENT

This rule is amended to conform to the 1986 amendment to §343 which provides that the United States trustee may administer the oath to the debtor at the §341 meeting. This rule also allows the United States trustee to administer oaths and affirmations and to take acknowledgments in other situations. This amendment also affects Rule 9010(c) relating to the acknowledgment of a power of attorney. The words "United States trustee" include a designee of the United States trustee pursuant to Rule 9001 and §102(9) of the Code.

## Rule 9013. Motions: Form and Service

A request for an order, except when an application is authorized by these rules, shall be by

written motion, unless made during a hearing. The motion shall state with particularity the grounds therefor, and shall set forth the relief or order sought. Every written motion other than one which may be considered ex parte shall be served by the moving party on the trustee or debtor in possession and on those entities specified by these rules or, if service is not required or the entities to be served are not specified by these rules, the moving party shall serve the entities the court directs.

(As amended Mar. 30, 1987, eff. Aug. 1, 1987.)

NOTES OF ADVISORY COMMITTEE ON RULES—1983

This rule is derived from Rule 5(a) and Rule 7(b)(1) F.R.Civ.P. Except when an application is specifically authorized by these rules, for example an application under Rule 2014 for approval of the employment of a professional, all requests for court action must be made by motion.

## Rule 9014. Contested Matters

(a) MOTION. In a contested matter not otherwise governed by these rules, relief shall be requested by motion, and reasonable notice and opportunity for hearing shall be afforded the party against whom relief is sought. No response is required under this rule unless the court directs otherwise.

(b) SERVICE. The motion shall be served in the manner provided for service of a summons and complaint by Rule 7004. Any paper served after the motion shall be served in the manner provided by Rule 5(b) F. R. Civ. P.

(c) APPLICATION OF PART VII RULES. Except as otherwise provided in this rule, and unless the court directs otherwise, the following rules shall apply: 7009, 7017, 7021, 7025, 7026, 7028–7037, 7041, 7042, 7052, 7054–7056, 7064, 7069, and 7071. The following subdivisions of Fed. R. Civ. P. 26, as incorporated by Rule 7026, shall not apply in a contested matter unless the court directs otherwise: 26(a)(1) (mandatory disclosure), 26(a)(2) (disclosures regarding expert testimony) and 26(a)(3) (additional pre-trial disclosure), and 26(f) (mandatory meeting before scheduling conference/discovery plan). An entity that desires to perpetuate testimony may proceed in the same manner as provided in Rule 7027 for the taking of a deposition before an adversary proceeding. The court may at any stage in a particular matter direct that one or more of the other rules in Part VII shall apply. The court shall give the parties notice of any order issued under this paragraph to afford them a reasonable opportunity to comply with the procedures prescribed by the order.

(d) TESTIMONY OF WITNESSES. Testimony of witnesses with respect to disputed material factual issues shall be taken in the same manner as testimony in an adversary proceeding.

(e) ATTENDANCE OF WITNESSES. The court shall provide procedures that enable parties to ascertain at a reasonable time before any scheduled hearing whether the hearing will be an evidentiary hearing at which witnesses may testify.

(As amended Mar. 30, 1987, eff. Aug. 1, 1987; Apr. 26, 1999, eff. Dec. 1, 1999; Apr. 29, 2002, eff. Dec. 1, 2002; Apr. 26, 2004, eff. Dec. 1, 2004.)

Notes of Advisory Committee on Rules—1983

Rules 1017(d), 3020(b)(1), 4001(a), 4003(d), and 6006(a), which govern respectively dismissal or conversion of a case, objections to confirmation of a plan, relief from the automatic stay and the use of cash collateral, avoidance of a lien under §552(f) of the Code, and the assumption or rejection of executory contracts or unexpired leases, specifically provide that litigation under those rules shall be as provided in Rule 9014. This rule also governs litigation in other contested matters.

Whenever there is an actual dispute, other than an adversary proceeding, before the bankruptcy court, the litigation to resolve that dispute is a contested matter. For example, the filing of an objection to a proof of claim, to a claim of exemption, or to a disclosure statement creates a dispute which is a contested matter. Even when an objection is not formally required, there may be a dispute. If a party in interest opposes the amount of compensation sought by a professional, there is a dispute which is a contested matter.

When the rules of Part VII are applicable to a contested matter, reference in the Part VII rules to adversary proceedings is to be read as a reference to a contested matter. See Rule 9002(1).

Committee Notes on Rules—1999 Amendment

This rule is amended to delete Rule 7062 from the list of Part VII rules that automatically apply in a contested matter.

Rule 7062 provides that Rule 62 F.R.Civ.P., which governs stays of proceedings to enforce a judgment, is applicable in adversary proceedings. The provisions of Rule 62, including the ten-day automatic stay of the enforcement of a judgment provided by Rule 62(a) and the stay as a matter of right by posting a supersedeas bond provided in Rule 62(d), are not appropriate for most orders granting or denying motions governed by Rule 9014.

Although Rule 7062 will not apply automatically in contested matters, the amended rule permits the court, in its discretion, to order that Rule 7062 apply in a particular matter, and Rule 8005 gives the court discretion to issue a stay or any other appropriate order during the pendency of an appeal on such terms as will protect the rights of all parties in interest. In addition, amendments to Rules 3020, 4001, 6004, and 6006 automatically stay certain types of orders for a period of ten days, unless the court orders otherwise.

*GAP Report on Rule 9014.* No changes since publication.

Committee Notes on Rules—2002 Amendment

The list of Part VII rules that are applicable in a contested matter is extended to include Rule 7009 on pleading special matters, and Rule 7017 on real parties in interest, infants and incompetent persons, and capacity. The discovery rules made applicable in adversary proceedings apply in contested matters unless the court directs otherwise.

*Subdivision (b)* is amended to permit parties to serve papers, other than the original motion, in the manner provided in Rule 5(b) F.R. Civ.P. When the court requires a response to the motion, this amendment will permit service of the response in the same manner as an answer is served in an adversary proceeding.

*Subdivision (d)* is added to clarify that if the motion cannot be decided without resolving a disputed material issue of fact, an evidentiary hearing must be held at which testimony of witnesses is taken in the same manner as testimony is taken in an adversary proceeding or at a trial in a district court civil case. Rule 43(a), rather than Rule 43(e), F.R. Civ.P. would govern the evidentiary hearing on the factual dispute. Under Rule 9017, the Federal Rules of Evidence also apply in a contested matter. Nothing in the rule prohibits a court from resolving any matter that is submitted on affidavits by agreement of the parties.

*Subdivision (e).* Local procedures for hearings and other court appearances in a contested matter vary from district to district. In some bankruptcy courts, an evidentiary hearing at which witnesses may testify usually is held at the first court appearance in the contested matter. In other courts, it is customary for the court to delay the evidentiary hearing on disputed factual issues until some time after the initial hearing date. In order to avoid unnecessary expense and inconvenience, it is important for attorneys to know whether they should bring witnesses to a court appearance. The purpose of the final sentence of this rule is to require that the court provide a mechanism that will enable attorneys to know at a reasonable time before a scheduled hearing whether it will be necessary for witnesses to appear in court on that particular date.

Other amendments to this rule are stylistic.

*Changes Made After Publication and Comments:*

The Advisory Committee made two changes to subdivision (d) after considering the comments received addressing the proposed rule. First, the word "material" is inserted to make explicit that which was implied in the published version of the proposed rule. Second, the reference to F.R.Civ.P. 43(a) was removed. The purpose of proposed subdivision (d) was to recognize that testimony should be taken in the same manner in both contested matters and adversary proceedings. The revision to the published rule states this more directly.

The Committee Note was amended to reflect the changes made in the text of the rule.

Committee Notes on Rules—2004 Amendment

The rule is amended to provide that the mandatory disclosure requirements of Fed. R. Civ. P. 26, as incorporated by Rule 7026, do not apply in contested matters. The typically short time between the commencement and resolution of most contested matters makes the mandatory disclosure provisions of Rule 26 ineffective. Nevertheless, the court may by local rule or by order in a particular case provide that these provisions of the rule apply in a contested matter.

*Changes Made After Publication.* No changes since publication.

References in Text

The Federal Rules of Civil Procedure, referred to in subds. (b) and (c), are set out in the Appendix to Title 28, Judiciary and Judicial Procedure.

# Rule 9015. Jury Trials

(a) Applicability of Certain Federal Rules of Civil Procedure. Rules 38, 39, 47–49, and 51, F.R.Civ.P., and Rule 81(c) F.R.Civ.P. insofar as it applies to jury trials, apply in cases and proceedings, except that a demand made under Rule 38(b) F.R.Civ.P. shall be filed in accordance with Rule 5005.

(b) Consent To Have Trial Conducted By Bankruptcy Judge. If the right to a jury trial applies, a timely demand has been filed pursuant to Rule 38(b) F.R.Civ.P., and the bankruptcy judge has been specially designated to conduct the jury trial, the parties may consent to have a jury trial conducted by a bankruptcy judge under 28 U.S.C. §157(e) by jointly or separately filing a statement of consent within any applicable time limits specified by local rule.

(c) Applicability of Rule 50 F.R.Civ.P. Rule 50 F.R.Civ.P. applies in cases and proceedings, except that any renewed motion for judgment or request for a new trial shall be filed no later than 14 days after the entry of judgment.

(Added Apr. 11, 1997, eff. Dec. 1, 1997; amended Mar. 26, 2009, eff. Dec. 1, 2009.)

Notes of Advisory Committee on Rules—1997

This rule provides procedures relating to jury trials. This rule is not intended to expand or create any right

## FED. R. CIV. P. 23

pleader by the United States where it acknowledges indebtedness under a contract of insurance with the United States; U.S.C., Title 49, §97 [now 80110(e)] (Interpleader of conflicting claimants) (by carrier which has issued bill of lading). See Chafee, *The Federal Interpleader Act of 1936: I and II* (1936), 45 Yale L.J. 963, 1161.

Notes of Advisory Committee on Rules—1948 Amendment

The amendment substitutes the present statutory reference.

Notes of Advisory Committee on Rules—1987 Amendment

The amendment is technical. No substantive change is intended.

Committee Notes on Rules—2007 Amendment

The language of Rule 22 has been amended as part of the general restyling of the Civil Rules to make them more easily understood and to make style and terminology consistent throughout the rules. These changes are intended to be stylistic only.

## Rule 23. Class Actions

(a) Prerequisites. One or more members of a class may sue or be sued as representative parties on behalf of all members only if:

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

(b) Types of Class Actions. A class action may be maintained if Rule 23(a) is satisfied and if:

(1) prosecuting separate actions by or against individual class members would create a risk of:

(A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or

(B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests;

(2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or

(3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:

(A) the class members' interests in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D) the likely difficulties in managing a class action.

(c) Certification Order; Notice to Class Members; Judgment; Issues Classes; Subclasses.

(1) *Certification Order.*

(A) *Time to Issue.* At an early practicable time after a person sues or is sued as a class representative, the court must determine by order whether to certify the action as a class action.

(B) *Defining the Class; Appointing Class Counsel.* An order that certifies a class action must define the class and the class claims, issues, or defenses, and must appoint class counsel under Rule 23(g).

(C) *Altering or Amending the Order.* An order that grants or denies class certification may be altered or amended before final judgment.

(2) *Notice.*

(A) *For (b)(1) or (b)(2) Classes.* For any class certified under Rule 23(b)(1) or (b)(2), the court may direct appropriate notice to the class.

(B) *For (b)(3) Classes.* For any class certified under Rule 23(b)(3), the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice must clearly and concisely state in plain, easily understood language:

(i) the nature of the action;

(ii) the definition of the class certified;

(iii) the class claims, issues, or defenses;

(iv) that a class member may enter an appearance through an attorney if the member so desires;

(v) that the court will exclude from the class any member who requests exclusion;

(vi) the time and manner for requesting exclusion; and

(vii) the binding effect of a class judgment on members under Rule 23(c)(3).

(3) *Judgment.* Whether or not favorable to the class, the judgment in a class action must:

(A) for any class certified under Rule 23(b)(1) or (b)(2), include and describe those whom the court finds to be class members; and

(B) for any class certified under Rule 23(b)(3), include and specify or describe those to whom the Rule 23(c)(2) notice was directed, who have not requested exclusion, and whom the court finds to be class members.

(4) *Particular Issues.* When appropriate, an action may be brought or maintained as a class action with respect to particular issues.

(5) *Subclasses.* When appropriate, a class may be divided into subclasses that are each treated as a class under this rule.

(d) Conducting the Action.

(1) *In General.* In conducting an action under this rule, the court may issue orders that:

(A) determine the course of proceedings or prescribe measures to prevent undue repeti-

tion or complication in presenting evidence or argument;

(B) require—to protect class members and fairly conduct the action—giving appropriate notice to some or all class members of:

(i) any step in the action;

(ii) the proposed extent of the judgment; or

(iii) the members' opportunity to signify whether they consider the representation fair and adequate, to intervene and present claims or defenses, or to otherwise come into the action;

(C) impose conditions on the representative parties or on intervenors;

(D) require that the pleadings be amended to eliminate allegations about representation of absent persons and that the action proceed accordingly; or

(E) deal with similar procedural matters.

(2) *Combining and Amending Orders.* An order under Rule 23(d)(1) may be altered or amended from time to time and may be combined with an order under Rule 16.

(e) SETTLEMENT, VOLUNTARY DISMISSAL, OR COMPROMISE. The claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval. The following procedures apply to a proposed settlement, voluntary dismissal, or compromise:

(1) The court must direct notice in a reasonable manner to all class members who would be bound by the proposal.

(2) If the proposal would bind class members, the court may approve it only after a hearing and on finding that it is fair, reasonable, and adequate.

(3) The parties seeking approval must file a statement identifying any agreement made in connection with the proposal.

(4) If the class action was previously certified under Rule 23(b)(3), the court may refuse to approve a settlement unless it affords a new opportunity to request exclusion to individual class members who had an earlier opportunity to request exclusion but did not do so.

(5) Any class member may object to the proposal if it requires court approval under this subdivision (e); the objection may be withdrawn only with the court's approval.

(f) APPEALS. A court of appeals may permit an appeal from an order granting or denying class-action certification under this rule if a petition for permission to appeal is filed with the circuit clerk within 14 days after the order is entered. An appeal does not stay proceedings in the district court unless the district judge or the court of appeals so orders.

(g) CLASS COUNSEL.

(1) *Appointing Class Counsel.* Unless a statute provides otherwise, a court that certifies a class must appoint class counsel. In appointing class counsel, the court:

(A) must consider:

(i) the work counsel has done in identifying or investigating potential claims in the action;

(ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;

(iii) counsel's knowledge of the applicable law; and

(iv) the resources that counsel will commit to representing the class;

(B) may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class;

(C) may order potential class counsel to provide information on any subject pertinent to the appointment and to propose terms for attorney's fees and nontaxable costs;

(D) may include in the appointing order provisions about the award of attorney's fees or nontaxable costs under Rule 23(h); and

(E) may make further orders in connection with the appointment.

(2) *Standard for Appointing Class Counsel.* When one applicant seeks appointment as class counsel, the court may appoint that applicant only if the applicant is adequate under Rule 23(g)(1) and (4). If more than one adequate applicant seeks appointment, the court must appoint the applicant best able to represent the interests of the class.

(3) *Interim Counsel.* The court may designate interim counsel to act on behalf of a putative class before determining whether to certify the action as a class action.

(4) *Duty of Class Counsel.* Class counsel must fairly and adequately represent the interests of the class.

(h) ATTORNEY'S FEES AND NONTAXABLE COSTS. In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement. The following procedures apply:

(1) A claim for an award must be made by motion under Rule 54(d)(2), subject to the provisions of this subdivision (h), at a time the court sets. Notice of the motion must be served on all parties and, for motions by class counsel, directed to class members in a reasonable manner.

(2) A class member, or a party from whom payment is sought, may object to the motion.

(3) The court may hold a hearing and must find the facts and state its legal conclusions under Rule 52(a).

(4) The court may refer issues related to the amount of the award to a special master or a magistrate judge, as provided in Rule 54(d)(2)(D).

(As amended Feb. 28, 1966, eff. July 1, 1966; Mar. 2, 1987, eff. Aug. 1, 1987; Apr. 24, 1998, eff. Dec. 1, 1998; Mar. 27, 2003, eff. Dec. 1, 2003; Apr. 30, 2007, eff. Dec. 1, 2007; Mar. 26, 2009, eff. Dec. 1, 2009.)

NOTES OF ADVISORY COMMITTEE ON RULES—1937

*Note to Subdivision (a).* This is a substantial restatement of [former] Equity Rule 38 (Representatives of Class) as that rule has been construed. It applies to all actions, whether formerly denominated legal or equitable. For a general analysis of class actions, effect of judgment, and requisites of jurisdiction see Moore, *Federal Rules of Civil Procedure: Some Problems Raised by the*

*Preliminary Draft*, 25 Georgetown L.J. 551, 570 *et seq.* (1937); Moore and Cohn, *Federal Class Actions*, 32 Ill.L.Rev. 307 (1937); Moore and Cohn, *Federal Class Actions—Jurisdiction and Effect of Judgment*, 32 Ill.L.Rev. 555—567 (1938); Lesar, *Class Suits and the Federal Rules*, 22 Minn.L.Rev. 34 (1937); *cf.* Arnold and James, *Cases on Trials, Judgments and Appeals* (1936) 175; and see Blume, *Jurisdictional Amount in Representative Suits*, 15 Minn.L.Rev. 501 (1931).

The general test of [former] Equity Rule 38 (Representatives of Class) that the question should be "one of common or general interest to many persons constituting a class so numerous as to make it impracticable to bring them all before the court," is a common test. For states which require the two elements of a common or general interest and numerous persons, as provided for in [former] Equity Rule 38, see Del.Ch.Rule 113; Fla.Comp.Gen.Laws Ann. (Supp., 1936) §4918 (7); Georgia Code (1933) §37—1002, and see *English Rules Under the Judicature Act* (The Annual Practice, 1937) O. 16, r. 9. For statutory provisions providing for class actions when the question is one of common or general interest or when the parties are numerous, see Ala.Code Ann. (Michie, 1928) §5701; 2 Ind.Stat.Ann. (Burns, 1933) §2–220; N.Y.C.P.A. (1937) §195; Wis.Stat. (1935) §260.12. These statutes have, however, been uniformly construed as though phrased in the conjunctive. See *Garfein v. Stiglitz*, 260 Ky. 430, 86 S.W.(2d) 155 (1935). The rule adopts the test of [former] Equity Rule 38, but defines what constitutes a "common or general interest". Compare with code provisions which make the action dependent upon the propriety of joinder of the parties. See Blume, *The "Common Questions" Principle in the Code Provision for Representative Suits*, 30 Mich.L.Rev. 878 (1932). For discussion of what constitutes "numerous persons" see Wheaton, *Representative Suits Involving Numerous Litigants*, 19 Corn.L.Q. 399 (1934); Note, 36 Harv.L.Rev. 89 (1922).

*Clause (1), Joint, Common, or Secondary Right.* This clause is illustrated in actions brought by or against representatives of an unincorporated association. See *Oster v. Brotherhood of Locomotive Firemen and Enginemen*, 271 Pa. 419, 114 Atl. 377 (1921); *Pickett v. Walsh*, 192 Mass. 572, 78 N.E. 753, 6 L.R.A. (N.S.) 1067 (1906); *Colt v. Hicks*, 97 Ind.App. 177, 179 N.E. 335 (1932). Compare Rule 17(b) as to when an unincorporated association has capacity to sue or be sued in its common name; *United Mine Workers of America v. Coronado Coal Co.*, 259 U.S. 344 (1922) (an unincorporated association was sued as an entity for the purpose of enforcing against it a federal substantive right); Moore, *Federal Rules of Civil Procedure: Some Problems Raised by the Preliminary Draft*, 25 Georgetown L.J. 551, 566 (for discussion of jurisdictional requisites when an unincorporated association sues or is sued in its common name and jurisdiction is founded upon diversity of citizenship). For an action brought by representatives of one group against representatives of another group for distribution of a fund held by an unincorporated association, see *Smith v. Swormstedt*, 16 How. 288 (U.S. 1853). Compare *Christopher, et al. v. Brusselback*, 58 S.Ct. 350 [302 U.S. 500] (1938).

For an action to enforce rights held in common by policyholders against the corporate issuer of the policies, see *Supreme Tribe of Ben Hur v. Cauble*, 255 U.S. 356 (1921). See also *Terry v. Little*, 101 U.S. 216 (1880); *John A. Roebling's Sons Co. v. Kinnicutt*, 248 Fed. 596 (D.C.N.Y., 1917) dealing with the right held in common by creditors to enforce the statutory liability of stockholders.

Typical of a secondary action is a suit by stockholders to enforce a corporate right. For discussion of the general nature of these actions see *Ashwander v. Tennessee Valley Authority*, 297 U.S. 288 (1936); Glenn, *The Stockholder's Suit—Corporate and Individual Grievances*, 33 Yale L.J. 580 (1924); McLaughlin, *Capacity of Plaintiff-Stockholder to Terminate a Stockholder's Suit*, 46 Yale L.J. 421 (1937). See also *Subdivision (b)* of this rule which deals with Shareholder's Action; Note, 15 Minn.L.Rev. 453 (1931).

*Clause (2).* A creditor's action for liquidation or reorganization of a corporation is illustrative of this

clause. An action by a stockholder against certain named defendants as representatives of numerous claimants presents a situation converse to the creditor's action.

*Clause (3).* See *Everglades Drainage League v. Napoleon Broward Drainage Dist.*, 253 Fed. 246 (D.C.Fla., 1918); *Gramling v. Maxwell*, 52 F.(2d) 256 (D.C.N.C., 1931), approved in 30 Mich.L.Rev. 624 (1932); *Skinner v. Mitchell*, 108 Kan. 861, 197 Pac. 569 (1921); *Duke of Bedford v. Ellis* (1901) A.C. 1, for class actions when there were numerous persons and there was only a question of law or fact common to them; and see Blume, *The "Common Questions" Principle in the Code Provision for Representative Suits*, 30 Mich.L.Rev. 878 (1932).

*Note to Subdivision (b).* This is [former] Equity Rule 27 (Stockholder's Bill) with verbal changes. See also *Hawes v. Oakland*, 104 U.S. 450, 26 L.Ed. 827 (1882) and former Equity Rule 94, promulgated January 23, 1882, 104 U.S. IX.

*Note to Subdivision (c).* See McLaughlin, *Capacity of Plaintiff-Stockholder to Terminate a Stockholder's Suit*, 46 Yale L.J. 421 (1937).

## NOTES OF ADVISORY COMMITTEE ON RULES—1946 AMENDMENT

Subdivision (b), relating to secondary actions by shareholders, provides among other things, that in, such an action the complainant "shall aver (1) that the plaintiff was a shareholder at the time of the transaction of which he complains or that his share thereafter devolved on him by operation of law . . ."

As a result of the decision in *Erie R. Co. v. Tompkins*, 304 U.S. 64 (decided April 25, 1938, after this rule was promulgated by the Supreme Court, though before it took effect) a question has arisen as to whether the provision above quoted deals with a matter of substantive right or is a matter of procedure. If it is a matter of substantive law or right, then under *Erie R. Co. v. Tompkins* clause (1) may not be validly applied in cases pending in states whose local law permits a shareholder to maintain such actions, although not a shareholder at the time of the transactions complained of. The Advisory Committee, believing the question should be settled in the courts, proposes no change in Rule 23 but thinks rather that the situation should be explained in an appropriate note.

The rule has a long history. In *Hawes v. Oakland* (1882) 104 U.S. 450, the Court held that a shareholder could not maintain such an action unless he owned shares at the time of the transactions complained of, or unless they devolved on him by operation of law. At that time the decision in *Swift v. Tyson* (1842) 16 Peters 1, was the law, and the federal courts considered themselves free to establish their own principles of equity jurisprudence, so the Court was not in 1882 and has not been, until *Erie R. Co. v. Tompkins* in 1938, concerned with the question whether *Hawes v. Oakland* dealt with substantive right or procedure.

Following the decision in *Hawes v. Oakland*, and at the same time, the Court, to implement its decision, adopted [former] Equity Rule 94, which contained the same provision above quoted from Rule 23 F.R.C.P. The provision in [former] Equity Rule 94 was later embodied in [former] Equity Rule 27, of which the present Rule 23 is substantially a copy.

In *City of Quincy v. Steel* (1887) 120 U.S. 241, 245, the Court referring to *Hawes v. Oakland* said: "In order to give effect to the principles there laid down, this Court at that term adopted Rule 94 of the rules of practice for courts of equity of the United States."

Some other cases dealing with [former] Equity Rules 94 or 27 prior to the decision in *Erie R. Co. v. Tompkins* are *Dimpfel v. Ohio & Miss. R. R.* (1884) 110 U.S. 209; *Illinois Central R. Co. v. Adams* (1901) 180 U.S. 28, 34; *Venner v. Great Northern Ry.* (1908) 209 U.S. 24, 30; *Jacobson v. General Motors Corp.* (S.D.N.Y. 1938) 22 F.Supp. 255, 257. These cases generally treat *Hawes v. Oakland* as establishing a "principle" of equity, or as dealing not with jurisdiction but with the "right" to maintain an action, or have said that the defense under the equity

rule is analogous to the defense that the plaintiff has no "title" and results in a dismissal "for want of equity."

Those state decisions which held that a shareholder acquiring stock after the event may maintain a derivative action are founded on the view that it is a right belonging to the shareholder at the time of the transaction and which passes as a right to the subsequent purchaser. See *Pollitz v. Gould* (1911) 202 N.Y. 11.

The first case arising after the decision in *Erie R. Co. v. Tompkins*, in which this problem was involved, was *Summers v. Hearst* (S.D.N.Y. 1938) 23 F.Supp. 986. It concerned [former] Equity Rule 27, as Federal Rule 23 was not then in effect. In a well considered opinion Judge Leibell reviewed the decisions and said: "The federal cases that discuss this section of Rule 27 support the view that it states a principle of substantive law." He quoted *Pollitz v. Gould* (1911) 202 N.Y. 11, as saying that the United States Supreme Court "seems to have been more concerned with establishing this rule as one of practice than of substantive law" but that "whether it be regarded as establishing a principle of law or a rule of practice, this authority has been subsequently followed in the United States courts."

He then concluded that, although the federal decisions treat the equity rule as "stating a principle of substantive law", if [former] "Equity Rule 27 is to be modified or revoked in view of *Erie R. Co. v. Tompkins*, it is not the province of this Court to suggest it, much less impliedly to follow that course by disregarding the mandatory provisions of the Rule."

Some other federal decisions since 1938 touch the question.

In *Piccard v. Sperry Corporation* (S.D.N.Y. 1941) 36 F.Supp. 1006, 1009–10, affirmed without opinion (C.C.A.2d, 1941) 120 F.(2d) 328, a shareholder, not such at the time of the transactions complained of, sought to intervene. The court held an intervenor was as much subject to Rule 23 as an original plaintiff; and that the requirement of Rule 23(b) was "a matter of practice," not substance, and applied in New York where the state law was otherwise, despite *Erie R. Co. v. Tompkins*. In *York v. Guaranty Trust Co. of New York* (C.C.A.2d, 1944) 143 F.(2d) 503, rev'd on other grounds (1945) 65 S.Ct. 1464, the court said: "Restrictions on the bringing of stockholders' actions, such as those imposed by F.R.C.P. 23(b) or other state statutes are procedural," citing the *Piccard* and other cases.

In *Gallup v. Caldwell* (C.C.A.3d, 1941) 120 F.(2d) 90, 95, arising in New Jersey, the point was raised but not decided, the court saying that it was not satisfied that the then New Jersey rule differed from Rule 23(b), and that "under the circumstances the proper course was to follow Rule 23(b)."

In *Mullins v. De Soto Securities Co.* (W.D.La. 1942) 45 F.Supp. 871, 878, the point was not decided, because the court found the Louisiana rule to be the same as that stated in Rule 23(b).

In *Toebelman v. Missouri-Kansas Pipe Line Co.* (D.Del. 1941) 41 F.Supp. 334, 340, the court dealt only with another part of Rule 23(b), relating to prior demands on the stockholders and did not discuss *Erie R. Co. v. Tompkins*, or its effect on the rule.

In *Perrott v. United States Banking Corp.* (D.Del. 1944) 53 F.Supp. 953, it appeared that the Delaware law does not require the plaintiff to have owned shares at the time of the transaction complained of. The court sustained Rule 23(b), after discussion of the authorities, saying:

"It seems to me the rule does not go beyond procedure. * * * Simply because a particular plaintiff cannot qualify as a proper party to maintain such an action does not destroy or even whittle at the cause of action. The cause of action exists until a qualified plaintiff can get it started in a federal court."

In *Bankers Nat. Corp. v. Barr* (S.D.N.Y. 1945) 9 Fed.Rules Serv. 23b.11, Case 1, the court held Rule 23(b) to be one of procedure, but that whether the plaintiff was a stockholder was a substantive question to be settled by state law.

The New York rule, as stated in *Pollitz v. Gould, supra*, has been altered by an act of the New York Legislature (Chapter 667, Laws of 1944, effective April 9, 1944, General Corporation Law, §61) which provides that "in any action brought by a shareholder in the right of a . . . corporation, it must appear that the plaintiff was a stockholder at the time of the transaction of which he complains, or that his stock thereafter devolved upon him by operation of law." At the same time a further and separate provision was enacted, requiring under certain circumstances the giving of security for reasonable expenses and attorney's fees, to which security the corporation in whose right the action is brought and the defendants therein may have recourse. (Chapter 668, Laws of 1944, effective April 9, 1944, General Corporation Law, §61–b.) These provisions are aimed at so-called "strike" stockholders' suits and their attendant abuses. *Shielcrawt v. Moffett* (Ct.App. 1945) 294 N.Y. 180, 61 N.E.(2d) 435, rev'g 51 N.Y.S.(2d) 188, aff'g 49 N.Y.S.(2d) 64; *Noel Associates, Inc. v. Merrill* (Sup.Ct. 1944) 184 Misc. 646, 53 N.Y.S.(2d) 143.

Insofar as §61 is concerned, it has been held that the section is procedural in nature. *Klum v. Clinton Trust Co.* (Sup.Ct. 1944) 183 Misc. 340, 48 N.Y.S.(2d) 267; *Noel Associates, Inc. v. Merrill, supra*. In the latter case the court pointed out that "The 1944 amendment to Section 61 rejected the rule laid down in the *Pollitz* case and substituted, in place thereof, in its precise language, the rule which has long prevailed in the Federal Courts and which is now Rule 23(b) . . ." There is, nevertheless, a difference of opinion regarding the application of the statute to pending actions. See *Klum v. Clinton Trust Co., supra* (applicable); *Noel Associates, Inc. v. Merrill, supra* (inapplicable).

With respect to §61–b, which may be regarded as a separate problem (*Noel Associates, Inc. v. Merrill, supra*), it has been held that even though the statute is procedural in nature—a matter not definitely decided—the Legislature evinced no intent that the provision should apply to actions pending when it became effective. *Shielcrawt v. Moffett, supra*. As to actions instituted after the effective date of the legislation, the constitutionality of §61–b is in dispute. See *Wolf v. Atkinson* (Sup.Ct. 1944) 182 Misc. 675, 49 N.Y.S.(2d) 703 (constitutional); *Citron v. Mangel Stores Corp.* (Sup.Ct. 1944) — Misc. —, 50 N.Y.S.(2d) 416 (unconstitutional); Zlinkoff, *The American Investor and the Constitutionality of Section 61–B of the New York General Corporation Law* (1945) 54 Yale L.J. 352.

New Jersey also enacted a statute, similar to Chapters 667 and 668 of the New York law. See P.L. 1945, Ch. 131, R.S.Cum.Supp. 14:3–15. The New Jersey provision similar to Chapter 668 (§61–b) differs, however, in that it specifically applies retroactively. It has been held that this provision is procedural and hence will not govern a pending action brought against a New Jersey corporation in the New York courts. *Shielcrawt v. Moffett* (Sup.Ct.N.Y. 1945) 184 Misc. 1074, 56 N.Y.S.(2d) 134.

See also generally, 2 *Moore's Federal Practice* (1938) 2250–2253, and Cum.Supplement §23.05.

The decisions here discussed show that the question is a debatable one, and that there is respectable authority for either view, with a recent trend towards the view that Rule 23(b)(1) is procedural. There is reason to say that the question is one which should not be decided by the Supreme Court *ex parte*, but left to await a judicial decision in a litigated case, and that in the light of the material in this note, the only inference to be drawn from a failure to amend Rule 23(b) would be that the question is postponed to await a litigated case.

The Advisory Committee is unanimously of the opinion that this course should be followed.

If, however, the final conclusion is that the rule deals with a matter of substantive right, then the rule should be amended by adding a provision that Rule 23(b)(1) does not apply in jurisdictions where state law permits a shareholder to maintain a secondary action, although he was not a shareholder at the time of the transactions of which he complains.

NOTES OF ADVISORY COMMITTEE ON RULES—1966 AMENDMENT

*Difficulties with the original rule.* The categories of class actions in the original rule were defined in terms of the abstract nature of the rights involved: the so-called ''true'' category was defined as involving ''joint, common, or secondary rights''; the ''hybrid'' category, as involving ''several'' rights related to ''specific property''; the ''spurious'' category, as involving ''several'' rights affected by a common question and related to common relief. It was thought that the definitions accurately described the situations amendable to the class-suit device, and also would indicate the proper extent of the judgment in each category, which would in turn help to determine the res judicata effect of the judgment if questioned in a later action. Thus the judgments in ''true'' and ''hybrid'' class actions would extend to the class (although in somewhat different ways); the judgment in a ''spurious'' class action would extend only to the parties including intervenors. See Moore, *Federal Rules of Civil Procedure: Some Problems Raised by the Preliminary Draft,* 25 Geo.L.J. 551, 570–76 (1937).

In practice, the terms ''joint,'' ''common,'' etc., which were used as the basis of the Rule 23 classification proved obscure and uncertain. See Chaffee, *Some Problems of Equity* 245–46, 256–57 (1950); Kalven & Rosenfield, *The Contemporary Function of the Class Suit,* 8 U. of Chi.L.Rev. 684, 707 & n. 73 (1941); Keeffe, Levy & Donovan, *Lee Defeats Ben Hur,* 33 Corn.L.Q. 327, 329–36 (1948); *Developments in the Law: Multiparty Litigation in the Federal Courts,* 71 Harv.L.Rev. 874, 931 (1958); Advisory Committee's Note to Rule 19, as amended. The courts had considerable difficulty with these terms. See, e.g., *Gullo v. Veterans' Coop. H. Assn.,* 13 F.R.D. 11 (D.D.C. 1952); *Shipley v. Pittsburgh & L. E. R. Co.,* 70 F.Supp. 870 (W.D.Pa. 1947); *Deckert v. Independence Shares Corp.,* 27 F.Supp. 763 (E.D.Pa. 1939), rev'd, 108 F.2d 51 (3d Cir. 1939), rev'd, 311 U.S. 282 (1940), on remand, 39 F.Supp. 592 (E.D.Pa. 1941), rev'd sub nom. *Pennsylvania Co. for Ins. on Lives v. Deckert,* 123 F.2d 979 (3d Cir. 1941) (see Chafee, supra, at 264–65).

Nor did the rule provide an adequate guide to the proper extent of the judgments in class actions. First, we find instances of the courts classifying actions as ''true'' or intimating that the judgments would be decisive for the class where these results seemed appropriate but were reached by dint of depriving the word ''several'' of coherent meaning. See, e.g., *System Federation No. 91 v. Reed,* 180 F.2d 991 (6th Cir. 1950); *Wilson v. City of Paducah,* 100 F.Supp. 116 (W.D.Ky. 1951); *Citizens Banking Co. v. Monticello State Bank,* 143 F.2d 261 (8th Cir. 1944); *Redmond v. Commerce Trust Co.,* 144 F.2d 140 (8th Cir. 1944), cert. denied, 323 U.S. 776 (1944); *United States v. American Optical Co.,* 97 F.Supp. 66 (N.D.Ill. 1951); *National Hairdressers' & C. Assn. v. Philad. Co.,* 34 F.Supp. 264 (D.Del. 1940); 41 F.Supp. 701 (D.Del. 1940), aff'd mem., 129 F.2d 1020 (3d Cir. 1942). Second, we find cases classified by the courts as ''spurious'' in which, on a realistic view, it would seem fitting for the judgments to extend to the class. See, e.g., *Knapp v. Bankers Sec. Corp.,* 17 F.R.D. 245 (E.D.Pa. 1954); aff'd 230 F.2d 717 (3d Cir. 1956); *Giesecke v. Denver Tramway Corp.,* 81 F.Supp. 957 (D.Del. 1949); *York v. Guaranty Trust Co.,* 143 F.2d 503 (2d Cir. 1944), rev'd on grounds not here relevant, 326 U.S. 90 (1945) (see Chafee, supra, at 208); cf. *Webster Eisenlohr, Inc. v. Kalodner,* 145 F.2d 316, 320 (3d Cir. 1944), cert. denied, 325 U.S. 807 (1945). But cf. the early decisions, *Duke of Bedford v. Ellis* [1901], A.C. 1; *Sheffield Waterworks v. Yeomans,* L.R. 2 Ch.App. 8 (1866); *Brown v. Vermuden,* 1 Ch.Cas. 272, 22 Eng.Rep. 796 (1676).

The ''spurious'' action envisaged by original Rule 23 was in any event an anomaly because, although denominated a ''class'' action and pleaded as such, it was supposed not to adjudicate the rights or liabilities of any person not a party. It was believed to be an advantage of the ''spurious'' category that it would invite decisions that a member of the ''class'' could, like a member of the class in a ''true'' or ''hybrid'' action, in-

tervene on an ancillary basis without being required to show an independent basis of Federal jurisdiction, and have the benefit of the date of the commencement of the action for purposes of the statute of limitations. See 3 *Moore's Federal Practice,* pars. 23.10[1], 23.12 (2d ed. 1963). These results were attained in some instances but not in others. On the statute of limitations, see *Union Carbide & Carbon Corp. v. Nisley,* 300 F.2d 561 (10th Cir. 1961), pet. cert. dism., 371 U.S. 801 (1963); but cf. *P. W. Husserl, Inc. v. Newman,* 25 F.R.D. 264 (S.D.N.Y. 1960); *Athas v. Day,* 161 F.Supp. 916 (D.Colo. 1958). On ancillary intervention, see *Amen v. Black,* 234 F.2d 12 (10th Cir. 1956), cert. granted, 352 U.S. 888 (1956), dism. on stip., 355 U.S. 600 (1958); but. cf. *Wagner v. Kemper,* 13 F.R.D. 128 (W.D.Mo. 1952). The results, however, can hardly depend upon the mere appearance of a ''spurious'' category in the rule; they should turn no more basic considerations. See discussion of subdivision (c)(1) below.

Finally, the original rule did not squarely address itself to the question of the measures that might be taken during the course of the action to assure procedural fairness, particularly giving notice to members of the class, which may in turn be related in some instances to the extension of the judgment to the class. See Chafee, supra, at 230–31; Keeffe, Levy & Donovan, supra; *Developments in the Law,* supra, 71 Harv.L.Rev. at 937–38; Note, *Binding Effect of Class Actions,* 67 Harv.L.Rev. 1059, 1062–65 (1954); Note, *Federal Class Actions: A Suggested Revision of Rule 23,* 46 Colum.L.Rev. 818, 833–36 (1946); Mich.Gen.Court R. 208.4 (effective Jan. 1, 1963); Idaho R.Civ.P. 23(d); Minn.R.Civ.P. 23.04; N.Dak.R.Civ.P. 23(d).

*The amended rule* describes in more practical terms the occasions for maintaining class actions; provides that all class actions maintained to the end as such will result in judgments including those whom the court finds to be members of the class, whether or not the judgment is favorable to the class; and refers to the measures which can be taken to assure the fair conduct of these actions.

*Subdivision (a)* states the prerequisites for maintaining any class action in terms of the numerousness of the class making joinder of the members impracticable, the existence of questions common to the class, and the desired qualifications of the representative parties. See Weinstein, *Revision of Procedure; Some Problems in Class Actions,* 9 Buffalo L.Rev. 433, 458–59 (1960); 2 Barron & Holtzoff, *Federal Practice & Procedure* §562, at 265, §572, at 351–52 (Wright ed. 1961). These are necessary but not sufficient conditions for a class action. See, e.g., *Giordano v. Radio Corp. of Am.,* 183 F.2d 558, 560 (3d Cir. 1950); *Zachman v. Erwin,* 186 F.Supp. 681 (S.D.Tex. 1959); *Baim & Blank, Inc. v. Warren Connelly Co., Inc.,* 19 F.R.D. 108 (S.D.N.Y. 1956). Subdivision (b) describes the additional elements which in varying situations justify the use of a class action.

*Subdivision (b)(1).* The difficulties which would be likely to arise if resort were had to separate actions by or against the individual members of the class here furnish the reasons for, and the principal key to, the propriety and value of utilizing the class-action device. The considerations stated under clauses (A) and (B) are comparable to certain of the elements which define the persons whose joinder in an action is desirable as stated in Rule 19(a), as amended. See amended Rule 19(a)(2)(i) and (ii), and the Advisory Committee's Note thereto; Hazard, *Indispensable Party; The Historical Origin of a Procedural Phantom,* 61 Colum.L.Rev. 1254, 1259–60 (1961); cf. 3 *Moore,* supra, par. 23.08, at 3435.

*Clause (A):* One person may have rights against, or be under duties toward, numerous persons constituting a class, and be so positioned that conflicting or varying adjudications in lawsuits with individual members of the class might establish incompatible standards to govern his conduct. The class action device can be used effectively to obviate the actual or virtual dilemma which would thus confront the party opposing the class. The matter has been stated thus: ''The felt necessity for a class action is greatest when the courts are called upon to order or sanction the alteration of the

status quo in circumstances such that a large number of persons are in a position to call on a single person to alter the status quo, or to complain if it is altered, and the possibility exists that [the] actor might be called upon to act in inconsistent ways.'' Louisell & Hazard, *Pleading and Procedure; State and Federal* 719 (1962); see *Supreme Tribe of Ben-Hur v. Cauble*, 255 U.S. 356, 366–67 (1921). To illustrate: Separate actions by individuals against a municipality to declare a bond issue invalid or condition or limit it, to prevent or limit the making of a particular appropriation or to compel or invalidate an assessment, might create a risk of inconsistent or varying determinations. In the same way, individual litigations of the rights and duties of riparian owners, or of landowners' rights and duties respecting a claimed nuisance, could create a possibility of incompatible adjudications. Actions by or against a class provide a ready and fair means of achieving unitary adjudication. See *Maricopa County Mun. Water Con. Dist. v. Looney*, 219 F.2d 529 (9th Cir. 1955); *Rank v. Krug*, 142 F.Supp. 1, 154–59 (S.D.Calif. 1956), on app., *State of California v. Rank*, 293 F.2d 340, 348 (9th Cir. 1961); *Gart v. Cole*, 263 F.2d 244 (2d Cir. 1959), cert. denied 359 U.S. 978 (1959); cf. *Martinez v. Maverick Cty. Water Con. & Imp. Dist.*, 219 F.2d 666 (5th Cir. 1955); 3 *Moore*, supra, par. 23.11[2], at 3458–59.

*Clause (B)*: This clause takes in situations where the judgment in a nonclass action by or against an individual member of the class, while not technically concluding the other members, might do so as a practical matter. The vice of an individual actions would lie in the fact that the other members of the class, thus practically concluded, would have had no representation in the lawsuit. In an action by policy holders against a fraternal benefit association attacking a financial reorganization of the society, it would hardly have been practical, if indeed it would have been possible, to confine the effects of a validation of the reorganization to the individual plaintiffs. Consequently a class action was called for with adequate representation of all members of the class. See *Supreme Tribe of Ben-Hur v. Cauble*, 255 U.S. 356 (1921); *Waybright v. Columbian Mut. Life Ins. Co.*, 30 F.Supp. 885 (W.D.Tenn. 1939); cf. *Smith v. Swormstedt*, 16 How. (57 U.S.) 288 (1853). For much the same reason actions by shareholders to compel the declaration of a dividend the proper recognition and handling of redemption or pre-emption rights, or the like (or actions by the corporation for corresponding declarations of rights), should ordinarily be conducted as class actions, although the matter has been much obscured by the insistence that each shareholder has an individual claim. See *Knapp v. Bankers Securities Corp.*, 17 F.R.D. 245 (E.D.Pa. 1954), aff'd, 230 F.2d 717 (3d Cir. 1956); *Giesecke v. Denver Tramway Corp.*, 81 F.Supp. 957 (D.Del. 1949); *Zahn v. Transamerica Corp.*, 162 F.2d 36 (3d Cir. 1947); *Speed v. Transamerica Corp.*, 100 F.Supp. 461 (D.Del. 1951); *Sobel v. Whittier Corp.*, 95 F.Supp. 643 (E.D.Mich. 1951), app. dism., 195 F.2d 361 (6th Cir. 1952); *Goldberg v. Whittier Corp.*, 111 F.Supp. 382 (E.D.Mich. 1953); *Dann v. Studebaker-Packard Corp.*, 288 F.2d 201 (6th Cir. 1961); *Edgerton v. Armour & Co.*, 94 F.Supp. 549 (S.D.Calif. 1950); *Ames v. Mengel Co.*, 190 F.2d 344 (2d Cir. 1951). (These shareholders' actions are to be distinguished from derivative actions by shareholders dealt with in new Rule 23.1). The same reasoning applies to an action which charges a breach of trust by an indenture trustee or other fiduciary similarly affecting the members of a large class of security holders or other beneficiaries, and which requires an accounting or like measures to restore the subject of the trust. See *Bosenberg v. Chicago T. & T. Co.*, 128 F.2d 245 (7th Cir. 1942); *Citizens Banking Co. v. Monticello State Bank*, 143 F.2d 261 (8th Cir. 1944); *Redmond v. Commerce Trust Co.*, 144 F.2d 140 (8th Cir. 1944), cert. denied, 323 U.S. 776 (1944); cf. *York v. Guaranty Trust Co.*, 143 F.2d 503 (2d Cir. 1944), rev'd on grounds not here relevant, 326 U.S. 99 (1945).

In various situations an adjudication as to one or more members of the class will necessarily or probably have an adverse practical effect on the interests of other members who should therefore be represented in the lawsuit. This is plainly the case when claims are made by numerous persons against a fund insufficient to satisfy all claims. A class action by or against representative members to settle the validity of the claims as a whole, or in groups, followed by separate proof of the amount of each valid claim and proportionate distribution of the fund, meets the problem. Cf. *Dickinson v. Burnham*, 197 F.2d 973 (2d Cir. 1952), cert. denied, 344 U.S. 875 (1952); 3 Moore, supra, at par. 23.09. The same reasoning applies to an action by a creditor to set aside a fraudulent conveyance by the debtor and to appropriate the property to his claim, when the debtor's assets are insufficient to pay all creditors' claims. See *Heffernan v. Bennett & Armour*, 110 Cal.App.2d 564, 243 P.2d 846 (1952); cf. *City & County of San Francisco v. Market Street Ry.*, 95 Cal.App.2d 648, 213 P.2d 780 (1950). Similar problems, however, can arise in the absence of a fund either present or potential. A negative or mandatory injunction secured by one of a numerous class may disable the opposing party from performing claimed duties toward the other members of the class or materially affect his ability to do so. An adjudication as to movie "clearances and runs" nominally affecting only one exhibitor would often have practical effects on all the exhibitors in the same territorial area. Cf. *United States v. Paramount Pictures, Inc.*, 66 F.Supp. 323, 341–46 (S.D.N.Y. 1946); 334 U.S. 131, 144–48 (1948). Assuming a sufficiently numerous class of exhibitors, a class action would be advisable. (Here representation of subclasses of exhibitors could become necessary; see subdivision (c)(3)(B).)

*Subdivision (b)(2)*. This subdivision is intended to reach situations where a party has taken action or refused to take action with respect to a class, and final relief of an injunctive nature or of a corresponding declaratory nature, settling the legality of the behavior with respect to the class as a whole, is appropriate. Declaratory relief "corresponds" to injunctive relief when as a practical matter it affords injunctive relief or serves as a basis for later injunctive relief. The subdivision does not extend to cases in which the appropriate final relief relates exclusively or predominantly to money damages. Action or inaction is directed to a class within the meaning of this subdivision even if it has taken effect or is threatened only as to one or a few members of the class, provided it is based on grounds which have general application to the class.

Illustrative are various actions in the civil-rights field where a party is charged with discriminating unlawfully against a class, usually one whose members are incapable of specific enumeration. See *Potts v. Flax*, 313 F.2d 284 (5th Cir. 1963); *Bailey v. Patterson*, 323 F.2d 201 (5th Cir. 1963), cert. denied, 377 U.S. 972 (1964); *Brunson v. Board of Trustees of School District No. 1, Clarendon City, S.C.*, 311 F.2d 107 (4th Cir. 1962), cert. denied, 373 U.S. 933 (1963); *Green v. School Bd. of Roanoke, Va.*, 304 F.2d 118 (4th Cir. 1962); *Orleans Parish School Bd. v. Bush*, 242 F.2d 156 (5th Cir. 1957), cert. denied, 354 U.S. 921 (1957); *Mannings v. Board of Public Inst. of Hillsborough County, Fla.*, 277 F.2d 370 (5th Cir. 1960); *Northcross v. Board of Ed. of City of Memphis*, 302 F.2d 818 (6th Cir. 1962), cert. denied 370 U.S. 944 (1962); *Frasier v. Board of Trustees of Univ. of N.C.*, 134 F.Supp. 589 (M.D.N.C. 1955, 3-judge court), aff'd, 350 U.S. 979 (1956). Subdivision (b)(2) is not limited to civil-rights cases. Thus an action looking to specific or declaratory relief could be brought by a numerous class of purchasers, say retailers of a given description, against a seller alleged to have undertaken to sell to that class at prices higher than those set for other purchasers, say retailers of another description, when the applicable law forbids such a pricing differential. So also a patentee of a machine, charged with selling or licensing the machine on condition that purchasers or licensees also purchase or obtain licenses to use an ancillary unpatented machine, could be sued on a class basis by a numerous group of purchasers or licensees, or by a numerous group of competing sellers or licensors of the unpatented machine, to test the legality of the "tying" condition.

*Subdivision (b)(3).* In the situations to which this subdivision relates, class-action treatment is not as clearly called for as in those described above, but it may nevertheless be convenient and desirable depending upon the particular facts. Subdivision (b)(3) encompasses those cases in which a class action would achieve economies of time, effort, and expense, and promote, uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results. Cf. Chafee, supra, at 201.

The court is required to find, as a condition of holding that a class action may be maintained under this subdivision, that the questions common to the class predominate over the questions affecting individual members. It is only where this predominance exists that economies can be achieved by means of the class-action device. In this view, a fraud perpetrated on numerous persons by the use of similar misrepresentations may be an appealing situation for a class action, and it may remain so despite the need, if liability is found, for separate determination of the damages suffered by individuals within the class. On the other hand, although having some common core, a fraud case may be unsuited for treatment as a class action if there was material variation in the representation made or in the kinds or degrees of reliance by the persons to whom they were addressed. See *Oppenheimer v. F. J. Young & Co., Inc.,* 144 F.2d 387 (2d Cir. 1944); *Miller v. National City Bank of N.Y.,* 166 F.2d 723 (2d Cir. 1948); and for like problems in other contexts, see *Hughes v. Encyclopaedia Britannica,* 199 F.2d 295 (7th Cir. 1952); *Sturgeon v. Great Lakes Steel Corp.,* 143 F.2d 819 (6th Cir. 1944). A "mass accident" resulting in injuries to numerous persons is ordinarily not appropriate for a class action because of the likelihood that significant questions, not only of damages but of liability and defenses of liability, would be present, affecting the individuals in different ways. In these circumstances an action conducted nominally as a class action would degenerate in practice into multiple lawsuits separately tried. See *Pennsylvania R.R. v. United States,* 111 F.Supp. 80 (D.N.J. 1953); cf. Weinstein, supra, 9 Buffalo L.Rev. at 469. Private damage claims by numerous individuals arising out of concerted antitrust violations may or may not involve predominating common questions. See *Union Carbide & Carbon Corp. v. Nisley,* 300 F.2d 561 (10th Cir. 1961), pet. cert. dism., 371 U.S. 801 (1963); cf. *Weeks v. Bareco Oil Co.,* 125 F.2d 84 (7th Cir. 1941); *Kainz v. Anheuser-Busch, Inc.,* 194 F.2d 737 (7th Cir. 1952); *Hess v. Anderson, Clayton & Co.,* 20 F.R.D. 466 (S.D.Calif. 1957).

That common questions predominate is not itself sufficient to justify a class action under subdivision (b)(3), for another method of handling the litigious situation may be available which has greater practical advantages. Thus one or more actions agreed to by the parties as test or model actions may be preferable to a class action; or it may prove feasible and preferable to consolidate actions. Cf. Weinstein, supra, 9 Buffalo L.Rev. at 438–54. Even when a number of separate actions are proceeding simultaneously, experience shows that the burdens on the parties and the courts can sometimes be reduced by arrangements for avoiding repetitious discovery or the like. Currently the Coordinating Committee on Multiple Litigation in the United States District Courts (a subcommittee of the Committee on Trial Practice and Technique of the Judicial Conference of the United States) is charged with developing methods for expediting such massive litigation. To reinforce the point that the court with the aid of the parties ought to assess the relative advantages of alternative procedures for handling the total controversy, subdivision (b)(3) requires, as a further condition of maintaining the class action, that the court shall find that that procedure is "superior" to the others in the particular circumstances.

Factors (A)–(D) are listed, non-exhaustively, as pertinent to the findings. The court is to consider the interests of individual members of the class in controlling their own litigations and carrying them on as they see fit. See *Weeks v. Bareco Oil Co.,* 125 F.2d 84, 88–90, 93–94 (7th Cir. 1941) (anti-trust action); see also *Pentland v. Dravo Corp.,* 152 F.2d 851 (3d Cir. 1945), and Chafee, supra, at 273–75, regarding policy of Fair Labor Standards Act of 1938, §16(b), 29 U.S.C. §216(b), prior to amendment by Portal-to-Portal Act of 1947, §5(a). [The present provisions of 29 U.S.C. §216(b) are not intended to be affected by Rule 23, as amended.]

In this connection the court should inform itself of any litigation actually pending by or against the individuals. The interests of individuals in conducting separate lawsuits may be so strong as to call for denial of a class action. On the other hand, these interests may be theoretic rather than practical; the class may have a high degree of cohesion and prosecution of the action through representatives would be quite unobjectionable, or the amounts at stake for individuals may be so small that separate suits would be impracticable. The burden that separate suits would impose on the party opposing the class, or upon the court calendars, may also fairly be considered. (See the discussion, under subdivision (c)(2) below, of the right of members to be excluded from the class upon their request.)

Also pertinent is the question of the desirability of concentrating the trial of the claims in the particular forum by means of a class action, in contrast to allowing the claims to be litigated separately in forums to which they would ordinarily be brought. Finally, the court should consider the problems of management which are likely to arise in the conduct of a class action.

*Subdivision (c)(1).* In order to give clear definition to the action, this provision requires the court to determine, as early in the proceedings as may be practicable, whether an action brought as a class action is to be so maintained. The determination depends in each case on satisfaction of the terms of subdivision (a) and the relevant provisions of subdivision (b).

An order embodying a determination can be conditional; the court may rule, for example, that a class action may be maintained only if the representation is improved through intervention of additional parties of a stated type. A determination once made can be altered or amended before the decision on the merits if, upon fuller development of the facts, the original determination appears unsound. A negative determination means that the action should be stripped of its character as a class action. See subdivision (d)(4). Although an action thus becomes a nonclass action, the court may still be receptive to interventions before the decision on the merits so that the litigation may cover as many interests as can be conveniently handled; the questions whether the intervenors in the nonclass action shall be permitted to claim "ancillary" jurisdiction or the benefit of the date of the commencement of the action for purposes of the statute of limitations are to be decided by reference to the laws governing jurisdiction and limitations as they apply in particular contexts.

Whether the court should require notice to be given to members of the class of its intention to make a determination, or of the order embodying it, is left to the court's discretion under subdivision (d)(2).

*Subdivision (c)(2)* makes special provision for class actions maintained under subdivision (b)(3). As noted in the discussion of the latter subdivision, the interests of the individuals in pursuing their own litigations may be so strong here as to warrant denial of a class action altogether. Even when a class action is maintained under subdivision (b)(3), this individual interest is respected. Thus the court is required to direct notice to the members of the class of the right of each member to be excluded from the class upon his request. A member who does not request exclusion may, if he wishes, enter an appearance in the action through his counsel; whether or not he does so, the judgment in the action will embrace him.

The notice setting forth the alternatives open to the members of the class, is to be the best practicable under the circumstances, and shall include individual

**Rule 23**        TITLE 28, APPENDIX—RULES OF CIVIL PROCEDURE        Page 160

notice to the members who can be identified through reasonable effort. (For further discussion of this notice, see the statement under subdivision (d)(2) below.)

*Subdivision (c)(3).* The judgment in a class action maintained as such to the end will embrace the class, that is, in a class action under subdivision (b)(1) or (b)(2), those found by the court to be class members; in a class action under subdivision (b)(3), those to whom the notice prescribed by subdivision (c)(2) was directed, excepting those who requested exclusion or who are ultimately found by the court not to be members of the class. The judgment has this scope whether it is favorable or unfavorable to the class. In a (b)(1) or (b)(2) action the judgment "describes" the members of the class, but need not specify the individual members; in a (b)(3) action the judgment "specifies" the individual members who have been identified and described the others.

Compare subdivision (c)(4) as to actions conducted as class actions only with respect to particular issues. Where the class-action character of the lawsuit is based solely on the existence of a "limited fund," the judgment, while extending to all claims of class members against the fund, has ordinarily left unaffected the personal claims of nonappearing members against the debtor. See 3 Moore, supra, par. 23.11[4].

Hitherto, in a few actions conducted as "spurious" class actions and thus nominally designed to extend only to parties and others intervening *before* the determination of liability, courts have held or intimated that class members might be permitted to intervene *after* a decision on the merits favorable to their interests, in order to secure the benefits of the decision for themselves, although they would presumably be unaffected by an unfavorable decision. See, as to the propriety of this so-called "one-way" intervention in "spurious" actions, the conflicting views expressed in *Union Carbide & Carbon Corp. v. Nisley,* 300 F.2d 561 (10th Cir. 1961), pet. cert. dism., 371 U.S. 801 (1963); *York v. Guaranty Trust Co.,* 143 F.2d 503, 529 (2d Cir. 1944), rev'd on grounds not here relevant, 326 U.S. 99 (1945); *Pentland v. Dravo Corp.,* 152 F.2d 851, 856 (3d Cir. 1945); *Speed v. Transamerica Corp.,* 100 F.Supp. 461, 463 (D.Del. 1951); *State Wholesale Grocers v. Great Atl. & Pac. Tea Co.,* 24 F.R.D. 510 (N.D.Ill. 1959); *Alabama Ind. Serv. Stat. Assn. v. Shell Pet Corp.,* 28 F.Supp. 386, 390 (N.D.Ala. 1939); *Tolliver v. Cudahy Packing Co.,* 39 F.Supp. 337, 339 (E.D.Tenn. 1941); Kalven & Rosenfield, supra, 8 U. of Chi.L.Rev. 684 (1941); Comment, 53 Nw.U.L.Rev. 627, 632–33 (1958); Developments in the Law, supra, 71 Harv.L.Rev. at 935; 2 Barron & Holtzoff, supra, §568; but cf. *Lockwood v. Hercules Powder Co.,* 7 F.R.D. 24, 28–29 (W.D.Mo. 1947); *Abram v. San Joaquin Cotton Oil Co.,* 46 F.Supp. 969, 976–77 (S.D.Calif. 1942); Chaffee, supra, at 280, 285; 3 *Moore,* supra, par. 23.12, at 3476. Under proposed subdivision (c)(3), one-way intervention is excluded; the action will have been early determined to be a class or nonclass action, and in the former case the judgment, whether or not favorable, will include the class, as above stated.

Although thus declaring that the judgment in a class action includes the class, as defined, subdivision (c)(3) does not disturb the recognized principle that the court conducting the action cannot predetermine the *res judicata* effect of the judgment; this can be tested only in a subsequent action. See Restatement, *Judgments* §86, comment (h), §116 (1942). The court, however, in framing the judgment in any suit brought as a class action, must decide what its extent or coverage shall be, and if the matter is carefully considered, questions of *res judicata* are less likely to be raised at a later time and if raised will be more satisfactorily answered. See Chafee, supra, at 294; Weinstein, supra, 9 Buffalo L.Rev. at 460.

*Subdivision (c)(4).* This provision recognizes that an action may be maintained as a class action as to particular issues only. For example, in a fraud or similar case the action may retain its "class" character only through the adjudication of liability to the class; the members of the class may thereafter be required to come in individually and prove the amounts of their respective claims.

Two or more classes may be represented in a single action. Where a class is found to include subclasses divergent in interest, the class may be divided correspondingly, and each subclass treated as a class.

*Subdivision (d)* is concerned with the fair and efficient conduct of the action and lists some types of orders which may be appropriate.

The court should consider how the proceedings are to be arranged in sequence, and what measures should be taken to simplify the proof and argument. See subdivision (d)(1). The orders resulting from this consideration, like the others referred to in subdivision (d), may be combined with a pretrial order under Rule 16, and are subject to modification as the case proceeds.

Subdivision (d)(2) sets out a non-exhaustive list of possible occasions for orders requiring notice to the class. Such notice is not a novel conception. For example, in "limited fund" cases, members of the class have been notified to present individual claims after the basic class decision. Notice has gone to members of a class so that they might express any opposition to the representation, see *United States v. American Optical Co.,* 97 F.Supp. 66 (N.D.Ill. 1951), and 1950–51 CCH Trade Cases 64573–74 (par. 62869); cf. *Weeks v. Bareco Oil Co.,* 125 F.2d 84, 94 (7th Cir. 1941), and notice may encourage interventions to improve the representation of the class. Cf. *Oppenheimer v. F. J. Young & Co.,* 144 F.2d 387 (2d Cir. 1944). Notice has been used to poll members on a proposed modification of a consent decree. See record in *Sam Fox Publishing Co. v. United States,* 366 U.S. 683 (1961).

Subdivision (d)(2) does not require notice at any stage, but rather calls attention to its availability and invokes the court's discretion. In the degree that there is cohesiveness or unity in the class and the representation is effective, the need for notice to the class will tend toward a minimum. These indicators suggest that notice under subdivision (d)(2) may be particularly useful and advisable in certain class actions maintained under subdivision (b)(3), for example, to permit members of the class to object to the representation. Indeed, under subdivision (c)(2), notice must be ordered, and is not merely discretionary, to give the members in a subdivision (b)(3) class action an opportunity to secure exclusion from the class. This mandatory notice pursuant to subdivision (c)(2), together with any discretionary notice which the court may find it advisable to give under subdivision (d)(2), is designed to fulfill requirements of due process to which the class action procedure is of course subject. See *Hansberry v. Lee,* 311 U.S. 32 (1940); *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306 (1950); cf. *Dickinson v. Burnham,* 197 F.2d 973, 979 (2d Cir. 1952), and studies cited at 979 n. 4; see also *All American Airways, Inc. v. Elderd,* 209 F.2d 247, 249 (2d Cir. 1954); *Gart v. Cole,* 263 F.2d 244, 248–49 (2d Cir. 1959), cert. denied, 359 U.S. 978 (1959).

Notice to members of the class, whenever employed under amended Rule 23, should be accommodated to the particular purpose but need not comply with the formalities for service of process. See Chafee, supra, at 230–31; *Brendle v. Smith,* 7 F.R.D. 119 (S.D.N.Y. 1946). The fact that notice is given at one stage of the action does not mean that it must be given at subsequent stages. Notice is available fundamentally "for the protection of the members of the class or otherwise for the fair conduct of the action" and should not be used merely as a device for the undesirable solicitation of claims. See the discussion in *Cherner v. Transitron Electronic Corp.,* 201 F.Supp. 934 (D.Mass. 1962); *Hormel v. United States,* 17 F.R.D. 303 (S.D.N.Y. 1955).

In appropriate cases the court should notify interested government agencies of the pendency of the action or of particular steps therein.

Subdivision (d)(3) reflects the possibility of conditioning the maintenance of a class action, e.g., on the strengthening of the representation, see subdivision (c)(1) above; and recognizes that the imposition of conditions on intervenors may be required for the proper and efficient conduct of the action.

As to orders under subdivision (d)(4), see subdivision (c)(1) above.

Subdivision (e) requires approval of the court, after notice, for the dismissal or compromise of any class action.

The amendments are technical. No substantive change is intended.

*Subdivision (f)*. This permissive interlocutory appeal provision is adopted under the power conferred by 28 U.S.C. §1292(e). Appeal from an order granting or denying class certification is permitted in the sole discretion of the court of appeals. No other type of Rule 23 order is covered by this provision. The court of appeals is given unfettered discretion whether to permit the appeal, akin to the discretion exercised by the Supreme Court in acting on a petition for certiorari. This discretion suggests an analogy to the provision in 28 U.S.C. §1292(b) for permissive appeal on certification by a district court. Subdivision (f), however, departs from the §1292(b) model in two significant ways. It does not require that the district court certify the certification ruling for appeal, although the district court often can assist the parties and court of appeals by offering advice on the desirability of appeal. And it does not include the potentially limiting requirements of §1292(b) that the district court order "involve[] a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation."

The courts of appeals will develop standards for granting review that reflect the changing areas of uncertainty in class litigation. The Federal Judicial Center study supports the view that many suits with class-action allegations present familiar and almost routine issues that are no more worthy of immediate appeal than many other interlocutory rulings. Yet several concerns justify expansion of present opportunities to appeal. An order denying certification may confront the plaintiff with a situation in which the only sure path to appellate review is by proceeding to final judgment on the merits of an individual claim that, standing alone, is far smaller than the costs of litigation. An order granting certification, on the other hand, may force a defendant to settle rather than incur the costs of defending a class action and run the risk of potentially ruinous liability. These concerns can be met at low cost by establishing in the court of appeals a discretionary power to grant interlocutory review in cases that show appeal-worthy certification issues.

Permission to appeal may be granted or denied on the basis of any consideration that the court of appeals finds persuasive. Permission is most likely to be granted when the certification decision turns on a novel or unsettled question of law, or when, as a practical matter, the decision on certification is likely dispositive of the litigation.

The district court, having worked through the certification decision, often will be able to provide cogent advice on the factors that bear on the decision whether to permit appeal. This advice can be particularly valuable if the certification decision is tentative. Even as to a firm certification decision, a statement of reasons bearing on the probable benefits and costs of immediate appeal can help focus the court of appeals decision, and may persuade the disappointed party that an attempt to appeal would be fruitless.

The 10-day period for seeking permission to appeal is designed to reduce the risk that attempted appeals will disrupt continuing proceedings. It is expected that the courts of appeals will act quickly in making the preliminary determination whether to permit appeal. Permission to appeal does not stay trial court proceedings. A stay should be sought first from the trial court. If the trial court refuses a stay, its action and any explanation of its views should weigh heavily with the court of appeals.

Appellate Rule 5 has been modified to establish the procedure for petitioning for leave to appeal under subdivision (f).

*Changes Made after Publication (GAP Report)*. No changes were made in the text of Rule 23(f) as published.

Several changes were made in the published Committee Note. (1) References to 28 U.S.C. §1292(b) interlocutory appeals were revised to dispel any implication that the restrictive elements of §1292(b) should be read in to Rule 23(f). New emphasis was placed on court of appeals discretion by making explicit the analogy to certiorari discretion. (2) Suggestions that the new procedure is a "modest" expansion of appeal opportunities, to be applied with "restraint," and that permission "almost always will be denied when the certification decision turns on case-specific matters of fact and district court discretion," were deleted. It was thought better simply to observe that courts of appeals will develop standards "that reflect the changing areas of uncertainty in class litigation."

*Subdivision (c)*. Subdivision (c) is amended in several respects. The requirement that the court determine whether to certify a class "as soon as practicable after commencement of an action" is replaced by requiring determination "at an early practicable time." The notice provisions are substantially revised.

*Paragraph (1)*. Subdivision (c)(1)(A) is changed to require that the determination whether to certify a class be made "at an early practicable time." The "as soon as practicable" exaction neither reflects prevailing practice nor captures the many valid reasons that may justify deferring the initial certification decision. See Willging, Hooper & Niemic, *Empirical Study of Class Actions in Four Federal District Courts: Final Report to the Advisory Committee on Civil Rules 26–36* (Federal Judicial Center 1996).

Time may be needed to gather information necessary to make the certification decision. Although an evaluation of the probable outcome on the merits is not properly part of the certification decision, discovery in aid of the certification decision often includes information required to identify the nature of the issues that actually will be presented at trial. In this sense it is appropriate to conduct controlled discovery into the "merits," limited to those aspects relevant to making the certification decision on an informed basis. Active judicial supervision may be required to achieve the most effective balance that expedites an informed certification determination without forcing an artificial and ultimately wasteful division between "certification discovery" and "merits discovery." A critical need is to determine how the case will be tried. An increasing number of courts require a party requesting class certification to present a "trial plan" that describes the issues likely to be presented at trial and tests whether they are susceptible of class-wide proof. See Manual For Complex Litigation Third, §21.213, p. 44; §30.11, p. 214; §30.12, p. 215.

Other considerations may affect the timing of the certification decision. The party opposing the class may prefer to win dismissal or summary judgment as to the individual plaintiffs without certification and without binding the class that might have been certified. Time may be needed to explore designation of class counsel under Rule 23(g), recognizing that in many cases the need to progress toward the certification determination may require designation of interim counsel under Rule 23(g)(2)(A).

Although many circumstances may justify deferring the certification decision, active management may be necessary to ensure that the certification decision is not unjustifiably delayed.

Subdivision (c)(1)(C) reflects two amendments. The provision that a class certification "may be conditional" is deleted. A court that is not satisfied that the requirements of Rule 23 have been met should refuse certification until they have been met. The provision

that permits alteration or amendment of an order granting or denying class certification is amended to set the cut-off point at final judgment rather than "the decision on the merits." This change avoids the possible ambiguity in referring to "the decision on the merits." Following a determination of liability, for example, proceedings to define the remedy may demonstrate the need to amend the class definition or subdivide the class. In this setting the final judgment concept is pragmatic. It is not the same as the concept used for appeal purposes, but it should be flexible, particularly in protracted litigation.

The authority to amend an order under Rule 23(c)(1) before final judgment does not restore the practice of "one-way intervention" that was rejected by the 1966 revision of Rule 23. A determination of liability after certification, however, may show a need to amend the class definition. Decertification may be warranted after further proceedings.

If the definition of a class certified under Rule 23(b)(3) is altered to include members who have not been afforded notice and an opportunity to request exclusion, notice—including an opportunity to request exclusion—must be directed to the new class members under Rule 23(c)(2)(B).

*Paragraph (2).* The first change made in Rule 23(c)(2) is to call attention to the court's authority—already established in part by Rule 23(d)(2)—to direct notice of certification to a Rule 23(b)(1) or (b)(2) class. The present rule expressly requires notice only in actions certified under Rule 23(b)(3). Members of classes certified under Rules 23(b)(1) or (b)(2) have interests that may deserve protection by notice.

The authority to direct notice to class members in a (b)(1) or (b)(2) class action should be exercised with care. For several reasons, there may be less need for notice than in a (b)(3) class action. There is no right to request exclusion from a (b)(1) or (b)(2) class. The characteristics of the class may reduce the need for formal notice. The cost of providing notice, moreover, could easily cripple actions that do not seek damages. The court may decide not to direct notice after balancing the risk that notice costs may deter the pursuit of class relief against the benefits of notice.

When the court does direct certification notice in a (b)(1) or (b)(2) class action, the discretion and flexibility established by subdivision (c)(2)(A) extend to the method of giving notice. Notice facilitates the opportunity to participate. Notice calculated to reach a significant number of class members often will protect the interests of all. Informal methods may prove effective. A simple posting in a place visited by many class members, directing attention to a source of more detailed information, may suffice. The court should consider the costs of notice in relation to the probable reach of inexpensive methods.

If a Rule 23(b)(3) class is certified in conjunction with a (b)(2) class, the (c)(2)(B) notice requirements must be satisfied as to the (b)(3) class.

The direction that class-certification notice be couched in plain, easily understood language is a reminder of the need to work unremittingly at the difficult task of communicating with class members. It is difficult to provide information about most class actions that is both accurate and easily understood by class members who are not themselves lawyers. Factual uncertainty, legal complexity, and the complication of class-action procedure raise the barriers high. The Federal Judicial Center has created illustrative clear-notice forms that provide a helpful starting point for actions similar to those described in the forms.

*Subdivision (e).* Subdivision (e) is amended to strengthen the process of reviewing proposed class-action settlements. Settlement may be a desirable means of resolving a class action. But court review and approval are essential to assure adequate representation of class members who have not participated in shaping the settlement.

*Paragraph (1).* Subdivision (e)(1)(A) expressly recognizes the power of a class representative to settle class claims, issues, or defenses.

Rule 23(e)(1)(A) resolves the ambiguity in former Rule 23(e)'s reference to dismissal or compromise of "a class action." That language could be—and at times was—read to require court approval of settlements with putative class representatives that resolved only individual claims. See Manual for Complex Litigation Third, §30.41. The new rule requires approval only if the claims, issues, or defenses of a certified class are resolved by a settlement, voluntary dismissal, or compromise.

Subdivision (e)(1)(B) carries forward the notice requirement of present Rule 23(e) when the settlement binds the class through claim or issue preclusion; notice is not required when the settlement binds only the individual class representatives. Notice of a settlement binding on the class is required either when the settlement follows class certification or when the decisions on certification and settlement proceed simultaneously.

Reasonable settlement notice may require individual notice in the manner required by Rule 23(c)(2)(B) for certification notice to a Rule 23(b)(3) class. Individual notice is appropriate, for example, if class members are required to take action—such as filing claims—to participate in the judgment, or if the court orders a settlement opt-out opportunity under Rule 23(e)(3).

Subdivision (e)(1)(C) confirms and mandates the already common practice of holding hearings as part of the process of approving settlement, voluntary dismissal, or compromise that would bind members of a class.

Subdivision (e)(1)(C) states the standard for approving a proposed settlement that would bind class members. The settlement must be fair, reasonable, and adequate. A helpful review of many factors that may deserve consideration is provided by *In re: Prudential Ins. Co. America Sales Practice Litigation Agent Actions,* 148 F.3d 283, 316–324 (3d Cir. 1998). Further guidance can be found in the Manual for Complex Litigation.

The court must make findings that support the conclusion that the settlement is fair, reasonable, and adequate. The findings must be set out in sufficient detail to explain to class members and the appellate court the factors that bear on applying the standard.

Settlement review also may provide an occasion to review the cogency of the initial class definition. The terms of the settlement themselves, or objections, may reveal divergent interests of class members and demonstrate the need to redefine the class or to designate subclasses. Redefinition of a class certified under Rule 23(b)(3) may require notice to new class members under Rule 23(c)(2)(B). See Rule 23(c)(1)(C).

*Paragraph (2).* Subdivision (e)(2) requires parties seeking approval of a settlement, voluntary dismissal, or compromise under Rule 23(e)(1) to file a statement identifying any agreement made in connection with the settlement. This provision does not change the basic requirement that the parties disclose all terms of the settlement or compromise that the court must approve under Rule 23(e)(1). It aims instead at related undertakings that, although seemingly separate, may have influenced the terms of the settlement by trading away possible advantages for the class in return for advantages for others. Doubts should be resolved in favor of identification.

Further inquiry into the agreements identified by the parties should not become the occasion for discovery by the parties or objectors. The court may direct the parties to provide to the court or other parties a summary or copy of the full terms of any agreement identified by the parties. The court also may direct the parties to provide a summary or copy of any agreement not identified by the parties that the court considers relevant to its review of a proposed settlement. In exercising discretion under this rule, the court may act in steps, calling first for a summary of any agreement that may have affected the settlement and then for a complete version if the summary does not provide an adequate basis for review. A direction to disclose a summary or copy of an agreement may raise concerns of confidentiality. Some agreements may include information

that merits protection against general disclosure. And the court must provide an opportunity to claim work-product or other protections.

*Paragraph (3).* Subdivision (e)(3) authorizes the court to refuse to approve a settlement unless the settlement affords class members a new opportunity to request exclusion from a class certified under Rule 23(b)(3) after settlement terms are known. An agreement by the parties themselves to permit class members to elect exclusion at this point by the settlement agreement may be one factor supporting approval of the settlement. Often there is an opportunity to opt out at this point because the class is certified and settlement is reached in circumstances that lead to simultaneous notice of certification and notice of settlement. In these cases, the basic opportunity to elect exclusion applies without further complication. In some cases, particularly if settlement appears imminent at the time of certification, it may be possible to achieve equivalent protection by deferring notice and the opportunity to elect exclusion until actual settlement terms are known. This approach avoids the cost and potential confusion of providing two notices and makes the single notice more meaningful. But notice should not be delayed unduly after certification in the hope of settlement.

Rule 23(e)(3) authorizes the court to refuse to approve a settlement unless the settlement affords a new opportunity to elect exclusion in a case that settles after a certification decision if the earlier opportunity to elect exclusion provided with the certification notice has expired by the time of the settlement notice. A decision to remain in the class is likely to be more carefully considered and is better informed when settlement terms are known.

The opportunity to request exclusion from a proposed settlement is limited to members of a (b)(3) class. Exclusion may be requested only by individual class members; no class member may purport to opt out other class members by way of another class action.

The decision whether to approve a settlement that does not allow a new opportunity to elect exclusion is confided to the court's discretion. The court may make this decision before directing notice to the class under Rule 23(e)(1)(B) or after the Rule 23(e)(1)(C) hearing. Many factors may influence the court's decision. Among these are changes in the information available to class members since expiration of the first opportunity to request exclusion, and the nature of the individual class members' claims.

The terms set for permitting a new opportunity to elect exclusion from the proposed settlement of a Rule 23(b)(3) class action may address concerns of potential misuse. The court might direct, for example, that class members who elect exclusion are bound by rulings on the merits made before the settlement was proposed for approval. Still other terms or conditions may be appropriate.

*Paragraph (4).* Subdivision (e)(4) confirms the right of class members to object to a proposed settlement, voluntary dismissal, or compromise. The right is defined in relation to a disposition that, because it would bind the class, requires court approval under subdivision (e)(1)(C).

Subdivision (e)(4)(B) requires court approval for withdrawal of objections made under subdivision (e)(4)(A). Review follows automatically if the objections are withdrawn on terms that lead to modification of the settlement with the class. Review also is required if the objector formally withdraws the objections. If the objector simply abandons pursuit of the objection, the court may inquire into the circumstances.

Approval under paragraph (4)(B) may be given or denied with little need for further inquiry if the objection and the disposition go only to a protest that the individual treatment afforded the objector under the proposed settlement is unfair because of factors that distinguish the objector from other class members. Different considerations may apply if the objector has protested that the proposed settlement is not fair, reasonable, or adequate on grounds that apply generally to a class or subclass. Such objections, which purport to represent class-wide interests, may augment the opportunity for obstruction or delay. If such objections are surrendered on terms that do not affect the class settlement or the objector's participation in the class settlement, the court often can approve withdrawal of the objections without elaborate inquiry.

Once an objector appeals, control of the proceeding lies in the court of appeals. The court of appeals may undertake review and approval of a settlement with the objector, perhaps as part of appeal settlement procedures, or may remand to the district court to take advantage of the district court's familiarity with the action and settlement.

*Subdivision (g).* Subdivision (g) is new. It responds to the reality that the selection and activity of class counsel are often critically important to the successful handling of a class action. Until now, courts have scrutinized proposed class counsel as well as the class representative under Rule 23(a)(4). This experience has recognized the importance of judicial evaluation of the proposed lawyer for the class, and this new subdivision builds on that experience rather than introducing an entirely new element into the class certification process. Rule 23(a)(4) will continue to call for scrutiny of the proposed class representative, while this subdivision will guide the court in assessing proposed class counsel as part of the certification decision. This subdivision recognizes the importance of class counsel, states the obligation to represent the interests of the class, and provides a framework for selection of class counsel. The procedure and standards for appointment vary depending on whether there are multiple applicants to be class counsel. The new subdivision also provides a method by which the court may make directions from the outset about the potential fee award to class counsel in the event the action is successful.

*Paragraph (1)* sets out the basic requirement that class counsel be appointed if a class is certified and articulates the obligation of class counsel to represent the interests of the class, as opposed to the potentially conflicting interests of individual class members. It also sets out the factors the court should consider in assessing proposed class counsel.

*Paragraph (1)(A)* requires that the court appoint class counsel to represent the class. Class counsel must be appointed for all classes, including each subclass that the court certifies to represent divergent interests.

Paragraph (1)(A) does not apply if "a statute provides otherwise." This recognizes that provisions of the Private Securities Litigation Reform Act of 1995, Pub. L. No. 104-67, 109 Stat. 737 (1995) (codified in various sections of 15 U.S.C.), contain directives that bear on selection of a lead plaintiff and the retention of counsel. This subdivision does not purport to supersede or to affect the interpretation of those provisions, or any similar provisions of other legislation.

*Paragraph 1(B)* recognizes that the primary responsibility of class counsel, resulting from appointment as class counsel, is to represent the best interests of the class. The rule thus establishes the obligation of class counsel, an obligation that may be different from the customary obligations of counsel to individual clients. Appointment as class counsel means that the primary obligation of counsel is to the class rather than to any individual members of it. The class representatives do not have an unfettered right to "fire" class counsel. In the same vein, the class representatives cannot command class counsel to accept or reject a settlement proposal. To the contrary, class counsel must determine whether seeking the court's approval of a settlement would be in the best interests of the class as a whole.

*Paragraph (1)(C)* articulates the basic responsibility of the court to appoint class counsel who will provide the adequate representation called for by paragraph (1)(B). It identifies criteria that must be considered and invites the court to consider any other pertinent matters. Although couched in terms of the court's duty, the listing also informs counsel seeking appointment

about the topics that should be addressed in an application for appointment or in the motion for class certification.

The court may direct potential class counsel to provide additional information about the topics mentioned in paragraph (1)(C) or about any other relevant topic. For example, the court may direct applicants to inform the court concerning any agreements about a prospective award of attorney fees or nontaxable costs, as such agreements may sometimes be significant in the selection of class counsel. The court might also direct that potential class counsel indicate how parallel litigation might be coordinated or consolidated with the action before the court.

The court may also direct counsel to propose terms for a potential award of attorney fees and nontaxable costs. Attorney fee awards are an important feature of class action practice, and attention to this subject from the outset may often be a productive technique. Paragraph (2)(C) therefore authorizes the court to provide directions about attorney fees and costs when appointing class counsel. Because there will be numerous class actions in which this information is not likely to be useful, the court need not consider it in all class actions.

Some information relevant to class counsel appointment may involve matters that include adversary preparation in a way that should be shielded from disclosure to other parties. An appropriate protective order may be necessary to preserve confidentiality.

In evaluating prospective class counsel, the court should weigh all pertinent factors. No single factor should necessarily be determinative in a given case. For example, the resources counsel will commit to the case must be appropriate to its needs, but the court should be careful not to limit consideration to lawyers with the greatest resources.

If, after review of all applicants, the court concludes that none would be satisfactory class counsel, it may deny class certification, reject all applications, recommend that an application be modified, invite new applications, or make any other appropriate order regarding selection and appointment of class counsel.

*Paragraph (2).* This paragraph sets out the procedure that should be followed in appointing class counsel. Although it affords substantial flexibility, it provides the framework for appointment of class counsel in all class actions. For counsel who filed the action, the materials submitted in support of the motion for class certification may suffice to justify appointment so long as the information described in paragraph (g)(1)(C) is included. If there are other applicants, they ordinarily would file a formal application detailing their suitability for the position.

In a plaintiff class action the court usually would appoint as class counsel only an attorney or attorneys who have sought appointment. Different considerations may apply in defendant class actions.

The rule states that the court should appoint "class counsel." In many instances, the applicant will be an individual attorney. In other cases, however, an entire firm, or perhaps numerous attorneys who are not otherwise affiliated but are collaborating on the action will apply. No rule of thumb exists to determine when such arrangements are appropriate; the court should be alert to the need for adequate staffing of the case, but also to the risk of overstaffing or an ungainly counsel structure.

*Paragraph (2)(A)* authorizes the court to designate interim counsel during the pre-certification period if necessary to protect the interests of the putative class. Rule 23(c)(1)(B) directs that the order certifying the class include appointment of class counsel. Before class certification, however, it will usually be important for an attorney to take action to prepare for the certification decision. The amendment to Rule 23(c)(1) recognizes that some discovery is often necessary for that determination. It also may be important to make or respond to motions before certification. Settlement may be discussed before certification. Ordinarily, such work

is handled by the lawyer who filed the action. In some cases, however, there may be rivalry or uncertainty that makes formal designation of interim counsel appropriate. Rule 23(g)(2)(A) authorizes the court to designate interim counsel to act on behalf of the putative class before the certification decision is made. Failure to make the formal designation does not prevent the attorney who filed the action from proceeding in it. Whether or not formally designated interim counsel, an attorney who acts on behalf of the class before certification must act in the best interests of the class as a whole. For example, an attorney who negotiates a pre-certification settlement must seek a settlement that is fair, reasonable, and adequate for the class.

Rule 23(c)(1) provides that the court should decide whether to certify the class "at an early practicable time," and directs that class counsel should be appointed in the order certifying the class. In some cases, it may be appropriate for the court to allow a reasonable period after commencement of the action for filing applications to serve as class counsel. The primary ground for deferring appointment would be that there is reason to anticipate competing applications to serve as class counsel. Examples might include instances in which more than one class action has been filed, or in which other attorneys have filed individual actions on behalf of putative class members. The purpose of facilitating competing applications in such a case is to afford the best possible representation for the class. Another possible reason for deferring appointment would be that the initial applicant was found inadequate, but it seems appropriate to permit additional applications rather than deny class certification.

*Paragraph (2)(B)* states the basic standard the court should use in deciding whether to certify the class and appoint class counsel in the single applicant situation—that the applicant be able to provide the representation called for by paragraph (1)(B) in light of the factors identified in paragraph (1)(C).

If there are multiple adequate applicants, paragraph (2)(B) directs the court to select the class counsel best able to represent the interests of the class. This decision should also be made using the factors outlined in paragraph (1)(C), but in the multiple applicant situation the court is to go beyond scrutinizing the adequacy of counsel and make a comparison of the strengths of the various applicants. As with the decision whether to appoint the sole applicant for the position, no single factor should be dispositive in selecting class counsel in cases in which there are multiple applicants. The fact that a given attorney filed the instant action, for example, might not weigh heavily in the decision if that lawyer had not done significant work identifying or investigating claims. Depending on the nature of the case, one important consideration might be the applicant's existing attorney-client relationship with the proposed class representative.

*Paragraph (2)(C)* builds on the appointment process by authorizing the court to include provisions regarding attorney fees in the order appointing class counsel. Courts may find it desirable to adopt guidelines for fees or nontaxable costs, or to direct class counsel to report to the court at regular intervals on the efforts undertaken in the action, to facilitate the court's later determination of a reasonable attorney fee.

*Subdivision (h).* Subdivision (h) is new. Fee awards are a powerful influence on the way attorneys initiate, develop, and conclude class actions. Class action attorney fee awards have heretofore been handled, along with all other attorney fee awards, under Rule 54(d)(2), but that rule is not addressed to the particular concerns of class actions. This subdivision is designed to work in tandem with new subdivision (g) on appointment of class counsel, which may afford an opportunity for the court to provide an early framework for an eventual fee award, or for monitoring the work of class counsel during the pendency of the action.

Subdivision (h) applies to "an action certified as a class action." This includes cases in which there is a simultaneous proposal for class certification and settle-

ment even though technically the class may not be certified unless the court approves the settlement pursuant to review under Rule 23(e). When a settlement is proposed for Rule 23(e) approval, either after certification or with a request for certification, notice to class members about class counsel's fee motion would ordinarily accompany the notice to the class about the settlement proposal itself.

This subdivision does not undertake to create new grounds for an award of attorney fees or nontaxable costs. Instead, it applies when such awards are authorized by law or by agreement of the parties. Against that background, it provides a format for all awards of attorney fees and nontaxable costs in connection with a class action, not only the award to class counsel. In some situations, there may be a basis for making an award to other counsel whose work produced a beneficial result for the class, such as attorneys who acted for the class before certification but were not appointed class counsel, or attorneys who represented objectors to a proposed settlement under Rule 23(e) or to the fee motion of class counsel. Other situations in which fee awards are authorized by law or by agreement of the parties may exist.

This subdivision authorizes an award of "reasonable" attorney fees and nontaxable costs. This is the customary term for measurement of fee awards in cases in which counsel may obtain an award of fees under the "common fund" theory that applies in many class actions, and is used in many fee-shifting statutes. Depending on the circumstances, courts have approached the determination of what is reasonable in different ways. In particular, there is some variation among courts about whether in "common fund" cases the court should use the lodestar or a percentage method of determining what fee is reasonable. The rule does not attempt to resolve the question whether the lodestar or percentage approach should be viewed as preferable.

Active judicial involvement in measuring fee awards is singularly important to the proper operation of the class-action process. Continued reliance on caselaw development of fee-award measures does not diminish the court's responsibility. In a class action, the district court must ensure that the amount and mode of payment of attorney fees are fair and proper whether the fees come from a common fund or are otherwise paid. Even in the absence of objections, the court bears this responsibility.

Courts discharging this responsibility have looked to a variety of factors. One fundamental focus is the result actually achieved for class members, a basic consideration in any case in which fees are sought on the basis of a benefit achieved for class members. The Private Securities Litigation Reform Act of 1995 explicitly makes this factor a cap for a fee award in actions to which it applies. See 15 U.S.C. §§ 77z–1(a)(6); 78u–4(a)(6) (fee award should not exceed a "reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class"). For a percentage approach to fee measurement, results achieved is the basic starting point.

In many instances, the court may need to proceed with care in assessing the value conferred on class members. Settlement regimes that provide for future payments, for example, may not result in significant actual payments to class members. In this connection, the court may need to scrutinize the manner and operation of any applicable claims procedure. In some cases, it may be appropriate to defer some portion of the fee award until actual payouts to class members are known. Settlements involving nonmonetary provisions for class members also deserve careful scrutiny to ensure that these provisions have actual value to the class. On occasion the court's Rule 23(e) review will provide a solid basis for this sort of evaluation, but in any event it is also important to assessing the fee award for the class.

At the same time, it is important to recognize that in some class actions the monetary relief obtained is not the sole determinant of an appropriate attorney fees award. Cf. *Blanchard v. Bergeron*, 489 U.S. 87, 95 (1989) (cautioning in an individual case against an "undesirable emphasis" on "the importance of the recovery of damages in civil rights litigation" that might "shortchange efforts to seek effective injunctive or declaratory relief").

Any directions or orders made by the court in connection with appointing class counsel under Rule 23(g) should weigh heavily in making a fee award under this subdivision.

Courts have also given weight to agreements among the parties regarding the fee motion, and to agreements between class counsel and others about the fees claimed by the motion. Rule 54(d)(2)(B) provides: "If directed by the court, the motion shall also disclose the terms of any agreement with respect to fees to be paid for the services for which claim is made." The agreement by a settling party not to oppose a fee application up to a certain amount, for example, is worthy of consideration, but the court remains responsible to determine a reasonable fee. "Side agreements" regarding fees provide at least perspective pertinent to an appropriate fee award.

In addition, courts may take account of the fees charged by class counsel or other attorneys for representing individual claimants or objectors in the case. In determining a fee for class counsel, the court's objective is to ensure an overall fee that is fair for counsel and equitable within the class. In some circumstances individual fee agreements between class counsel and class members might have provisions inconsistent with those goals, and the court might determine that adjustments in the class fee award were necessary as a result.

Finally, it is important to scrutinize separately the application for an award covering nontaxable costs. If costs were addressed in the order appointing class counsel, those directives should be a presumptive starting point in determining what is an appropriate award.

*Paragraph (1).* Any claim for an award of attorney fees must be sought by motion under Rule 54(d)(2), which invokes the provisions for timing of appeal in Rule 58 and Appellate Rule 4. Owing to the distinctive features of class action fee motions, however, the provisions of this subdivision control disposition of fee motions in class actions, while Rule 54(d)(2) applies to matters not addressed in this subdivision.

The court should direct when the fee motion must be filed. For motions by class counsel in cases subject to court review of a proposed settlement under Rule 23(e), it would be important to require the filing of at least the initial motion in time for inclusion of information about the motion in the notice to the class about the proposed settlement that is required by Rule 23(e). In cases litigated to judgment, the court might also order class counsel's motion to be filed promptly so that notice to the class under this subdivision (h) can be given.

Besides service of the motion on all parties, notice of class counsel's motion for attorney fees must be "directed to the class in a reasonable manner." Because members of the class have an interest in the arrangements for payment of class counsel whether that payment comes from the class fund or is made directly by another party, notice is required in all instances. In cases in which settlement approval is contemplated under Rule 23(e), notice of class counsel's fee motion should be combined with notice of the proposed settlement, and the provision regarding notice to the class is parallel to the requirements for notice under Rule 23(e). In adjudicated class actions, the court may calibrate the notice to avoid undue expense.

*Paragraph (2).* A class member and any party from whom payment is sought may object to the fee motion. Other parties—for example, nonsettling defendants—may not object because they lack a sufficient interest in the amount the court awards. The rule does not specify a time limit for making an objection. In setting the date objections are due, the court should provide sufficient time after the full fee motion is on file to enable potential objectors to examine the motion.

The court may allow an objector discovery relevant to the objections. In determining whether to allow discovery, the court should weigh the need for the information against the cost and delay that would attend discovery. See Rule 26(b)(2). One factor in determining whether to authorize discovery is the completeness of the material submitted in support of the fee motion, which depends in part on the fee measurement standard applicable to the case. If the motion provides thorough information, the burden should be on the objector to justify discovery to obtain further information.

*Paragraph (3).* Whether or not there are formal objections, the court must determine whether a fee award is justified and if, or so, set a reasonable fee. The rule does not require a formal hearing in all cases. The form and extent of a hearing depend on the circumstances of the case. The rule does require findings and conclusions under Rule 52(a).

*Paragraph (4).* By incorporating Rule 54(d)(2), this provision gives the court broad authority to obtain assistance in determining the appropriate amount to award. In deciding whether to direct submission of such questions to a special master or magistrate judge, the court should give appropriate consideration to the cost and delay that such a process might entail.

*Changes Made After Publication and Comment.* Rule 23(c)(1)(B) is changed to incorporate the counsel-appointment provisions of Rule 23(g). The statement of the method and time for requesting exclusion from a (b)(3) class has been moved to the notice of certification provision in Rule 23(c)(2)(B).

Rule 23(c)(1)(C) is changed by deleting all references to ''conditional'' certification.

Rule 23(c)(2)(A) is changed by deleting the requirement that class members be notified of certification of a (b)(1) or (b)(2) class. The new version provides only that the court may direct appropriate notice to the class.

Rule 23(c)(2)(B) is revised to require that the notice of class certification define the certified class in terms identical to the terms used in (c)(1)(B), and to incorporate the statement transferred from (c)(1)(B) on ''when and how members may elect to be excluded.''

Rule 23(e)(1) is revised to delete the requirement that the parties must win court approval for a precertification dismissal or settlement.

Rule 23(e)(2) is revised to change the provision that the court may direct the parties to file a copy or summary of any agreement or understanding made in connection with a proposed settlement. The new provision directs the parties to a proposed settlement to identify any agreement made in connection with the settlement.

Rule 23(e)(3) is proposed in a restyled form of the second version proposed for publication.

Rule 23(e)(4)(B) is restyled.

Rule 23(g)(1)(C) is a transposition of criteria for appointing class counsel that was published as Rule 23(g)(2)(B). The criteria are rearranged, and expanded to include consideration of experience in handling claims of the type asserted in the action and of counsel's knowledge of the applicable law.

Rule 23(g)(2)(A) is a new provision for designation of interim counsel to act on behalf of a putative class before a certification determination is made.

Rule 23(g)(2)(B) is revised to point up the differences between appointment of class counsel when there is only one applicant and when there are competing applicants. When there is only one applicant the court must determine that the applicant is able to fairly and adequately represent class interests. When there is more than one applicant the court must appoint the applicant best able to represent class interests.

Rule 23(h) is changed to require that notice of an attorney-fee motion by class counsel be ''directed to class members,'' rather than ''given to all class members.''

COMMITTEE NOTES ON RULES—2007 AMENDMENT

The language of Rule 23 has been amended as part of the general restyling of the Civil Rules to make them more easily understood and to make style and terminology consistent throughout the rules. These changes are intended to be stylistic only.

Amended Rule 23(d)(2) carries forward the provisions of former Rule 23(d) that recognize two separate propositions. First, a Rule 23(d) order may be combined with a pretrial order under Rule 16. Second, the standard for amending the Rule 23(d) order continues to be the more open-ended standard for amending Rule 23(d) orders, not the more exacting standard for amending Rule 16 orders.

As part of the general restyling, intensifiers that provide emphasis but add no meaning are consistently deleted. Amended Rule 23(f) omits as redundant the explicit reference to court of appeals discretion in deciding whether to permit an interlocutory appeal. The omission does not in any way limit the unfettered discretion established by the original rule.

COMMITTEE NOTES ON RULES—2009 AMENDMENT

The time set in the former rule at 10 days has been revised to 14 days. See the Note to Rule 6.

## Rule 23.1. Derivative Actions

(a) PREREQUISITES. This rule applies when one or more shareholders or members of a corporation or an unincorporated association bring a derivative action to enforce a right that the corporation or association may properly assert but has failed to enforce. The derivative action may not be maintained if it appears that the plaintiff does not fairly and adequately represent the interests of shareholders or members who are similarly situated in enforcing the right of the corporation or association.

(b) PLEADING REQUIREMENTS. The complaint must be verified and must:

(1) allege that the plaintiff was a shareholder or member at the time of the transaction complained of, or that the plaintiff's share or membership later devolved on it by operation of law;

(2) allege that the action is not a collusive one to confer jurisdiction that the court would otherwise lack; and

(3) state with particularity:

(A) any effort by the plaintiff to obtain the desired action from the directors or comparable authority and, if necessary, from the shareholders or members; and

(B) the reasons for not obtaining the action or not making the effort.

(c) SETTLEMENT, DISMISSAL, AND COMPROMISE. A derivative action may be settled, voluntarily dismissed, or compromised only with the court's approval. Notice of a proposed settlement, voluntary dismissal, or compromise must be given to shareholders or members in the manner that the court orders.

(As added Feb. 28, 1966, eff. July 1, 1966; amended Mar. 2, 1987, eff. Aug. 1, 1987; Apr. 30, 2007, eff. Dec. 1, 2007.)

NOTES OF ADVISORY COMMITTEE ON RULES—1966

A derivative action by a shareholder of a corporation or by a member of an unincorporated association has distinctive aspects which require the special provisions set forth in the new rule. The next-to-the-last sentence recognizes that the question of adequacy of representation may arise when the plaintiff is one of a group of shareholders or members. *Cf.* 3 *Moore's Federal Practice,* par. 23.08 (2d ed. 1963).

The court has inherent power to provide for the conduct of the proceedings in a derivative action, includ-

## <u>Fed. R. Evid. 801</u>

(3) The approach to hearsay in these rules is that of the common law, i.e., a general rule excluding hearsay, with exceptions under which evidence is not required to be excluded even though hearsay. The traditional hearsay exceptions are drawn upon for the exceptions, collected under two rules, one dealing with situations where availability of the declarant is regarded as immaterial and the other with those where unavailability is made a condition to the admission of the hearsay statement. Each of the two rules concludes with a provision for hearsay statements not within one of the specified exceptions "but having comparable circumstantial guarantees of trustworthiness." Rules 803(24) and 804(b)(6). This plan is submitted as calculated to encourage growth and development in this area of the law, while conserving the values and experience of the past as a guide to the future.

CONFRONTATION AND DUE PROCESS

Until very recently, decisions invoking the confrontation clause of the Sixth Amendment were surprisingly few, a fact probably explainable by the former inapplicability of the clause to the states and by the hearsay rule's occupancy of much the same ground. The pattern which emerges from the earlier cases invoking the clause is substantially that of the hearsay rule, applied to criminal cases: an accused is entitled to have the witnesses against him testify under oath, in the presence of himself and trier, subject to cross-examination; yet considerations of public policy and necessity require the recognition of such exceptions as dying declarations and former testimony of unavailable witnesses. *Mattox v. United States,* 156 U.S. 237, 15 S.Ct. 337, 39 L.Ed. 409 (1895); *Motes v. United States,* 178 U.S. 458, 20 S.Ct. 993, 44 L.Ed. 1150 (1900); *Delaney v. United States,* 263 U.S. 586, 44 S.Ct. 206, 68 L.Ed. 462 (1924). Beginning with *Snyder v. Massachusetts,* 291 U.S. 97, 54 S.Ct. 330, 78 L.Ed. 674 (1934), the Court began to speak of confrontation as an aspect of procedural due process, thus extending its applicability to state cases and to federal cases other than criminal. The language of *Snyder* was that of an elastic concept of hearsay. The deportation case of *Bridges v. Wixon,* 326 U.S. 135, 65 S.Ct. 1443, 89 L.Ed. 2103 (1945), may be read broadly as imposing a strictly construed right of confrontation in all kinds of cases or narrowly as the product of a failure of the Immigration and Naturalization Service to follow its own rules. *In re Oliver,* 333 U.S. 257, 68 S.Ct. 499, 92 L.Ed. 682 (1948), ruled that cross-examination was essential to due process in a state contempt proceeding, but in *United States v. Nugent,* 346 U.S. 1, 73 S.Ct. 991, 97 L.Ed. 1417 (1953), the court held that it was not an essential aspect of a "hearing" for a conscientious objector under the Selective Service Act. *Stein v. New York,* 346 U.S. 156, 196, 73 S.Ct. 1077, 97 L.Ed. 1522 (1953), disclaimed any purpose to read the hearsay rule into the Fourteenth Amendment, but in *Greene v. McElroy,* 360 U.S. 474, 79 S.Ct. 1400, 3 L.Ed.2d 1377 (1959), revocation of security clearance without confrontation and cross-examination was held unauthorized, and a similar result was reached in *Willner v. Committee on Character,* 373 U.S. 96, 83 S.Ct. 1175, 10 L.Ed.2d 224 (1963). Ascertaining the constitutional dimensions of the confrontation-hearsay aggregate against the background of these cases is a matter of some difficulty, yet the general pattern is at least not inconsistent with that of the hearsay rule.

In 1965 the confrontation clause was held applicable to the states. *Pointer v. Texas,* 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965). Prosecution use of former testimony given at a preliminary hearing where petitioner was not represented by counsel was a violation of the clause. The same result would have followed under conventional hearsay doctrine read in the light of a constitutional right to counsel, and nothing in the opinion suggests any difference in essential outline between the hearsay rule and the right of confrontation. In the companion case of *Douglas v. Alabama,* 380 U.S. 415, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965), however, the result reached by applying the confrontation clause is one

reached less readily via the hearsay rule. A confession implicating petitioner was put before the jury by reading it to the witness in portions and asking if he made that statement. The witness refused to answer on grounds of self-incrimination. The result, said the Court, was to deny cross-examination, and hence confrontation. True, it could broadly be said that the confession was a hearsay statement which for all practical purposes was put in evidence. Yet a more easily accepted explanation of the opinion is that its real thrust was in the direction of curbing undesirable prosecutorial behavior, rather than merely applying rules of exclusion, and that the confrontation clause was the means selected to achieve this end. Comparable facts and a like result appeared in *Brookhart v. Janis,* 384 U.S. 1, 86 S.Ct. 1245, 16 L.Ed.2d 314 (1966).

The pattern suggested in *Douglas* was developed further and more distinctly in a pair of cases at the end of the 1966 term. *United States v. Wade,* 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), and *Gilbert v. California,* 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967), hinged upon practices followed in identifying accused persons before trial. This pretrial identification was said to be so decisive an aspect of the case that accused was entitled to have counsel present; a pretrial identification made in the absence of counsel was not itself receivable in evidence and, in addition, might fatally infect a courtroom identification. The presence of counsel at the earlier identification was described as a necessary prerequisite for "a meaningful confrontation at trial." *United States v. Wade, supra,* 388 U.S. at p. 236, 87 S.Ct. at p. 1937. *Wade* involved no evidence of the fact of a prior identification and hence was not susceptible of being decided on hearsay grounds. In *Gilbert,* witnesses did testify to an earlier identification, readily classifiable as hearsay under a fairly strict view of what constitutes hearsay. The Court, however, carefully avoided basing the decision on the hearsay ground, choosing confrontation instead. 388 U.S. 263, 272, n. 3, 87 S.Ct. 1951. See also *Parker v. Gladden,* 385 U.S. 363 87 S.Ct. 468, 17 L.Ed.2d 420 (1966), holding that the right of confrontation was violated when the bailiff made prejudicial statements to jurors, and Note, 75, Yale L.J. 1434 (1966).

Under the earlier cases, the confrontation clause may have been little more than a constitutional embodiment of the hearsay rule, even including traditional exceptions but with some room for expanding them along similar lines. But under the recent cases the impact of the clause clearly extends beyond the confines of the hearsay rule. These considerations have led the Advisory Committee to conclude that a hearsay rule can function usefully as an adjunct to the confrontation right in constitutional areas and independently in nonconstitutional areas. In recognition of the separateness of the confrontation clause and the hearsay rule, and to avoid inviting collisions between them or between the hearsay rule and other exclusionary principles, the exceptions set forth in Rules 803 and 804 are stated in terms of exemption from the general exclusionary mandate of the hearsay rule, rather than in positive terms of admissibility. See Uniform Rule 63(1) to (31) and California Evidence Code §§ 1200–1340.

## Rule 801. Definitions That Apply to This Article; Exclusions from Hearsay

(a) STATEMENT. "Statement" means a person's oral assertion, written assertion, or nonverbal conduct, if the person intended it as an assertion.

(b) DECLARANT. "Declarant" means the person who made the statement.

(c) HEARSAY. "Hearsay" means a statement that:

(1) the declarant does not make while testifying at the current trial or hearing; and

(2) a party offers in evidence to prove the truth of the matter asserted in the statement.

(d) STATEMENTS THAT ARE NOT HEARSAY. A statement that meets the following conditions is not hearsay:

(1) *A Declarant-Witness's Prior Statement.* The declarant testifies and is subject to cross-examination about a prior statement, and the statement:

(A) is inconsistent with the declarant's testimony and was given under penalty of perjury at a trial, hearing, or other proceeding or in a deposition;

(B) is consistent with the declarant's testimony and is offered to rebut an express or implied charge that the declarant recently fabricated it or acted from a recent improper influence or motive in so testifying; or

(C) identifies a person as someone the declarant perceived earlier.

(2) *An Opposing Party's Statement.* The statement is offered against an opposing party and:

(A) was made by the party in an individual or representative capacity;

(B) is one the party manifested that it adopted or believed to be true;

(C) was made by a person whom the party authorized to make a statement on the subject;

(D) was made by the party's agent or employee on a matter within the scope of that relationship and while it existed; or

(E) was made by the party's coconspirator during and in furtherance of the conspiracy.

The statement must be considered but does not by itself establish the declarant's authority under (C); the existence or scope of the relationship under (D); or the existence of the conspiracy or participation in it under (E).

(Pub. L. 93–595, §1, Jan. 2, 1975, 88 Stat. 1938; Pub. L. 94–113, §1, Oct. 16, 1975, 89 Stat. 576; Mar. 2, 1987, eff. Oct. 1, 1987; Apr. 11, 1997, eff. Dec. 1, 1997; Apr. 26, 2011, eff. Dec. 1, 2011.)

NOTES OF ADVISORY COMMITTEE ON PROPOSED RULES

*Subdivision (a).* The definition of ''statement'' assumes importance because the term is used in the definition of hearsay in subdivision (c). The effect of the definition of ''statement'' is to exclude from the operation of the hearsay rule all evidence of conduct, verbal or nonverbal, not intended as an assertion. The key to the definition is that nothing is an assertion unless intended to be one.

It can scarcely be doubted that an assertion made in words is intended by the declarant to be an assertion. Hence verbal assertions readily fall into the category of ''statement.'' Whether nonverbal conduct should be regarded as a statement for purposes of defining hearsay requires further consideration. Some nonverbal conduct, such as the act of pointing to identify a suspect in a lineup, is clearly the equivalent of words, assertive in nature, and to be regarded as a statement. Other nonverbal conduct, however, may be offered as evidence that the person acted as he did because of his belief in the existence of the condition sought to be proved, from which belief the existence of the condition may be inferred. This sequence is, arguably, in effect an assertion of the existence of the condition and hence properly includable within the hearsay concept. See Morgan, Hearsay Dangers and the Application of the Hearsay Concept, 62 Harv.L. Rev. 177, 214, 217 (1948), and the elaboration in Finman, Implied Assertions as Hearsay: Some Criticisms of the Uniform Rules of Evidence, 14 Stan.L.Rev. 682 (1962). Admittedly evidence of this character is untested with respect to the perception,

memory, and narration (or their equivalents) of the actor, but the Advisory Committee is of the view that these dangers are minimal in the absence of an intent to assert and do not justify the loss of the evidence on hearsay grounds. No class of evidence is free of the possibility of fabrication, but the likelihood is less with nonverbal than with assertive verbal conduct. The situations giving rise to the nonverbal conduct are such as virtually to eliminate questions of sincerity. Motivation, the nature of the conduct, and the presence or absence of reliance will bear heavily upon the weight to be given the evidence. Falknor, The ''Hear-Say'' Rule as a ''See-Do'' Rule: Evidence of Conduct, 33 Rocky Mt.L.Rev. 133 (1961). Similar considerations govern nonassertive verbal conduct and verbal conduct which is assertive but offered as a basis for inferring something other than the matter asserted, also excluded from the definition of hearsay by the language of subdivision (c).

When evidence of conduct is offered on the theory that it is not a statement, and hence not hearsay, a preliminary determination will be required to determine whether an assertion is intended. The rule is so worded as to place the burden upon the party claiming that the intention existed; ambiguous and doubtful cases will be resolved against him and in favor of admissibility. The determination involves no greater difficulty than many other preliminary questions of fact. Maguire, The Hearsay System: Around and Through the Thicket, 14 Vand.L.Rev. 741, 765–767 (1961).

For similar approaches, see Uniform Rule 62(1); California Evidence Code §§225, 1200; Kansas Code of Civil Procedure §60–459(a); New Jersey Evidence Rule 62(1)

*Subdivision (c).* The definition follows along familiar lines in including only statements offered to prove the truth of the matter asserted. McCormick §225; 5 Wigmore §1361, 6 *id.* §1766. If the significance of an offered statement lies solely in the fact that it was made, no issue is raised as to the truth of anything asserted, and the statement is not hearsay. *Emich Motors Corp. v. General Motors Corp.*, 181 F.2d 70 (7th Cir. 1950), rev'd on other grounds 340 U.S. 558, 71 S.Ct. 408, 95 L.Ed 534, letters of complaint from customers offered as a reason for cancellation of dealer's franchise, to rebut contention that franchise was revoked for refusal to finance sales through affiliated finance company. The effect is to exclude from hearsay the entire category of ''verbal acts'' and ''verbal parts of an act,'' in which the statement itself affects the legal rights of the parties or is a circumstance bearing on conduct affecting their rights.

The definition of hearsay must, of course, be read with reference to the definition of statement set forth in subdivision (a).

Testimony given by a witness in the course of court proceedings is excluded since there is compliance with all the ideal conditions for testifying.

*Subdivision (d).* Several types of statements which would otherwise literally fall within the definition are expressly excluded from it:

(1) *Prior statement by witness.* Considerable controversy has attended the question whether a prior out-of-court statement by a person now available for cross-examination concerning it, under oath and in the presence of the trier of fact, should be classed as hearsay. If the witness admits on the stand that he made the statement and that it was true, he adopts the statement and there is no hearsay problem. The hearsay problem arises when the witness on the stand denies having made the statement or admits having made it but denies its truth. The argument in favor of treating these latter statements as hearsay is based upon the ground that the conditions of oath, cross-examination, and demeanor observation did not prevail at the time the statement was made and cannot adequately be supplied by the later examination. The logic of the situation is troublesome. So far as concerns the oath, its mere presence has never been regarded as sufficient to remove a statement from the hearsay category, and it receives much less emphasis than cross-examination as a truth-compelling device. While strong expressions are

found to the effect that no conviction can be had or important right taken away on the basis of statements not made under fear of prosecution for perjury, *Bridges v. Wixon*, 326 U.S. 135, 65 S.Ct. 1443, 89 L.Ed. 2103 (1945), the fact is that, of the many common law exceptions to the hearsay rule, only that for reported testimony has required the declarant to have been made under oath. Nor is it satisfactorily explained why cross-examination cannot be conducted subsequently with success. The decisions contending most vigorously for its inadequacy in fact demonstrate quite thorough exploration of the weaknesses and doubts attending the earlier statement. *State v. Saporen*, 205 Minn. 358, 285 N.W. 898 (1939); *Ruhala v. Roby*, 379 Mich. 102, 150 N.W.2d 146 (1967); *People v. Johnson*, 68 Cal.2d 646, 68 Cal.Rptr. 599, 441 P.2d 111 (1968). In respect to demeanor, as Judge Learned Hand observed in *Di Carlo v. United States*, 6 F.2d 364 (2d Cir. 1925), when the jury decides that the truth is not what the witness says now, but what he said before, they are still deciding from what they see and hear in court. The bulk of the case law nevertheless has been against allowing prior statements of witnesses to be used generally as substantive evidence. Most of the writers and Uniform Rule 63(1) have taken the opposite position.

The position taken by the Advisory Committee in formulating this part of the rule is founded upon an unwillingness to countenance the general use of prior prepared statements as substantive evidence, but with a recognition that particular circumstances call for a contrary result. The judgment is one more of experience than of logic. The rule requires in each instance, as a general safeguard, that the declarant actually testify as a witness, and it then enumerates three situations in which the statement is excepted from the category of hearsay. Compare Uniform Rule 63(1) which allows any out-of-court statement of a declarant who is present at the trial and available for cross-examination.

(A) Prior inconsistent statements traditionally have been admissible to impeach but not as substantive evidence. Under the rule they are substantive evidence. As has been said by the California Law Revision Commission with respect to a similar provision:

"Section 1235 admits inconsistent statements of witnesses because the dangers against which the hearsay rule is designed to protect are largely nonexistent. The declarant is in court and may be examined and cross-examined in regard to his statements and their subject matter. In many cases, the inconsistent statement is more likely to be true than the testimony of the witness at the trial because it was made nearer in time to the matter to which it relates and is less likely to be influenced by the controversy that gave rise to the litigation. The trier of fact has the declarant before it and can observe his demeanor and the nature of his testimony as he denies or tries to explain away the inconsistency. Hence, it is in as good a position to determine the truth or falsity of the prior statement as it is to determine the truth or falsity of the inconsistent testimony given in court. Moreover, Section 1235 will provide a party with desirable protection against the 'turncoat' witness who changes his story on the stand and deprives the party calling him of evidence essential to his case." Comment, California Evidence Code § 1235. See also McCormick § 39. The Advisory Committee finds these views more convincing than those expressed in *People v. Johnson*, 68 Cal.2d 646, 68 Cal.Rptr. 599, 441 P.2d 111 (1968). The constitutionality of the Advisory Committee's view was upheld in *California v. Green*, 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970). Moreover, the requirement that the statement be inconsistent with the testimony given assures a thorough exploration of both versions while the witness is on the stand and bars any general and indiscriminate use of previously prepared statements.

(B) Prior consistent statements traditionally have been admissible to rebut charges of recent fabrication or improper influence or motive but not as substantive evidence. Under the rule they are substantive evidence.

The prior statement is consistent with the testimony given on the stand, and, if the opposite party wishes to open the door for its admission in evidence, no sound reason is apparent why it should not be received generally.

(C) The admission of evidence of identification finds substantial support, although it falls beyond a doubt in the category of prior out-of-court statements. Illustrative are *People v. Gould*, 54 Cal.2d 621, 7 Cal.Rptr. 273, 354 P.2d 865 (1960); *Judy v. State*, 218 Md. 168, 146 A.2d 29 (1958); *State v. Simmons*, 63 Wash.2d 17, 385 P.2d 389 (1963); California Evidence Code § 1238; New Jersey Evidence Rule 63(1)(c); N.Y. Code of Criminal Procedure § 393–b. Further cases are found in 4 Wigmore § 1130. The basis is the generally unsatisfactory and inconclusive nature of courtroom identifications as compared with those made at an earlier time under less suggestive conditions. The Supreme Court considered the admissibility of evidence of prior identification in *Gilbert v. California*, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967). Exclusion of lineup identification was held to be required because the accused did not then have the assistance of counsel. Significantly, the Court carefully refrained from placing its decision on the ground that testimony as to the making of a prior out-of-court identification ("That's the man") violated either the hearsay rule or the right of confrontation because not made under oath, subject to immediate cross-examination, in the presence of the trier. Instead the Court observed:

"There is a split among the States concerning the admissibility of prior extra-judicial identifications, as independent evidence of identity, both by the witness and third parties present at the prior identification. See 71 ALR2d 449. It has been held that the prior identification is hearsay, and, when admitted through the testimony of the identifier, is merely a prior consistent statement. The recent trend, however, is to admit the prior identification under the exception that admits as substantive evidence a prior communication by a witness who is available for cross-examination at the trial. See 5 ALR2d Later Case Service 1225–1228. * * *" 388 U.S. at 272, n. 3, 87 S.Ct. at 1956.

(2) *Admissions.* Admissions by a party-opponent are excluded from the category of hearsay on the theory that their admissibility in evidence is the result of the adversary system rather than satisfaction of the conditions of the hearsay rule. Strahorn, A Reconsideration of the Hearsay Rule and Admissions, 85 U.Pa.L.Rev. 484, 564 (1937); Morgan, Basic Problems of Evidence 265 (1962); 4 Wigmore § 1048. No guarantee of trustworthiness is required in the case of an admission. The freedom which admissions have enjoyed from technical demands of searching for an assurance of trustworthiness in some against-interest circumstance, and from the restrictive influences of the opinion rule and the rule requiring firsthand knowledge, when taken with the apparently prevalent satisfaction with the results, calls for generous treatment of this avenue to admissibility.

The rule specifies five categories of statements for which the responsibility of a party is considered sufficient to justify reception in evidence against him:

(A) A party's own statement is the classic example of an admission. If he has a representative capacity and the statement is offered against him in that capacity, no inquiry whether he was acting in the representative capacity in making the statement is required; the statement need only be relevant to represent affairs. To the same effect in California Evidence Code § 1220. Compare Uniform Rule 63(7), requiring a statement to be made in a representative capacity to be admissible against a party in a representative capacity.

(B) Under established principles an admission may be made by adopting or acquiescing in the statement of another. While knowledge of contents would ordinarily be essential, this is not inevitably so: "X is a reliable person and knows what he is talking about." See McCormick § 246, p. 527, n. 15. Adoption or acquiescence may be manifested in any appropriate manner. When silence is relied upon, the theory is that the person

would, under the circumstances, protest the statement made in his presence, if untrue. The decision in each case calls for an evaluation in terms of probable human behavior. In civil cases, the results have generally been satisfactory. In criminal cases, however, troublesome questions have been raised by decisions holding that failure to deny is an admission: the inference is a fairly weak one, to begin with; silence may be motivated by advice of counsel or realization that "anything you say may be used against you"; unusual opportunity is afforded to manufacture evidence; and encroachment upon the privilege against self-incrimination seems inescapably to be involved. However, recent decisions of the Supreme Court relating to custodial interrogation and the right to counsel appear to resolve these difficulties. Hence the rule contains no special provisions concerning failure to deny in criminal cases.

(C) No authority is required for the general proposition that a statement authorized by a party to be made should have the status of an admission by the party. However, the question arises whether only statements to third persons should be so regarded, to the exclusion of statements by the agent to the principal. The rule is phrased broadly so as to encompass both. While it may be argued that the agent authorized to make statements to his principal does not speak for him, Morgan, Basic Problems of Evidence 273 (1962), communication to an outsider has not generally been thought to be an essential characteristic of an admission. Thus a party's books or records are usable against him, without regard to any intent to disclose to third persons. 5 Wigmore §1557. See also McCormick §78, pp. 159–161. In accord is New Jersey Evidence Rule 63(8)(a). Cf. Uniform Rule 63(8)(a) and California Evidence Code §1222 which limit status as an admission in this regard to statements authorized by the party to be made "for" him, which is perhaps an ambiguous limitation to statements to third persons. Falknor, Vicarious Admissions and the Uniform Rules, 14 Vand.L. Rev. 855, 860–861 (1961).

(D) The tradition has been to test the admissibility of statements by agents, as admissions, by applying the usual test of agency. Was the admission made by the agent acting in the scope of his employment? Since few principals employ agents for the purpose of making damaging statements, the usual result was exclusion of the statement. Dissatisfaction with this loss of valuable and helpful evidence has been increasing. A substantial trend favors admitting statements related to a matter within the scope of the agency or employment. *Grayson v. Williams*, 256 F.2d 61 (10th Cir. 1958); *Koninklijke Luchtvaart Maatschappij N.V. KLM Royal Dutch Airlines v. Tuller*, 110 U.S.App.D.C. 282, 292 F.2d 775, 784 (1961); *Martin v. Savage Truck Lines, Inc.*, 121 F.Supp. 417 (D.D.C. 1054), and numerous state court decisions collected in 4 Wigmore, 1964 Supp., pp. 66–73, with comments by the editor that the statements should have been excluded as not within scope of agency. For the traditional view see *Northern Oil Co. v. Socony Mobile Oil Co.*, 347 F.2d 81, 85 (2d Cir. 1965) and cases cited therein. Similar provisions are found in Uniform Rule 63(9)(a), Kansas Code of Civil Procedure §60–460(i)(1), and New Jersey Evidence Rule 63(9)(a).

(E) The limitation upon the admissibility of statements of co-conspirators to those made "during the course and in furtherance of the conspiracy" is in the accepted pattern. While the broadened view of agency taken in item (iv) might suggest wider admissibility of statements of co-conspirators, the agency theory of conspiracy is at best a fiction and ought not to serve as a basis for admissibility beyond that already established. See Levie, Hearsay and Conspiracy, 52 Mich.L.Rev. 1159 (1954); Comment, 25 U.Chi.L.Rev. 530 (1958). The rule is consistent with the position of the Supreme Court in denying admissibility to statements made after the objectives of the conspiracy have either failed or been achieved. *Krulewitch v. United States*, 336 U.S. 440, 69 S.Ct. 716, 93 L.Ed. 790 (1949); *Wong Sun v. United States*, 371 U.S. 471, 490, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). For similarly limited provisions see California Evidence Code §1223 and New Jersey Rule 63(9)(b). Cf. Uniform Rule 63(9)(b).

NOTES OF COMMITTEE ON THE JUDICIARY, HOUSE REPORT No. 93–650

Present federal law, except in the Second Circuit, permits the use of prior inconsistent statements of a witness for impeachment only. Rule 801(d)(1) as proposed by the Court would have permitted all such statements to be admissible as substantive evidence, an approach followed by a small but growing number of State jurisdictions and recently held constitutional in *California v. Green*, 399 U.S. 149 (1970). Although there was some support expressed for the Court Rule, based largely on the need to counteract the effect of witness intimidation in criminal cases, the Committee decided to adopt a compromise version of the Rule similar to the position of the Second Circuit. The Rule as amended draws a distinction between types of prior inconsistent statements (other than statements of identification of a person made after perceiving him which are currently admissible, see *United States v. Anderson*, 406 F.2d 719, 720 (4th Cir.), cert. denied, 395 U.S. 967 (1969)) and allows only those made while the declarant was subject to cross-examination at a trial or hearing or in a deposition, to be admissible for their truth. Compare *United States v. DeSisto*, 329 F.2d 929 (2nd Cir.), cert. denied, 377 U.S. 979 (1964); *United States v. Cunningham*, 446 F.2d 194 (2nd Cir. 1971) (restricting the admissibility of prior inconsistent statements as substantive evidence to those made under oath in a formal proceeding, but not requiring that there have been an opportunity for cross-examination). The rationale for the Committee's decision is that (1) unlike in most other situations involving unsworn or oral statements, there can be no dispute as to whether the prior statement was made; and (2) the context of a formal proceeding, an oath, and the opportunity for cross-examination provide firm additional assurances of the reliability of the prior statement.

NOTES OF COMMITTEE ON THE JUDICIARY, SENATE REPORT No. 93–1277

Rule 801 defines what is and what is not hearsay for the purpose of admitting a prior statement as substantive evidence. A prior statement of a witness at a trial or hearing which is inconsistent with his testimony is, of course, always admissible for the purpose of impeaching the witness' credibility.

As submitted by the Supreme Court, subdivision (d)(1)(A) made admissible as substantive evidence the prior statement of a witness inconsistent with his present testimony.

The House severely limited the admissibility of prior inconsistent statements by adding a requirement that the prior statement must have been subject to cross-examination, thus precluding even the use of grand jury statements. The requirement that the prior statement must have been subject to cross-examination appears unnecessary since this rule comes into play only when the witness testifies in the present trial. At that time, he is on the stand and can explain an earlier position and be cross-examined as to both.

The requirement that the statement be under oath also appears unnecessary. Notwithstanding the absence of an oath contemporaneous with the statement, the witness, when on the stand, qualifying or denying the prior statement, is under oath. In any event, of all the many recognized exceptions to the hearsay rule, only one (former testimony) requires that the out-of-court statement have been made under oath. With respect to the lack of evidence of the demeanor of the witness at the time of the prior statement, it would be difficult to improve upon Judge Learned Hand's observation that when the jury decides that the truth is not what the witness says now but what he said before, they are still deciding from what they see and hear in court [*Di Carlo v. U.S.*, 6 F.2d 364 (2d Cir. 1925)].

The rule as submitted by the Court has positive advantages. The prior statement was made nearer in time

to the events, when memory was fresher and intervening influences had not been brought into play. A realistic method is provided for dealing with the turncoat witness who changes his story on the stand [see Comment, California Evidence Code §1235; McCormick, Evidence, §38 (2nd ed. 1972)].

New Jersey, California, and Utah have adopted a rule similar to this one; and Nevada, New Mexico, and Wisconsin have adopted the identical Federal rule.

For all of these reasons, we think the House amendment should be rejected and the rule as submitted by the Supreme Court reinstated. [It would appear that some of the opposition to this Rule is based on a concern that a person could be convicted solely upon evidence admissible under this Rule. The Rule, however, is not addressed to the question of the sufficiency of evidence to send a case to the jury, but merely as to its admissibility. Factual circumstances could well arise where, if this were the sole evidence, dismissal would be appropriate].

As submitted by the Supreme Court and as passed by the House, subdivision (d)(1)(c) of rule 801 made admissible the prior statement identifying a person made after perceiving him. The committee decided to delete this provision because of the concern that a person could be convicted solely upon evidence admissible under this subdivision.

The House approved the long-accepted rule that "a statement by a coconspirator of a party during the course and in furtherance of the conspiracy" is not hearsay as it was submitted by the Supreme Court. While the rule refers to a coconspirator, it is this committee's understanding that the rule is meant to carry forward the universally accepted doctrine that a joint venturer is considered as a coconspirator for the purposes of this rule even though no conspiracy has been charged. *United States v. Rinaldi*, 393 F.2d 97, 99 (2d Cir.), cert. denied 393 U.S. 913 (1968); *United States v. Spencer*, 415 F.2d 1301, 1304 (7th Cir. 1969).

### NOTES OF CONFERENCE COMMITTEE, HOUSE REPORT NO. 93–1597

Rule 801 supplies some basic definitions for the rules of evidence that deal with hearsay. Rule 801(d)(1) defines certain statements as not hearsay. The Senate amendments make two changes in it.

The House bill provides that a statement is not hearsay if the declarant testifies and is subject to cross-examination concerning the statement and if the statement is inconsistent with his testimony and was given under oath subject to cross-examination and subject to the penalty of perjury at a trial or hearing or in a deposition. The Senate amendment drops the requirement that the prior statement be given under oath subject to cross-examination and subject to the penalty of perjury at a trial or hearing or in a deposition.

The Conference adopts the Senate amendment with an amendment, so that the rule now requires that the prior inconsistent statement be given under oath subject to the penalty of perjury at a trial, hearing, or other proceeding, or in a deposition. The rule as adopted covers statements before a grand jury. Prior inconsistent statements may, of course, be used for impeaching the credibility of a witness. When the prior inconsistent statement is one made by a defendant in a criminal case, it is covered by Rule 801(d)(2).

The House bill provides that a statement is not hearsay if the declarant testifies and is subject to cross-examination concerning the statement and the statement is one of identification of a person made after perceiving him. The Senate amendment eliminated this provision.

The Conference adopts the Senate amendment.

### NOTES OF ADVISORY COMMITTEE ON RULES—1987 AMENDMENT

The amendments are technical. No substantive change is intended.

### NOTES OF ADVISORY COMMITTEE ON RULES—1997 AMENDMENT

Rule 801(d)(2) has been amended in order to respond to three issues raised by *Bourjaily v. United States*, 483 U.S. 171 (1987). First, the amendment codifies the holding in *Bourjaily* by stating expressly that a court shall consider the contents of a coconspirator's statement in determining "the existence of the conspiracy and the participation therein of the declarant and the party against whom the statement is offered." According to *Bourjaily*, Rule 104(a) requires these preliminary questions to be established by a preponderance of the evidence.

Second, the amendment resolves an issue on which the Court had reserved decision. It provides that the contents of the declarant's statement do not alone suffice to establish a conspiracy in which the declarant and the defendant participated. The court must consider in addition the circumstances surrounding the statement, such as the identity of the speaker, the context in which the statement was made, or evidence corroborating the contents of the statement in making its determination as to each preliminary question. This amendment is in accordance with existing practice. Every court of appeals that has resolved this issue requires some evidence in addition to the contents of the statement. *See, e.g., United States v. Beckham*, 968 F.2d 47, 51 (D.C.Cir. 1992); *United States v. Sepulveda*, 15 F.3d 1161, 1181–82 (1st Cir. 1993), *cert. denied*, 114 S.Ct. 2714 (1994); *United States v. Daly*, 842 F.2d 1380, 1386 (2d Cir.), *cert. denied*, 488 U.S. 821 (1988); *United States v. Clark*, 18 F.3d 1337, 1341–42 (6th Cir.), *cert. denied*, 115 S.Ct. 152 (1994); *United States v. Zambrana*, 841 F.2d 1320, 1344–45 (7th Cir. 1988); *United States v. Silverman*, 861 F.2d 571, 577 (9th Cir. 1988); *United States v. Gordon*, 844 F.2d 1397, 1402 (9th Cir. 1988); *United States v. Hernandez*, 829 F.2d 988, 993 (10th Cir. 1987), *cert. denied*, 485 U.S. 1013 (1988); *United States v. Byrom*, 910 F.2d 725, 736 (11th Cir. 1990).

Third, the amendment extends the reasoning of *Bourjaily* to statements offered under subdivisions (C) and (D) of Rule 801(d)(2). In *Bourjaily*, the Court rejected treating foundational facts pursuant to the law of agency in favor of an evidentiary approach governed by Rule 104(a). The Advisory Committee believes it appropriate to treat analogously preliminary questions relating to the declarant's authority under subdivision (C), and the agency or employment relationship and scope thereof under subdivision (D).

*GAP Report on Rule 801*. The word "shall" was substituted for the word "may" in line 19. The second sentence of the committee note was changed accordingly.

### COMMITTEE NOTES ON RULES—2011 AMENDMENT

The language of Rule 801 has been amended as part of the general restyling of the Evidence Rules to make them more easily understood and to make style and terminology consistent throughout the rules. These changes are intended to be stylistic only. There is no intent to change any result in any ruling on evidence admissibility.

Statements falling under the hearsay exclusion provided by Rule 801(d)(2) are no longer referred to as "admissions" in the title to the subdivision. The term "admissions" is confusing because not all statements covered by the exclusion are admissions in the colloquial sense—a statement can be within the exclusion even if it "admitted" nothing and was not against the party's interest when made. The term "admissions" also raises confusion in comparison with the Rule 804(b)(3) exception for declarations against interest. No change in application of the exclusion is intended.

### AMENDMENT BY PUBLIC LAW

1975—Subd. (d)(1). Pub. L. 94–113 added cl. (C).

### EFFECTIVE DATE OF 1975 AMENDMENT

Section 2 of Pub. L. 94–113 provided that: "This Act [enacting subd. (d)(1)(C)] shall become effective on the fifteenth day after the date of the enactment of this Act [Oct. 16, 1975]."

## Rule 802. The Rule Against Hearsay

Hearsay is not admissible unless any of the following provides otherwise:
- a federal statute;
- these rules; or
- other rules prescribed by the Supreme Court.

(Pub. L. 93–595, §1, Jan. 2, 1975, 88 Stat. 1939; Apr. 26, 2011, eff. Dec. 1, 2011.)

NOTES OF ADVISORY COMMITTEE ON PROPOSED RULES

The provision excepting from the operation of the rule hearsay which is made admissible by other rules adopted by the Supreme Court or by Act of Congress continues the admissibility thereunder of hearsay which would not qualify under these Evidence Rules. The following examples illustrate the working of the exception:

FEDERAL RULES OF CIVIL PROCEDURE

Rule 4(g): proof of service by affidavit.
Rule 32: admissibility of depositions.
Rule 43(e): affidavits when motion based on facts not appearing of record.
Rule 56: affidavits in summary judgment proceedings.
Rule 65(b): showing by affidavit for temporary restraining order.

FEDERAL RULES OF CRIMINAL PROCEDURE

Rule 4(a): affidavits to show grounds for issuing warrants.
Rule 12(b)(4): affidavits to determine issues of fact in connection with motions.

ACTS OF CONGRESS

10 U.S.C. §7730: affidavits of unavailable witnesses in actions for damages caused by vessel in naval service, or towage or salvage of same, when taking of testimony or bringing of action delayed or stayed on security grounds.
29 U.S.C. §161(4): affidavit as proof of service in NLRB proceedings.
38 U.S.C. §5206: affidavit as proof of posting notice of sale of unclaimed property by Veterans Administration.

COMMITTEE NOTES ON RULES—2011 AMENDMENT

The language of Rule 802 has been amended as part of the restyling of the Evidence Rules to make them more easily understood and to make style and terminology consistent throughout the rules. These changes are intended to be stylistic only. There is no intent to change any result in any ruling on evidence admissibility.

## Rule 803. Exceptions to the Rule Against Hearsay—Regardless of Whether the Declarant Is Available as a Witness

The following are not excluded by the rule against hearsay, regardless of whether the declarant is available as a witness:

(1) *Present Sense Impression.* A statement describing or explaining an event or condition, made while or immediately after the declarant perceived it.

(2) *Excited Utterance.* A statement relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused.

(3) *Then-Existing Mental, Emotional, or Physical Condition.* A statement of the declarant's then-existing state of mind (such as motive, intent, or plan) or emotional, sensory, or physical condition (such as mental feeling, pain, or bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the validity or terms of the declarant's will.

(4) *Statement Made for Medical Diagnosis or Treatment.* A statement that:

(A) is made for—and is reasonably pertinent to—medical diagnosis or treatment; and

(B) describes medical history; past or present symptoms or sensations; their inception; or their general cause.

(5) *Recorded Recollection.* A record that:

(A) is on a matter the witness once knew about but now cannot recall well enough to testify fully and accurately;

(B) was made or adopted by the witness when the matter was fresh in the witness's memory; and

(C) accurately reflects the witness's knowledge.

If admitted, the record may be read into evidence but may be received as an exhibit only if offered by an adverse party.

(6) *Records of a Regularly Conducted Activity.* A record of an act, event, condition, opinion, or diagnosis if:

(A) the record was made at or near the time by—or from information transmitted by—someone with knowledge;

(B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;

(C) making the record was a regular practice of that activity;

(D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and

(E) neither the source of information nor the method or circumstances of preparation indicate a lack of trustworthiness.

(7) *Absence of a Record of a Regularly Conducted Activity.* Evidence that a matter is not included in a record described in paragraph (6) if:

(A) the evidence is admitted to prove that the matter did not occur or exist;

(B) a record was regularly kept for a matter of that kind; and

(C) neither the possible source of the information nor other circumstances indicate a lack of trustworthiness.

(8) *Public Records.* A record or statement of a public office if:

(A) it sets out:

(i) the office's activities;

(ii) a matter observed while under a legal duty to report, but not including, in a criminal case, a matter observed by law-enforcement personnel; or

(iii) in a civil case or against the government in a criminal case, factual findings from a legally authorized investigation; and

(B) neither the source of information nor other circumstances indicate a lack of trustworthiness.